Teresa S. Renaker – CA State Bar No. 187800
Lindsay Nako – CA State Bar No. 239090
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
trenaker@lewisfeinberg.com
lnako@lewisfeinberg.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YVONNE GLOVER,<br><br>            Plaintiff,<br><br>vs.<br><br>SBC COMMUNICATIONS, INC.,<br><br>            Defendant. | Case No. 07-02652-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge Charles R. Breyer<br><br>Date:     July 20, 2007<br>Time:    10:00 a.m.<br>Courtroom:  8 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on July 20, 2007, at 10:00 a.m., or as soon thereafter as counsel may be heard, at the U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 8, 19th Floor, before the Honorable Charles R. Breyer, plaintiff will, and hereby does, move the Court for an Order remanding this action to the California Superior Court for the County of Contra Costa.

This Motion is based on this Notice of Motion and Motion for Remand; the following Memorandum of Points and Authorities in support thereof; the accompanying Declaration of Lindsay Nako and exhibits thereto; the pleadings and other documents in the Court's file in this

//

//

1 | matter; oral argument; and such other matters as may be presented to the Court at hearing.

2 | Dated: June 15, 2007                           Respectfully submitted,

LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.

By:   _____/s/_____
      Lindsay Nako
      *Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT.................................................................. v

I.    INTRODUCTION................................................................................ 1

II.    STATEMENT OF ISSUE TO BE DECIDED.................................... 2

III.    STATEMENT OF RELEVANT FACTS............................................ 2

    A.    Ms. Glover's Employment and Disability........................... 2

    B.    Relevant Terms of the Pacific Telesis Group Comprehensive Disability Benefit Plan.................................................................................. 3

IV.    LEGAL STANDARD......................................................................... 4

V.    ARGUMENT..................................................................................... 6

    A.    Removal Is Improper Because Plaintiff's State Law Claims Do Not Relate to an ERISA Plan..................................................................................... 6

    B.    The Pacific Telesis Group Comprehensive Disability Benefit Plan Is Not an ERISA Plan Simply Because SBC Labeled the Plan an ERISA Plan......... 9

    C.    Removal Is Improper Because Plaintiff's State Law Claims Do Not Fall Within the Scope of ERISA's Civil Enforcement Provision.................... 9

VI.    CONCLUSION................................................................................ 11

## TABLE OF AUTHORITIES

**Federal Cases** — Page No.

Abraham v. Norcal Waste Systems, Inc., 265 F.3d 811 (9th Cir. 2001)................... 5

Alaska Airlines, Inc. v. Oregon Bureau of Labor, 122 F.3d 812 (9th Cir. 1997)......... vi, 6, 7

Bassiri v. Xerox Corp., 463 F. 3d 927 (9th Cir. 2006)............................ *passim*

Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987)................................. 5

Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992)............................... 4, 5

Johnson v. Watts Regulator Co., 1994 WL 258788 (D.N.H. 1994), aff'd, 63 F.3d 1129 (1st Cir. 1995)................................................... 9, 10

Massachusetts v. Morash, 490 U.S. 107 (1989)................................... 7

Metropolitan v. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987)........................ 5

Miller v. PPG Indus., Inc., 278 F. Supp. 2d 826 (W.D. Ky. 2003)................... 9

Stern v. IBM, 326 F.3d 1367 (11th Cir. 2003).................................... 9

Toumajian v. Frailey, 135 F.3d 648 (9th Cir. 1998)............................ *passim*

**Federal Statutes**

29 U.S.C. § 1001 ........................................................... vi, 1

29 U.S.C. § 1002 ............................................................. vi

29 U.S.C. § 1002(1). .......................................................... 6

29 U.S.C. §§ 1021 - 1031 ..................................................... 9

29 U.S.C. § 1109 ............................................................ 10

29 U.S.C. §§ 1132(a)(1)(A).................................................. 9, 10

29 U.S.C. § 1132(a)(1)(B)..................................................... 11

29 U.S.C. § 1132(a)(2)........................................................ 11

29 U.S.C. § 1132(a)(3)........................................................ 11

29 U.S.C. § 1132(a)(4)........................................................ 11

29 U.S.C. § 1132 ............................................................ 10

29 U.S.C. § 1144(a).......................................................... 6

42 U.S.C. § 423(d)(2)(A)..................................................... 3

**Federal Regulations**

29 C.F.R. § 2510.3-1(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 6

29 C.F.R. § 2510.3-1(b)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

29 C.F.R. § 2910.3-1(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## SUMMARY OF ARGUMENT

On April 4, 2007, Plaintiff Yvonne Glover filed suit in Contra Costa County Superior Court, claiming that Defendant SBC's failure to provide her with short-term disability benefits pursuant to the terms of the Pacific Telesis Group Comprehensive Disability Benefit Plan ("Plan") violated the statutory and common law of California. SBC improperly removed this case to federal court on the basis of complete federal preemption under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Removal of a state court action on the basis of complete preemption under ERISA requires the removing party to demonstrate that: (1) the claims "relate to" an ERISA plan; *and* (2) the state law claims could have been brought under ERISA's civil enforcement provision as a matter of federal law. *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998). Both prongs of the test must be met to make removal proper. *Id.*

The United States Department of Labor has propounded regulations governing the application of ERISA's definition of the term "plan." These regulations exclude payroll practices from the statute's definition of "plan." 29 C.F.R. § 2510.3-1(b); *see* ERISA § 3, 29 U.S.C. § 1002 (defining "plan"). In *Bassiri v. Xerox Corporation*, the Ninth Circuit held that disability benefits plans funded from the same source and in the same manner as wages are payroll practices, rather than ERISA-governed employee benefit plans. 463 F.3d 927, 933 (9th Cir. 2006); *see also Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812, 814-15 (9th Cir. 1997). Here, the Plan is not an ERISA-governed employee benefit plan because all benefits provided under the Plan are paid directly from the assets of the employer as a self-described "payroll practice." Thus, Ms. Glover's state law claims were improperly removed because her claims do not "relate to" an ERISA plan nor is she attempting to assert state law claims that could have been brought under ERISA's civil enforcement provision. This case should be remanded to state court.

# I. INTRODUCTION.

Plaintiff Yvonne Glover is a former employee of Defendant SBC who commenced a disability leave on November 1, 2004, after fifteen years of employment. After SBC denied her claim for short term disability benefits pursuant to the terms of the Pacific Telesis Group Comprehensive Disability Benefit Plan ("Plan"), Ms. Glover filed suit in the Contra Costa County Superior Court alleging that the denial violated the statutory and common law of California. On April 12, 2007, Ms. Glover filed an amended complaint, alleging the same claims.

On May 18, 2007, SBC removed this case to federal court based on the incorrect assertion that Ms. Glover's state law claims are completely preempted by ERISA.[1] However, the Plan is not an ERISA-governed employee benefit plan because all benefits provided under the plan are paid directly from the assets of the employer as a self-described "payroll practice." The United States Department of Labor has propounded regulations governing the application of ERISA's definition of the term "plan." 29 C.F.R. § 2910.3-1(b). These regulations exclude payroll practices from the statute's definition of "plan." *Id.* Thus, the Plan is not governed by ERISA and Ms. Glover's state law claims are not preempted.

Removal of a state court action on the basis of complete preemption under ERISA requires the removing party to demonstrate that: (1) the claims "relate to" an ERISA plan; *and* (2) the state law claims could have been brought under ERISA's civil enforcement provision as a matter of federal law. *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998). Both prongs of the test must be met to make removal proper. *Id.*

Ms. Glover's state law claims were improperly removed because her claims do not "relate to" an ERISA plan. In *Bassiri v. Xerox Corporation*, the Ninth Circuit held that disability benefits plans funded from the same source and in the same manner as wages are payroll practices, rather than ERISA-governed employee benefit plans. 463 F.3d 927, 933 (9th Cir. 2006). For these reasons, the Plan is a payroll practice and not an ERISA-governed plan. Where

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

PLAINTIFF'S MOTION TO REMAND [CASE NO. 07-02652-CRB]                                                              Page 1

no ERISA plan exists, state law claims cannot "relate to" an ERISA plan. Further, Ms. Glover's well-pleaded Complaint does not, and could not, assert claims pursuant to ERISA. An analysis of Ms. Glover's state law claims reveals that none of Ms. Glover's claims could have been brought under the civil enforcement provisions of ERISA because Ms. Glover does not seek benefits under the terms of an ERISA-governed plan.

Failure to meet either prong of the *Toumajian* test is sufficient to mandate remand and, in the instant case, neither prong can be met. Since SBC cannot meet its burden for removal, the Court should remand this action to state court. *Toumajian*, 135 F.3d at 654.

## II. STATEMENT OF ISSUE TO BE DECIDED.

Whether the Pacific Telesis Group Comprehensive Disability Benefit Plan constitutes an "employee benefit plan," as defined by ERISA and the U.S. Department of Labor regulations promulgated thereunder, such that Ms. Glover's claim for short-term disability benefits "relates to" an ERISA-governed employee benefit plan and her claims may be brought under ERISA's civil enforcement provision.

## III. STATEMENT OF RELEVANT FACTS.

### A. Ms. Glover's Employment and Disability.

As alleged in the Complaint, plaintiff Yvonne Glover was employed full-time by Defendant SBC and its corporate predecessors from June 5, 1989, until October 26, 2004, in San Ramon, California. (First Amended Complaint ("FAC"), ¶ 6.) Ms. Glover's last position was Staff Associate. (*Id.* at ¶ 11.) Her duties in this position required sitting, keyboarding, and other repetitive use of her hands, arms, and upper torso. (*Id.*) During this period, Ms. Glover suffered from multiple disabling conditions: cervical radiculopathy, a wrist ganglion cyst, and dystonia, a rare vocal chord disorder. (*Id.* at ¶¶ 12, 14.) Ms. Glover is plagued by chronic pain and must take multiple anti-inflammatories and other medications to control her pain and alleviate the effects of the dystonia. (*Id.* at ¶¶ 13, 15.) Her disabling medical conditions and the significant side effects associated with her prescribed medications required Ms. Glover to stop work and she

went on disability leave on November 1, 2004.[2] (*Id.* at ¶ 16.) Ms. Glover remained an employee of SBC until May 31, 2005. (*Id.* at ¶ 24.)

On November 2, 2004, Ms. Glover applied for short-term disability benefits from the Plan. (*Id.* at ¶ 17.) The SBC Medical Absence and Accommodations Resource Team ("SMAART") denied Ms. Glover's application for short-term disability benefits by letter dated November 23, 2004. (*Id.* at ¶ 19.)

Ms. Glover requested review of the denial. (*Id.* at ¶ 20.) By letter dated January 10, 2005, SMAART requested additional medical information. (*Id.*) Nine days later, without waiting for a response from Ms. Glover, SMAART denied Ms. Glover's request for review. (*Id.* at ¶ 21.) On May 20, 2005, Ms. Glover supplemented her request for review of the denial of her short-term disability benefits with additional medical information. (*Id.* at ¶ 22.) SMAART denied Ms. Glover's request for review by letter dated September 21, 2005. (*Id.* at ¶ 23.)

**B.     Relevant Terms of the Pacific Telesis Group Comprehensive Disability Benefit Plan.**

The Plan states that its purpose is to provide "Short Term Disability Benefits to Participants who are absent from work, for temporary periods of fifty-two weeks or less, because of Short Term Disability." (Declaration of Lindsay Nako ("Nako Dec."), Exh. 1, p. 1.) Participation in the Plan is limited to "Eligible Employees," defined as follows:

> "Eligible Employee" shall mean an Employee (a) who is receiving a regular and stated compensation for personal services actually rendered to a Participating Company as a regular, term or temporary employee or (b) who is on a leave of absence from such active employment, but only if the terms of the leave policy established in writing by the Company provide for continued eligibility for Short Term Disability Benefits under this Plan.

(*Id.* at 2.) Benefits under the Plan are based on the eligible employee's "Base Pay," defined as "the Employee's basic rate of pay, as reflected in the payroll records of the Participating Company." (*Id.* at 1-2 ("Base Pay," "Full Pay," "Half Pay"), 7.) For a participant with a term of

---

[2] As of approximately November 2004, the Social Security Administration ("SSA") found that Ms. Glover is entitled to monthly Social Security disability benefits, meaning that the SSA determined that Ms. Glover has been permanently disabled from any job that exists in significant numbers in the national economy since that time. (FAC at ¶ 25.) 42 U.S.C.A. § 423(d)(2)(A). To date, Ms. Glover remains eligible for monthly Social Security disability benefits. (FAC at ¶ 26.)


employment of fifteen years or more, as in the case of Ms. Glover, the Plan provides full pay for up to twenty-six weeks and then half pay for up to twenty-six weeks. (*Id.* at 7.)

A participant "becomes entitled to receive Short Term Disability Benefits on the eighth calendar day of a continuous period during which the Participant is absent from work because of Short Term Disability." (*Id.* at 6.) The Plan defines the amount of the Short Term Disability Benefit as follows:

> If an Eligible Employee is absent from work because of Short Term Disability, this Plan shall provide, during the period of absence (not to exceed fifty-two weeks), a weekly amount of Short Term Disability Benefit which, when added to the benefits set forth in Section 4.2.2 ("Integrated Benefits"), equals either Full Pay (as determined under Section 4.2.5), or Half Pay (as determined under Section 4.2.6), whichever is to be provided in accordance with Section 4.2.1.

(*Id.*)

The Plan specifically states that "Short Term Disability Benefits shall be paid to the Participant *at the same time, and in the same manner, as wages or salary would have been paid to the Participant, under the payroll practices of the Participating Company*." (*Id.* at 9 (emphasis added).) In this same vein, the Plan prohibits the payment of Short Term Disability Benefits "for time for which salary or wages . . . are payable to the Participant by a Participating Employer." (*Id.* at 10.)

The Plan establishes that it is funded by the operating assets of each Participant's employer. (*Id.* at p. 24.) This section reads, "No fund shall be established to provide for benefits under the Plan. Benefits provided under the Plan shall be a charge against the assets of the Participating Company that employs the Participant at the time the Short Term Disability commences." (*Id.*)

### IV. LEGAL STANDARD.

A removing defendant has the burden of proving that the plaintiff's state law claims are completely preempted, and the plaintiff enjoys a strong presumption against removal jurisdiction. "We strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. . . . The 'strong presumption' against removal jurisdiction means that the defendant always has

the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

Thus, it is settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only true question at issue." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (emphasis in original). The Ninth Circuit has held that "even if a defendant has a substantial and persuasive argument that the state law claim asserted in the complaint is preempted by Section 1144(a) of ERISA, a defense sometimes called 'conflict preemption,' as long as the claim is not capable of characterization as an ERISA claim, removal is improper." *Toumajian*, 135 F.3d at 654 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 66 (1987)). Thus, even where a defense of ERISA preemption is presented, if the district court lacks removal jurisdiction, the court must remand the case to state court "where the preemption issue can be addressed and resolved." *Toumajian*, 135 F.3d at 655.

There is "a resulting corollary to the well-pleaded complaint rule known as the complete preemption doctrine." *Id.* at 653 (citing *Metropolitan Life*, 481 U.S. at 63-64). Complete preemption occurs where the "preemptive force of a statute" is so "extraordinary" as to convert the state law claims into claims that are said to "arise under" federal law. *Caterpillar*, 482 U.S. at 393 (citations omitted). In the rare case where state law claims can be said to "arise under" federal law, removal of state law claims may be appropriate. *Toumajian*, 135 F.3d at 653; *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811, 819 (9th Cir. 2001).

In the ERISA context, state law claims are completely preempted and arise under federal law, and are therefore removable to federal court, *only* when both of two conditions are met: (1) the state law claims "relate to" an ERISA plan within the meaning of ERISA § 514(a), 29 U.S.C. § 1144(a); *and* (2) the claims fall within the scope of the ERISA civil enforcement scheme. *Toumajian*, 135 F.3d at 654 (citing *Metropolitan Life*, 481 U.S. at 64, 66); *Abraham*, 265 F.3d at 819. "If both conditions are not met, however, the federal court does not have subject matter jurisdiction and the matter should be remanded." *Toumajian*, 135 F.3d at 654.

1  As explained below, neither condition is met here: Ms. Glover's state law claims are not
2  completely preempted and therefore do not "arise under" federal law because her claims do not
3  relate to an ERISA plan and do not fall within ERISA's civil enforcement scheme.

### V.  ARGUMENT.

**A.  Removal Is Improper Because Plaintiff's State Law Claims Do Not Relate to an ERISA Plan.**

Ms. Glover's state law claims do not relate to an ERISA plan because the Plan is not an ERISA-governed plan.  ERISA's preemption provision states that the federal act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  ERISA § 514(a), 29 U.S.C. § 1144(a).  Thus, by definition, application of the California state statutory and common law cannot be precluded by ERISA preemption unless the Plan constitutes an ERISA-governed "employee benefit plan."

ERISA-covered employee welfare benefit plans include certain programs that provide disability benefits.  ERISA § 3(1), 29 U.S.C. § 1002(1).[3]  The Department of Labor's regulations under Section 3, however, state that "employee welfare benefit plan[s]" do *not* include "payroll practices."  29 C.F.R. § 2510.3-1(b).  Payroll practices include "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties."  29 C.F.R. § 2510.3-1(b)(2).  "[S]uch plans are exempted from coverage under ERISA because 'although related to benefits described in section 3(1) of ERISA, they are more closely associated with normal wages or salary.'"  *Bassiri*, 463 F.3d at 929 (quoting 40 Fed. Reg. 34256 (Aug. 15, 1975)).  The Supreme Court also has interpreted the regulations to provide that plans that pay enumerated benefits "out of an employer's general assets rather than from a trust fund,

---

[3] ERISA § 3(1) provides, in pertinent part, "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer. . ., to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . disability."  29 U.S.C. § 1002(1).

are not employee welfare benefit plans within the meaning of ERISA." *Massachusetts v. Morash*, 490 U.S. 107, 117-18 (1989) (internal citations omitted).

In determining whether the payment of benefits constitutes a payroll practice rather than an ERISA plan, the Ninth Circuit has focused its attention on the "actual methods of payment." *Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812, 814 (9th Cir. 1997). For example, Alaska Airlines established a trust for the payment of sick leave and deposited funds into the trust throughout the year. *Id.* at 813. The airline paid benefits directly to employees from its general funds, and then reimbursed itself from the trust on a monthly basis for its payment of the benefits. *Id.* The court emphasized that "Alaska Airlines pays the employee directly, and it draws from its general assets to do so. It is not transmitting funds the trust has given it to pay the employee." *Id.* at 814. Although Alaska Airlines argued against "the literal application of the Secretary [of Labor's] regulation," the Ninth Circuit held that "[a]pplying the regulation literally to Alaska Airlines does not defeat the purposes of ERISA, because Alaska's system has more of the characteristics of an unfunded payment than of an ERISA trust fund payment." *Id.* at 814-815.

In *Bassiri*, the Ninth Circuit examined a disability benefit plan similar to the Plan. 463 F.3d at 928. The Xerox short-term and long-term disability plans provided for the full or partial payment of participants' salaries in the event of a disability. *Id.* Similar to *Alaska Airlines*, the *Bassiri* court noted, "The Department of Labor has chosen to define 'normal compensation' broadly and focus on the *source* of the funding." *Id.* at 932 (emphasis in original). "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits *from accumulated funds*. . . . If there is a danger of defeated expectations [in receiving vacation benefits paid out of general assets], it is no different from the danger of defeated expectations of wages for services performed – a danger Congress chose not to regulate in ERISA." *Id.* (quoting *Morash*, 490 U.S. at 115) (emphasis added) (alteration in *Bassiri*).

Under *Alaska Airlines* and *Bassiri,* the key issue is the "actual methods of payment." *Alaska Airlines*, 122 F.3d at 814; *see also Bassiri*, 463 F.3d at 932. Here, as in *Alaska Airlines*,

SBC "pays the employee directly, and it draws from its general assets to do so." *Alaska Airlines*, 122 F.3d at 814. The terms of the Plan require that "[n]o fund shall be established to provide for benefits under the Plan. Benefits provided under the Plan shall be *a charge against the assets of the Participating Company* that employs the Participant at the time the Short Term Disability commences." (Nako Dec., Exh. 1 at 24 (emphasis added).) The terms of the plan explicitly state that the benefits "shall be paid to the Participant at the same time, and in the same manner, as wages or salary would have been paid to the Participant, under the *payroll practices* of the Participating company." (*Id.* at 9 (emphasis added).) Thus, the Plan "qualifies as a payroll practice under the plain words of the regulation" and is excepted from regulation by ERISA. *See Alaska Airlines*, 122 F.3d at 814.

An additional consideration in determining the "*actual methods* of payment" *is* the manner in which the payment is made to the participating employee. *See Alaska Airlines*, 122 F.3d at 814; *Bassiri*, 463 F.3d at 932. (Nako Dec., Exh. 1 at 9.) As in *Alaska Airlines* and *Bassiri*, the amount of the disability benefit provided by the Plan is based on the employee's basic rate of pay, made from the general assets of the employer on a weekly basis, and paid at the same time and in the same manner as wages or salary would have been paid.[4] (*See id.* at 1-2, "Base Pay," "Full Pay," "Half Pay;" 9; 24.) *Alaska Airlines*, 122 F.3d at 814; *Bassiri*, 463 F.3d at 932. Also as in *Alaska Airlines* and *Bassiri*, short-term disability benefits are available only to active employees and halt at the termination of employment. (Nako Dec., Exh. 1 at 2; 6.) *Alaska Airlines*, 122 F.3d at 813; *Bassiri*, 463 F.3d at 932. The Plan defines "Eligible Employee" as an employee who is receiving regular compensation as a "regular, term or temporary employee," or who is on leave which allows for eligibility for short-term disability

---

[4] In *Bassiri*, the court held that partial payments of a participant's regular salary, such as the fifty percent of Full Pay provided under certain circumstances by the Plan, constitute "normal compensation" under 29 C.F.R. § 2510.3-1(b)(2). *Bassiri*, 463 F.3d at 930. The court emphasized the controlling nature of the Department of Labor's eleven opinion letters, in which the agency interpreted its own regulation and "defin[ed] 'normal compensation' to include payments of less than full salary." *Id.*

PLAINTIFF'S MOTION TO REMAND [CASE NO. 07-02652-CRB]                                      Page 8

benefits.[5]  (Nako Dec., Exh. 1 at 2.)   The Plan provides, "Whenever a Participant ceases to be an Eligible Employee under any circumstance, other than those circumstances in which continuing participation is expressly provided . . ., that Participant shall at the same time cease to be a Participant in the Plan."  (*Id.* at 6.)

Thus, the "actual methods of payment" used by SBC demonstrate that, like *Alaska Airlines*, SBC's system "has more of the characteristics of an unfunded payment than of an ERISA trust fund payment" and is a payroll practice, rather than an ERISA-governed employee welfare benefit plan.  *Alaska Airlines*, 122 F.3d at 815.

**B.    The Pacific Telesis Group Comprehensive Disability Benefit Plan Is Not an ERISA Plan Simply Because SBC Labeled the Plan an ERISA Plan.**

SBC may argue that the Plan is an ERISA plan because it complied with some of the reporting and disclosure requirements of ERISA, including the filing of IRS Form 5500s for the Plan.  *See* ERISA §§ 101-111, 29 U.S.C. §§ 1021 - 1031.  However, calling a payroll practice an "ERISA Plan" does not create an ERISA plan: "even if [the employer] has treated the Program as an ERISA plan with respect to government filings, its mere labeling of the plan should not determine whether ERISA applies.  Allowing this could lead to a form of 'regulation shopping.'"  *Stern v. IBM*, 326 F.3d 1367, 1374 (11th Cir. 2003); *see also Miller v. PPG Indus., Inc.*, 278 F. Supp. 2d 826, 831 (W.D. Ky. 2003) ("Where an employer pays an employee's normal vacation benefits entirely from its general assets, the program constitutes an exempted payroll practice. . . .  An employer cannot change this result by labeling an otherwise exempted plan as an ERISA plan."); *Johnson v. Watts Regulator Co.*, 1994 WL 258788, *4 (D.N.H. 1994), *aff'd*, 63 F.3d 1129 (1st Cir. 1995) (employer's filing of a Form 5500 "is voluntarily undertaken as a precaution and does not in and of itself render the policy an ERISA governed plan.").

---

[5] Here, Ms. Glover was terminated because she failed to return to work after SBC concluded that she was not disabled and able to work.  If SBC had properly determined that Ms. Glover was disabled and unable to work, she would have remained on a leave of absence from active employment and eligible for short term disability benefits through October 2005 and long-term disability benefits through the present.

C. **Removal Is Improper Because Plaintiff's State Law Claims Do Not Fall Within the Scope of ERISA's Civil Enforcement Provision.**

As discussed above, in order for a complaint asserting state law claims to be properly removed, the claims must not only relate to an ERISA plan, but also must fall within the scope of ERISA's civil enforcement provision. *See Toumajian*, 135 F.3d at 654. ERISA's civil enforcement provision is set forth at ERISA § 502, 29 U.S.C. § 1132.[6] This section allows for only five types of actions by participants in employee benefit plans: those authorized by Sections 502(a)(1)(A), 502 (a)(1)(B), 502(a)(2), 502(a)(3), and 502(a)(4). 29 U.S.C. §§ 1132(a)(1)(A), 1132 (a)(1)(B), 1132(a)(2), 1132(a)(3), and 1132(a)(4). None of these subsections authorizes the state law claims asserted by Ms. Glover in her Complaint. As a result, the present action must be remanded to state court.

Only two of the ERISA civil enforcement provisions bear discussion.[7] Ms. Glover's

---

[6] ERISA § 502(a) provides, in pertinent part:
    (a) A civil action may be brought –
        (1) by a participant or beneficiary –
            (A) for the relief provided for in subsection (c) of this section, or
            (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409;
    (3) by the Secretary, or by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;
    (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of [section] 105(c).

[7] Three of the ERISA civil enforcement sections can be disposed of quickly. Section 502(a)(1)(A) permits suits against plan administrators who fail to provide documents requested by plan participants. No claim regarding failure to provide documents is at issue in the present case. Section 502(a)(2) authorizes the filing of an action under ERISA § 409, 29 U.S.C. § 1109, for breach of fiduciary duty causing losses to a plan. There is no claim in the Complaint that any fiduciary breached any duty or that any plan lost money as a result. Finally, Section 502(a)(4) authorizes an action when a plan administrator has failed to furnish benefit statements. The

claims do not arise under ERISA § 502(a)(3), which authorizes an action to enjoin, or to obtain other appropriate equitable relief from, any act or practice which violates any provision of ERISA or the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3). Ms. Glover does not allege that SBC has violated any provision of ERISA, nor does she allege that SBC's actions violated any provision of a plan governed by ERISA.

Additionally, Ms. Glover's claims do not arise under ERISA § 502(a)(1)(B), which authorizes a civil action by a plan participant to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). As set forth in detail above, the Plan is not an "employee benefit plan" or an "employee welfare benefit plan," as defined by ERISA §§ 3(1), (3); thus, Ms. Glover is not a participant in such a plan, nor does she have benefits due or rights to enforce under such a plan.

In summary, SBC must demonstrate that both conditions listed in *Toumajian* are satisfied to justify removal. Given that Ms. Glover's state law claims do not relate to an ERISA plan or fall under the civil enforcement provisions of ERISA, the Court lacks removal jurisdiction. Therefore, this action should be remanded to state court.

### VI. CONCLUSION.

For the reasons stated herein, Ms. Glover respectfully requests that this action be remanded to the Contra Costa County Superior Court.

Dated: June 15, 2007                    Respectfully submitted,

                                        LEWIS, FEINBERG, LEE,
                                        RENAKER & JACKSON, P.C.

                                   By:        /s/
                                        Lindsay Nako
                                        *Attorneys for Plaintiff*

---

Complaint contains no claim regarding a failure to furnish benefit statements. These three subsections are inapplicable.