Teresa S. Renaker - CA State Bar No. 187800
Lindsay Nako - CA State Bar No. 239090
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
trenaker@lewisfeinberg.com
lnako@lewisfeinberg.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YVONNE GLOVER,<br><br>   Plaintiff,<br><br>vs.<br><br>SBC COMMUNICATIONS, INC.,<br><br>   Defendant. | Case No. 07-02652 CRB<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND**<br><br>Date:        July 27, 2007<br>Time:       10:00 a.m.<br>Courtroom: 8<br>Judge:      Hon. Charles R. Breyer |

PL.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND [CASE NO. 07-02652]

# TABLE OF CONTENTS

**Page No.**

SUMMARY OF ARGUMENT .................................................................................................... iv

I. INTRODUCTION. ................................................................................................................. 1

II. REMOVAL IS IMPROPER BECAUSE PLAINTIFF'S STATE-LAW CLAIMS DO NOT RELATE TO AN ERISA PLAN. ................................................................................ 2

    A. If the Plan Is an ERISA Plan, Ms. Glover's State-Law Claims Are Preempted. ... 2

    B. The Existence of Other SBC Plans That Are Independently Funded Does Not Transform the Plan Into an ERISA Plan. ................................................................. 3

    C. The Plan Is a Payroll Practice Because It Provides Normal Compensation Paid From The Employer's General Assets. ................................................................. 4

    D. The Continuation of Benefits Beyond the Termination of Employment Does Not Necessarily Make The Plan Subject to ERISA. ................................................. 5

    E. The Provision of Vocational Rehabilitation Benefits Does Not Make the Short-Term Disability Benefits Subject to ERISA. ................................................. 8

III. PLAINTIFF HAS NOT REQUESTED AFFIRMATIVE RELIEF FROM THE COURT SUCH THAT SHE WAIVED HER RIGHT TO REMAND. ............................................ 9

    A. The Declaration Submitted In Support of Plaintiff's Motion to Remand Did Not "Essentially Amend[] Her Complaint." ....................................................... 10

    B. Plaintiff Has Not Engaged in Affirmative Conduct or Unequivocal Assent Which Would Demonstrate Consent to the Court's Jurisdiction. ........................ 10

IV. THE DECLARATION SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND DID NOT IMPROPERLY PLACE EVIDENCE BEFORE THE COURT. ................................................................................................................ 12

V. CONCLUSION. ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**                                                        **Page No.**

Air Transport Association of America v. City & County of San Francisco, 992 F. Supp. 1149 (N.D. Cal. 1998). .................................................................................................. iv, 9

Alaska Airlines, Inc. v. Oregon Bureau of Labor, 122 F.3d 812 (9th Cir. 1997). ............... *passim*

Auer v. Robbins, 519 U.S. 452 (1997). ............................................................................... 6

Bassiri v. Xerox Corp., 463 F.3d 927 (9th Cir. 2006). ......................................................... *passim*

Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc., 177 F. Supp. 2d 1050 (C.D. Cal. 2001). ..................................................................................................... v, 12

Continental Ins. Co. v. Foss Maritime Co., 2002 WL 31414315 (N.D. Cal. Oct. 23, 2002). .......................................................................................... iv, v, 11

Ex Parte Harding, 219 U.S. 363 (1911). ........................................................................... 11

Fletcher v. Solomon, 2006 WL 3290399 (N.D. Cal. 2006). ................................................ 11

Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 15 (1987). .................................................. 4

Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137 (9th Cir. 2002). ................................. 4

Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992). ............................................................. *passim*

Great Northern Railway Co. v. Alexander, 246 U.S. 276 (1918). .......................................... 12

Kemp v. Int'l Bus. Machs. Corp., 109 F.3d 708 (11th Cir. 1997). ........................................... 9

Koehnen v. Herald Fire Ins. Co., 89 F.3d 525 (8th Cir. 1996). ............................................ 11

LaVenture v. Prudential Ins. Co. of Am., 237 F.3d 1042 (9th Cir. 2001). ....................... iv, 4, 9

Massachusetts v. Morash, 490 U.S. 107 (1989). ............................................................... 4, 5, 8

Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985). ........................................ 5

Mattel, Inc. v. Bryant, 441 F. Supp. 2d 1081 (C.D. Cal. 2005). .............................................. 12

Maybruck v. Haim, 290 F. Supp. 721 (S.D.N.Y. 1968). ....................................................... 10, 11

McMahon v. Digital Equipment Corp., 162 F.3d 28 (1st Cir. 1998). ...................................... 3, 4

In re Moore, 209 U.S. 490 (1908). ................................................................................... 11

Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir. 1985). ........................................................ 5, 6

Toumajian v. Frailey, 135 F.3d 648 (9th Cir. 1998). ............................................................. 2

Transport Indem. Co. v. Fin. Trust Co., 339 F. Supp 405 (C.D. Cal. 1972) . ................. iv, 11, 12

**Federal Statutes**

29 U.S.C. § 1001 . ........................................................................................................... 1

29 U.S.C. § 1002(1). ............................................................................................... 2, 8, 9

29 U.S.C. § 1132(a). ...................................................................................................... 8

29 U.S.C. § 1132(a)(1)(B). ........................................................................................... 3

29 U.S.C. § 1144(a). .................................................................................................... iv

**Federal Regulations**

29 C.F.R. § 2510.3-1(b). ............................................................................................... 6

29 C.F.R. § 2510.3-1(b)(2). .......................................................................................... 6

29 C.F.R. § 2910.3-1(b). .......................................................................................... iv, 1

**Other Authorities**

Civil Local Rule 7-5. ............................................................................................ v, 12-13

Department of Labor Advisory Opinion 92-18A (Sep. 30, 1992). ................................. 8

Department of Labor Advisory Opinion 93-02A (Jan. 12, 1993). ................................. 7

Department of Labor Advisory Opinion 93-27A (Oct. 12, 1993). ................................. 7

Department of Labor Advisory Opinion 93-20A (July 16, 1993). ................................. 7

Department of Labor Advisory Opinion 96-16A (Aug. 27, 1996). ........................... 5, 6

**SUMMARY OF ARGUMENT**

SBC bears the burden of demonstrating that removal of this action was proper. This is a heavy burden as any doubts as to removal jurisdiction are resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

As demonstrated below, Plaintiff Yvonne Glover's state law claims are not preempted by Section 514 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a), because the short-term disability benefits she seeks are a "payroll practice." The Department of Labor regulations under ERISA exclude payroll practices from ERISA's definition of "employee welfare benefit plan," so payroll practices are not governed by ERISA. 29 C.F.R. § 2910.3-1(b).  The payroll practice regulation includes "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." *Id.*

The short-term disability benefits provided under the Pacific Telesis Group Comprehensive Disability Benefit Plan are a payroll practice because they are paid out of the employer's general assets, based on salary provided during active employment, and paid "at the same time, and in the same manner, as wages would have been paid to the Participant, under the payroll practices of the Company." (Declaration of Lindsay Nako In Support of Plaintiff's Motion to Remand, Exh. 1, ¶¶ 4.2, 4.3, 13.6.) *See Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006); *Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812, 815 (9th Cir. 1997). An employer's provision of other ERISA-governed benefit plans or ERISA-governed benefits in the same plan cannot make a payroll practice an ERISA-governed benefit. *LaVenture v. Prudential Ins. Co. of Am.*, 237 F.3d 1042, 1047 (9th Cir. 2001); *Air Transport Assoc. of Am. v. City & County of San Francisco*, 992 F. Supp. 1149, 1174 (N.D. Cal. 1998).

In addition, Plaintiff has properly preserved her right to seek remand. *Transport Indem. Co. v. Fin. Trust Co.*, 339 F. Supp 405, 408 (C.D. Cal. 1972).  She has not amended her complaint or sought affirmative relief from this Court, such that she has consented to federal jurisdiction. *Continental Ins. Co. v. Foss Maritime Co.*, 2002 WL 31414315 (N.D. Cal. Oct. 23,

1  2002). In addition, the evidence that she entered in support of her Motion to Remand was
2  properly brought before the Court and may be relied upon. *Chesler/Perlmutter Prods., Inc. v.*
3  *Fireworks Entm't, Inc.*, 177 F. Supp. 2d 1050, 1055, 1058 (C.D. Cal. 2001); Civil L.R. 7-5.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. INTRODUCTION.

Plaintiff Yvonne Glover ("Ms. Glover") seeks short-term disability benefits from Defendant SBC Communications, Inc. ("SBC") pursuant to the terms of the Pacific Telesis Group Comprehensive Disability Benefit Plan ("Plan"). To this end, she filed suit in the Contra Costa County Superior Court, alleging that SBC's previous denial of benefits violated the statutory and common law of California. On May 18, 2007, SBC removed this case to federal court. SBC must now carry a heavy burden in demonstrating that its removal was proper, as any doubts as to removal jurisdiction are resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

In an effort to demonstrate that removal was proper, SBC has attempted to characterize the Plan, and the short-term disability benefits provided thereunder, as benefits governed by ERISA.[1] However, Ms. Glover's state law claims are not preempted by ERISA because the short-term disability benefits she seeks are provided pursuant to a "payroll practice," a method of providing benefits which the pertinent Department of Labor regulation excludes from ERISA's definition of "employee welfare benefit plan." 29 C.F.R. § 2910.3-1(b). The "payroll practice" exception to ERISA's definition of "plan" applies to "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons." *Id.* The Ninth Circuit applies a "literal interpretation" of the payroll practices regulation because "[n]o policy underlying ERISA or the regulation supports a deviation from the plain terms of the exemption." *Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812, 815 (9th Cir. 1997). According to the terms of the Plan, the disability benefits Ms. Glover seeks are a self-described "payroll practice," paid directly from the assets of the employer. (Declaration of Lindsay Nako In Support of Plaintiff's Motion to Remand ("Nako Dec."), Exh. 1, ¶¶ 4.3, 13.6.)

A payroll practice is not covered by ERISA; therefore, ERISA preemption cannot provide grounds for federal question jurisdiction or removal to federal court. If the Court

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

1  determines that the short-term disability benefits provided under the Plan are a payroll practice,
2  then Ms. Glover's claims do not "relate to" an ERISA plan, nor may her claims be brought under
3  ERISA's civil enforcement provision, and removal is improper. *Toumajian v. Frailey*, 135 F.3d
4  648, 654 (9th Cir. 1998).

5  In its Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to
6  Remand ("Opposition to Remand"), SBC also argues that Ms. Glover "essentially amend[ed] her
7  Complaint" such that she has waived her right to move for remand by entering evidence in
8  support of her Motion to Remand. As discussed below, Ms. Glover has not amended her
9  Complaint or sought affirmative relief from this Court, such that she signaled her consent to
10 federal jurisdiction and waived her right to move for remand. Further, Ms. Glover properly
11 entered evidence with her Motion to Remand, in compliance with Ninth Circuit law and the
12 Local Rules of this Court.

13 For these reasons and those set forth in the Motion to Remand, SBC's removal of Ms.
14 Glover's claim for benefits to federal court was improper. SBC cannot meet its burden for
15 removal and Plaintiff respectfully requests that the Court remand this action to state court.

16 **II.   REMOVAL IS IMPROPER BECAUSE PLAINTIFF'S STATE-LAW CLAIMS DO NOT RELATE TO AN ERISA PLAN.**
17

18 **A.   If the Plan Is an ERISA Plan, Ms. Glover's State-Law Claims Are Preempted by ERISA.**
19

20 Ms. Glover's Motion to Remand rests solely on the proposition that removal was
21 improper because the Plan is a payroll practice, rather than an ERISA-governed plan, and,
22 therefore, her claim for benefits does not relate to an ERISA-governed plan and cannot fall
23 within ERISA's civil enforcement scheme.[2] Ms. Glover recognizes that, if this Court determines

24 ――――――――――――――――

25   [2] In its Opposition to Remand, Defendant misconstrues Ms. Glover's position regarding
     her standing to bring a claim as a participant. (Opp. to Remand, p. 13.) In her Motion to
26   Remand, Ms. Glover argued that the Plan is not an "employee benefit plan" or an "employee
27   welfare benefit plan," as defined by ERISA §§ 3(1), (3), 29 U.S.C. §§ 1002(1), (3); thus she is
     not a "participant" within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), nor does she have
28   benefits due or rights to enforce under an ERISA plan. (Motion to Remand, p. 11.) Ms. Glover
     did not state that she is not a "participant" within the meaning of the Plan. (Nako Dec., Exh. 1,

PL.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND [CASE NO. 07-02652]          PAGE 2

1  that the Plan is governed by ERISA, her state-law claims are preempted by ERISA, and she must
2  amend her Complaint to allege a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).
3  (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to
4  Dismiss for Lack of Personal Jurisdiction, pp. 4-5.)   Thus, SBC's several pages of briefing on
5  preemption are irrelevant.  (*See* Opposition to Remand, pp. 5-8, 12-13.)  The sole question on
6  this motion is whether the Plan is an ERISA Plan.  For the reasons set forth below, the Plan is a
7  payroll practice and is exempt from ERISA.

      **B.    The Existence of Other SBC Plans That Are Independently Funded Does Not Transform the Plan Into an ERISA Plan.**

10        As noted above, where an employer pays benefits out of operating assets rather than from
11  a trust or through the purchase of insurance, the benefits are provided pursuant to a payroll
12  practice, not an ERISA plan.
13        Defendant relies solely upon *McMahon v. Digital Equipment Corp.*, 162 F.3d 28 (1st Cir.
14  1998), to argue that the Court should ignore the terms of the Plan, which require that benefits be
15  funded by the operating assets of participating employers, and instead look to other benefit plans
16  provided by SBC to its employees "some of which are funded through trusts and insurance
17  policies." (Opposition to Remand, p. 9.)
18        *McMahon* is distinguishable from the present case, as the *McMahon* court reviewed two
19  benefit plans which were offered as two components of a single short-term benefits plan.
20  *McMahon*, 162 F.3d at 37.  Benefits under both plans were partially funded by insurance and
21  secured by a fidelity bond. *Id.*  The court held:
22  > [W]here, as here, an employer partially funds a plan from sources outside of its general assets, files documents with the Department of Labor and the IRS
23  > consistent with the plan's ERISA status, and informs employees that the plan is subject to ERISA regulation, we find that the plan is an ERISA plan and not a
24  > payroll practice.
25  *Id.* at 38.  SBC also has not funded the Plan with sources outside general assets.
26        The Ninth Circuit previously distinguished *McMahon* on this same ground:

---

28  ¶ 2.1.) Ms. Glover's claim for benefits is premised on her status as a participant in the Plan during her period of employment.

Finally, Wells Fargo's reliance upon *McMahon v. Digital Equipment Corp.*, 162 F.3d 28 (1st Cir. 1998) is misplaced. Unlike the policy in *McMahon*, the pre-merger policy was funded entirely by Wells Fargo's general assets and Wells Fargo never represented to the Department of Labor that the policy was an ERISA plan. *Id.* at 38.

*Funkhouser v. Wells Fargo Bank, N.A.*, 289 F.3d 1137, 1143 (9th Cir. 2002) (holding that the defendant's sick-time and vacation policies were a payroll practice exempt from ERISA's definition of "employee benefit plan").

Further, the Ninth Circuit has explicitly held that a disability benefit plan cannot become subject to ERISA merely because an employer offers other benefit plans which are governed by ERISA. *LaVenture v. Prudential Ins. Co. of Am.*, 237 F.3d 1042, 1047 (9th Cir. 2001). Thus, SBC's provision of other benefit plans with independent funding has no bearing on the question of whether the Plan is governed by ERISA.

### C. The Plan Is a Payroll Practice Because It Provides Normal Compensation Paid From the Employer's General Assets.

In considering whether a payment is a payroll practice or an ERISA-governed benefit, the Ninth Circuit has held that to be a payroll practice, a system must have "more of the characteristics of an unfunded payment than of an ERISA trust fund payment." *Alaska Airlines*, 122 F.3d at 814-15. Therefore, the Court should consider all of the characteristics of the Plan to determine whether it bears a stronger resemblance to an unfunded payment or an ERISA trust fund payment, and should resolve all doubts in favor of remand. *See Gaus*, 980 F.2d at 586.

The most important consideration is the Plan's source of funding. *Bassiri v. Xerox Corp.*, 463 F.3d 927, 932 (9th Cir. 2006). "ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Massachusetts v. Morash*, 490 U.S. 107, 112-13 (1989) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15 (1987)). "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." *Id.* at 115. "[T]he crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and . . . ERISA was designed to prevent these abuses in the future."

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n. 8 (1985).

Unlike plans that pay benefits from a separate trust, plans that provide normal compensation from an employer's general assets while a disabled employee is unable to work are aligned more closely with concerns regarding protection of wages, which are traditionally governed by states and beyond the reach of ERISA. *See Morash*, 490 U.S. at 115, 119. "Employees who are beneficiaries of . . . a trust face far different risks and have far greater need for the reporting and disclosure requirements that the federal law imposes than those whose . . . benefits come from the same fund from which they receive their paychecks." *Id.* at 120. Thus, courts have determined that benefits that come from an employer's general assets, such as the short-term disability benefits provided by the Plan, require protection different from that provided by ERISA. State regulation affords greater protection for these benefits than do ERISA's trust-oriented rules, and courts have been unwilling to read preemption of such state laws into ERISA. *Id.* at 119; *Alaska Airlines*, 122 F.3d at 815.

### D. The Continuation of Benefits Beyond the Termination of Employment Does Not Necessarily Make the Plan Subject to ERISA.

In its Opposition to Remand, SBC argued that the continuation of short-term disability benefits after termination of employment under certain circumstances removes the Plan from the payroll practice exception. Plaintiff has found no authority holding that continuation of benefits beyond termination of employment is, by itself, sufficient to transform a payroll practice into an ERISA plan. Moreover, the policy considerations articulated by the Supreme Court in *Morash* militate against treating this factor as determinative.

In *Bassiri*, the court considered how closely benefits resembled salary to reach its conclusion that the long-term disability benefits mirrored "normal compensation," as required by the payroll practice regulation. *Bassiri*, 463 F.3d at 931-32. The court noted that "like salary, LTD Plan benefits end upon termination." *Id.* at 932. It relied upon *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985), and Department of Labor ("DOL") Advisory Opinion 96-16A

(Aug. 27, 1996), to reach this conclusion.[3]

As noted by SBC, the *Scott* court distinguished the employer's severance pay benefit from the payroll practices described in 29 C.F.R. § 2510.3-1(b)(2) because "[t]he practices described in the regulations require disbursements of funds easily analogized to ordinary wages, and the payments involved invariably take place during the term of employment." *Scott*, 754 F.2d at 1503. However, the court had previously determined that severance pay could not be considered a payroll practice, regardless of the source of funding. *Id.* at 1502. The court specifically distinguished severance pay benefits from payments of disability benefits covered by the payroll practice regulation, as "[s]everance pay, in contrast, requires an extra disbursement of funds, above and beyond ordinary wages, at or after the termination of employment." *Id.* at 1503. This could create a significant liability which is appropriate for ERISA regulation, even if paid out of an employer's general assets. *Id.* In contrast, disability benefits could be excluded from regulation, even when similarly funded, because they are predictable disbursements of funds. *Id.* The *Scott* court did not hold that disability benefits that continue past termination must regulated by ERISA.

In Advisory Opinion 96-16A, the DOL concluded, "This payroll practice exception is not intended to apply to arrangements that continue cash payments to individuals, in amounts related to the individuals' prior compensation for services, after individuals have ceased to be considered employees, such as when they resign or retire." The DOL also based its conclusion on plan terms providing for cost-of-living adjustments and offsets for retirement annuities, even if the benefit recipient had not elected retirement. *Id.* Here, although short-term disability benefits under the Plan continue for retired employees, employees who resign are allowed to continue benefits only if they enter into a separate severance agreement which expressly

---

[3] In *Bassiri*, the Ninth Circuit concluded that Department of Labor opinion letters should be given *Auer* deference. *Bassiri*, 463 F.3d at 930. "[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). The *Bassiri* court determined that 29 C.F.R. § 2510.3-1(b) was ambiguous as to the meaning of "normal compensation;" thus, the Department of Labor's interpretation is controlling. *Id.* at 931.

provides for participation in the Plan. (Nako Dec., Exh. 1, ¶ 4.1.2.)

However, in at least four other Advisory Opinions, the DOL has not considered continuation of benefits beyond termination of employment as a factor in determining whether a benefit was provided as a "payroll practice." In Advisory Opinion 93-27A (Oct. 12, 1993), the DOL reviewed two plans whose terms did not provide for termination of benefits at the end of employment; however, a proposed amendment to that effect was pending and the employer stated that this was its intent and practice since the inception of the plan. The DOL concluded that the plans were payroll practices "[b]ased on your representations that payments pursuant to the Programs are made from the general assets of the Employer for absence due to certain medical reasons and that such payments either equal, or represent a significant portion of, an employee's normal compensation, but in no event exceed an employee's normal compensation." *Id.* Thus, the DOL did not rely on termination of benefits at the end of employment as a basis for its conclusion.

In the remaining three Advisory Opinions, the opinions did not state whether benefits terminated with employment, and the DOL reached its conclusion that the benefits were provided as payroll practices without ever referencing this issue. In Advisory Opinion 93-20A (July 16, 1993), the DOL determined that a short-term disability benefit plan was a payroll practice because "[t]he benefits under the STD Plan are paid out of the Employer's general assets, are paid only for periods of time during which the employee is disabled and thus unable physically or mentally to perform his or her duties, and do not exceed the employee's normal compensation."

In Advisory Opinion 93-02A (Jan. 12, 1993), the DOL stated that an income replacement program was a payroll practice because:

> It is the position of the Department that an employer's payment of less than normal compenstion from the employer's general assets during periods in which an employee is absent for medical reasons may constitute a payroll practice that is not an employee welfare benefit plan. On the basis of your representations that the Program's benefits are paid exclusively from the general assets of the employer, . . . it is the position of the Department that the Program is not an employee welfare benefit plan within the meaning of section 3(1) of Title I of ERISA, but instead constitutes a payroll practice within the meaning of regulation section 2510.3-1(b).

In Advisory Opinion 92-18A (Sep. 30, 1992), the DOL concluded that a short-term disability benefit plan was a payroll practice because "[b]ased on the information contained in your request, including the representation that no more than the employees' normal compensation will be paid on account of periods of disability, it is the view of the Department that the STD Plan is a payroll practice described in § 2510.3-1(b)(2)."

As in *Bassiri* and the preceding Advisory Opinions, the short-term disability benefits provided by the Plan "more closely resemble[] salary." *Bassiri*, 463 F.3d at 932. The benefits are paid from the general assets of the employer and the same source as wages, in amounts tied to the participant's wages "under the payroll practices of the Participating company." (Nako Dec., Exh. 1, ¶¶ 4.3, 13.6.) The benefits do not implicate the concern for management of accumulated funds underscored in *Morash*. Resolving all doubts in favor of remand, the Court should determine that the Plan is a payroll practice. *See Gaus*, 980 F.2d at 586.

### E. The Provision of Vocational Rehabilitation Benefits Does Not Make the Short-Term Disability Benefits Subject to ERISA.

SBC also asserts that the vocational rehabilitation benefits provided under the Plan do not fall under the payroll practices exemption from ERISA. (Opposition to Remand, p. 11.) However, SBC does not cites no authority for the proposition that vocational rehabilitation benefits are covered by ERISA, nor has Ms. Glover found any such authority. If vocational rehabilitation benefits do not fall within one of the categories of benefits enumerated in ERISA § 3(1), 29 U.S.C. § 1002(1), then SBC's position is inapposite.

The Court need not reach the question of whether vocational rehabilitation benefits are governed by ERISA, however, because even if they are, the Plan is an ERISA plan only *to the extent that* it provides ERISA-governed benefits. Thus, even if the vocational rehabilitation benefits are covered by ERISA, the entire Plan does not necessarily become an ERISA-governed plan. Section 3(1) of ERISA defines "employee welfare benefit plan" as "any plan, fund, or program . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . benefits in the event of . . . disability." 29 U.S.C. § 1002(1). This definition allows both for the evaluation of individual programs, rather than

wholesale plans, and for the application of ERISA to a particular extent within a plan or program.

Under similar circumstances, the Eleventh Circuit considered this issue and determined that the inclusion of a non-ERISA benefit "in a multibenefit plan containing ERISA benefits does not make [the non-ERISA benefit] itself an 'employee welfare benefit plan' governed by ERISA. Likewise, its inclusion also fails to turn the plaintiffs' state law claims for [non-ERISA benefits] into claims for ERISA benefits under 29 U.S.C. § 1132(a)." *Kemp v. Int'l Bus. Machs. Corp.*, 109 F.3d 708, 710 (11th Cir. 1997), *cited with approval in LaVenture*, 237 F.3d at 1046.

In *Air Transport Association of America v. City & County of San Francisco*, the court recognized that non-ERISA benefits may be provided under the same plan as ERISA benefits:

> To the extent the Ordinance requires provision of non-ERISA benefits, it is not preempted by ERISA. This holds true even if these non-ERISA benefits are administered through a plan that also provides ERISA benefits. *See* 29 U.S.C. § 1002(1) (plan, fund or program is employee benefit plan "*to the extent that* such plan, fund or program was established or is maintained for the purpose of providing" enumerated benefits) (emphasis added); *Kemp v. Int'l Business Machines Corp.*, 109 F.3d 708, 713 (11th Cir. 1997) (non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits).

992 F. Supp. 1149, 1174 (N.D. Cal. 1998). The statute does not require an "all or nothing" application of ERISA to employee benefit plans. Such an interpretation of the statute would allow employers to gain ERISA coverage for non-ERISA benefits merely by pairing them with ERISA-covered benefits in the same plan.

As the *Kemp* and *Air Transport* courts stated, the Plan may offer non-ERISA benefits alongside ERISA benefits. Therefore, the categorization of vocational rehabilitation benefits has no effect on the Court's review of the Plan's short-term disability benefit, even if the short-term disability benefit is administered alongside alleged ERISA benefits.

### III. PLAINTIFF HAS NOT REQUESTED AFFIRMATIVE RELIEF FROM THE COURT SUCH THAT SHE WAIVED HER RIGHT TO REMAND.

In its Opposition to Remand, SBC states that Ms. Glover waived her right to move for remand by "offering . . . evidence" and "essentially amending her Complaint and asking the Court for affirmative relief." (Opp. to Remand, p. 1.) At no time has Ms. Glover conceded that

Defendant's removal based on federal question jurisdiction is proper. Ms. Glover preserved her right to seek remand by filing a Motion to Remand one month after receiving the Notice of Removal and before taking any other action in this Court.[4] Ms. Glover's Motion to Remand and accompanying documents did not amend her Complaint or constitute an affirmative request for relief from this Court, such that her right to seek remand was waived.

### A. The Declaration Submitted In Support of Plaintiff's Motion to Remand Did Not "Essentially Amend[] Her Complaint."

Although SBC states that Ms. Glover has "essentially amend[ed] her Complaint" by entering evidence in support of her Motion to Remand, it fails to specify how entering the Plan document, which was cited in the Complaint, has amended the Complaint.

Ms. Glover's Complaint alleges state law claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition, and waiting time penalties, each arising from SBC's denial of her short-term disability benefits in violation of the terms of the Pacific Telesis Group Comprehensive Disability Benefits Plan ("Plan"). (Complaint, ¶¶ 27-49.) By supplying a copy of the Plan to support the factual contentions in her Motion to Remand, Ms. Glover did not modify the parties or claims set forth in her Complaint, such that she amended the pleading.

### B. Plaintiff Has Not Engaged in Affirmative Conduct or Unequivocal Assent Which Would Demonstrate Consent to the Court's Jurisdiction.

In order to preclude objection to removal, a plaintiff must engage in specific conduct clearly submitting to federal jurisdiction:

> To constitute a waiver or consent to the federal court's assumption of jurisdiction, . . . there must be affirmative conduct or unequivocal assent of a sort which would render it offensive to fundamental principles of fairness to remand, as where the party seeking remand has been unsuccessful in litigation of a substantial issue,

---

[4] Although the parties entered into a stipulation to extend the deadline for Defendant to file a responsive pleading, which was filed with the court on May 24, 2007, the stipulation provided no relief for Plaintiff at all, much less relief which would render remand "offensive to fundamental principles of fairness." *Maybruck v. Haim*, 290 F. Supp. 721, 723 (S.D.N.Y. 1968). Indeed, because the Complaint will be amended if remand is denied, the stipulation postponing filing of a responsive pleading promoted fairness and efficiency.

1  such as the right to a jury trial or the right to take depositions or has filed an
2  amended complaint seeking further or different relief from the federal court.

3 *Maybruck*, 290 F. Supp. at 723 (internal citations omitted), *quoted in Transport Indem. Co. v.*
4 *Fin. Trust Co.*, 339 F. Supp 405, 408 (C.D. Cal. 1972)). Submitting a declaration in support of a
5 motion to remand, in accordance with the local rules of a jurisdiction, is not "affirmative conduct
6 or unequivocal assent" of the type that makes remand "offensive to fundamental principles of
7 fairness." *Id.*

8  The cases cited by SBC clearly describe the actions which demonstrate consent to federal
9 jurisdiction, and which are absent in this case. *See Koehnen v. Herald Fire Ins. Co.*, 89 F.3d
10 525, 528 (8th Cir. 1996) (plaintiff sought leave to file a new complaint in federal court and
11 "vigorously briefed and argued his substantive motion," prior to filing motion to remand); *In re*
12 *Moore*, 209 U.S. 490, 496 (1908) (plaintiff filed an amended petition in federal court and entered
13 into multiple stipulations with defendant regarding continuance of trial in that court), *abrogated*
14 *in part on other grounds in Ex Parte Harding*, 219 U.S. 363 (1911).

15  However, Defendant also cites two cases in which the court concluded that the plaintiff
16 did not consent to federal jurisdiction, for reasons relevant to the present matter. *See Fletcher v.*
17 *Solomon*, 2006 WL 3290399, *1, *3 (N.D. Cal. 2006) (the court granted the plaintiffs' motion
18 for remand, even though plaintiffs filed motion for default judgment prior to filing motion to
19 remand, where "economy, convenience, and comity would be served by returning [the action] to
20 state court"); *Transport Indem. Co.*, 339 F. Supp. at 408 ("Plaintiffs filed their motion to remand
21 principally within a week after the removal petition was filed. Plaintiffs have sought no relief
22 from the Federal Court nor have they litigated any issue here except their petition to remand.").

23  Similar to the plaintiffs in *Transport Indemity Co.*, Ms. Glover did not engage in any
24 affirmative action in this Court prior to filing her Motion to Remand on June 15, 2007; therefore,
25 she has not consented to federal jurisdiction or waived her right to seek remand. *See, e.g.,*
26 *Continental Ins. Co. v. Foss Maritime Co.*, 2002 WL 31414315 (N.D. Cal. Oct. 23, 2002)
27 (plaintiff's motion to dismiss the defendant's counterclaim did not waive right to remand, where
28 plaintiff had filed motion to remand before filing motion to dismiss). As discussed above, Ms.

Glover has not amended her Complaint. Ms. Glover has since taken action in this Court only to oppose to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, and therein specifically noted her intention to preserve her right to seek remand. *See Transport Indem. Co.*, 339 F. Supp. at 408 (giving weight to plaintiff's express statement that request for jury trial was not to be considered as a waiver of the right to object to the removal).

Thus, Ms. Glover has not amended her Complaint or engaged in any affirmative conduct in this Court which demonstrates her consent to federal jurisdiction or waiver of her right to move for remand.

### IV. THE DECLARATION SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND DID NOT IMPROPERLY PLACE EVIDENCE BEFORE THE COURT.

As stated in Plaintiff's Motion to Remand, the removing defendant bears the burden of proving that the plaintiff's state law claims were properly removed. *Gaus*, 980 F.2d at 566. Courts strictly construe the removal statute against removal jurisdiction and allow defendants to rely only on the allegations in the complaint and additional facts provided in the Notice of Removal to demonstrate that removal was proper. *Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*, 177 F. Supp. 2d 1050, 1055, 1058 (C.D. Cal. 2001). Thus, the court has prohibited defendants from relying upon evidence provided in other later-filed pleadings outside of the complaint and the Notice of Removal to show that a matter was properly removed. *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1092 (C.D. Cal. 2005). This is what the *Mattel* court referred to when it stated, "The court cannot consider post-removal evidence." *Id.*

In *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 281 (1918), the Supreme Court stated, "It is also settled that a case, arising under the laws of the United States, nonremovable on the complaint, when commenced, cannot be converted into a removable one *by evidence of the defendant* or by an order of the court upon any issue tried upon the merits." (emphasis added). Thus, evidence entered by a plaintiff to demonstrate the accuracy of the allegations in her complaint does not appear to be similarly limited and the Court may consider the evidence submitted with the Motion to Remand.

In addition, Local Rule 7-5 requires:

> Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.

Civil L.R. 7-5. Thus, Ms. Glover provided a copy of the Plan, authenticated by the Declaration of Lindsay Nako, in order to support the factual contentions made in her Motion to Remand, as required by the local rules. (*See* Nako Dec., ¶ 2.) The factual contentions made in her Motion to Remand were consistent with the claims made in her Complaint and did not modify her Complaint in any way.

In the alternative, should the Court exclude the evidence provided by Ms. Glover, the allegations in the Complaint demonstrate that Ms. Glover properly filed her claims in state court. SBC provided no information in its Notice of Removal to demonstrate the basis of its statement that Ms. Glover's claims arise under ERISA, rather than under the terms of an employment contract. (Notice of Removal, p. 2.) The content of the Complaint and the Notice of Removal demonstrate that Ms. Glover's claim was properly filed in state court.

**V.    CONCLUSION.**

If the Court has any doubts regarding removal jurisdiction, they should be resolved in favor of remanding the case to state court. *Gaus*, 980 F.2d at 566. Ms. Glover has demonstrated that the Plan is a "payroll practice," exempted from ERISA's complete preemption. Therefore, her claims do not relate to an ERISA plan nor do they fall under ERISA's enforcement provisions. SBC has not carried its heavy burden of demonstrating that removal was proper.

SBC has also failed to show that Ms. Glover waived her right to move for remand by amending her Complaint and seeking affirmative relief from the Court, or that she improperly entered evidence before the Court. Therefore, Plaintiff respectfully requests that the Court consider her Motion to Remand and the evidence submitted therewith, and remand this action to the Contra Costa County Superior Court.

1  Dated: July 13, 2007                    Respectfully Submitted,

2                                          LEWIS, FEINBERG, LEE,
                                           RENAKER & JACKSON, P.C.
3

4                              By:         /s/
                                           Lindsay Nako
5                                          *Attorneys for Plaintiff*