1  Teresa Renaker - Cal. Bar No. 187800
   Lindsay Nako - Cal. Bar No. 239090
2  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
3  Oakland, CA  94612
   Telephone: (510) 839-6824
4  Facsimile: (510) 839-7839
   trenaker@lewisfeinberg.com
5  lnako@lewisfeinberg.com

6  Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| YVONNE GLOVER,<br><br>        Plaintiff,<br><br>        vs.<br><br>PACIFIC TELESIS GROUP COMPREHENSIVE DISABILITY BENEFIT PLAN,<br><br>        Defendant. | Case No. 07-02652-CRB<br><br>**SECOND AMENDED COMPLAINT (ERISA)** |

**JURISDICTION**

1.  Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

2.  Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff resides in this District, the breaches alleged occurred in this District, and the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or

omissions giving rise to Plaintiff's claims occurred within this District.

**INTRADISTRICT ASSIGNMENT**

3. This action should be assigned to the San Francisco or Oakland Division because this action arises in Contra Costa County in that some or all of the breaches alleged took place in Contra Costa County, and Plaintiff resides there.

**PARTIES**

4. At all relevant times, Plaintiff Yvonne Glover ("Ms. Glover" or "Plaintiff") was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in Defendant Pacific Telesis Group Comprehensive Disability Benefit Plan ("Plan" or "Defendant"). Ms. Glover currently resides in Contra Costa County, California.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by AT&T Inc. and its corporate predecessors. At all relevant times, the Plan provided, *inter alia*, short-term disability benefits to employees, including Plaintiff, funded by the assets of participating companies, including Plaintiff's employer, Pacific Bell Telephone Company.

**FACTS**

6. From June 5, 1989 until October 26, 2004, Ms. Glover worked for Pacific Bell Telephone Company and its corporate successors in Contra Costa County, California. Her employment was terminated on May 31, 2005.

7. Ms. Glover began her career at Pacific Bell as an Operator, a position which required her to speak to approximately 1,000 people each day. However, in 1999, she was diagnosed with dystonia, a neurological movement disorder characterized by involuntary muscle contractions, which force particular parts of the body into abnormal, sometimes painful, movements or postures. The dystonia that affects Ms. Glover is a vocal chord disorder which is caused by sudden involuntary muscle movements or spasms which make it difficult for vocal chords to vibrate and produce voice. As a result of this condition, Ms. Glover has difficulty communicating verbally, as her speech sounds strangled and slurred and she experiences shortness of breath when speaking. Due to dystonia, Ms. Glover lost her ability work as an

Operator.

8. Ms. Glover's last position with her employer was Staff Associate. She began working in this position on November 6, 2000.

9. As a Staff Associate, Ms. Glover was primarily responsible for managing the calendars, schedules, and bonuses of over 400 employees in four offices. She sifted, sorted, stapled, and alphabetized the calendars of employees in the offices for which she was responsible, which required repetitive use of her hands. After noting attendances and bonuses, Ms. Glover entered this information into a computer database. This involved long hours at her desk performing keyboard data entry, with her neck flexed forward. Ms. Glover primarily communicated with employees by email. Performing these duties required that Ms. Glover spend some days entirely at her computer, keyboarding data and sending emails. These duties also required close attention to detail for extended periods of time. In addition to her account-monitoring duties, Ms. Glover also managed supplies for the office and was responsible for mailing many packages between offices. Managing supplies and mailing packages both required that Ms. Glover repetitively use her hands, arms, and upper body to lift, carry, open, pack, and seal heavy boxes.

10. SBC's "Job Analysis Document" describes the following activities for the position of Staff Associate:

- Process payroll by entering data into computer from handwritten time sheets. (90 min per day); 700 keystrokes.
- Prepare work schedules. Will enter data using keyboard into spread sheet. (60 min per day); 700 keystrokes.
- Process day off requests by entering data into computer from hand written forms. (90 min per day); 700 keystrokes; 60 lines handwritten.
- Assist manager with filing (60 min per day), faxing (30 min per day), and photocopying (30 min per day) functions.
- Word process correspondence. (30 min per day); 650 keystrokes.
- Sort and distribute mail. (30 min per day).
- Answer telephones and take messages. (30 min per day).

SECOND AMENDED COMPLAINT (ERISA)     PAGE 3

11. Ms. Glover suffers from chronic pain resulting from cervical radiculopathy and a wrist ganglion cyst. The cervical radiculopathy is Ms. Glover's primary source of pain. It causes severe and chronic pain in her upper torso and extremities. The wrist ganglion cyst also causes extensive pain by placing pressure on surrounding structures and causing inflammation of the median nerve. As a result of her cervical radiculopathy and wrist ganglion cyst, Ms. Glover has suffered from persistent symptoms including, without limitation, severe upper torso, right arm, and neck pain and a reduction in functionality.

12. Ms. Glover takes multiple anti-inflammatories and medications to control her pain. These medications are known to cause nausea, dizziness, drowsiness, and lack of coordination. Ms. Glover's doctors advised her that she should not perform any activities requiring coordination or alertness while taking these medications.

13. Ms. Glover takes Klonopin, a powerful anti-convulsive drug, to help her alleviate the effects of the dystonia. Klonopin commonly causes drowsiness and lack of muscle coordination.

14. As a result of these conditions, Ms. Glover became unable to work as of October 26, 2004. She went on disability leave on November 1, 2004, after her doctor determined that she was unable to perform her usual and customary job duties as Staff Associate.

15. Pacific Bell Telephone Company and its corporate successors provided short-term disability benefits to its employees pursuant to the terms of, among others, Defendant Pacific Telesis Group Comprehensive Disability Benefits Plan.

16. Under the terms of the Plan, a participant is entitled to receive short-term disability benefits "on the eighth day of a continuous period during which the Participant is absent from work because of Short Term Disability."

17. The Plan defines "Short Term Disability" as "a sickness, injury, or other medical, psychiatric, or psychological condition, which prevents an Employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices."

SECOND AMENDED COMPLAINT (ERISA)                                                                 PAGE 4

18. Qualification for short-term disability benefits is a prerequisite for eligibility for long term disability benefits. The Plan provides that a participant becomes eligible for long-term disability benefits if he or she "does not return to work at the end of the fifty-two week period for which Short Term Disability Benefits are payable."

19. On November 2, 2004, Ms. Glover applied for short-term disability benefits from the Plan.

20. At the time Ms. Glover applied for short-term disability benefits, she was an "Eligible Employee," which is defined by the Plan as "(a) an employee who is receiving a regular and stated compensation for personal services actually rendered to a Participating Company as a regular, term or temporary employee, or (b) who is on a leave of absence from such active employment, but only if the terms of the leave policy established in writing by the Company provide for continued eligibility for Short Term Disability Benefits under this Plan." As an Eligible Employee, Ms. Glover was entitled to participate in the Plan.

21. Ms. Glover's application for short-term disability benefits was denied by the SBC Medical Absence and Accommodations Resource Team ("SMAART") by letter dated November 23, 2004.

22. Ms. Glover requested review of the denial and, by letter dated January 10, 2005, SMAART requested additional information.

23. Nine days later, on January 19, 2005, SMAART denied Ms. Glover's request for review without waiting for the additional information it had requested.

24. On May 20, 2005, Ms. Glover supplemented her request for review of the denial of her short-term disability benefits.

25. SMAART denied Ms. Glover's request for review by letter dated September 21, 2005.

26. By letter dated June 2, 2005, Ms. Glover's employer terminated Ms. Glover's employment, effective May 31, 2005.

27. As of approximately November 2004, the Social Security Administration ("SSA") found that Ms. Glover is entitled to monthly Social Security disability insurance benefits,

meaning that the SSA determined that Ms. Glover has been permanently disabled from any job that exists in significant numbers in the national economy since that time.

28. To date, due to her medical conditions, Ms. Glover continues to receive monthly Social Security disability benefits.

29. At all relevant times, due to her medical conditions and the side effects of her medications, Ms. Glover has been disabled within the meaning of the Plan. Ms. Glover remains disabled and is entitled to benefits under the terms of the Plan.

**FIRST CLAIM FOR RELIEF**
**[Claim for Benefits Pursuant to § 502(a)(1)(B)**
**Against Defendant Plan]**

30. Plaintiff incorporates Paragraphs 1 through 29 as though fully set forth herein.

31. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

32. At all relevant times, Ms. Glover has been entitled to short-term disability benefits under the Plan. By denying Ms. Glover's claim for short-term disability benefits under the Plan, the Plan has violated the terms of the Plan and Ms. Glover's rights thereunder.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

**AS TO THE FIRST CLAIM FOR RELIEF:**

A. Declare that Defendant Plan violated the terms of the Plan by denying Ms. Glover's claim for short-term disability benefits from November 3, 2004, to November 2, 2005;

B. Order Defendant Plan to pay short-term disability benefits to Plaintiff pursuant to the terms of the Plan from November 3, 2004, through November 2, 2005, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Order Defendant Plan to pay long-term disability benefits to Plaintiff pursuant to the terms of the Plan from November 3, 2005, to the date of judgment, together with prejudgment interest on each and every such monthly payment through the date judgment is

1 | entered herein;

2 |   D. Declare Plaintiff's right to receive future long-term disability benefit payments
3 | under the terms of the Plan;

4 |   E. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein
5 | pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

6 |   F. Provide such other relief as the Court deems equitable and just.

8 | Dated: August 8, 2007    Respectfully submitted,

9 |         LEWIS, FEINBERG, LEE,
        RENAKER & JACKSON P.C.

11 |       By: /s/
        Lindsay Nako
12 |         Attorneys for Plaintiff