LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (State Bar No. 088666)
SUSAN T. KUMAGAI (State Bar No. 127667)
FORREST E. FANG (State Bar No. 122805)
100 Spear Street, Suite 600
San Francisco, California 94105
Telephone: (415) 357-4600
Facsimile: (415) 357-4605

Attorneys for Defendant
AT&T UMBRELLA BENEFIT PLAN NO. 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YVONNE GLOVER,

Plaintiff,

vs.

AT&T UMBRELLA BENEFIT PLAN NO. 1,

Defendant.

Case No. C07-02652 CRB

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

[Fed. R. Civ. P. 56]

Date: February 29, 2008
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Charles R. Breyer

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ..... 1

II. ISSUE TO BE DECIDED ..... 2

III. STATEMENT OF FACTS ..... 2

A. Pacific Bell's Disability Plan ..... 2

B. Relevant Facts Underlying the Denial of Plaintiff's Claim for Short-Term Disability Benefits ..... 5

IV. JUDICIAL PROCEDURAL HISTORY ..... 10

V. ARGUMENT ..... 10

A. Standard of Review ..... 10

B. Substantial Evidence Existed In The Administrative Record To Support The Determination On Administrative Appeal That Plaintiff Did Not Have A Disabling Condition ..... 12

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

i

# TABLE OF AUTHORITIES

**Page No.**

## Federal Cases

Abatie v. Alta Health & Life Ins. Co. (9th Cir. 2006) 458 F.3d 955 .......... 10, 11, 12

Bendixen v. Standard Ins. Co. (9th Cir. 1999) 185 F.3d 939 .......... 11

Black & Decker Disability Plan v. Nord (2003) 538 U.S. 822 .......... 11

Boyd v. Bell (9th Cir. 2005) 410 F.3d 1173 .......... 11

Concrete Pipe & Products of Cal. In. v. Construction Laborers Pension Trust for Southern Cal., 508 U.S. 602 (1993) .......... 12

Dowling v. Metropolitan Life Ins. Co. (M.D.Fla. 2004) 355 F.Supp.2d 1311 .......... 10

Estate of Shockley v. Alyeska Pipeline Service Co., 130 F.3d 403 (9th Cir. 1997) .......... 12

Firestone Tire & Rubber Co. v. Bruch (1989) 489 U.S. 101 .......... 10

Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income (9th Cir. 2003) 349 F.3d 1098 .......... 11

Jordan v. Northrop Grumman Corp. Welfare Benefit Plan (9th Cir. 2004) 370 F.3d 869 .......... 10, 11, 14

MacDonald v. Pan American World Airways, Inc., 859 F.2d 742 (9th Cir. 1988) .......... 12

Safavi v. SBC Disability Income Plan (C.D.Cal. 2007) 493 F.Supp.2d 1107 .......... 11, 14

Taft v. Equitable Life Assur. Soc., 9 F3d 1469 (9th Cir. 1993) .......... 12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Friday, February 29, 2008, at 10:00 a.m., before the Honorable Charles R. Breyer, in Courtroom 8, 450 Golden Gate Avenue, San Francisco, California, defendant AT&T UMBRELLA BENEFIT PLAN NO. 1 will move and does hereby move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the Third Amended Complaint For Damages ("Complaint") filed by plaintiff Yvonne Glover on August 24, 2007 in the above-captioned action.

This motion is made on the grounds that no genuine issue exists as to the reasonableness of the decision to deny plaintiff's claim for short-term disability benefits and that the denial was not an abuse of discretion under the pertinent disability plan.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the supporting declarations of Tonya Warner and Nancy Watts, the pleadings and papers filed in this action, and upon such other evidence or argument that may be presented to the Court at or before the hearing on this motion.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff is a former employee of Pacific Bell Telephone Company ("Pacific Bell"). On November 2, 2004, and while plaintiff was still employed by Pacific Bell, a claim was initiated on her behalf for short-term disability ("STD") benefits under the Pacific Telesis Group Comprehensive Disability Benefits Plan (the "Plan"). Such claim was denied on November 23, 2004. On January 7, 2005, plaintiff filed an administrative appeal of the denial of her claim. The appeal was denied on January 19, 2005. Plaintiff retained an attorney who asked that plaintiff's appeal be reopened. Initially, the request to reopen the appeal was denied. However, plaintiff's counsel made a second request to reopen the appeal and provided additional medical documents. On August 18, 2005, the appeal was reopened.

The denial of plaintiff's claim was upheld after the Plan's Employees' Benefit Claim Review Committee ("CRC") reviewed the record and the newly submitted documents and

1

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

obtained opinions from independent physician advisors. Thereafter, plaintiff commenced this action seeking recovery of short term disability benefits.

Summary judgment in favor of defendant AT&T Umbrella Benefit Plan No. 1 is proper because no genuine issue exists as to the reasonableness for denying plaintiff's claim for benefits. An abuse of discretion standard is applicable to this case, because the CRC had the authority and discretion under the Plan to interpret its terms and to decide benefits claims thereunder.

## II. ISSUE TO BE DECIDED

Whether the CRC abused its discretion when it upheld the denial of plaintiff's claim for short-term disability benefits based on the administrative record and clinical findings supporting available transitional work for plaintiff of four-hour workdays and reflecting an absence of clinical findings to support a diagnosis of dystonia.

## III. STATEMENT OF FACTS

Plaintiff Yvonne Glover was hired by Pacific Bell on June 5, 1989.[1] Her employment was terminated on May 31, 2005. (Complaint, ¶7.) At the time of her termination, plaintiff held the position of Staff Associate. (Id., ¶9.)

As an employee, plaintiff was a participant in an employee welfare benefit plan offered by Pacific Bell known as the "Pacific Telesis Group Comprehensive Disability Benefits Plan" (the "Plan"). (See id., ¶¶16-18.) The Plan, along with several other benefits plans, was merged into the SBC Umbrella Benefit Plan No. 1, effective January 1, 2001.[2] (See Declaration of Nancy Watts in Support of Defendant AT&T Umbrella Benefit Plan No. 1's Motion For Summary Judgment ("Watts' Decl."), ¶4.)

### A. Pacific Bell's Disability Plan

Under the Plan, eligibility for STD benefits requires that an employee's condition meet the following definition set forth in Section 2 of the Plan:

---

[1] SBC acquired Pacific Telesis Group, the holding company for Pacific Bell Telephone Company in 1997.

[2] The name of the Umbrella Plan was subsequently changed from "SBC Umbrella Plan No. 1" to "AT&T Umbrella Plan No. 1" effective November 18, 2005. (Watts' Decl., ¶6.)

2

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

> "Short Term Disability" shall mean a sickness, injury, or other medical, psychiatric, or psychological condition, which prevents an Employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices.

(Appellate Record ("AR"), AR-000269.)

Under the Plan, the General Employees Benefit Committee ("GEBC"), a committee appointed by the Board of Directors of Pacific Telesis Group to administer certain employee benefits Plans, has the responsibility to approve or deny claims for STD benefits under the Plan. Whenever the GEBC receives notification of a claim for STD benefits, it "shall determine whether to approve payment or to deny the claim." The Plan further provides that the GEBC shall have the power and discretion to establish general interpretations, rules, and procedures to guide and assist in approving or denying claims, and may appoint others to carry out its administrative duties. (AR-000343; Watts' Decl. at ¶7.)

Under the Plan, the CRC is a committee of three or more persons appointed by the Plan Administrator, and is responsible for reviewing appeals of denials of short-term disability claims. (AR-000346, §9.1.) The CRC is defined under the Plan as a fiduciary within the meaning of ERISA. (Ibid.)

Sections 9.4 and 9.5 of the Plan further provide in pertinent part that the CRC shall have authority to interpret the terms of the Plan and to resolve all factual issues and make decisions as to whether to uphold the denial of the claim on review:

> 9.4 Discretion of the Committee. The Review Committee shall have the power and discretion to resolve all factual issues presented in a request for review in a reasonable manner, and to interpret and adopt reasonable constructions of any provision of the Plan whenever interpretation or construction is needed to resolve any issue presented in a request for review. The Review Committee shall also have the power and discretion to establish general interpretations, rules, and procedures to guide and assist and the GEBC in approving or denying similar claims under Section 8.

(AR-000346, §9.4 (emphasis added).

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

3

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

If the denial of the participant's claim is upheld by the CRC, the Plan further states that it "shall have no liability toward the Participant..., unless a court of competent jurisdiction shall determine that the Review Committee has abused its discretion in deciding to deny the claim." (AR-000346, §9.6 (emphasis added).)

Sedgwick Claims Management Services Inc. ("Sedgwick") is an independent third-party administrator for the Plan. (Declaration of Tonya Warner in Support of Defendant AT&T Umbrella Benefit Plan No. 1's Motion For Summary Judgment ("Warner Decl.), ¶ 1.) In accordance with Section 9.1 of the Plan, the Plan Administrator designated Sedgwick employees holding certain job titles to the CRC, which reviewed appeals from denied cases. (Id., ¶3.) These job titles included: (1) manager of the Quality Review Unit, (2) ERISA specialist, (3) Appeals Specialist, and (4) Clinical Appeals Specialist. (Id., ¶3, AR-000288.) The members of the CRC are employees that work in Sedgwick's Quality Review Unit ("QRU"). (Warner Decl., ¶3.)

As noted under the Plan, the CRC has full and complete discretion to interpret the terms of the Plan and to decide whether to approve and deny disability claims. (See AR-000346, §§9.4-9.5.) The provision of such services under an agreement with Sedgwick is consistent with the appointment of Sedgwick employees to the CRC. (See AR-000381 (Sedgwick Agreement (Attachment A)), ¶1.A.(9).)

Sedgwick receives a flat fee for its services and the services of its employees, without regard to whether it approves or denies claims under the Plan. (Warner Decl., ¶8.) Neither Sedgwick nor the CRC members are financially associated with the Plan Administrator or any of its family of companies. (Watts' Decl., ¶8.) The CRC fulfills its fiduciary responsibility to the Plan without influence by the Plan Administrator or the Plan Sponsor. (Ibid.) Sedgwick has no role in the Plan's funding, and has never been the source of the funds that are used to pay disability benefits under the Plan. (Id., ¶8, 13.) Sedgwick merely notifies the Plan when a participant's claim for STD benefits has been approved, and if so, for what period of time. (Id., ¶13.)

The CRC decides a claim based upon the evidence before the GEBC, the issues and comments submitted by the participant employee, and such other evidence as the CRC may

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

independently discover . (AR-000346, § 9.3.) Independent medical advisors can assist the CRC in evaluating claims and analyzing medical evidence in support of those claims. (Warner Decl. at ¶ 10.)

In 2005, the CRC included Heidi Lasser, Appeals Specialist, Cam Reinhart, Manager of QRU and Doreen Ongayo, ERISA Specialist. (Warner Decl., ¶4.)

Pacific Bell has never been the Plan Administrator of the Plan, and has never had any responsibility for administering the Plan or determining the eligibility for benefits thereunder. (Watts Decl., ¶5.)

**B. Relevant Facts Underlying the Denial of Plaintiff's Claim for Short-Term Disability Benefits**

As a Staff Associate, plaintiff's job duties included administrative support of a clerical nature that appeared to fall within a sedentary level of physical demand. (AR-000218, 275-77.)

On or about October 27, 2004, plaintiff stopped reporting to work after allegedly experiencing pain in her neck and arms. (AR-000079.) At the time of her injury, plaintiff had been working four-hour days since July 2004, having been released to modified work that restricted her to four hours per day after she allegedly experienced neck pain. (AR-000079, AR-000120.) Plaintiff had previously been treated for a neck and shoulder injury she sustained in July 2002. She continued to have symptoms in her right hand, arm and neck during 2003 and 2004. (AR-000274, AR-000048.)

On or about November 2, 2004, a claim was brought on behalf of plaintiff for STD benefits under the Plan. (AR-000269.)

Jennifer Fennessy, a Disability Specialist, sent plaintiff a letter on November 23, 2004 which informed plaintiff that her claim for STD benefits had been denied. (AR-000241.) Ms. Fennessy informed plaintiff that documentation provided by her treating physician Dr. Harrell had been considered and, based on a review of the documentation, and review by a physician advisor, "the medical information submitted contains insufficient observable documentation to support an off work status." (AR-000241-242.) Ms. Fennessy informed plaintiff that attempts to reach Dr. Harrell for a telephonic consultation were unsuccessful. (AR-000241.) The medical

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

5

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

documentation indicated that plaintiff had complained of severe pain in the neck and bilateral arms, had decreased range of motion in the cervical spine, a disc protrusion in the lumbar spine, and was considered permanent and stationary with certain permanent restrictions. (AR-000241.)

On or about December 17, 2004, plaintiff submitted further medical information - a permanent and stationary report by Dr. Harrell dated October 28, 2004. (AR-000236-240.)

On December 23, 2004, Ms. Fennessy sent a letter to plaintiff informing her that the medical information she sent on December 17, did not alter the previous denial decision and that she needed to submit a written appeal before any further information could be considered. (AR-000235.)

On or about January 7, 2005, plaintiff filed a request for appeal of the denial of her claim for STD benefits. (AR-000227.)

On or about January 19, 2005, Heidi Lasser, a Claims Specialist and CRC member, informed plaintiff that her request for appeal had been reviewed, and that the decision was to uphold the denial of her STD benefits claim. (AR-000208.) Ms. Lasser stated that, among other things, an independent physician advisor who specialized in orthopedic surgery had reviewed the information contained in plaintiff's file and submitted during her appeal, including medical documentation from Dr. Harrell for the period of October 28, 2004 through November 9, 2004. (Ibid.)

The independent physician advisor Dr. William Abraham concluded that the objective findings did not demonstrate that plaintiff was unable to perform her job duties as a Staff Associate:

> There are no objective findings of neurologic deficit to support Ms. Glover's inability to perform the job duties of a staff associate. Ms. Glover continues to have symptoms of pain and decreased range of motion related to cervical spondylosis. There is no information in the documentation provided for review that would disable Ms. Glover from performing sedentary duties of a staff associate.

(AR-000215.)

In her letter to plaintiff, Ms. Lasser informed plaintiff that the medical information provided "did not contain sufficient clinical findings to substantiate a disabling condition" or

6

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

that were "so severe as to prevent [plaintiff] from performing the job duties of Staff Associate with or without reasonable accommodation." (AR-000208-09.) In that regard, Lasser noted that the documentation did not provide evidence of a neurological deficit, disuse muscle atrophy or a clear loss of function, and that the diagnostic reports did not show any discreet neural impingement. (Ibid.) Lasser further informed plaintiff that the decision was final. (AR-000209.)

On or about January 24, 2005, Teresa Renaker sent a letter to ERISA Specialist Doreen Ongajo stating that her law firm had been retained to represent plaintiff and requested that no further action be taken on Ms. Glover's appeal until her law firm had "supplemented" plaintiff's appeal with additional medical information. (AR-000201-02.)

On or about January 26, 2005, Cam Reinhart, Manager of QRU and a member of the CRC, informed plaintiff's counsel that plaintiff was not eligible for reconsideration of her disability benefits claim under the Plan, and that the decision upholding the denial of plaintiff's claim was final. (AR-000194.)

Notwithstanding, on or about May 20, 2005, four months after plaintiff's appeal had been denied, plaintiff's counsel proceeded to "supplement" plaintiff's request for review of the denial of her STD claim with a 16-page letter brief and additional medical information. (See AR-000150-165.) Plaintiff argued that she was unable to work because the medical evidence allegedly demonstrated that plaintiff had a "rare vocal disorder" and had "chronic pain stemming from her wrist ganglion cyst and cervical radiculopathy." (AR-000151.)

On August 18, 2005, Mr. Reinhart notified plaintiff's counsel that, notwithstanding the finality of the prior appeal decision under the Plan, plaintiff's appeal would be reopened and the supplemental medical information submitted by her on May 20, 2005 would be reviewed. (AR-000192.) Mr. Reinhart further noted that the appeal would be reopened notwithstanding that plaintiff had earlier advised an Appeals Specialist on January 12, 2005 that the file on plaintiff's appeal was "complete," and that no further information would be forthcoming. (Ibid.)

On or about September 21, 2005, Ms. Lasser informed plaintiff's counsel that a further review of material and information submitted on the denial of plaintiff's STD benefits claim had

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

been conducted and that a decision had been made to uphold the denial of benefits[3]. (AR-000047.) The medical information considered in reaching that decision included plaintiff's medical documentation for the period of September 7, 1990 through November 4, 2004 from Kaiser Permanente outpatient speech pathology services, Robert Leiberson, M.D., Robert Wagner, M.D., Jill Harrell, M.D., John Warbritton III, M.D., K. Izedebski, Ph.D., and Summit Medical Centers. Also considered were reports from three independent medical advisors specializing in orthopedic surgery (Jeffrey Been, M.D.), speech pathology (Scott Dailey, M.A., CCC-SLP), and neurology (Joseph Jares III, M.D.) who reviewed the subject medical documentation. (AR-000047, AR-000057, AR-000061, AR-000066.]

As in her January 19, 2005 letter, Ms. Lasser stated in her September 21, 2005 letter that the medical information submitted "did not contain sufficient clinical findings to substantiate a disabling condition," and that none of the findings were documented to be "so severe as to prevent Ms. Glover from performing the job duties of Staff Associate with or without reasonable accommodations from November 3, 2004 to her return to work." (AR-000047, 0000049.) Ms. Lasser further concluded that, according to the independent physician advisors, the documentation did not show a loss of functionality of the upper extremities with regard to strength, that there was no clear radiculopathy pattern consistent with MRI or EMG findings, that it was unclear why plaintiff could no longer work four-hour work days, that there was no documentation of dystonia from a physician or speech pathologist other than from the year 1990, and that there was insufficient evidence of cervical myelopathy. (AR-000048-49.)

In his September 15, 2005 advisory report, independent orthopedic surgeon Dr. Been stated in part:

> From an orthopedic perspective, Ms. Glover has no documented loss of functionality of the upper extremities with regards to strength. There is no clear radiculopathic pattern that is consistent with the MRI or EMG findings as well.
>
> * * *
>
> It is unclear from the information provided why Ms. Glover was able to stand [sic] four-hour workday for five months prior to pain deemed temporary and totally

---

[3] This letter was subsequently amended to change a date reference from "October 28, 2005" to "October 28, 2004." (See AR-000044-45.)

8

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

> disabled. There is no significant change in her functional status from physical exam standpoint.
>
> * * *
>
> Four-hour workday is substantiated based upon the functional limitations of her cervical range of motion or MRI findings or failure to respond to conservative treatment and her subjective complaints of neck pain requiring the use of medication.

(AR-000056-57.)

In independent speech pathologist Scott Dailey's September 15, 2005 advisory report, he concluded that plaintiff was not disabled with regard to her speech and that there was insufficient documentation to support a diagnosis of dystonia:

> Ms. Glover was not disabled from a speech language pathology perspective regarding her speech and voice. Although, specific notes were made that she has received disability for her dystonia from the social security benefits [sic]. We have no documentation of the evaluation for dystonia in 1999 and the voice therapy following in 2000.
>
> * * *
>
> No further documentation is provided in the file regarding continued therapy, differential diagnosis of dysphonia in 1999, or voice therapy that she was undergoing in 2000. Without the supporting documentation from the health care professionals who diagnosed Ms. Glover with dystonia and treated her with voice therapy in 1999 and 2000, there are no clinical findings to support this diagnosis.

(AR-000060-61.)

In independent neurologist Dr. Jares' September 15, 2005 advisory report, he stated in part that, although plaintiff's MRI showed a herniated disc, there was insufficient evidence of cervical myelopathy and plaintiff could still perform transitional work of four-hour days:

> ...Ms. Glover's abnormal MRI study showed progressive cervical disc herniation at C5-C6 with cord compression. There was insufficient evidence of cervical myelopathy.
>
> * * *
>
> The clinical findings support transitional work of four-hour days.

(AR-000065-66.)

Ms. Lasser further noted in her September 21, 2005 letter that, "[a]ccording to our records, four hour work days were consistently available to your client." (AR-000049.)

9

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

## IV. JUDICIAL PROCEDURAL HISTORY

Plaintiff filed a civil lawsuit in state court for breach of contract on or about April 4, 2007. Defendant removed the action to federal court based on ERISA preemption. Thereafter, plaintiff filed a motion for remand and defendant filed a motion to dismiss based on lack of jurisdiction over the entity sued by plaintiff. Plaintiff's motion for remand was denied and defendant's motion to dismiss was granted with leave to amend. Plaintiff's Third Amended Complaint was filed on August 24, 2007.

## V. ARGUMENT

### A. Standard of Review

A denial of benefits challenged under ERISA is subject to an "abuse of discretion" standard if the administrator or fiduciary is given the discretionary authority under the applicable ERISA plan *to determine eligibility for benefits or to construe the terms of the plan*. (Firestone Tire & Rubber Co. v. Bruch (1989) 489 U.S. 101, 115; Abatie v. Alta Health & Life Ins. Co. (9th Cir. 2006) 458 F.3d 955, 963.) If no such discretion is conferred, the denial of benefits is reviewed *de novo*. (Firestone, supra, 489 U.S. at 115; Abatie, supra, 458 F.3d at 963.)

Although the plan must unambiguously confer discretion to the administrator, no specific language or "magic words" is required. (Abatie, supra, 458 F.3d at 963.) Thus, in Abatie, supra, the Ninth Circuit stated:

> [W]e have repeatedly held that similar plan wording-granting the power to interpret plan terms and to make final benefits determinations-confers discretion on the plan administrator. [Citations.]

(Ibid.)

The "abuse of discretion" standard is a highly deferential standard of review, under which an administrator's decision can only be set aside if it is "arbitrary and capricious." (Jordan v. Northrop Grumman Corp. Welfare Benefit Plan (9th Cir. 2004) 370 F.3d 869, 875; Dowling v. Metropolitan Life Ins. Co. (M.D.Fla. 2004) 355 F.Supp.2d 1311, 1315.) Consequently, if such decision can be grounded on *any reasonable basis*, it is not arbitrary and capricious. (Jordan, supra, 370 F.3d at 875; Dowling, supra, 355 F.Supp.2d at 1315.) The court does not substitute its

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

judgment for that of the administrator. Thus, the administrator's findings are not subject to reversal unless they are "clearly erroneous." (Jordan, supra, 370 F.3d at 975.)

In Jordan, supra, the court applied an abuse of discretion standard in affirming the trial court's grant of summary judgment in favor of the Plan as to the plan administrator's denial of the plaintiff employee's disability benefits claim. (Id. at 875, 879, 882.) The court described the abuse of discretion standard as follows:

> When we review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so we cannot substitute our judgment for the administrator's. We can set aside the administrator's discretionary determination only when it is arbitrary and capricious. We have held that a decision grounded on any reasonable basis is not arbitrary and capricious, and that in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be "clearly erroneous."

(Id. at 875 (emphasis added).)

Since the reviewing court does not substitute its judgment for that of the administrator under such a deferential standard, it may not make value judgments as to which evidence may be more persuasive. All that is required is that there be a reasonable basis in the record for the administrator's decision. (Ibid.)

ERISA does not require plan administrators to give any special deference to opinions of a claimant's treating physicians. (Black & Decker Disability Plan v. Nord (2003) 538 U.S. 822, 829-30; Jordan, supra, 370 F.3d at 878.) Nor is a plan administrator required to rely on a "mere tally of experts;" his decision may be based on even a "single persuasive medical opinion." (Boyd v. Bell (9th Cir. 2005) 410 F.3d 1173, 1179; Safavi v. SBC Disability Income Plan (C.D.Cal. 2007) 493 F.Supp.2d 1107, 1121.)

Additionally, the court's review is generally limited to the record before the administrator at the time of the denial of benefits. (See Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income (9th Cir. 2003) 349 F.3d 1098, 1110; Bendixen v. Standard Ins. Co. (9th Cir. 1999) 185 F.3d 939, 944.) Nonetheless, under one exception, evidence outside the administrative record may be introduced to show the absence of, or attenuated nature of, a third-party administrator's alleged conflict of interest. (See Abatie, supra, 458 F.3d at 969-70; Safavi, supra, 493 F.Supp.2d at 1117-18.) Evidence admitted under such an exception, however, does not change the

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

standard of review, which remains an "abuse of discretion" standard. An alleged conflict is simply weighed as a "factor" in determining whether there has been an abuse of discretion. (Abatie, supra, 458 F.3d at 965.)

Under the abuse of discretion standard, the administrator's decision should be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." (Estate of Shockley v. Alyeska Pipeline Service Co., 130 F.3d 403, 405 (9th Cir. 1997) (quoting MacDonald v. Pan American World Airways, Inc., 859 F.2d 742, 744 (9th Cir. 1988)).) A court will find an abuse of discretion when a plan administrator reaches a decision without any explanation, construes plan provisions in a way that conflicts with the plain language of the plan, or renders a decision based upon clearly erroneous findings of fact. (Taft v. Equitable Life Assur. Soc., 9 F3d 1469, 1472 (9th Cir. 1993) ("ERISA plan administrators abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of the plan.").)

An administrator's finding is not clearly erroneous just because it is contrary to evidence in the record. *Id.* at 1473. Rather, to find clear error, a court must possess a "definite and firm conviction that a mistake has been committed." (Concrete Pipe & Products of Cal. In. v. Construction Laborers Pension Trust for Southern Cal., 508 U.S. 602, 623 (1993).) The Court's review of the record will of course take into account apparent conflicts of interest and irregularities, but is otherwise deferential.

The abuse of discretion standard is applicable to this case. The Plan conferred discretionary authority upon the CRC to interpret the Plan's terms and to make benefits determinations. Moreover, the record shows that there is no evidence of a conflict of interest on the part of the claim review fiduciary. The CRC is not financially associated with the Plan Administrator or any of its family of companies and is not the source of funds for the Plan.

**B. Substantial Evidence Existed In The Administrative Record To Support The Determination On Administrative Appeal That Plaintiff Did Not Have A Disabling Condition.**

In her September 21, 2005 letter to plaintiff, Ms. Lasser of the CRC notified plaintiff of the decision to deny benefits, and set forth the specific reasons that plaintiff's claim was denied.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

12

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

In that regard, she stated that the denial of plaintiff's claim was being upheld because, *inter alia*, the medical information it received "did not contain sufficient clinical findings to substantiate a disabling condition," because its records indicated that four-hour work days were consistently available to plaintiff, and because medical opinions by independent physician advisors supported the conclusion that plaintiff could work a transitional four-hour day and that her clinical findings were not so severe as to prevent her from performing her job duties as a Staff Associate.

Ms. Lasser provided plaintiff with detail regarding the independent physician advisors' conclusions and reasoning. Review of plaintiff's denial was reopened on August 18, 2005, after a "final" decision had been issued on January 19, 2005, in order to allow plaintiff the opportunity to present additional evidence in support of her request for review, notwithstanding that she had previously stated on January 12, 2005 that the file on her appeal was "complete."

In concluding that there were insufficient clinical findings to support plaintiff's claim that she was disabled from working, not only was medical information submitted by plaintiff and her doctors considered, but opinions and analyses of three independent medical specialists were considered: an orthopedic surgeon (Dr. Jeffrey Been), a speech pathologist (Scott Dailey, M.A., CCC-SLP), and a neurologist (Dr. Joseph Jares III).

Both Dr. Been and Dr. Jares separately concluded that plaintiff could work a four-hour work day[4]. In addition, Dr. Been had concluded that there were no functional limitations in plaintiff's cervical range of motion, that there was no documented loss of functionality of plaintiff's upper extremities as to her strength, that there was no clear pattern of radiculopathy, and that there appeared to be no change in plaintiff's functional status from the time that she was able to withstand working a four-hour day. Dr. Jares had also concluded that there was insufficient evidence of cervical myelopathy.

With regard to plaintiff's assertion that her inability to work was in part attributable to alleged dystonia, speech pathologist Dailey concluded that there were no clinical findings in the plaintiff's medical documentation to support a diagnosis of dystonia, because documentation to

[4] There was also evidence that a transitional four-hour workday was consistently available to plaintiff. [See, e.g., AR-000079.]

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

13

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)

support such findings was absent. Based on Dailey's analysis, it was reasonable to disregard plaintiff's unsupported allegations that dystonia caused her to be disabled. In any event, a medical diagnosis alone would not be sufficient to establish a disability. (Jordan, supra, 370 F.3d at 880; Safavi, supra, 493 F.Supp.2d at 1119.)

In light of the above, there is no genuine issue as to there being a reasonable basis for the denial of plaintiff's claim for STD benefits. Summary judgment is proper and the denial of benefits should be upheld.

## IV. CONCLUSION

For the reasons stated above, defendant AT&T Umbrella Benefit Plan No. 1 respectfully requests that its motion for summary judgment be granted and the denial of plaintiff's claim for STD benefits be upheld.

DATED: January 11, 2008

LAFAYETTE & KUMAGAI LLP

/S/ SUSAN T. KUMAGAI
SUSAN T. KUMAGAI
Attorneys for Defendant
AT&T UMBRELLA BENEFIT PLAN NO. 1

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served electronically on January __, 2008, on counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by use of the Court's ECF system.

/s/ SUSAN T. KUMAGAI

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

N:\Documents\ATT\Glov\Pldg\Mo For Summary Judgment\MPA doc

14

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF (Case No. C07-02652 CRB)