LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (State Bar No. 088666)
SUSAN T. KUMAGAI (State Bar No. 127667)
FORREST E. FANG (State Bar No. 122805)
100 Spear Street, Suite 600
San Francisco, California 94105
Telephone:  (415) 357-4600
Facsimile:  (415) 357-4605

Attorneys for Defendant
AT&T UMBRELLA BENEFIT PLAN NO. 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE GLOVER,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>Defendant. | Case No. C07-02652 CRB<br><br>DECLARATION OF NANCY WATTS IN SUPPORT OF DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT<br><br>[Fed. R. Civ. P. 56]<br><br>Date:  February 29, 2008<br>Time:  10:00 a.m.<br>Courtroom:  8<br>Judge:  Hon. Charles R. Breyer |

I, NANCY WATTS, hereby declare as follows:

1. Except where indicated, I have personal knowledge of the facts stated in this declaration and, if called upon, I could and would testify competently to them under oath.

2. I am currently employed by AT&T Services, Inc. in the position of Senior Benefits Analyst. My responsibilities include managing the administrators of ERISA-governed disability plans and providing subject matter expertise on those disability plans, including the Pacific Telesis Group Comprehensive Disability Benefits Plan ("Disability Plan" or "Plan"). My job responsibilities also include managing the relationship between the Plan Administrator and Plan Sponsor for the Disability Plan. I am familiar with the

1

1  Disability Plan and the structural relationships relating to the Plan.

2      3.    At all times relevant to Yvonne Glover's claim for short-term disability ("STD") benefits in 2004-2005, she was employed by Pacific Bell Telephone Company and was a participant in the Plan. A true and correct copy of that Plan, restated as of February 1, 1995, is attached hereto as Exhibit "A," and is incorporated herein by this reference. Such Plan was produced in this action as DEF000324-000351.

    4.    The Plan is an employee welfare benefit plan governed by the Employment Retirement Income Security Act of 1974, 29 USC §1001 *et seq.* ("ERISA"). The copy of the Plan that is attached hereto as Exhibit A does not include the amendments to the Plan. Although the Plan has been amended several times since February 1, 1995, none of the amendments are pertinent to Yvonne's Glover claim for STD benefits. Per the Plan's language, when the Plan was restated as of February 1, 1995, Pacific Telesis was the Plan Administrator of the Plan. Effective January 1, 2001, the Plan was merged into the SBC Umbrella Benefit Plan No. 1 ("Umbrella Plan") and SBC Communications Inc. became the Plan Administrator of the Plan. A true and correct copy of the Umbrella Plan is attached hereto as Exhibit "B," and is incorporated herein by this reference.

    5.    Per the Plan documents, Pacific Bell Telephone Company ("Pacific Bell") is not now, and has never been, the Plan Administrator of the Plan and has never had any responsibility for administering the Plan or determining eligibility for benefits.

    6.    I am informed and believe that: (1) prior to March 2006, Pacific Telesis Group ("PTG") was a Nevada corporation that owned 100% of the stock of Pacific Bell Telephone Company, a California corporation, and was a subsidiary of SBC Communications Inc., a Delaware corporation; (2) on or about March 14, 2006, PTG merged into SBC Teleholdings, Inc. and, simultaneously with the merger filing, SBC Teleholdings, Inc. changed its legal name to AT&T Teleholdings, Inc., resulting in Pacific Bell becoming a subsidiary of AT&T Teleholdings, Inc.; and (3) the name of the Umbrella Plan was changed from "SBC Umbrella Benefit Plan No. 1" to "AT&T Umbrella Benefit Plan No. 1" effective November 18, 2005.

2

DECLARATION OF NANCY WATTS IN SUPPORT OF DEFENDANT AT&T UMBRELLA
BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT

7.     Pursuant to the Plan documents, the General Employees Benefit Committee ("GEBC'), a committee appointed by the Board of Directors of Pacific Telesis Group to administer certain employee benefits Plans, has the responsibility to approve or deny claims for disability benefits under the Plan. Under the Plan, whenever the GEBC receives notification of a claim for STD benefits, it "shall determine whether to approve payment or to deny the claim." The Plan documents further provide that the GEBC shall have the power and discretion to establish general interpretations, rules, and procedures to guide and assist in approving or denying claims, and may appoint others to carry out its administrative duties.

8.     Sedgwick Claims Management Services, Inc. ("Sedgwick") is a third party claims administrator for the Disability Plan ("Claims Administrator"). Employees of Sedgwick, as members of the Employees' Benefit Claim Review Committee ("CRC") and GEBC, have full and complete discretion to make all benefits decisions under the Disability Plan. Neither Sedgwick nor the members of the CRC are financially associated with the Plan Administrator or any of its family of companies. The CRC fulfills its fiduciary responsibility to the Disability Plan without influence by the Plan Administrator or the Plan Sponsor. Sedgwick has no role in the Disability Plan's funding. Sedgwick receives a flat fee for its services, without regard to whether claims were approved or denied under the Disability Plan.

9.     Effective April 9, 2001, employees of Sedgwick holding the titles Operations Manager, Business Unit Manager, STD Case Manager and Medical Case Manager became members of the GEBC. A true and correct copy of the document reflecting this appointment is attached hereto as Exhibit "C," and is incorporated herein by this reference.

10.    As to appeals of denials, the Plan provides that a CRC appointed by the Plan Administrator shall be a named fiduciary of the Plan within the meaning of ERISA and shall have the responsibility to provide a full and fair review under Section 503(2) of ERISA when a Participant whose claim has been denied presents a written request for such review. According to Section 9.3, the CRC "shall decide the claim based upon the evidence which was considered by

3

the GEBC, the issues and comments submitted by the Participant, and such other evidence as the [CRC] may independently discover." The CRC may decide the claim on the basis of evidence submitted in writing and "is not required to conduct a hearing." Per Section 9.4, the CRC's decision is final, absent a court finding that the CRC abused its discretion. Effective April 9, 2001, Sedgwick employees holding the titles of Manager, SBC Quality Review Unit; ERISA Specialist; Appeals Specialist; and Clinical Appeals Specialist became members of the CRC.

11. The CRC appointed by the Plan Administrator is a named fiduciary of the Plan. To the extent that Sedgwick's claims administration responsibilities cause it to be deemed a fiduciary, Sedgwick has assumed these responsibilities in accordance with the applicable fiduciary provisions of ERISA.

12. Until March 1, 2006, the Sedgwick employees who worked on claims for disability benefits under the Plan worked in a unit of Sedgwick known as the SBC Medical Absence and Accommodation Resource Team ("SMAART"). Effective March 1, 2006, SMAART changed its name to the AT&T Integrated Disability Service Center ("IDSC").

13. Sedgwick, working with individuals comprising the GEBC and CRC, notifies the Plan when a Participant's claim for Short Term Disability Benefits has been approved and for what period of time the claim has been approved. The Plan then makes arrangements for payment of benefits to the Participant. Sedgwick has never been the source of the funds that are used to pay disability benefits under the Plan.

14. Under the Disability Plan, qualified employees may receive up to 52 weeks of full or partial wage replacement (based on seniority).

15. STD benefits are designed to help an employee achieve a certain percentage of their regular income based on their length of service to the Company until such time as they are able to return to work with or without accommodation.

16. Not all conditions qualify for STD benefits and the Disability Plan retains full and final authority to make all determinations regarding benefits eligibility.

17. If an employee disagrees with the Plan's decision regarding benefits, he/she can file an appeal under the methods and procedures provided in the Disability Plan.

4

18. At the conclusion of 52 weeks of STD benefits, qualified employees may seek long-term disability ("LTD") benefits if their condition prevents them from working in any occupation. A transition to LTD benefits automatically terminates the employment relationship.

19. Pursuant to the Plan, employees <u>cannot</u> become eligible for LTD benefits under the Disability Plan unless they <u>first</u> do <u>both</u> of the following: (1) exhaust a full 52 weeks of STD benefits; <u>and</u> (2) submit a valid claim for LTD benefits to the Disability Plan within 90 days after STD benefits were payable. (See, e.g., Plan Sections 1.1(b), 3.2, 5.1, and 10.2.)

20. I have reviewed records kept in the ordinary course of business concerning Glover's claim for disability benefits under the Disability Plan. Glover did not meet the above prerequisites to qualify for STD benefits.

21. Glover filed an appeal of her denial of STD benefits on or about January 7, 2005. The appeal was initially denied by the Disability Plan on or about January 19, 2005, and was denied for a second time by the Disability Plan, after it reopened the appeal at Glover's request to consider further medical information, on or about September 21, 2005.

22. All decisions regarding Glover's eligibility for benefits under the Disability Plan were made by appropriately designated representatives.

23. Benefits payable under the Plan are offset by other sources of income available to an employee during a period of disability, such as state disability insurance payments.

24. The relevant Summary Plan Description ("SPD") and a Summary of Material Modifications ("SMM") that describes updates to the claims and appeals process under the SPD, copies of which are attached hereto as Exhibit "D" (produced in this action as DEF000292-323), are incorporated herein by this reference. The Summary of Material Modifications is dated February 2002. I am informed and believe that a copy of the SMM was distributed to each active employee of Pacific Bell in or about February

1  2002. Since Glover was an active employee of Pacific Bell in February 2002, she would
2  have received a copy of the SMM at that time.
3      I have read the above and declare under penalty of perjury under the laws of the
4  State of California that the foregoing is true and correct.
5      Executed this 7th day of January, 2008 at San Antonio, Texas.

*/s/ Nancy Watts*
NANCY WATTS

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served electronically on January 11, 2008, on counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by use of the Court's ECF system.

/s/ SUSAN T. KUMAGAI

N:\Documents\ATT\Glov\Pldg\Mo For Summary Judgment\Watts Decl.doc

7

DECLARATION OF NANCY WATTS IN SUPPORT OF DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT