# EXHIBIT B

February 24, 2003

MS. JENNINGS:

This is to request your approval and adoption of the attached SBC Umbrella Plan No. 1 and SBC Umbrella Plan No. 2, effective January 1, 2001.

These Plans aggregate SBC's group welfare benefit plans into two plans based on whether the welfare benefit plan is funded (SBC Umbrella Plan No. 1) or unfunded (SBC Umbrella Plan No. 2). The umbrella plans are designed to simplify ERISA's reporting and disclosure requirements applicable to SBC's various group welfare benefit plans. The umbrella plans do not change the benefits provided under SBC's welfare benefit plans.

Summary Plan Descriptions for these plans have been distributed to eligible employees.

The SBC Legal Department has reviewed this letter and attached amendments. You have the authority to approve and adopt these plans pursuant to the SBC Schedule of Authorizations.

Please call me with any comments or questions on x3445.

Thomas R. Giltner,
General Attorney & Assistant General Counsel

Please sign below to indicate your approval of all of the above.

Adopted and Authorized:

Senior Executive Vice President – Human Resources        2-24-03
SBC Communications Inc.                                                        Date

**Exhibit B**

**SBC UMBRELLA BENEFIT PLAN NO. 1**

Effective January 1, 2001

As amended through April 10, 2003

## TABLE OF CONTENTS

ARTICLE 1: INTRODUCTION AND OVERVIEW ..................................................................... 1
ARTICLE 2: DEFINITIONS ........................................................................................................ 2
2.1   Beneficiary ........................................................................................................................ 2
2.2   Claims Administrator ........................................................................................................ 2
2.3   COBRA .............................................................................................................................. 2
2.4   COBRA Eligible Program ................................................................................................ 2
2.5   Code ................................................................................................................................... 2
2.6   Company ............................................................................................................................ 2
2.7   Dependent .......................................................................................................................... 2
2.8   Employee ........................................................................................................................... 2
2.9   Employer ............................................................................................................................ 2
2.10  ERISA ................................................................................................................................ 3
2.11  Fiduciary ............................................................................................................................ 3
2.12  Former Employee .............................................................................................................. 3
2.13  Group Health Plan ............................................................................................................. 3
2.14  HIPAA ............................................................................................................................... 3
2.15  Leave of Absence .............................................................................................................. 3
2.16  Participant .......................................................................................................................... 3
2.17  Participant Contribution .................................................................................................... 3
2.18  Participating Company ...................................................................................................... 3
2.19  Plan .................................................................................................................................... 3
2.20  Plan Administrator ............................................................................................................ 3
2.21  Plan Sponsor ...................................................................................................................... 4
2.22  Plan Year ........................................................................................................................... 4
2.23  Program .............................................................................................................................. 4
2.24  Protected Health Information ............................................................................................ 4
2.25  Qualified Dependent .......................................................................................................... 4
2.26  Qualifying Event ............................................................................................................... 4
ARTICLE 3: ELIGIBILITY AND PARTICIPATION .............................................................. 5
3.1   Eligibility ........................................................................................................................... 5
3.2   Enrollment .......................................................................................................................... 5
3.3   Termination of Participation .............................................................................................. 5
3.4   Rehired Employees ............................................................................................................ 5
3.5   Alternative Managed Care Products .................................................................................. 5
ARTICLE 4: FUNDING AND BENEFITS ................................................................................ 7
4.1   Funding .............................................................................................................................. 7
4.2   Participant Contributions ................................................................................................... 7
4.3   Funding Information ........................................................................................................... 7
4.4   Disqualification, Ineligibility, Denial, Loss or  Forfeiture .............................................. 8
4.5   Funding .............................................................................................................................. 8
4.6   Insurance ............................................................................................................................ 8
4.7   Benefits .............................................................................................................................. 8
ARTICLE 5: ADMINISTRATION AND FIDUCIARY PROVISIONS .................................... 9
5.1   Plan Administrator ............................................................................................................. 9

5.2   Changes by the Plan Administrator ........................................................... 9
5.3   Fiduciaries ................................................................................................. 9
5.4   Insurance Company and/or Health Maintenance Organization ............... 10
5.5   Examination of Records ........................................................................... 10
     _Toc43612947
ARTICLE 6: CLAIMS AND SUBROGATION ....................................................... 16
6.1   Claims ...................................................................................................... 16
6.2   Claims Procedure .................................................................................... 16
6.3   Unclaimed Benefits .................................................................................. 16
6.4   Right of Subrogation ................................................................................ 16
6.5   Coordination of Benefits .......................................................................... 17
ARTICLE 7: AMENDMENT AND TERMINATION ............................................... 19
7.1   Amendment .............................................................................................. 19
7.2   Termination .............................................................................................. 19
7.3   Effect on Other Benefits .......................................................................... 19
ARTICLE 8: MISCELLANEOUS .......................................................................... 20
8.1   Plan Interpretation ................................................................................... 20
8.2   Exclusive Benefit ..................................................................................... 20
8.3   Non-Alienation of Benefits ....................................................................... 20
8.4   Limitation of Rights .................................................................................. 20
8.5   Governing Laws ....................................................................................... 20
8.6   Severability .............................................................................................. 20
8.7   Captions ................................................................................................... 20
8.8   Construction ............................................................................................. 21
8.9   Expenses ................................................................................................. 21
8.10  Newborns' and Mothers' Health Protection Act of 1996 .......................... 21
8.11  Women's Health and Cancer Rights Act of 1988 .................................... 21
8.12  Mental Health Parity Act of 1996 ............................................................ 21
8.13  Continuation Coverage Under COBRA .................................................... 21
8.14  Continuation Coverage During Family or Medical Leave ......................... 25
8.15  Rights While on Military Leave ................................................................. 25
8.16  HIPAA Certification .................................................................................. 26
8.17  Qualified Medical Child Support Orders .................................................. 26
8.18  Right of Recovery .................................................................................... 27
ARTICLE 9: PARTICIPATING COMPANIES ...................................................... 28
9.1   Adoption of Plan ...................................................................................... 28
9.2   Administration .......................................................................................... 28
9.3   Termination of Participation ..................................................................... 28

**APPENDIX A – PROGRAMS**

**APPENDIX B – PARTICIPATING COMPANIES**

ARTICLE 1   INTRODUCTION AND OVERVIEW

The SBC Umbrella Benefit Plan No. 1 (the "Plan") is a comprehensive welfare benefit plan that was adopted effective January 1, 2001. The Plan combines certain funded group medical, supplemental group medical, dental, vision, prescription drug, life insurance, short-term and long-term disability and accidental death and dismemberment plans sponsored by an Employer (each a "Program") into one welfare benefit plan. The Programs that are combined to form the Plan are listed in Appendix A, attached hereto and incorporated herein for all purposes.

The purpose of the Plan is to provide Participants certain welfare benefits described herein. Notwithstanding the number and types of benefits incorporated hereunder, the Plan is, and shall be treated as, a single welfare benefit plan for purposes of reporting and disclosure under ERISA. The Plan is intended to meet all applicable requirements of the Internal Revenue Code and ERISA. Nothing in the Plan shall be construed as requiring compliance with Code or ERISA provisions that do not otherwise apply.

The Plan does not attempt to cover all Program details.   Specific details of the Programs are included in the official text for each Program, which regulate the operation of the Plan and each such Program.   The Plan text and the text of the applicable Program legally govern the operation of the Plan and Program and are the final authority on the terms of the Plan and such Program; provided, however, if there is a conflict between an insurance contract, if applicable, and either the Plan document or a Program document, the insurance contract will control.

1

ARTICLE 2   DEFINITIONS

2.1   Beneficiary means a beneficiary eligible to receive benefits of a Program pursuant to its provisions.

2.2   Claims Administrator means any third party administrator, insurance company, or other organization or individual to which the Company, an Employer or the plan administrator for a Program has delegated the duty to administer a Program or process and/or review claims for benefits under a Program.   If no separate Claims Administrator has been designated by the Company, an Employer or the plan administrator with respect to a Program, the plan administrator of the Program will be the Claims Administrator for such Program.

2.3   COBRA means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

2.4   COBRA Eligible Program means any Program that is or includes a group health plan within the meaning of COBRA.

2.5   Code means the Internal Revenue Code of 1986, as amended from time to time.   Any reference to any section of the Code shall be deemed to include any applicable regulations and rulings pertaining to such section and shall also be deemed a reference to comparable provisions of future laws.

2.6   Company means SBC Communications Inc., or any successor or successors thereof.

2.7   Dependent means a dependent eligible to participate in a Program pursuant to its provisions.

2.8   Employee shall mean any individual who is a common law employee of an Employer, is paid on the U.S. dollar payroll of an Employer, receives a regular and stated compensation, other than a pension or retainer, from an Employer and receives pay for services from an Employer.   An Employee does not include any individual who is rendering services to an Employer purportedly as (i) an independent contractor, or (ii) the employee of another company that is providing services an Employer, as determined in the reasonable discretion of the Plan Administrator.   An Employee shall also include an individual who is on a Leave of Absence, except a nonresident alien.

2.9   Employer means, collectively or individually as the context may indicate, the Company and any other organization which is a member of the same controlled group as the Company as determined pursuant to Code Sections 414(b), (c), (m) and (o).

2

2.10    ERISA means the Employee Retirement Income Security Act of 1974 as amended from time to time. Any reference to any section of ERISA shall be deemed to include any applicable regulations and rulings pertaining to such section and shall also be deemed a reference to comparable provisions of future laws.

2.11    Fiduciary means the Company, any Employer, the Plan Administrator, any trustee, any insurance company, and any individual, corporation, firm or other entity which assumes in accordance with ARTICLE 5 responsibilities with respect to the management of the Plan or any Program or the disposition of its benefits and assets. The Plan Administrator shall be the "named fiduciary" of the Plan, as defined in section 402(a)(2) of ERISA, unless the Company appoints a replacement.

2.12    Former Employee means any person formerly employed as an Employee.

2.13    Group Health Plan means any Program providing medical, dental, vision, or prescription drug benefits.

2.14    HIPAA shall mean the Health Insurance Portability and Accountability Act as amended from time to time.

2.15    Leave of Absence means a personal leave, medical leave, military leave, or any other leave of absence permitted by an Employer, as approved by the Employer.

2.16    Participant means any individual who satisfies the eligibility requirements of Section 3.1.

2.17    Participant Contribution means the pre-tax or after-tax contribution required to be paid by a Participant, if any, as determined under each Program. The term "Participant Contribution" includes contributions used for the provision of benefits under a self-insured arrangement of the Company or an Employer as well as contributions used to purchase insurance contracts or policies.

2.18    Participating Company means any Employer who adopts this Plan or any Program for the benefit of its eligible employees (or their Beneficiaries) with the approval of the Company and in accordance with ARTICLE 9 of the Plan. A list of Participating Companies is included in Appendix B, attached hereto and incorporated herein for all purposes.

2.19    Plan means the SBC Umbrella Benefit Plan No. 1 as set forth herein, as amended from time to time.

2.20    Plan Administrator means the Company unless another entity or person is appointed by the Company to administer the Plan pursuant to Section 5.1.

3

2.21    Plan Sponsor with respect to the Plan shall mean the Company, and Plan Sponsor with respect to a Program under the Plan shall mean the entity listed in the text or the summary plan description (or summary of material modifications) for such Program.

2.22    Plan Year means the 12-month period commencing January 1 and ending December 31.

2.23    Program means the written arrangements identified in Appendix A, which is attached hereto and incorporated herein for all purposes.

2.24    Protected Health Information means health information maintained in any medium and collected from an individual that is created or received by a health care provider, health plan, employer, or health care clearinghouse and that relates to past, present, or future physical or mental health or condition of the individual, to the provision of health care to an individual, or to the past, present, or future payment for the provision of health care provided to an individual and that identifies an individual or with respect to which there is a reasonable basis to believe the information could be used to identify an individual.

2.25    Qualified Dependent means a Dependent who loses coverage under a COBRA Eligible Program due to a Qualifying Event.

2.26    Qualifying Event means any of the following events that, but for COBRA continuation coverage, would result in a Participant's or eligible Dependent's loss of coverage under a COBRA Eligible Program:

   2.26.1 death of a covered Employee;

   2.26.2 termination (other than by reason of such Employee's gross misconduct) of an Employee's employment;

   2.26.3 reduction in hours of an Employee;

   2.26.4 divorce or legal separation of an Employee or dissolution of an Employee's registered domestic partnership;

   2.26.5 an Employee's entitlement to Medicare benefits; or

   2.26.6 a Dependent child ceasing to qualify as a Dependent under a Program.

4

ARTICLE 3    ELIGIBILITY AND PARTICIPATION

3.1    Eligibility.  An Employee or Former Employee and their Beneficiary and/or Dependent shall be eligible to participate in the Plan only if and to the extent the Employee, Former Employee, Dependent or Beneficiary (each a "Participant") is eligible to participate in a Program.  The eligibility requirements for each Program shall be as provided in the written arrangements for such Program.  A Participant may not be eligible to participate in all Programs under the Plan.  If you are a new Employee, you may begin participation in the Plan after you meet the eligibility requirements of any Program.

3.2    Enrollment.  The plan administrator for each Program shall establish procedures in accordance with the Program for the enrollment of Participants thereunder.  Typically, the Company or an Employer will have an annual enrollment period prior to the beginning of each Plan Year. Participants may be required, during annual enrollment each Plan Year, to decide whether to enroll or not to enroll or re-enroll with respect to any of the Programs in which they are eligible to participate.

3.3    Termination of Participation.  A Participant will cease being a Participant in the Plan and coverage under this Plan for the Participant shall terminate upon such Participant's termination of participation in all Programs. Termination of participation in each Program shall occur as provided in the written arrangements for such Program. Circumstances that may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits available under the Plan will be determined under each Program and are described in the written text for such Program.  In addition to the foregoing, the coverage of a Participant under this Plan or a Program will terminate upon the effective date of withdrawal from the Plan or such Program by the Participating Company (or organizational unit thereof), respectively, through which such Participant participated in the Plan or Program.

3.4    Rehired Employees.  A former Participant will become a Participant again in the Plan if and when the eligibility requirements of Section 3.1 are met.

3.5    Alternative Managed Care Products.  Some Group Health Plans provide the option to enroll in an alternative managed care product ("Managed Care Option") including:  a health maintenance organization ("HMO"), a medicare HMO ("MHMO") or a preferred provider organization ("PPO"). Availability of a Managed Care Option is determined by a Participant's home zip code and medicare-eligibility.

    3.5.1    Participants eligible to enroll in a Group Health Plan are generally eligible to enroll in any Managed Care Option available under that Group Health Plan, except as provided in the Group Health Plan

5

and except as provided in the documents governing the Managed Care Option.

3.5.2   Participants who elect a Managed Care Option are subject to the benefits, terms and limitations of the particular option and not the coverage generally provided through the applicable Group Health Plan, unless otherwise specified in such Group Health Plan.

6

ARTICLE 4   FUNDING AND BENEFITS

4.1    <u>Funding</u>.   The funding of the Plan with respect to each Program is governed by the funding provisions of such Program.

4.2    <u>Participant Contributions</u>.   Some benefits under the Programs are provided at no cost to Participants as provided in a Program.   Other benefits under the Programs require Participants to make contributions in order to receive benefits as provided in the Program.   The plan administrator of a Program may require that Participant Contributions as required pursuant to a Program, be made by payroll reduction or deduction from a pension distribution, if available.   Some of the Programs may require Participants to make additional payments in order to receive benefits thereunder (e.g., deductibles, coinsurance, premiums or co-payments).

4.3    <u>Funding Information</u>.   A detailed description of each of the following items is included in each Program to the extent they are applicable to the benefits offered under that Program:

4.3.1   A description of any cost-sharing provisions, including premiums, deductibles, coinsurance and co-payment amounts for which a Participant is responsible.

4.3.2   Any annual or lifetime caps or other limits on benefits under the applicable Program.

4.3.3   The extent to which preventative services are covered under the applicable Program.

4.3.4   Whether, and under what circumstances, existing and new drugs are covered under the applicable Program.

4.3.5   Whether, and under what circumstances, coverage is provided for medical tests, devices and procedures under a Program.

4.3.6   Procedures governing the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for non-network services under a Program.

4.3.7   Any conditions or limits on the selection of primary care providers or providers of specialty medical care under a Program.

4.3.8   Any conditions or limits applicable to obtaining emergency medical care under a Program.

4.3.9   Any provision requiring preauthorizations or utilization review as a

7

condition to obtaining a benefit or service under a Program.

4.4     <u>Disqualification, Ineligibility, Denial, Loss or Forfeiture</u>.     The circumstances that may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction or recovery (e.g., by the exercise of subrogation or reimbursement rights) of any benefits offered under the Plan that a Participant might otherwise reasonably expect the Plan to provide are described in each Program offered under the Plan with respect to benefits provided under that Program.

4.5     <u>Funding</u>.  The Programs are self-funded, insured, or partially self-funded and partially insured.  Nothing herein requires the Company, an Employer, the Plan Administrator, or the plan administrator of a Program to contribute to or under any Program, or to maintain any fund or segregate any amount for the benefit of any Participant, except to the extent specifically required under the terms of a Program.  No Participant shall have any right to, or interest in, the assets of the Company or any Employer.  Participant Contributions shall be treated as fixed premium obligations, and Participants will not be entitled to any reduction or refund of periodic Participant Contributions (including without limitation, applicable deductibles or co-payments) in the event that the claims experience of the Plan or any Program is more favorable than projected or the Plan or any Program receives any discount, refund, or rebate pursuant to an agreement with any medical provider or other organization.

4.6     <u>Insurance</u>.  The Company shall have no obligation, but shall have the right, to insure or reinsure, or to purchase stop loss coverage with respect to any benefits of a Program under this Plan.  To the extent the Company elects to purchase insurance with respect to any Program, any such Program benefits shall be the sole responsibility of the insurer, and the Company and the Employers shall have no responsibility for the payment of such benefits.     Except as otherwise permitted by ERISA, any Participant Contributions shall be remitted to the appropriate insurer, or be used to provide benefits or pay reasonable administration expenses, as soon as practicable, but not later than 90 days from the time such contributions are made and would otherwise have been paid to Participants in cash.

4.7     <u>Benefits</u>.  Benefits will be paid solely in the form and amount specified in the relevant Program and pursuant to the terms of such Program.

8

ARTICLE 5    ADMINISTRATION AND FIDUCIARY PROVISIONS

5.1    Plan Administrator.    The operation of the Plan shall be under the supervision of the Plan Administrator.  It shall be a principal duty of the Plan Administrator to see that the Plan is carried out in accordance with its terms, and for the exclusive benefit of Participants in the Plan.  The Plan Administrator shall have full power to administer the Plan in all of its details; subject, however, to the pertinent provisions of the Code and ERISA.  The plan administrator for each Program shall be the individual or entity identified in each respective Program.  The Company, as Plan Administrator, shall have the authority and power to delegate all or some of its responsibilities and powers as Plan Administrator to other individuals and/or entities.  Except as provided in a Program or except to the extent delegated under a Program, the Plan Administrator's powers, in addition to all other powers provided by this Plan, shall include, but shall not be limited to, the following authority:

5.1.1    to make and enforce such rules and regulations as the Plan Administrator deems necessary or proper for the efficient administration of the Plan;

5.1.2    to interpret the Plan, which interpretations thereof rendered in good faith shall be final and conclusive on all individuals claiming benefits under the Plan;

5.1.3    to decide all questions concerning the Plan and the eligibility of any individual to participate in the Plan and to receive benefits provided under the Plan; and

5.1.4    to appoint such agents, counsel, accountants, consultants, and actuaries as may be required to assist in administering the Plan.

5.2    Changes by the Plan Administrator.  If the Plan Administrator determines that the Plan may not satisfy the nondiscrimination (or other) requirements of applicable law, he may take such action as he deems appropriate, under rules uniformly applicable to similarly situated Participants, to assure compliance with such requirements.  Such actions may include, without limitation, a modification of coverages or elections in effect for Participants who are officers, shareholders, or highly compensated Employees, all without the consent or notification of affected Participants.

5.3    Fiduciaries.    Each Fiduciary who is allocated specific duties or responsibilities under this Plan, or any Fiduciary who assumes such a position with this Plan shall discharge his duties for the exclusive benefit of the Participants for the exclusive purpose of providing benefits to Participants or defraying reasonable expenses of administering the Plan.  Each Fiduciary, in carrying out such duties and responsibilities, shall act

9

with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in exercising such authority or duties.

A Fiduciary may serve in more than one Fiduciary capacity and may employ one or more persons to render advice with regard to his Fiduciary responsibilities.  Regardless of whether the Fiduciary is serving with or without compensation, all expenses reasonably incurred on behalf of the Plan by such Fiduciary shall be reimbursed by the Plan or an Employer.

A Fiduciary may delegate any of his responsibilities for the operation and administration of each Program to an appropriate party.

5.4     Insurance Company and/or Health Maintenance Organization.     Any insurance company and/or health maintenance organization, in accordance with any contract, shall have exclusive authority and discretion to manage and control any funds held by it under the terms of any contract.

5.5     Examination of Records.  The Plan Administrator shall make available to each Participant such records as pertain to the Participant, for examination at reasonable times during normal business hours.

5.6     Privacy Provisions Relating to Protected Health Information.     Each Program under the Plan that is a Health Plan within the meaning of 45 CFR Section 160.103 and their respective Business Associates (collectively referred to in this Section 5.6 as a "HIPAA Plan") shall use and disclose PHI to the extent permitted by, and in accordance with, HIPAA.  Specifically, each HIPAA Plan will use and disclose PHI for Treatment, Payment and Health Care Operations.

  5.6.1   Definitions.  For purposes of this Section 5.6, the following defined terms shall have the meaning assigned to such terms in this subsection:

  a.     "Business Associate" shall mean an outside entity or person that performs administrative or other functions on behalf of a Program under the HIPAA Plan;

  b.     "Health Care Operations" shall mean activities that involve, but are not limited to, quality assessment and improvement, the assessment of health care professionals, disease management, case management, legal services, benefits fraud and abuse investigations, and business planning and development (including cost-management and planning analyses).  Health Care Operations also include, but are not limited to, general Health Plan administrative functions such as management activities relating to compliance with

10

HIPAA's administrative simplification requirements, customer service involving the provision of data analysis for the Plan Sponsor of the HIPAA Plan and other entities whose employees or former employees participate in the HIPAA Plan, resolution of internal grievances and due diligence in connection with the sale or transfer of assets to a potential successor in interest if the potential successor is a covered entity, or will become a covered entity, under HIPAA;

c. "Payment" shall mean any activities performed that involve making coverage determinations and payment. These activities include, but are not limited to, billing, reviews for medical necessity, claims management, coordination of benefits, adjudication of Health Plan benefits claims (including appeals and other payment-related disputes), subrogation, plan reimbursement, investigations of potential fraud, determining employee contributions, reviews of appropriateness of care, preauthorizations and utilization reviews;

d. "Protected Health Information" or "PHI" shall mean individually identifiable information created or retained by the HIPAA Plan beginning on or after April 14, 2003 which pertains to a person's past, present or future physical or mental health, the health care the person is receiving or has received in the past and all past, present or future Payments for the person's health care;

e. "Treatment" means the provision, coordination or management of health care and related services by one or more health care providers. This category includes, but is not limited to, consultations and referrals between health care providers, the coordination or management of health care by a health care provider with a third party and the referral of a patient for health care from one health care provider to another.

5.6.2 <u>Disclosure of De-Identified or Summary Health Information</u>. The HIPAA Plan, or, with respect to the HIPAA Plan, a Health Plan insurer or HMO or DHMO, may disclose de-identified or summary health information to the Plan Sponsor of the HIPAA Plan (and its affiliates) if such entity requests the de-identified or summary health information for the purpose of:

11

a.  Obtaining premium bids from Health Plans for providing insurance coverage under the HIPAA Plan;

b.  Obtaining bids from companies for providing claims and other administrative services or other functions for the HIPAA Plan;

c.  Modifying, amending or terminating the group health benefits under the HIPAA Plan.

In addition, the HIPAA Plan, a Health Plan insurer or HMO/DHMO with respect to the HIPAA Plan may disclose to the Plan Sponsor of the HIPAA Plan (or its affiliates) information on whether an individual is participating in the group health benefits provided by the HIPAA Plan or is enrolled in, or has ceased enrollment with, an insured benefit or HMO/DHMO offered by the HIPAA Plan.

12

5.6.3  <u>The HIPAA Plan Will Use and Disclose PHI as Required by Law or as Permitted by the Authorization of the Participant or Beneficiary.</u> Upon submission of an authorization signed by a participant, beneficiary, subscriber or personal representative that meets HIPAA requirements, the HIPAA Plan will disclose PHI to a Company (or affiliate) sponsored pension plan, long term care plan, disability plan or other benefit plan sponsored by the Company (or an affiliate) with a need to access this PHI for purposes related to such benefit plan's administration. Authorizations will also be honored when provided to the HIPAA Plan with respect to job accommodation requests, Family Medical Leave Act requests, drug/substance abuse testing, fitness for duty exams and workers compensation claims.

In addition, PHI will be disclosed to the extent permitted or required by law, without the submission of an authorization form.

5.6.4  <u>Disclosure of PHI to the Plan Sponsor.</u>  The HIPAA Plan will disclose information to the Plan Sponsor only upon certification from the Plan Sponsor that the HIPAA Plan documents have been amended to incorporate the assurances provided below.

The Plan Sponsor agrees to:

a.  not use or further disclose PHI other than as permitted or required by the HIPAA Plan document or as required by law;

b.  ensure that any affiliates or agents, including a subcontractor, to whom the Plan Sponsor provides PHI received from the HIPAA Plan, agrees to the same restrictions and conditions that apply to the Plan Sponsor with respect to such PHI;

c.  not use or disclose PHI for employment-related actions and decisions unless authorized by the individual to whom the PHI relates;

d.  not use or disclose PHI in connection with any other benefits or employee benefit plan of the Plan Sponsor or its affiliates unless permitted by the HIPAA Plan or authorized by an individual to whom the PHI relates;

e.  report to the Plan any PHI use or disclosure that is inconsistent with the uses or disclosures provided for of which it becomes aware;

f.  make PHI available to an individual in accordance with HIPAA's access rules;

13

g. make PHI available for amendment and incorporate any amendments to PHI in accordance with HIPAA;

h. make available the information required to provide an accounting of disclosures;

i. make internal practices, books and records relating to the use and disclosure of PHI received from the HIPAA Plan available to the Secretary of the United States Department of Health and Human Services for purposes of determining the Plan's compliance with HIPAA; and

j. if feasible, return or destroy all PHI received from the HIPAA Plan that the Plan Sponsor still maintains in any form, and retain no copies of such PHI when no longer needed for the purpose for which disclosure was made (or if return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction infeasible.)

5.6.5  <u>Separation Between the Plan Sponsor and the HIPAA Plan</u>.  In accordance with HIPAA, only the following employees and Business Associate personnel shall be given access to PHI:

a. employees of the SBC Benefits organization responsible for administering group Health Plan benefits under the HIPAA Plan, including those employees whose functions in the regular course of business include Payment, Health Care Operations or other matters pertaining to the health care programs under a HIPAA Plan;

b. employees who supervise the work of the employees described in a, above;

c. support personnel, including other employees outside of the SBC Benefits organization whose duties require them to rule on Health Plan-related appeals or perform functions concerning the HIPAA Plan;

d. investigatory personnel to the limited extent that such PHI is necessary to conduct investigations of possible fraud;

e. outside and in-house legal counsel providing counsel to the HIPAA Plan;

f. consultants providing advice concerning the administration of the HIPAA Plan; and,

14

g.  the employees or agents of Business Associates charged with providing services to the HIPAA Plan.

The persons identified above shall have access to and use PHI to the extent that such access and use is necessary for the administration of group Health Plan benefits under a HIPAA Plan. If these persons do not comply with this Plan document, the Plan Sponsor shall provide a mechanism for resolving issues of noncompliance, including disciplinary sanctions.

ARTICLE 6   CLAIMS AND SUBROGATION

6.1   Claims.  A claim is a request for a Plan benefit.  Participants and their representatives have the right to file a written claim for benefits under the Plan pursuant to the procedures identified in the Program under which the benefit is claimed.

6.2   Claims Procedure.  The procedure for filing claims for benefits under a Program shall be administered as provided in each Program.  A claim for benefits under a Program shall be submitted to the party designated under the terms of such Program.  If a claim or request for benefits under a Program is denied in whole or in part, the claimant will be provided written notice of the denial from that Program's plan administrator, Claims Administrator or their designated representative(s), including the specific reasons for the denial.

The specific procedures for pre-authorizations, approval of benefits, or utilization review for benefits offered under a Program as well as the procedures for filing claim forms, providing notification of benefit determinations, reviewing any denied claims, applicable time limits, and remedies available for any claims for Program benefits that are denied in whole or in part are as stated in the written text of such Program.

The claims review procedures for each Program, including the timing for initial claim decisions, the process and timing for review upon appeal and a Participant's rights regarding a full and fair review of any denied claims for benefits under a Program, are provided in the written text for each such Program.

6.3   Unclaimed Benefits.  If any amount becomes payable hereunder to a Participant and the same shall not have been claimed or any check issued under the Plan remains uncashed for one year from the date the check is issued, the amount thereof shall be forfeited and shall cease to be a liability of the Plan; provided the Plan Administrator shall have exercised reasonable efforts in attempting to make such payments; provided, further, however, if an uncashed check is subsequently presented for payment after such forfeiture and it is established to the satisfaction of the Plan Administrator that the benefit for which the check was issued has not been paid, the liability for the unpaid amount shall be reestablished.

6.4   Right of Subrogation.  Except as otherwise specifically provided in a Program, the following subrogation provisions shall apply.  By filing a claim for payment of benefits under the Plan or by receiving benefits for which payment is made by the Plan, a Participant thereby assigns, transfers, and subrogates to the Plan and the Company all rights, claims and interest to the extent of the amount of benefits paid or owed by the Plan on the claim which the Participant has against any third party who may be liable for the amount of such benefits, and thereby authorizes the Plan and/or Company

16

to sue, compromise or settle with any such third party in the Participant's name or otherwise.

If a Participant makes a claim for benefits for which a third party may be responsible, the Plan may either (a) pay all benefits covered under the Plan and obtain reimbursement for such benefits upon settlement with or judgment against the responsible third party, or (b) delay payment and require the third party to pay such benefits upon such settlement or judgment. As a condition of receipt of benefits paid by the Plan, the Participant agrees to and must cooperate with the Plan and the Company for the purpose of exercising such rights, claims or interest to recover the amount paid.

Should a Participant make or file a claim, demand, lawsuit or other proceeding against a third party who may be liable for the amount of benefits covered or paid by the Plan, the Participant shall, as part of such claim, demand, lawsuit or other proceeding, and on behalf of the Plan, also seek payment or reimbursement for the amount of such benefits covered or paid by the Plan. As a condition to receipt of benefits under the Plan, a Participant agrees to and must notify the Plan Administrator prior to making or filing any such claim, demand, lawsuit or other proceeding. The Plan Administrator or the Company may, at that time or at any time, (a) instruct the Participant not to seek, or to discontinue seeking, payment or reimbursement on behalf of the Plan, and (b) pursue such payment or reimbursement independently in the same or in a separate lawsuit or other proceeding or may abandon such payment or reimbursement altogether, in its sole discretion. Any compromise or settlement entered into by a Participant purporting to reduce or limit the amount of the payment designated as reimbursement for medical or any other expenses covered under the Plan to an amount which is less than the benefits paid or covered by the Plan shall not be effective unless the Plan Administrator or the Company consents thereto in writing.

6.5     Coordination of Benefits with Other Plans.  If a Participant has coverage under this Plan as well as coverage from another source, benefits that are received through this Plan shall be coordinated with the benefits available under the plan containing the Participant's other source of benefits. The coordination of benefits provisions of a Program shall apply with respect to the benefits offered under such Program.

    6.5.1   Reduction of Benefits Payable by the Plan.  Whenever this Plan is considered as secondary to another plan, benefits will be payable by the primary plan to the extent that the expense is an incurred charge, and this Plan shall be liable for the remainder to the extent that the eligible expenses would be payable in total under this Plan.

17

6.5.2  <u>Recovery of Duplicate Payments</u>.  If duplicate payments have been made by the Plan, the Plan Administrator may take whatever action deemed necessary to recover the amount including reduction of future payments for subrogation claims.

## ARTICLE 7     AMENDMENT AND TERMINATION

7.1     <u>Amendment</u>.  The Company reserves the right to amend the Plan at any time, including the right to transfer any Program from the Plan into a separate, unrelated plan.  The right to amend a Program is as described in such Program.  In addition, the Plan Administrator or any other authorized representative of the Company may amend Appendix A to add or delete a Program from the Plan.  Except as provided herein, each amendment to the Plan or any Program will be made as permitted under the Company's Schedule of Authorizations.  Upon such action, the Plan will be deemed amended as of the date specified as the effective date by such action or in the instrument of amendment.  The effective date of any amendment may be before, on or after the date of such action.

7.2     <u>Termination</u>.  The Company expects to continue the Plan indefinitely, but continuance is not assumed as a contractual obligation and the Company reserves the right at any time, as provided in the SBC Schedule of Authorizations, to terminate the Plan, in whole or in part, at any time.  The right to terminate a Program is as described in such Program.  Benefits under any insurance or health maintenance organization contract, or other plan or Program document, shall be paid in accordance with the terms of such contract or document.

7.3     <u>Effect on Other Benefits</u>.  The right to amend or terminate the Plan and any Program includes the right to change, limit, curtail, or eliminate coverage or benefits for any treatment, procedure, or service (including with respect to Participants who are receiving benefits or Participants who are Former Employees), regardless of whether the coverage or benefits relate to an injury, defect, illness, or disease that was contracted or occurred before the effective date of amendment or termination.

19

ARTICLE 8  MISCELLANEOUS

8.1   Plan Interpretation.   The Plan Administrator has the authority and discretion to interpret the terms of the Plan, including the authority and discretion to resolve inconsistencies or ambiguities between the provisions of this document and the provisions of the Plan's Summary Plan Description, or any other document that forms a part of the Plan or governs the provision of Plan benefits.   However, the terms of this document may not enlarge the rights of a Participant to benefits available under any Program.

8.2   Exclusive Benefit.   This Plan has been established for the exclusive benefit of Participants, and, except as otherwise provided herein, all contributions under the Plan may be used only for such purpose or to pay reasonable expenses of the Plan.

8.3   Non-Alienation of Benefits.  No benefit, right or interest of any Participant under the Plan shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law, or as otherwise provided in a Program.

8.4   Limitation of Rights.   Neither the establishment nor the existence of the Plan, nor any modification thereof, shall operate or be construed so as to:

8.4.1  give any person any legal or equitable right against an Employer, except as expressly provided herein or required by law; or

8.4.2  create a contract of employment with any Employee, obligate an Employer to continue the service of any Employee, or affect or modify the terms of an Employee's employment in any way.

8.5   Governing Laws.   The Plan is governed by the Code and ERISA to the extent applicable.   To the extent not preempted by federal law, the provisions of this Plan shall be construed, enforced and administered according to the laws of Texas.   No Employer guarantees the favorable tax treatment sought by this Plan, or any of the Programs.

8.6   Severability.   If any provision of the Plan is held invalid or unenforceable, its invalidity or unenforceability shall not affect any other provision of the Plan, and the Plan shall be construed and enforced as if such invalid or unenforceable provision had not been included herein.

8.7   Captions.   The captions contained herein are inserted only as a matter of convenience and for reference, and in no way define, limit, enlarge or describe the scope or intent of the Plan nor in any way shall affect the Plan or the construction of any provision thereof.

20

8.8    Construction.  Whenever used in this Plan, the masculine gender shall include the feminine and the plural form shall include the singular.

8.9    Expenses.  The expenses of administering the Plan, including without limitation the expenses of the Plan Administrator or any Fiduciary properly incurred in the performance of its duties under the Plan, will be paid by the Plan or the Employers.

8.10   Newborns' and Mothers' Health Protection Act of 1996.  To the extent any applicable Program provides benefits for hospital lengths of stay in connection with childbirth, the Program will cover the minimum length of stay required for deliveries (i.e., a 48 hour hospital stay after a vaginal delivery or a 96 hour stay following a delivery by Cesarean section.)  The mother's or newborn's attending physician, after consulting with the mother, may discharge the mother or her newborn earlier than the minimum length of stay otherwise required by law.  Such coverage shall be subject to any applicable deductible or coinsurance amounts.

8.11   Women's Health and Cancer Rights Act of 1998.  To the extent any applicable Program provides benefits for mastectomies, it will provide, for an individual who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for reconstruction on the breast on which the mastectomy was performed, surgery and reconstruction on the other breast to give a symmetrical appearance, and prosthesis and coverage for physical complications of all stages of the mastectomy, including lymphedemas.  Such coverage shall be subject to any applicable deductible or coinsurance amounts.

8.12   Mental Health Parity Act of 1996.  To the extent any applicable Program provides mental health benefits other than treatment for substance or alcohol abuse, it will not place annual or lifetime maximums for such benefits that are lower than the annual and lifetime maximums for physical health benefits.  Such coverage shall be subject to any applicable deductibles and coinsurance, as well as any limits on the number of covered hospital days and/or outpatient visits.

8.13   Continuation of Coverage Under COBRA.  Participants shall have all COBRA continuation rights required by federal law and all conversion rights, if any, available under a COBRA Eligible Program.  COBRA continuation coverage shall be continued based upon the following circumstances:

8.13.1 COBRA Continuation Coverage for Terminated Participants.  A covered Participant may elect COBRA continuation coverage, at his own expense, if his participation under a COBRA Qualifying Program would terminate as a result of one of the following

21

Qualifying Events: an Employee's termination of employment or reduction of hours with an Employer.

8.13.2 <u>COBRA Continuation Coverage for Dependents</u>.  A Qualified Dependent may elect COBRA continuation coverage, at his own expense, if his participation under a COBRA Eligible Program would terminate as a result of a Qualifying Event.

8.13.3 <u>Period of Continuation Coverage for Covered Participants</u>.  A covered Participant who qualifies for COBRA continuation coverage as a result of an Employee's termination of employment or reduction in hours of employment described in Subsection 8.13.1, may elect COBRA continuation coverage for up to 18 months measured from the date of the Qualifying Event.

Coverage under this Subsection may not continue beyond the:

a. date on which the Participant's Employer ceases to maintain the COBRA Eligible Program for which COBRA was elected;

b. last day of the month for which premium payments have been made with respect to the COBRA Eligible Program for which the COBRA election was made, if the individual fails to make premium payments on time, in accordance with Subsection 8.13.5;

c. date the covered Participant becomes entitled to Medicare; or

d. date the covered Participant is no longer subject to a pre-existing condition exclusion under the Participant's other coverage or new employer plan for the type of coverage available under the COBRA Eligible Program for which the COBRA election was made.

8.13.4 <u>Period of COBRA Continuation Coverage for Dependents</u>.  If a Qualified Dependent elects COBRA continuation coverage under a COBRA Eligible Program as a result of the an Employee's termination of employment as described in Subsection 8.13.1, continuation coverage may be continued for up to 18 months measured from the date of the Qualifying Event.  COBRA continuation coverage for all other Qualifying Events may continue for up to 36 months.

Continuation coverage under this Subsection 8.13.4 with respect to a COBRA Eligible Program may not continue beyond the date:

a. on which premium payments have not been made, in accordance with Subsection 8.13.5 below;

22

b: the covered Dependent becomes entitled to Medicare;

c. on which an Employer ceases to maintain the COBRA Eligible Program pursuant to which the COBRA benefits are made available; or

d. the covered Dependent is no longer subject to a pre-existing condition exclusion under the Dependent's other coverage or new employer plan for the type of coverage available under the COBRA Eligible Program for which the COBRA election was made.

8.13.5 <u>Contribution Requirements for COBRA Continuation Coverage</u>. Covered Participants and Qualified Dependents who elect COBRA continuation coverage as a result of a Qualifying Event will be required to pay continuation coverage payments. Continuation coverage payments are the payments required for COBRA continuation coverage that is an amount equal to a reasonable estimate of the cost to the COBRA Eligible Program of providing coverage for all covered Participants at the time of the Qualifying Event plus a two percent administrative expense. In the case of a disabled individual who receives an additional 11-month extended coverage under COBRA, the Employer may assess up to 150 percent of the cost for this extended coverage period. Such cost shall be determined on an actuarial basis and take into account such factors as the Secretary of the Treasury may prescribe in regulations.

Covered Participants and Qualified Dependents must make the continuation coverage payment prior to the first day of the month in which such coverage will take effect. However, a covered Participant or Qualified Dependent has 45 days from the date of an affirmative election to pay the continuation coverage payment for the first month's payment and the cost for the period between the date medical coverage would otherwise have terminated due to the Qualifying Event and the date the covered Participant and/or Qualified Dependent actually elects COBRA continuation coverage.

The covered Participant and/or Qualified Dependent shall have a 30-day grace period to make the continuation coverage payments due thereafter. Continuation coverage payments must be postmarked on or before the completion of the 30-day grace period. If continuation coverage payments are not made on a timely basis, COBRA continuation coverage will terminate as of the last day of the month for which timely premiums were made. The 30-day grace period shall not apply to the 45-day period for the first month's payment of COBRA premiums as set out in the section above.

If payment is received that is significantly less than the required

23

continuation coverage payment, then continuation coverage will terminate as of the last day of the month for which premiums were paid. A payment is considered significantly less than the amount due if it is greater than the lesser of $50 or 10% of the required continuation coverage payment.  Upon receipt of a continuation coverage payment that is insignificantly less than the required amount, the Plan Administrator must notify the covered Participant or Qualified Dependent of the amount of the shortfall, and provide them with an additional 30 day grace period from the date of the notice for this payment only.

8.13.6 <u>Limitation on Participant's Rights to COBRA Continuation Coverage</u>

a.   If a Qualified Dependent loses, or will lose medical coverage under a COBRA Eligible Program as a result of divorce, legal separation, entitlement to Medicare, or ceasing to be a Dependent, such Qualified Dependent is responsible for notifying the Plan Administrator in writing within 60 days of the Qualifying Event.  Failure to make timely notification will terminate the Qualified Dependent's rights to COBRA continuation coverage under this Section.

b.   A Participant must complete and return the required enrollment materials within 60 days from the later of (A) the date of loss of coverage, or (B) the date the Plan Administrator sends notice of eligibility for COBRA continuation coverage.  Failure to enroll for COBRA continuation coverage during this 60-day period will terminate all rights to COBRA continuation coverage under this Section.  An affirmative election of COBRA continuation coverage by a covered Participant or his spouse shall be deemed to be an election for that covered Participant's Dependents who would otherwise lose coverage under the Plan.

8.13.7 <u>Subsequent Qualifying Event</u>.  If a second Qualifying Event occurs during an 18-month extension explained above, coverage may be continued for a maximum of 36 months from the date of the first Qualifying Event.  In the event the Dependent loses coverage due to a Qualifying Event and after such date the Participant becomes entitled to Medicare, the Dependent shall have available up to 36 months of coverage measured from the date of the Qualifying Event that causes the loss of coverage.  If the Participant was entitled to Medicare prior to the Qualifying Event, the Dependent shall have up to 36 months of coverage measured from the date of entitlement to Medicare.

24

8.13.8 <u>Extension of COBRA Continuation Period for Disabled Individuals</u>. The period of continuation shall be extended to 29 months in total (measured from the date of the Qualifying Event) in the event the individual is disabled as determined by the Social Security laws within 60 days of the Qualifying Event. The individual must provide evidence to the Plan Administrator of such Social Security determination prior to the earlier of 60 days after the date of the Social Security determination, or the expiration of the initial 18 months of COBRA continuation coverage. In such event, the Employer may charge the individual up to 150 percent of the COBRA cost of the coverage.

8.14    <u>Continuation of Coverage During Family or Medical Leave</u>. During any period during which a Participant is on a family or medical leave as defined in the Family or Medical Leave Act, any benefit elections in force for the Participant shall remain in effect. While the Participant is on paid leave, contributions shall continue. If the Participant is on an unpaid leave, the Participant may elect to prepay required contributions on a pre-tax basis before the commencement of such unpaid leave. Alternatively, the Participant may elect to make such payments on an after-tax basis monthly in accordance with an arrangement that the Plan Administrator shall provide. If coverage is not continued during the entire period of the family or medical leave because the Participant declines to pay the premium, the coverage must be reinstated upon reemployment with no exclusions or waiting periods. If the Participant does not return to work upon completion of the leave, the Participant must pay the full cost of any healthcare coverage that was continued on his behalf during the leave. These rules apply to the COBRA Eligible Programs.

8.15    <u>Rights While on Military Leave</u>. Pursuant to the provisions of the Uniformed Services Employment and Reemployment Rights Act of 1994, an Employee on military leave will be considered to be on a Leave of Absence and will be entitled during the leave to the health and welfare benefits that would be made available to other similarly situated Employees if they were on a Leave of Absence. This entitlement will end if the Employee provides written notice of intent not to return to work following the completion of the military leave. The Employee shall have the right to continue his coverage, including any Dependent coverage, for the lesser of the length of the leave or 18 months. If the military leave is for a period of 31 days or more, the Employee can be required to pay 102 percent of the total premium (determined in the same manner as a COBRA continuation coverage premium). If coverage is not continued during the entire period of the military leave because the Employee declines to pay the premium or the leave extends beyond 18 months, the coverage must be reinstated upon reemployment with no pre-existing condition exclusions (other than for service-related illnesses or injuries) or waiting periods (other than those applicable to all eligible Employees.) These rules apply to the COBRA

Eligible Programs.

8.16    HIPAA Certification.    Pursuant to the provisions of HIPAA, limits have been placed on preexisting condition exclusion periods. Under HIPAA, a Participant's period of coverage under a Program will offset the exclusion period of a new health care plan as long as the break in health care coverage is not over 63 days. If a Participant loses coverage under a Program, a certificate will be issued that provides written confirmation of his prior health care coverage. This certificate will be used to determine preexisting condition exclusion periods under another employer's health care plan. The certification will identify the persons covered under the Program, the period of coverage and the waiting periods. Certification is provided when: the Employee terminates employment, the Employee or his Dependent loses coverage, the Employee or his Dependent's COBRA coverage ends, the Employee requests certification up to 24 months after he terminates employment, or the Employee or his Dependent becomes eligible for coverage under another plan.

Employees, who cannot obtain a certificate, may demonstrate prior health care coverage if:

8.16.1 the Employee attests to the period of creditable coverage;

8.16.2 the Employee presents corroborating evidence of some creditable coverage for the period (such as pay stubs that reflect a deduction for health insurance, explanation of benefits forms (EOBs), or verification for health insurance by a doctor or former health care benefits provider that the individual had prior health coverage); and

8.16.3 the Employee cooperates in verifying the information provided.

An Employee may also demonstrate proof of dependent creditable coverage without a certificate if:

8.16.4 the Employee attests to such dependency and the period of such status as a dependent; and

8.16.5 the Employee cooperates with the verification of dependent status.

8.17    Qualified Medical Child Support Orders.    The Plan will comply with any Qualified Medical Child Support Order issued by a court of competent jurisdiction or administrative body that requires the Plan to provide medical coverage to a Dependent child of an Employee. The Plan Administrator will establish reasonable procedures for determining whether a court order or administrative decree requiring medical coverage for a Dependent child meets the requirements for a Qualified Medical Child Support Order. The Plan Administrator shall have the authority to enroll the Employee and

child if the Employee is not a current Participant at the time the Qualified Medical Child Support Order is received.  The cost of coverage or any additional cost of such coverage, if any, shall be borne by the Employee.

8.18    <u>Right of Recovery</u>.  If the Plan has made an erroneous or excess payment to any Participant, the Plan Administrator shall be entitled to recover such excess from the individual or entity to whom such payments were made. The recovery of such overpayment may be made by offsetting the amount of any other benefit or amount payable by the amount of the overpayment under the Plan.

27

ARTICLE 9   PARTICIPATING COMPANIES

9.1     Adoption of Plan.  Any Employer that is a participating company in any Program shall be a Participating Company in this Plan.  Also, any Employer, with the approval of the Company, may become a Participating Company in the Plan by adopting the Plan.  This Plan shall be construed as a single Plan for all Employers.  A list of all organizations that have adopted the Plan are identified in Appendix B.

9.2     Administration.  As a condition to adopting the Plan, and except as otherwise provided herein, each Participating Company shall be deemed to have authorized the Plan Administrator to act for it in all matters arising under or with respect to the Plan and shall comply with such other terms and conditions as may be imposed by the Plan Administrator.

9.3     Termination of Participation.  Any Participating Company included in the Plan may withdraw from the Plan at any time by giving notice in writing of such intention to withdraw to the Company and the Plan Administrator.

Upon the withdrawal of a Participating Company, no plan assets shall be used for or diverted to purposes other than for the benefit of Participants (including the payment of reasonable expenses of administering the Plan).

## APPENDIX A
## PROGRAMS

The following Programs shall be treated as comprising the Plan effective January 1, 2001:

Ameritech Life Insurance Program  #501
The Ameritech Sickness & Accident Disability Plan  #513
The Ameritech Corporation Vision Care Plan  #523
Ameritech Management Umbrella Welfare Benefit Plan HMO #544
Ameritech Non-management Umbrella Welfare Benefit Plan #545
The Ameritech Long Term Disability Plan  #514
Pacific Telesis Group Basic & Supplemental Death Benefit Plan  #501
Pacific Telesis Group Dental Expense Plan  #505
Pacific Telesis Group Medical Expense Plan for Retirees  #522
Pacific Telesis Group Vision Care Plan  #523
Pacific Telesis Group Health Care Network Plan  #538
Pacific Telesis Group Comprehensive Disability Benefits Plan  #543
SBC Medical & Group Life Insurance Plan  #501
SBC Dental Plan  #505
SBC Vision Plan  #523
SBC Disability Benefit Plan  #530
SBC Care Plus-A Supplemental Medical Plan #542
SBC Disability Income Plan #552
SBC International Health Plan  #567
SNET Retiree Life Insurance Plan  #552
SNET Employee Life Insurance Plan  #561
SNET Active Bargaining Unit Employee Health Plan  #564
SNET Disability Benefit Plan  #565
SNET Management Retiree Health Plan  #568
SNET Bargaining Unit Retiree Health Plan  #569

The following Program shall be added to the Plan effective January 1, 2003:

SBC National Medical Program

## APPENDIX B
## PARTICIPATING COMPANYIES

In addition to SBC Communications Inc., the following are the Participating Companies whose employees are eligible to participate in the SBC Umbrella Benefit Plan No. 1:

Ameritech Communications, Inc.
Ameritech Corporation
Ameritech Advanced Data Services of Illinois, Inc.
Ameritech Publishing, Inc.
Ameritech Interactive Media Services, Inc.
Ameritech St. Louis Paging Corp.
Ameritech Mobile Services, Inc.
SBC Global Services, Inc.
APIL Partners Partnership
Ameritech Services, Inc.
Ameritech Credit Corporation
Illinois Bell Telephone Company
Indiana Bell Telephone Company, Incorporated
Ameritech International, Inc.
Michigan Bell Telephone Company
Ameritech New Media, Inc.
The Ohio Bell Telephone Company
SBC DataComm, Inc.
Wisconsin Bell, Inc.
SBC Advanced Solutions, Inc.
SBC Management Services USA, Inc.
SBC Global Management Support, LLC
SBC International-Management Services, Inc.
SBC Management Services, L.P.
SBC Operations, Inc.
SBC Services, Inc.

SBC Telecom, Inc.
SBC Technology Resources, Inc.
Southwestern Bell Advertising, L.P.
Southwestern Bell Internet Services, Inc.
Southwestern Bell Messaging Services, Inc.
Southwestern Bell Telecommunications, Inc.
Southwestern Bell Video Services, Inc.
Southwestern Bell Yellow Pages, Inc.
Southwestern Bell Advertising Group, Inc.
Southwestern Bell Telephone Company
Southwestern Bell Communications Services, Inc.
Southwestern Bell Yellow Pages Services, Inc.
PBD Holdings d/b/a/ Digital Graphics Advantage
Pacific Telesis Group
Nevada Bell Telephone Company
Pacific Bell Telephone Company
Pacific Bell Directory
Pacific Bell Internet Services
Pacific Bell Information Services
Pacific Telesis Shared Services
SNET America, Inc.
SNET Diversified Group, Inc.
SNET Information Services, Inc.
The Woodbury Telephone Company
The Southern New England Telephone Company
The Southern New England Telecommunications Corporation