# EXHIBIT 1

PART 1-B

*"Plan"* shall mean this Pacific Telesis Group Comprehensive Disability Benefits Plan.

*"Plan Administrator"* shall mean Pacific Telesis Group.

*"Predecessor Plans"* shall mean the Pacific Telesis Group Sickness and Accident Disability Benefit Plan (including the Pacific Telesis Group Anticipated Disability Benefits Program), the Pacific Telesis Group Long Term Disability Plan for Salaried Employees, and the Pacific Telesis Group Long Term Disability Plan (for Nonsalaried Employees).

*"Qualified Vocational Rehabilitation Counselor"* shall mean a person designated by the Plan Administrator to develop and implement vocational rehabilitation plans, and to evaluate the employment options and wages available to a Participant who is or was entitled to Short Term Disability Benefits. The Plan Administrator shall designate as counselors only those persons whose professional experience and regular duties include the evaluation, counseling, or placement of persons with disabilities.

*"Represented Participant"* shall mean a Participant whose position on the last day of the fifty-two week period for which Short Term Disability Benefits are payable is a position of a "nonsalaried employee" (within the meaning of the Pacific Telesis Group Pension Plan) which is included in a collectively bargaining unit for which the Participating Company has recognized a collective bargaining representative as the exclusive representative for collective bargaining purposes.

*"Retiree Provisional Employee"* shall mean a person who previously retired from the employment of a Participating Company and who (a) is rehired as a nonsalaried employee by a Participating Company for a period of up to three years, (b) is receiving a service pension in the form of an annuity from the Pacific Telesis Group Pension Plan when rehired, (c) has been retired for at least six months before being rehired, and (d) signs a waiver of active participation under the Participating Company's employees benefit plans, including this Plan, in exchange for continued treatment as a retired employee under such plans. The foregoing notwithstanding, any Employee who is subject to a collective bargaining agreement shall not be treated as a Retiree Provisional Employee unless, and to the extent that, the agreement so provides. Further, the requirements listed above may be modified by a collective bargaining agreement with respect to individuals covered thereunder.

*"Review Committee"* shall mean the Employees' Benefit Claim Review Committee, as provided under Section 9.1 of this Plan.

*"Separate Claim"* shall mean a claim for Vocational Rehabilitation Benefits submitted by a Participant in writing as provided in Section 8.4.

*"Short Term Disability"* shall mean a sickness, injury, or other medical, psychiatric, or psychological condition, which prevents an Employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices.

*"Short Term Disability Benefits"* shall mean the Short Term Disability Benefits that are provided under Section 4 of this Plan.

*"Term of Employment"* shall mean the Employee's term of employment determined under the Pacific Telesis Group Pension Plan for Salaried Employees (if the Employees is a "salaried employee" as defined in that pension plan) or the Employee's term of employment determined under the Pacific Telesis Group Pension Plan (if the Employee is a "nonsalaried employee" as defined in that pension plan), and shall include any period included in such term of employment in accordance with the provision of an agreement for the interchange of benefit obligations with respect to either such pension plan.

27093

4

"*Transition Employee*" shall mean an Eligible Employee or former Eligible Employee who, on February 28, 1990, was receiving benefits under a Predecessor Plan.

"*Transition Period*" shall mean that period which begins on the Effective Date, and ends on the date when the Transition Employee ceases to receive sickness disability benefits or accident disability benefits under the terms of the Predecessor Plan, pursuant to Section 4.1.1 of this Plan.

"*Vocational Rehabilitation Benefits*" shall mean the benefits described in Section 6.2 of this Plan.

"*Vocational Rehabilitation Plan*" shall mean a vocational rehabilitation plan approved as provided in Section 6 of this Plan or a similar plan approved under section 139.5 of the California Labor Code.

"*Workers' Compensation Benefits*" shall mean all classes of benefits under the workers' compensation laws of any state, the District of Columbia, the United States government (e.g., benefits under the Longshore and Harbor Workers' Compensation Act) or any other jurisdiction in any country, that require payments to employees in connection with injuries arising out of or in the course of employment, to replace or supplement income or to compensate for diminished ability to compete in an open labor market, on a temporary or permanent basis, including but not limited to payments for temporary partial disability, temporary total disability, permanent partial disability, permanent total disability, vocational rehabilitation maintenance allowance and disability pensions, whether liability for such payment has been (i) determined by the court or administrative agency which determines liability for workers' compensation under the laws of such jurisdiction or (ii) accepted voluntarily by the Participating Company or the Participating Company workers' compensation administrator or insurer.

## Section 3. Participation

3.1     <u>Commencement of Participation</u>. Each Employee who was an Eligible Employee on March 1, 1990 became a Participant as of March 1, 1990. Each Eligible Employee who becomes actively employed by a Participating Company after March 1, 1990, shall become a Participant as of the first day of active employment with a Participating Company. Each former Eligible Employee who either is a Transition Employee on December 31, 1991 shall become a Participant in the Plan on December 31, 1991. If a Participant terminates employment with a Participating Company and is immediately employed or reemployed by another Participating Company, the Participant shall continue to be a Participant in the Plan.

3.2     <u>Continuation of Participation After Termination of Employment</u>. If a Participant ceases to be an Employee at the time when fifty-two weeks of Short Term Disability Benefits become exhausted, (whether by termination of employment with a Participating Company at that time or retirement from the service of a Participating Company at that time), then that Participant (though no longer an Employee) shall continue to be a Participant so long as (a)(i) Long Term Disability is present, and (ii) the period for which Long Term Disability Benefits are payable to the Participant has not expired; or (b)(i) steps to complete a Vocational Rehabilitation Plan remain to be implemented, and (ii) the maximum amount payable as Vocational Rehabilitation Benefits, with respect to the Participant, has not been exhausted. If a Participant who is receiving Short Term Disability Benefits resigns from employment in consideration for a payment of severance pay benefits under a severance pay plan maintained by a Participating company, then such Participant shall continue to be a Participant in this Plan, only if either (a) the terms of the severance pay plan expressly provide for continuing participation in this Plan or (b)(i) the provisions of the following sentence also apply and (ii) the Participant has not released benefits under this Plan. If a Participant receiving Short Term Disability Benefits retires under the provisions of the Pacific Telesis Group Pension Plan for Salaried Employees or the Pacific Telesis Group Pension Plan at a time when the Participant is entitled to commence receiving a service pension or a vested pension, the Participant shall continue to be a Participant until fifty-two weeks of Short Term Disability Benefits (adjusted as provided in Section 4.3.1 of the Plan) have been exhausted. At that time, participation shall cease and the individual shall not be

P00197

eligible for Long Term Disability Benefits, except in the case of a Participant who retired in 1990 under the Early Retirement Choice or Management Retirement Opportunity under the pension plans.

3.3    Continuation of Participation During or Following a Leave of Absence. A Participant who is granted a leave of absence, including a FMD Leave, will continue to be a Participant in the Plan during and following the leave of absence only if, and only to the extent that, the terms of the leave policy so provide.

3.4    Termination of Participation. Whenever a Participant ceases to be an Eligible Employee under any circumstance, other than those circumstances in which continuing participation is expressly provided in Sections 3.1, 3.2 and 3.3, that Participant shall at the same time cease to be a Participant in the Plan.

## Section 4. Short Term Disability Benefits

4.1    Commencement of Entitlement. A Participant becomes entitled to receive Short Term Disability Benefits on the eighth calendar day of a continuous period during which the Participant is absent from work because of Short Term Disability, except as provided below:

(a) If a Participant's period of absence began within two weeks following a return to work after a previous absence for which the Participant was entitled to Short Term Disability Benefits, the Participant shall become entitled to receive Short Term Disability Benefits on the first day of the subsequent absence from work.

(b) If a Participant's period of absence began before completing 26 weeks of continuous employment following a return to work after a FMD Leave for which the Participant was entitled to Long Term Disability Benefits, the Participant shall not be entitled to Short Term Disability Benefits. Instead, such Participant shall be entitled to resume Long Term Disability Benefits, as provided in Section 5.1.5.

4.1.1    Entitlement for Transition Employees. A Participant who was a Transition Employee on December 31, 1991 and who was then entitled to sickness or accident disability benefits under a Predecessor Plan shall to be entitled to continue such benefits under this Plan as of December 31, 1991, subject to Section 4.1.2 below, and such benefits shall be referred to as Short Term Disability Benefits. However, such benefits shall be determined as though the terms of the applicable Predecessor Plan were incorporated under this Plan. Any Participant who is not a Transition Employee shall not be eligible for any benefits provided by this Predecessor Plan.

4.1.2    Termination of Entitlement. A Participant shall cease to be entitled to receive Short Term Disability Benefits when Short Term Disability ceases. If Short Term Disability has not ceased at the end of the period of fifty-two weeks of entitlement to Short Term Disability Benefits, as determined under Section 4.2.7, the Participant nonetheless shall cease to be entitled to receive Short Term Disability Benefits on the last day of such period of fifty-two weeks. The number of weeks that a Transition Employee received sickness disability benefits (but not accident disability benefits) under the terms of the applicable Predecessor Plans shall be counted as weeks of entitlement of Short Term Disability Benefits under this Plan. A Participant who terminates employment while receiving Short Term Disability Benefits shall not be entitled to receive Short Term Disability Benefits for any day after the day the Participant terminates employment and ceases to be an Employee, except that an Employee who (a) resigns from employment in order to receive benefits under a severance pay plan, or (b) retires, may continue to receive Short Term Disability Benefits if such Employee continues to be a Participant, as provided in Section 3.2.

4.2    Amount of Short Term Disability Benefit. If an Eligible Employee is absent from work because of Short Term Disability, this Plan shall provide, during the period of absence (not to exceed fifty-two weeks), a weekly amount of Short Term Disability Benefit which, when added to the benefits set forth in Section 4.2.2 ("Integrated Benefits"), equals either Full Pay (as determined under Section 4.2.5), or Half Pay (as determined under Section 4.2.6), whichever is to be provided in accordance with Section 4.2.1.

27093                                                        6

**4.2.1** Schedule of Benefits. A Participant's Short Term Disability Benefits shall be payable in accordance with one of the following schedules:

(a) This schedule shall apply unless (b) below applies:

(i) If the Participant's Term of Employment has been less than two years, Short Term Disability Benefits shall be paid at Full Pay for up to eight weeks and at Half Pay thereafter for up to forty-four weeks.

(ii) If the Participant's Term of Employment has been two years or more, but less than five years, Short Term Disability Benefits shall be paid at Full Pay for up to ten weeks and at Half Pay thereafter for up to forty-two weeks.

(iii) If the Participant's Term of Employment has been five years or more, but less than fifteen years, Short Term Disability Benefits shall be paid at Full Pay for up to thirteen weeks and at Half Pay thereafter for up to thirty-nine weeks.

(iv) If the Participant's Term of Employment has been fifteen years or more, but less than twenty years, Short Term Disability Benefits shall be paid at Full Pay for up to twenty-six weeks and at Half Pay thereafter for up to twenty-six weeks.

(v) If the Participant's Term of Employment has been twenty years or more, but less than twenty-five years, Short Term Disability Benefits shall be paid at Full Pay for up to thirty-nine weeks and at Half Pay thereafter for up to thirteen weeks.

(vi) If the Participant's Term of Employment has been twenty-five years or more, Short Term Disability Benefits shall be paid at Full Pay for up to fifty-two weeks.

(b) This schedule shall apply to a Participant who, as of the date of entitlement to Short Term Disability Benefits, is a salaried employee who is compensated as a third (or higher) level manager or its equivalent, as determined by the Participating Company in its sole discretion. The following schedule shall apply only if it provides Short Term Disability Benefits payable at Full Pay for a period longer than the regular schedule:

(i) If the Participant is classified as a third level salaried employee, Short Term Disability Benefits shall be paid at Full Pay for up to thirteen weeks and at Half Pay thereafter for up to thirty-nine weeks.

(ii) If the Participant is classified as a fourth level salaried employee, Short Term Disability Benefits shall be paid at Full Pay for up to twenty-six weeks and at Half Pay thereafter for up to twenty-six weeks.

(iii) If the Participant is classified as a fifth level (or above) salaried employee, Short Term Disability Benefits shall be paid at Full Pay for up to thirty-nine weeks and at Half Pay thereafter for up to thirteen weeks.

**4.2.2** Integrated Benefits. It is the intent of the Plan that a Participant shall not receive duplicate benefits from the Plan and from sources paying Integrated Benefits. Thus, Integrated Benefits shall reduce Short Term Disability Benefits payable from the Plan, and vice-versa, in the manner provided herein and in Sections 4.2.3 and 4.2.4. The following amounts shall be treated as "Integrated Benefits":

(a) Unemployment compensation disability benefits under the California Unemployment Insurance Code;

27093

7

P00199

(b) Workers' Compensation Benefits;

(c) Other benefits of the same general character as those described in (a) and (b) above under any state or federal disability law, including (i) benefits payable under the disability insurance laws of a state other than California, and (ii) benefits which provide the functional equivalent of workers' compensation (even if not so named under state law), but excluding benefits payable on account of military service or under the Social Security Act; and

(d) In the case of a Participant who retires during a period of Short Term Disability, but who is eligible to continue to receive Short Term Disability Benefits pursuant to Section 3.2 of the Plan, the amount of a service pension or vested pension which would be payable as a monthly life annuity (regardless of other forms of payment available or elected) under the Pacific Telesis Group Pension Plan or the Pacific Telesis Group Pension Plan for Salaried Employees for the period that Short Term Disability Benefits are payable; provided, however, that after June 1, 1992 (April 13, 1991 with respect to a Nonrepresented Participant), any such pension shall reduce a Participant's Short Term Disability Benefits only if the Participant's pension is in pay status.

Integrated Benefits under (a), (b) and (c) above shall only reduce Short Term Disability Benefits, and vice-versa, if such Integrated Benefits relate to or are payable for the same injuries, illnesses, conditions, or disabilities for which the Short Term Disability Benefits are payable.

In addition, if a Participant is awarded or otherwise becomes entitled to a payment from a Participating Company for Integrated Benefits under (a), (b) or (c) above, the Participating Company shall reduce any such award or payment otherwise due by the amount of any Short Term Disability Benefits previously paid or payable, or may offset any further Plan benefits in an amount equal to the Integrated Benefits not so reduced. This integration of Short Term Disability Benefits and Integrated Benefits shall apply regardless of when or how benefits are paid or payable, be it weekly, in a single sum, part of an award, compromise, release, settlement or otherwise

4.2.3    Rules to Offset Integrated Benefits.  The GEBC shall establish such rules as it deems necessary to implement Section 4.2.2 and avoid duplicate payments of Plan benefits and Integrated Benefits.  These rules shall include, but shall not be limited to, the following:

(a)  Integrated Benefits may be subject to integration with more than one form of Plan benefit, e.g., with both Short Term Disability Benefits and Long Term Disability Benefits, but the total Plan benefit reduction shall not exceed the amount of the Integrated Benefits.

(b)  If Short Term Disability Benefits and Integrated Benefits are payable at the same time and apply to the same period of disability, the Short Term Disability Benefits shall be reduced by the amount of the Integrated Benefits.

(c)  If Short Term Disability Benefits and Integrated Benefits are payable or awarded at different times or for different periods of disability, whatever Short Term Disability Benefits have been paid shall be deemed an advance payment of Integrated Benefits, and vice-versa, and shall be applied to reduce the amount of Integrated Benefits payable, and vice-versa.  For example, if a Workers' Compensation Benefits award (or other similar benefit) is made after Plan benefits have been paid, the Participating Company shall claim an offset to the award or benefit in an amount equal to the total Plan benefits previously paid. The amount of a reduced award actually paid shall be considered an Integrated Benefit under Section 4.2.2 for purposes of determining the amount of future Plan benefits.

(d)  If a Workers' Compensation award or settlement does not specify exact amounts attributable to types of benefits other than Workers Compensation Benefits, all payments under the award or settlement shall be treated as Integrated Benefits.

27093

8

P00200

There is no time limit on when offsets available under this section can be applied. The GEBC may choose, for administrative reasons, to establish rules that result in deferring application of certain offsets. Failure to apply an offset as soon as it is available shall not constitute a waiver of offset rights or otherwise prevent their later exercise.

**4.2.4** <u>Withholding of Plan Benefits to Recover Overpayments and Advances.</u>  Short Term Disability Benefits that are overpaid, or Integrated Benefits that are deemed to be an advance payment of Short Term Disability Benefits under Section 4.2.3, may be recovered by withholding any further Short Term Disability Benefits under the Plan until the amount overpaid or deemed to have been advanced has been recovered. If Short Term Disability Benefits are no longer payable, or are payable in amounts which are less than sufficient to provide for a complete recovery of the amount overpaid or deemed to have been advanced, the Plan may recover such amounts by reducing any other benefit payable to the Participant under the Plan.

**4.2.5** <u>Full Pay.</u>  The amount of a Short Term Disability Benefit to be paid at Full Pay shall be determined at a weekly rate as of the first day of the current period of absence for which the Participant is eligible for Short Term Disability Benefits under Section 4.1.

**4.2.6** <u>Half Pay.</u> The amount of a Short Term Disability Benefit to be paid at Half Pay shall be determined at a weekly rate as of the first day of the current period of absence for which the Participant is eligible for Short Term Disability Benefits under Section 4.1.

**4.2.7** <u>Fifty-Two Week Maximum: Relapse Rule.</u>  A Participant who returns to active employment as an Eligible Employee after receiving Short Term Disability Benefits shall be eligible for a new fifty-two week maximum period of Short Term Disability Benefits if the Eligible Employee is later absent from work due to a Short Term Disability and if the absence began after completing 26 weeks of continuous active employment following the prior absence.

However, if any later absence due to Short Term Disability begins before completing twenty-six weeks of continuous active employment following the prior absence, a new fifty-two week maximum period shall not begin and the following rules will apply.

(a)  The later period of absence shall be aggregated with all prior periods of absence which occur without an intervening period of at least twenty-six weeks of continuous active employment for the purpose of determining the maximum period remaining in the period of fifty two weeks for which Short Term Disability Benefits are payable.

(b)  If the later period of absence occurs within twenty-six weeks of returning to work following a FMD Leave, no weeks are deemed to remain in the Participant's fifty-two week maximum period.

If Short Term Disability Benefits resume under (a) above, the number of weeks at which benefits shall be paid at Full Pay during the later period of absence shall be determined by subtracting the number of weeks for which benefits were paid during the previous period or periods of absence from the number of weeks at which benefits would otherwise be payable at Full Pay at the beginning of the period of absence. An absence before March 1, 1990 or during a Transition Period shall be counted as a previous absence by reason of Short Term Disability under this provision, if, on account of such absence, sickness disability benefits are, or would have been, payable to the Participant under a Predecessor Plan, but not if accident disability benefits were payable to the Participant under a Predecessor Plan.

**4.3**  <u>Timing of Payments.</u>  Short Term Disability Benefits shall be paid to the Participant at the same time, and in the same manner, as wages or salary would have been paid to the Participant, under the payroll practices of the Participating Company. However, if payment has not been approved by the GEBC in time to do so, or if payment is approved following a review of a denied claim, Short Term Disability

27093                                    9

P00201

Benefits shall be paid to the Participant as soon as practicable, following approval, in the same manner as wages or salary, except that amounts in arrears may be paid in a single sum. For the purpose of converting the weekly Short Term Disability Benefit to a monthly amount, the conversion factors in the definition of "Base Pay" shall be used.

4.4     Commutation of Short Term Disability Benefits to Lump Sum Payments.  In case of any grave injury or chronic sickness, if the Participant requests that a lump sum be paid in full settlement of the Plan's obligation to provide Short Term Disability Benefits, the GEBC, in its discretion, may make full and final settlement with the Participant by commuting the Short Term Disability Benefit payments into a single lump sum payment, which payment shall represent the present value, computed on a fair basis, of the Short Term Disability Benefits to which the Participant would become entitled during such period as the Short Term Disability may reasonably be expected to continue.

4.5     No Duplication of Payments.  No Participant shall be entitled to receive Short Term Disability Benefits for time for which salary or wages (including vacation pay and other payments on account of a period of time when the Participant, though not disabled from working for medical, psychiatric, or psychological reasons, is temporarily absent from work) are payable to the Participant by a Participating Employer.

4.6     Leaves of Absence.  Unless the terms under which a Leave of Absence expressly provide for different treatment, a Participant who is absent from work while on a Leave of Absence shall be deemed for purposes of Section 4.1 to be absent from work for reasons other than Short Term Disability.

**Section 5.  Long Term Disability Benefits**

5.1     Commencement and Duration of Entitlement.  If, because of Long Term Disability, a Participant does not return to work at the end of the fifty-two week period for which Short Term Disability Benefits are payable, then the Participant shall become entitled to receive Long Term Disability Benefits. Such benefits shall commence on the first day immediately following the end of fifty-two weeks of entitlement to Short Term Disability Benefits, if, at the end of such fifty-two week period, the Participant ceased to be an Employee or was granted a FMD Leave, and shall end on the earliest of the following dates:

        (a)  The date when the Participant ceases to be disabled by Long Term Disability;

        (b)  The date when the Participant dies; or

        (c)  The date when the Maximum Disability Benefit Period expires in accordance with the schedule set forth in Section 5.1.2 or Section 5.1.3, whichever applies.

A Participant who ceases to be an Employee before the end of the fifty-two week period of Short Term Disability Benefits, but who continues to be eligible for Short Term Disability Benefits, shall not be entitled to Long Term Disability Benefits at the end of the fifty-two week period, except as otherwise provided in Section 3.2.

5.1.1   Entitlement Under Predecessor Plan.  A Participant who is receiving long-term disability benefits under a Predecessor Plan on December 31, 1991 shall be entitled to Long Term Disability Benefits under this Plan equal to the benefits payable under the Predecessor Plan. In all other respects, the provisions of the Plan, and not the Predecessor Plan, shall apply.

5.1.2   Maximum Disability Benefit Period for Participants Who Commenced Receiving Long Term Disability Benefits Before June 1, 1992. The Maximum Disability Benefit Period shall expire in accordance with the schedule set forth below for all Represented Participants whose fifty-two week period of Short Term Disability Benefits ended before June 1, 1992 and for all Nonrepresented Participants whose fifty-two week period of Short Term Disability Benefits ended before April 14, 1991:

P00202

(a) If the Participant has not reached the age of sixty-two years on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the Participant reaches the age of sixty-five years;

(b) If the Participant has reached the age of sixty-two years, but has not reached the age of sixty-three years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches three and one half years;

(c) If the Participant has reached the age of sixty-three years, but has not reached the age of sixty-four years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches three years;

(d) If the Participant has reached the age of sixty-four years, but has not reached the age of sixty-five years, on the date when Short Term Disability commences, the Maximum Disability Benefit period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches two and one-half years;

(e) If the Participant has reached the age of sixty-five years, but has not reached the age of sixty-six years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches two years;

(f) If the Participant has reached the age of sixty-six years, but has not reached the age of sixty-seven years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches one and three fourths years;

(g) If the Participant has reached the age of sixty-seven years, but has not reached the age of sixty-eight years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches one and one half years;

(h) If the Participant has reached the age of sixty-eight years, but has not reached the age of sixty-nine years, on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches one and one fourth years; and

(i) If the Participant has reached the age of sixty-nine years on the date when Short Term Disability commences, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches one year

If a Nonrepresented Participant's fifty-two week period of Short Term Disability Benefits ended on or after April 14, 1992, the Participant's Maximum Disability Benefit Period shall be determined by Section 5.1.3 below.

5.1.3    Maximum Disability Benefit Period for Participants Who Commence Receiving Long Term Disability Benefits On or After June 1, 1992.  If a Participant's fifty-two week period of Short Term Disability Benefits ended on or after May 31, 1992, then the Participant's Maximum Disability Benefit Period expires in accordance with the following schedule:

27093

11

P00203

(a) If the Participant did not reached the age of sixty-two years on the date when Short Term Disability commenced, the Maximum Disability Benefit Period ends on the date when the Participant reaches the age of sixty-five years; and

(b) If the Participant reached the age of sixty-two years on the date when Short Term Disability commenced, the Maximum Disability Benefit Period ends on the date when the combined period for which Short Term Disability Benefits and Long Term Disability Benefits have been payable reaches five years.

5.1.4    Loss of Entitlement.  No Participant shall be entitled to receive a Long Term Disability Benefit if the Long Term Disability is caused or contributed to by any injury or sickness sustained by the Participant while committing a felony; by any intentionally self-inflicted injury, whether the Participant is sane or insane at the time when inflicted; by military service or war, declared or undeclared, or any act or hazard of war occurring after the commencement of participation in the Plan; or by the Participant's active participation in a riot, insurrection, rebellion, or civil commotion.

5.1.5    Relapse Rule.  A Participant shall be entitled to resume Long Term Disability Benefits on the eighth calendar day of a continuous period during which the Participant is absent from work due to a Long Term Disability if this period of absence began within twenty-six weeks after a return to work following FMD Leave during which the Participant was entitled to Long Term Disability Benefits.

5.2    Amount of Long Term Disability Benefit.  During the period the Participant is entitled to Long Term Disability Benefits, as provided in Section 5.1, this Plan shall provide a monthly amount of Long Term Disability Benefit which, when added to the benefits set forth in Section 5.2.1 ("Integrated Benefits") shall equal fifty percent of the Participant's Full Pay (plus differentials) determined on a monthly basis as if the Participant had been in the active service of the Participating Company on the last day of the fifty-two week period during which Short Term Disability Benefits were payable.

If a Participant's Integrated Benefits under Section 5.2.1 exceed fifty percent of Full Pay (plus differentials), as determined on a monthly basis under this section, then no amount shall be payable as a Long Term Disability Benefit under this Plan.  If no amounts are payable as Integrated Benefits under Section 5.2.1, then this Plan shall pay a Long Term Disability Benefit equal to fifty percent of the Participant's Full Pay (plus differentials).  The Long Term Disability Benefits payable to a Participant (i) found by the Long Term Disability Claims Administrator to be capable of performing the requirements of an occupation or employment for which the base rate of pay is less than fifty percent of the Employee's Full Pay (plus differentials), or (ii) found actually to be performing an occupation or employment in the course of pursuing a Vocational Rehabilitation Plan, shall not, when added to the base rate of pay established for such occupation or employment, exceed seventy-five percent of the Employee's Full Pay (plus differentials).

5.2.1    Integrated Benefits.  It is the intent of the Plan that a Participant shall not receive duplicate benefits from the Plan and from sources paying Integrated Benefits.  Thus, Integrated Benefits shall reduce Long Term Disability Benefits payable from the Plan, and vice-versa, in the manner provided herein and in Sections 5.2.2 and 5.2.3.  The following amounts shall be treated as "Integrated Benefits":

(a) Disability insurance benefit or an old age insurance benefit under the Social Security Act (but only the primary insurance amount of an old age insurance benefit shall be taken into account);

(b) Workers' Compensation Benefits;

(c) Unemployment compensation disability benefits under the California Unemployment Insurance Code;

(d) Other benefits of the same general character as those described in (a), (b) and (c) above under any state or Federal disability law, including (i) benefits payable under the disability insurance laws

27093                                          12

P00204

of any state other than California and (ii) benefits which provide the functional equivalent of worker's compensation (even if not so named under state law), but excluding Veterans' benefits payable under any law providing for disability benefits for a disabled member of the armed forces; and

(e)  The monthly amount of service pensions, vested pensions or disability pensions which would be payable as a life annuity at termination of employment (regardless of the other forms of payment available or elected) and regardless of any ad hoc pension increases under the Pacific Telesis Group Pension Plan for Salaried Employees or the Pacific Telesis Group Pension Plan; provided, however, that after June 1, 1992 (April 14, 1991 for Nonrepresented Participants), any such pension shall reduce a Participant's Long Term Disability Benefits only if the Participant's pension is in pay status. Integrated Benefits under (b), (c) and (d) above shall reduce Long Term Disability Benefits, and vice-versa, only if such Integrated Benefits relate to or are payable for the same injuries, illnesses, conditions, or disabilities for which the Long Term Disability Benefits are payable.

In addition, if a Participant is awarded or otherwise becomes entitled to a payment from a Participating Company for Integrated Benefits under (a), (b), (c), or (d) above, the Participating Company shall reduce any such award or payment otherwise due by the amount of any Long Term Disability Benefits previously paid or payable or may offset any further Plan benefits in an amount equal to the Integrated Benefits not so reduced.  This integration of Long Term Disability Benefits and Integrated Benefits shall apply regardless of when or how benefits are paid or payable, be it weekly, in a single sum, part of an award, compromise, release, settlement or otherwise.

5.2.2    Rules to Offset Integrated Benefits.  The Long Term Disability Claims Administrator shall establish such rules as it deems necessary or appropriate to implement Section 5.2.1 and avoid duplicate payments of Plan benefits and Integrated Benefits.  These rules shall include but shall not be limited to the following:

(a)  Integrated Benefits may be subject to integration with more than one form of Plan benefit, e.g., with both Short Term Disability Benefits and Long Term Disability Benefits, but the total Plan benefit reduction shall not exceed the amount of the Integrated Benefits.

(b)  If Long Term Disability Benefits and Integrated Benefits are payable at the same time and apply to the same period of disability, the Long Term Disability Benefits shall be reduced by the amount of the Integrated Benefits.

(c)  If Long Term Disability Benefits and Integrated Benefits are payable or awarded at different times or for different periods of disability, whatever Long Term Disability Benefits have been paid shall be deemed an advance payment of Integrated Benefits and vice-versa, and shall be applied to reduce the amount of Integrated Benefits payable, and vice-versa.  For example, if a Workers' Compensation Benefits award (or other similar benefit) is made after Plan benefits have been paid, the Participating Company shall claim an offset to the award or benefit in an amount equal to the total Plan benefits previously paid. The amount of a reduced award actually paid shall be considered an Integrated Benefit under Section 5.2.1 for purposes of determining the amount of future Plan benefits.

(d)  If a Workers' Compensation award or settlement does not specify exact amounts attributable to types of benefits other than Workers Compensation Benefits, all payments under the award or settlement shall be treated as Integrated Benefits.

(e)  The Integrated Benefit under Section 5.2.1(a) shall be limited to the amount of the Social Security benefits payable after payments of Long Term Disability Benefits commence under the Plan or after benefits under the Social Security Act first become payable, whichever is applicable.  Once the amount of the Integrated Benefit has been determined, any further increase in the amount payable under the Social Security Act shall not be taken into account under this Plan.

27093

13

(f) Notwithstanding (e) above, any retroactive award of Social Security benefits described under Section 5.2.1(a) and not paid to a Participating Company may, but shall not be required to, be deducted from future Long Term Disability Benefits.

There is no time limit on when offsets available under this section can be applied. For instance, the GEBC may choose, for administrative reasons, to establish rules that result in deferring application of certain offsets until certain times. Failure to apply an offset as soon as it is available shall not constitute a waiver of offset rights or otherwise prevent their later exercise.

5.2.3    <u>Withholding of Plan Benefits to Recover Overpayments and Advances.</u> Long Term Disability Benefits that are overpaid, or Integrated Benefits that are deemed to be an advance payment of Long Term Disability Benefits under Section 5.2.2, may be recovered by withholding any further Long Term Disability benefits under the Plan until the amount overpaid or deemed to have been advanced has been recovered. If Long Term Disability Benefits are no longer payable, or are payable in amounts which are less than sufficient to provide for a complete recovery of the amount overpaid or deemed to have been advanced, the Plan may recover such amounts by reducing any other benefit payable to the Participant under the Plan.

5.3    <u>Timing of Payments</u>. When payment has been approved in advance by the Long Term Disability Claims Administrator, Long Term Disability Benefits shall be paid to the Participant monthly. When payment is approved after the fact, or upon review of a denied claim, the amount of Long Term Disability Benefits then in arrears may be paid to the Participant in a single sum as soon as practicable, and amounts not then in arrears shall thereafter be paid monthly.

## Section 6.  Vocational Rehabilitation Benefits

6.1    <u>Commencement of Entitlement</u>.  A Participant who has become entitled to Short Term Disability Benefits under Section 4.1 shall become entitled to Vocational Rehabilitation Benefits when either (a) the GEBC determines that (i) the expected cost of rehabilitating a Participant to perform the duties of an occupation or employment for which the Participant may become qualified are less than or equal to (ii) the present value of the savings the Plan may expect to achieve through reducing its future obligations to provide Short Term Disability Benefits or Long Term Disability Benefits to the Participant, or (b) the GEBC requires the Participant to submit to a vocational evaluation, as provided in Section 8.4.1, whichever occurs first.

6.2    <u>Amount of Vocational Rehabilitation Benefits</u>.  The amount of a Participant's Vocational Rehabilitation Benefits shall be the lesser of (a) $20,000 or (b) the cumulative amount of covered expenses incurred (as necessary and as approved by the GEBC) during the period of time (i) which begins on the date when the Participant first becomes entitled to Vocational Rehabilitation Benefits under this Section 6, and (ii) ends two years after a Vocational Rehabilitation Plan has been approved and accepted, as described in Section 8.4.2, or if earlier, the date when benefits are finally discontinued under Section 7.

6.2 1    <u>Amount of Covered Expenses</u>. Expenses covered under (b) above are:  vocational rehabilitation evaluation, counselling and job placement services; on-the-job training expenses; licenses or certificates for the vocational goal; training facility tuition; books and educational supplies; tools and equipment customarily required as a condition of employment or necessary to complete training; transportation expenses for evaluation, counselling, and training; relocation expenses for one move of usual household goods and personal articles plus non-refundable deposits attendant to a permanent change of residence; additional living expenses such as food and lodging (at the Participating Company's per diem rate); reasonable child care cost (when required for participation in a Vocational Rehabilitation Plan); and clothing (necessitated by the Vocational Rehabilitation Plan or by type of work activities).  The following expenses shall not be covered by the Plan:  capital investment for a self-employment rehabilitation plan; capital tool and equipment expense; normal commute expense to and from an employment location; and,

P00206

in general, expenses not required for completion of a Vocational Rehabilitation Plan. If a Participant travels by his or her private motor vehicle in order to obtain vocational rehabilitation services or to become qualified for an occupation or employment in accordance with a Vocational Rehabilitation Plan, the Participant shall be reimbursed for transportation expenses at the rate in effect at the time the expenses are incurred at which Pacific Telesis Group authorizes reimbursement to its Employees who use their personal vehicles for travel on company business.

6.2.2    Limit on Number of Vocational Rehabilitation Plans.  No Participant shall be entitled to Vocational Rehabilitation Benefits with respect to more than one Vocational Rehabilitation Plan approved by the GEBC, except that a second Vocational Rehabilitation Plan may be prepared for approval by the GEBC, at the request of the Participant, as provided in Section 8.4.2.

6.3     Payment of Vocational Rehabilitation Benefits.  The Plan may make direct payments to a Participant to reimburse the Participant for expenses actually incurred by the Participant in order to obtain vocational rehabilitation services or to become qualified for an occupation or employment in accordance with a Vocational Rehabilitation Plan.  No other direct payments shall be made to a Participant on account of Vocational Rehabilitation Benefits.  Vocational Rehabilitation Benefits (other than reimbursements for expenses incurred) shall be covered by payments directly from the Plan to the service providers who render services to the Participant or the Plan.

6.4     Relationship to Benefits under the California Labor Code.  If, during the period in which a Participant would otherwise be entitled to Vocational Rehabilitation Benefits under this Plan, the Participant becomes entitled to benefits under section 139.5 of the California Labor Code, which a Participating Company is obligated to provide, then the Plan shall thereafter provide for payments in such amounts as are necessary to satisfy the Participating Company's obligations under section 139.5 of the California Labor Code, and no Vocational Rehabilitation Benefit shall be provided under the terms of this Plan.  However, if a Participant begins receiving Vocational Rehabilitation Benefits and later claims statutory benefits, benefits paid under this Section 6 are intended as an advance of any statutory benefit and shall be offset against any payment or award made under the law. It is the intent of the Plan that a Participant should not receive duplicate benefits under the Plan and under section 139.5 of the California Labor Code.

## Section 7.  Discontinuance of Benefits under the Plan

7.1     Failure to Obtain Proper Treatment.  Short Term Disability Benefits, Long Term Disability Benefits, and Vocational Rehabilitation Benefits shall be discontinued whenever the GEBC or Long Term Disability Claims Administrator determines that the Participant has failed to obtain proper medical, psychiatric, or psychological treatment for the condition which gives rise to Short Term Disability or Long Term Disability, or has failed to comply with conditions or restrictions which are ordered in the course of such treatment.

7.2     Failure to Pursue a Vocational Rehabilitation Plan.  Short Term Disability Benefits, Long Term Disability Benefits, and Vocational Rehabilitation Benefits, shall be discontinued whenever the Participant refuses or fails to attempt to become qualified for an occupation or employment in accordance with either (a) a Vocational Rehabilitation Plan approved by the GEBC or (b) a vocational rehabilitation plan prepared under the section 139.5 of the California Labor Code.  If a Participant is not satisfied with the initial Vocational Rehabilitation Plan approved by the Disability Assistance Program Administration, and for that reason requests, pursuant to Section 8.4.2, that a second Vocational Rehabilitation Plan be formulated, then benefits under this Plan will not be discontinued under this provision until such time as the second Vocational Rehabilitation Plan has been formulated and the participant fails or refuses to attempt to become qualified for an occupation or employment in accordance with one of the two Vocational Rehabilitation Plans.

7.3     Failure to Cooperate with Administrator.  All benefits under the Plan shall be discontinued if the Participant fails to submit to or cooperate in a medical, psychiatric, or psychological examination which the

27093

15

P00207

GEBC or Long Term Disability Claims Administrator has directed, as provided in Section 8.3.1, 8.4.1, or 10.3.1; fails to submit to or cooperate in any interview or test, or to provide any evidence, as required under Section 8.3.1, 8.4.1, or 10.3.1; fails to keep himself or herself available to receive direct communications or directions from DAP or the Long Term Disability Claims Administration; or fails to provide information or otherwise comply as directed in such communications.

7.4     Travel without Permission.  All benefits under the Plan shall be discontinued if the Participant, while claiming to absent from work because of Short Term Disability, travels away from home, without having obtained the prior approval of DAP.

7.5     Restoration After Discontinuance of Benefits.  Whenever benefits have been discontinued under Section 7.1, Section 7.2, or Section 7.3, such benefits shall be resumed when the Participant resumes compliance with Section 7.1, Section 7.2, or Section 7.3.  A Participant shall be deemed to resume compliance under Section 7.1 or 7.2 when the Participant starts or resumes proper treatment, compliance with the conditions or restrictions of such treatment, or attempts to become qualified for an occupation or employment in accordance with a vocational rehabilitation plan.  A Participant shall be deemed to resume compliance under Section 7.3 as of the date benefits were discontinued if the Participant no longer fails to cooperate with the administrator and did not violate Section 7.1 or 7.2 during such period of noncooperation.  Otherwise, such a Participant shall be deemed to resume compliance when the Participant cooperates fully with the administrator.  However, in no event shall benefits be provided with respect to any period of discontinuance for which the Participant failed or refused to comply, as determined in accordance with the preceding rules.

For purposes of determining (a) whether Full Pay or Half Pay applies, (b) the date which ends the period of fifty-two weeks in which Short-Term Disability Benefits are payable, and (c) the duration of the Maximum Disability Benefit Period, a period when benefits were discontinued under Section 7.1, 7.2, 7.3, or 7.4, shall be treated as a period during which benefits were payable.

**Section 8.  Claims for Short Term Disability Benefits and Vocational Rehabilitation Benefits**

8.1     Responsibility of GEBC.  The GEBC shall have the responsibility to approve or deny claims for Short Term Disability Benefits and Vocational Rehabilitation Benefits under the terms of the Plan to administer payment of benefits, including integration of benefits and to collect overpayment of benefits.  The GEBC may appoint individuals, including individuals in DAP, to carry out administrative duties under the Plan.

8.1.1   Discretion of the GEBC.  The GEBC shall have the power and discretion to resolve all factual issues presented in a claim for Short Term Disability Benefits or Vocational Rehabilitation Benefits in a reasonable manner, and to interpret and adopt reasonable constructions of any provision of the Plan whenever interpretation or construction is needed to resolve any issue presented in a request for review.  The GEBC shall also have the power and discretion to establish general interpretations, rules, and procedures to guide and assist in approving or denying similar claims.

8.2     Presentation of Claims for Short Term Disability Benefits.  A claim for Short Term Disability Benefits shall be deemed to have been presented on the eighth calendar day of any period when a Participant is absent from work, if by that day the Participant notifies his or her immediate supervisor that Short Term Disability is the reason which caused the Participant to be absent.  The supervisor shall notify the GEBC forthwith whenever the supervisor receives such notification from a Participant.

8.3     Disposition of Claims for Short Term Disability Benefits.  Whenever the GEBC receives notification of a claim under Section 8.2, the GEBC shall determine whether to approve payment or to deny the claim.

8.3.1   Procedures for Approval of Payment of Short Term Disability Benefits.  The GEBC shall approve payment whenever the GEBC concludes, on the basis of medical, psychiatric, or psychological opinion,

27093                                                16

P00208

that Short Term Disability is the cause of the Participant's absence from work, and the GEBC concludes, on the basis of all the evidence available, that the other requirements of Section 4 have been satisfied and that no event requiring discontinuance of benefits under Section 7 has occurred. For the purposes of deciding whether Short Term Disability is the cause of the Participant's absence from work, the GEBC may direct the Participant to submit to medical, psychiatric, or psychological examinations by a physician or psychologist designated by the GEBC, including a physician, psychologist, or other health care professional employed by a Participating Company, and may rely on the opinion of such a physician, psychologist or other health care professional even if that opinion is in conflict with the opinion of the Participant's treating physician or psychologist or the opinions of other physicians or psychologists which are offered by the Participant. The GEBC may require the Participant to submit an opinion of the Participant's treating physician or psychologist, or other evidence of Short Term Disability, and to submit to personal interviews with the GEBC or any representative of the GEBC. The GEBC shall not be required to investigate or approve any claim which a Participant first presents more than sixty days after the eighth calendar day of a period when the Participant has been absent from work.

8.3.2    Procedures for Denial of Claims for Short Term Disability Benefits. Whenever the GEBC does not approve a payment of a claim for Short Term Disability Benefits, the GEBC shall notify the Participant, in writing, that the Participant's claim is denied. The GEBC shall give the written notification within ninety days following the date when the Participant gives notice of the claim under Section 8.2, except in the following cases:

(a) If the GEBC has previously approved payment of a claim for Short Term Disability Benefits, and disapproves further payments because the GEBC has determined that Short Term Disability has ceased, then the GEBC shall give the written notification within ninety days following the date when the GEBC has determined that Short Term Disability has ceased;

(b) If the GEBC has previously approved payment of a claim for Short Term Disability Benefits, and disapproves further payments because the maximum period of fifty-two weeks of entitlement under Section 4.1 has expired, the GEBC shall give the written notification within ninety days following the day when that period expired;

(c) If the GEBC has previously approved payment of a claim for Short Term Disability Benefits, and payments are discontinued under Section 7, then the GEBC shall give the written notification within ninety days following the date when GEBC learns of the event which caused payments to be discontinued; and

(d) If payment of a Short Term Disability Benefit is reduced or eliminated in order to permit the Plan to recover an overpayment or advance, then the GEBC shall give written notification within ninety days after declaring the overpayment.

If special circumstances require the GEBC to extend the ninety day period for disposing of a claim, the GEBC shall give written notice to the Participant of those special circumstances within that ninety day period; the extension may be for a period of no more than an additional ninety days beyond the original ninety day period. If the GEBC does not give the written notification of denial within the period of ninety days (or any permitted extension thereof), and also has not approved payment, then the claim shall be deemed denied at the end of that period.

8.4    Recognition of Claims for Vocational Rehabilitation Benefits. When a claim is presented under Section 8.2, the GEBC shall decide whether or not to investigate it as a claim for Vocational Rehabilitation Benefits under Section 8.4.1, and a claim shall be deemed to be made as of the date of the GEBC's decision to investigate. In addition, a Participant who has presented a claim under Section 8.2 may also present, in writing, a Separate Claim for Vocational Rehabilitation Benefits. The GEBC shall decide such a Separate Claim within ninety days after either (a) the GEBC independently determines to investigate a claim, or (b) the Separate Claim is presented in writing, whichever occurs first. If special circumstances

27093                                                    17

P00209

require that the time for deciding a claim be extended, the GEBC may extend the time, by notifying the Participant in writing, before the ninety day period has expired; and the extension may be for no more than an additional ninety days.

8.4.1   Investigation of Claims for Vocational Rehabilitation Benefits. If the nature of the Short Term Disability or Long Term Disability, or the medical, psychiatric, or psychological evidence provided by the Participant to support a claim for Short Term Disability Benefits or Long Term Disability Benefits, give the GEBC no reason to expect that vocational rehabilitation would be cost-justified under the standard set forth in clause (a) of Section 6.1, then the GEBC shall not be required to consider Vocational Rehabilitation Benefits in the absence of a Separate Claim. If the Participant presents a Separate Claim, or if the nature of the Short Term Disability or Long Term Disability (or the medical, psychiatric, or psychological evidence presented to support a claim for benefits) gives the GEBC some reason to expect that vocational rehabilitation may be cost-justified under the standard set forth in clause (a) of Section 6.1, then the GEBC shall arrange to obtain such professional opinions as will enable the Disability Claims Administrator to determine whether vocational rehabilitation will be cost-justified under that standard. For the purpose of deciding whether vocational rehabilitation will be cost-justified, the GEBC may require the Participant from time to time to submit to vocational rehabilitation evaluations by a Qualified Rehabilitation Representative designated by the GEBC; to submit to tests conducted or prescribed by such a Qualified Rehabilitation Representative; and to provide such other evidence, whether by interview, documentation, or demonstration, as the Qualified Rehabilitation Representative may require, in order to formulate a Vocational Rehabilitation Plan.

8.4.2   Procedures for Approval of Vocational Rehabilitation Benefits. The GEBC shall arrange to have the Plan provide Vocational Rehabilitation Benefits, as necessary to cover the cost of vocational rehabilitation evaluation, and formulation of a Vocational Rehabilitation Plan, as described in Section 8.4.1, and as necessary for completion of an approved Vocational Rehabilitation Plan. The GEBC shall approve a Vocational Rehabilitation Plan whenever the GEBC determines, based upon the evidence adduced in accordance with Section 8.4.1, that vocational rehabilitation is cost-justified under the standard set forth in clause (a) of Section 6.1, that the other requirements of Section 6 have been satisfied, and that no event requiring discontinuance of benefits under Section 7 has occurred. The GEBC shall then notify the Participant in writing of the approval of the Vocational Rehabilitation Plan, the Vocational Rehabilitation Benefits that will be provided, and of the steps that the Participant must take to avail himself or herself of those Vocational Rehabilitation Benefits. The written notification will also prescribe a procedure under which the Participant may submit claims for reimbursement for expenses incurred to follow a Vocational Rehabilitation Plan. The notification shall be given within the 90 day period prescribed in Section 8.4 (or any extension thereof). For the first approved Vocational Rehabilitation Plan only, the Participant may accept the Vocational Rehabilitation Program or request that a second Vocational Rehabilitation Program be formulated. Upon approval of the second Vocational Rehabilitation Plan, the GEBC shall notify the Participant in the same manner as for the first such Plan, except that the notice shall also notify the Participant that he or she must accept and follow one of the two approved Vocational Rehabilitation Plans, and that all benefits will be discontinued, pursuant to Section 7.2 of the Plan, if the Participant does not.

8.4.3   Denial of Claim for Vocational Rehabilitation Benefits. Whenever the GEBC denies a claim for Vocational Rehabilitation Benefits, the GEBC shall notify the Participant, in writing, that the Participant's claim is denied. The GEBC shall give the written notification within the period prescribed in Section 8.4, except that, when the GEBC denies a claim for reimbursement of expenses, the GEBC shall give the written notification within ninety days after the claim for reimbursement is submitted (or, if special circumstances require an extension for up to an additional ninety days, and the GEBC so notifies the Participant with ninety days after the claim for reimbursement is submitted, within the extended period). If the GEBC does not give the written notification of denial within the prescribed period, the claim shall be deemed denied at the end of the prescribed period.

8.5   Contents of Written Denial Notices. Whenever the GEBC denies a claim under Section 8.3.2 or Section 8.4.3, the written notification shall include a statement of the specific reason or reasons for the

P00210

denial; a specific reference to the provision or provisions of the Plan upon which the decision to deny the claim was based; a description of any additional material or information which would be needed to enable the Participant to perfect the claim; and a description of the steps which the Participant may take to obtain a review of the denial under the provisions of Section 9.

## Section 9.    Review Procedure for Denials of Claims for Short Term Disability Benefits and Vocational Rehabilitation Benefits

9.1    Employees' Benefit Claim Review Committee.  The Employees' Benefit Claim Review Committee, a committee established by Pacific Telesis Group and consisting of three or more persons, shall be a named fiduciary of the Plan within the meaning of section 402(a)(2) of ERISA, and shall have the responsibility to provide a full and fair review, under section 503(2) of ERISA, whenever a Participant whose claim has been denied under Section 8.3.2 or 8.4.3 presents a written request for such a review within sixty days after receiving written notice of the denial. A Participant may appoint an agent to act on behalf of the Participant in requesting a review.

9.2    Rights to Documents. A Participant who requests a written review shall have the right to review pertinent documents which bear upon the claim, and to submit issues and comments to the Review Committee in writing.

9.3    Consideration by the Committee.  The Review Committee shall decide the claim based upon the evidence which was considered by the GEBC, the issues and comments submitted by the Participant, and such other evidence as the Review Committee may independently discover. The Review Committee may decide the claim entirely on the basis of evidence submitted in writing, and is not required to conduct a hearing.  No Participant or agent of a Participant shall have any right to present oral testimony or to cross examine authors of any documents considered by the Review Committee.

9.4    Discretion of the Committee.  The Review Committee shall have the power and discretion to resolve all factual issues presented in a request for review in a reasonable manner, and to interpret and adopt reasonable constructions of any provision of the Plan whenever interpretation or construction is needed to resolve any issue presented in a request for review. The Review Committee shall also have the power and discretion to establish general interpretations, rules, and procedures to guide and assist and the GEBC in approving or denying similar claims under Section 8.

9.5    Decision by the Committee.  The Review Committee shall make its decision on a request for review within sixty days after it receives the written request, unless the Review Committee extends the time for decision because of special circumstances which require the extension.  If the Review Committee determines that special circumstances do require an extension, the Review Committee shall notify the Participant of the reason for the extension, and the period thereof; the Review Committee shall give this notification in writing, before the original sixty day period for reviewing a claim has expired.  If the Review Committee extends the time for deciding the claim, it may extend the time for no more than an additional sixty days beyond the expiration of the original period.   The Review Committee shall inform the Participant of its decision in writing, and shall notify the Participant of the specific reasons for its decision and of the Plan provisions on which its decision is based. The Review Committee shall give this written notification whether it decides to deny the claim on review, or to approve payment of the claim on review. If the Review Committee fails to notify the Participant of its decision, in writing, within the period required by this Section 9.5, the claim shall be deemed to be denied at the end of that period.

9.6    Finality of the Review Procedure.  If a claim is denied under Section 8.3.2 or 8.4.3, and the Participant fails to request a review in accordance with the provisions of Section 9.1, then the Plan shall have no liability toward the Participant with respect to any benefit that was the subject of that claim. If the Review Committee denies a claim under Section 9.5, then the Plan shall have no liability toward the Participant, with respect to the benefit that was denied, unless a court of competent jurisdiction shall determine that the Review Committee has abused its discretion in deciding to deny the claim.

27093

P00211

## Section 10.    Claims for Long Term Disability Benefits

**10.1    Responsibility of the Long Term Disability Claims Administrator.** The Plan Administrator shall appoint a Long Term Disability Claims Administrator, who shall have the responsibility to approve or deny claims for Long Term Disability Benefits under the terms of the Plan. The Long Term Disability Claims Administrator may be an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more states.

**10.2    Presentation of Claims for Long Term Disability Benefits.** A Participant may present a request for Long Term Disability Benefits by filing a written claim with the Long Term Disability Claims Administrator, no later than ninety days following the end of the fifty-two week period for which Short Term Disability Benefits were payable.

**10.3    Disposition of Claims for Long Term Disability Benefits.** Whenever a claim for Long Term Disability Benefits is presented to the Long Term Disability Claims Administrator in accordance with the provisions of Section 10.2, the Long Term Disability Claims Administrator shall determine whether to approve payment or to deny the claim.

**10.3.1    Conditions for Approval of Payment of Long Term Disability Benefits.** The Long Term Disability Claims Administrator shall approve payment if:

(a)  The Participant is disabled by Long Term Disability;

(b)  The other requirements of Section 5 have been satisfied; and

(c)  No event requiring discontinuance of benefits under Section 7 has occurred.

DAP shall determine initially whether the Participant is disabled by Long Term Disability under (a) above. The Long Term Disability Claims Administrator shall determine whether the conditions of (b) and (c) above have been met and whether the Participant continues to meet the conditions for benefit payments once payment have commenced.

For the purpose of deciding whether the Participant is disabled by Long Term Disability, the Participant may be required to submit to medical, psychiatric, or psychological examinations by a physician, psychologist, or other health care professional designated by DAP or the Long Term Disability Claims Administrator, including a physician, psychologist, or other health care professional employed by a Participating Company. The Participant may be required to be evaluated by a Qualified Vocational Rehabilitation Counselor regarding employment options. The opinion of a physician, psychologist, Qualified Vocational Rehabilitation Counselor, or other health care professional may be relied upon, even if that opinion is in conflict with the opinion of the Participant's treating physician or psychologist or the opinions of others which are offered by the Participant. If the Participant's terms and conditions of employment are governed by the terms of a collective bargaining agreement that provides for resolution of conflicting medical opinions by submission to an agreed-upon medical examiner, then the opinion of such examiner shall be accepted for purposes of (a) above. The Participant may also be required to submit a medical opinion of the Participants' treating physician, or other evidence of Long Term Disability, and to submit to personal interviews with any representative of the Long Term Disability Claims Administrator.

All documents, photographs, films, recordings, and physical evidence obtained through the claim procedure by the Long Term Disability Claims Administrator shall be the property of the Plan, not the property of the Long Term Disability Claims Administrator, although the files which preserve documents, photographs, films, recordings, and physical evidence may be maintained in the custody of the Long Term Disability Claims Administrator.

27093

P00212

10.3.2   Conditions for Denial of Claims for Long Term Disability Benefits.  Whenever the Long Term Disability Claims Administrator does not approve a payment of a claim for Long Term Disability Benefits, the Long Term Disability Claims Administrator shall notify the Participant, in writing, that the Participant's claim is denied.  The Long Term Disability Claims Administrator shall give the written notification within ninety days following the date when the Participant gives notice of the claim under Section 10.2, except in the following cases:

(a)  If the Long Term Disability Claims Administrator has previously approved payment of a claim for Long Term Disability Benefits, and disapproves further payments because the Long Term Disability Claims Administrator has determined that Long Term Disability has ceased, then the Long Term Disability Claims Administrator shall give the written notification within ninety days following the date when the Long Term Disability Claims Administrator has determined that Long Term Disability has ceased;

(b)  If the Long Term Disability Claims Administrator has previously approved payment of a claim for Long Term Disability Benefits, and discontinues further payments under Section 7, then the Long Term Disability Claims Administrator shall give the written notification within ninety days following the date when Long Term Disability Claims Administrator learns of the event which caused payments to be discontinued; and

(c)  If payment of a Long Term Disability Benefit is reduced or eliminated in order to permit the Plan to recover an overpayment or advance, then the Long Term Disability Claims Administrator shall give written notification within ninety days after declaring the overpayment.

If special circumstances require the Long Term Disability Claims Administrator to extend the ninety day period for disposing of a claim, the Long Term Disability Claims Administrator shall give written notice to the Participant of those special circumstances within that ninety day period; the extension may be for a period of no more than an additional ninety days beyond the original ninety day period.  If the Long Term Disability Claims Administrator does not give the written notification of denial within the period of ninety days (or any permitted extension thereof), and also has not approved payment, then the claim shall be deemed denied at the end of that period.

10.4     Contents of Written Denial Notices.  Whenever the Long Term Disability Claims Administrator denies a claim under Section 10.3.2, the written notification shall include a statement of the specific reason or reasons for the denial; a specific reference to the provision or provisions of the Plan upon which the decision to deny the claim was based; a description of any additional material or information which would be needed to enable the Participant to perfect the claim; and a description of the steps which the Participant may take to obtain a review of the denial under the provisions of Section 11.

Section 11.      Review Procedure for Denials of Claims for Long Term Disability Benefits

11.1     Long Term Disability Claim Review Administrator.  The Plan Administrator shall appoint a Long Term Disability Claim Review Administrator, who shall be a named fiduciary of the Plan within the meaning of section 402(a)(2) of ERISA, and shall have the responsibility to provide a full and fair review, under section 503(2) of ERISA, whenever a Participant whose claim has been denied under Section 10.3.2 presents a written request for such a review within sixty days after receiving written notice of the denial.  The Long Term Disability Claim Review Administrator may be an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more states; and may be the same insurance company, insurance service, or other similar organization that is appointed Long Term Disability Claims Administrator under the provisions of Section 10.1.

11.2     Rights to Documents.  A Participant who requests a written review shall have the right to review pertinent documents which bear upon the claim, and to submit issues and comments to the Long Term Disability Claims Review Administrator in writing.  A Participant may appoint an agent to act on behalf of the Participant in requesting a review.

27093                                        21

P00213

**11.3    Consideration by the Claims Review Administrator.**  The Long Term Disability Claims Review Administrator shall decide the claim based upon the evidence which was considered by the Long Term Disability Claims Administrator, the issues and comments submitted by the Participant, and such other evidence as the Long Term Disability Claims Review Administrator may independently discover.  The Long Term Disability Claims Review Administrator may decide the claim on entirely on the basis of evidence submitted in writing, and is not required to conduct a hearing. No Participant or agent of a Participant shall have any right to present oral testimony or to cross examine authors of any documents considered by the Long Term Disability Claims Review Administrator.  All documents, photographs, films, recordings, and physical evidence obtained by the Long Term Disability Claim Review Administrator shall be the property of the Plan, not the property of the Long Term Disability Claim Review Administrator, although files of such documents, and physical evidence may be maintained in the custody of the Long Term Disability Claim Review Administrator.

**11.4    Discretion of the Long Term Disability Claim Review Administrator.**  The Long Term Disability Claim Review Administrator shall have the power and discretion to resolve all factual issues presented in a request for review in a reasonable manner, and to interpret and adopt reasonable constructions of any provision of the Plan whenever interpretation or construction is needed to resolve any issue presented in a request for review.  The Long Term Disability Claim Review Administrator shall also have the power and discretion to establish general interpretations, rules, and procedures to guide the Long Term Disability Claim Administrator when approving or denying similar claims under Section 10.

**11.5    Resolution by the Long Term Disability Claims Review Administrator.** The Long Term Disability Claims Review Administrator shall make its decision on a request for review within sixty days after it receives the written request, unless the Long Term Disability Claims Review Administrator extends the time for decision because of special circumstances which require the extension.  If the Long Term Disability Claims Review Administrator determines that special circumstances do require an extension, the Long Term Disability Claims Review Administrator shall notify the Participant of the reason for the extension, and the period thereof; the Long Term Disability Claims Review Administrator shall gives this notification in writing, before the sixty day period for reviewing a claim has expired.  If the Long Term Disability Claims Review Administrator extends the time for deciding the claim, it may extend the time for no more than an additional sixty days beyond the expiration of the original period.  The Long Term Disability Claims Review Administrator shall inform the Participant of its decision in writing, and shall notify the Participant of the specific reasons for its decision and of the Plan provisions on which its decision is based.  The Long Term Disability Claims Review Administrator shall give this written notification whether it decides to deny the claim on review, or to approve payment of the claim on review.  If the Long Term Disability Claims Review Administrator fails to notify the Participant of its decision, in writing, within the period required by this Section 11.5, the claim shall be deemed to be denied at the end of that period.

**11.6    Finality of the Review Procedure.** If a claim is denied under Section 10.3.2, and the Participant fails to request a review in accordance with the provisions of Section 11.1, then the Plan shall have no liability toward the Participant with respect to any benefit that was the subject of that claim.  If the Long Term Disability Claims Review Administrator denies a claim under Section 11.5, then the Plan shall have no liability toward the Participant, with respect to the benefit that was denied, unless a court of competent jurisdiction shall determine that the Long Term Disability Claims Review Administrator has abused its discretion in deciding to deny the claim.

27093

22

P00214

**Section 12.    General Provisions**

12.1    <u>Plan Creates Rights Only to Benefits</u>.  No action of Pacific Telesis Group in establishing the Plan, and no action taken under the Plan, shall be construed to give any Employee a right to be retained in the service of a Participating Company, or any right or claim to any benefit or allowance after discharge from the service of a Participating Company (other that a right or claim (a) for such Short Term Disability Benefits, Long Term Disability Benefits, and Vocational Rehabilitation Benefits as may be provided under the Plan to Employees who resign or retire from service at or before the expiration of the maximum period of fifty-two weeks for which Short Term Disability Benefits payable under the Plan, or (b) for Short Term Disability Benefits or Vocational Rehabilitation Payments in such amounts as may have otherwise become payable prior to such discharge from service).

12.2    <u>Right to Recover Overpayments</u>.  Where the methods prescribed in Section 4.2.3, or 5.2.3 are insufficient to accomplish the recovery of an overpayment of benefits from the Plan, the Plan Administrator may take other reasonable and prudent steps to recover such overpayments, not excluding the pursuit of a civil action against a Participant in appropriate cases.

12.3    <u>Release of Benefits under the Plan</u>.  Benefits payable under the Plan may be the subject of waiver, compromise, or release, as part of a settlement of any claim, dispute or action between a Participating Company and any Participant.  With respect to any claim or action under any workers' compensation law or other law providing for employer liability on account of personal injuries to employees, benefits payable under the Plan, although not waived, compromised, or released in the settlement of such a claim or action, shall be offset by any amount paid by a Participating Company in settlement of the claim or action, to the extent that such amount represents a payment on account of liability for an Integrated Benefit described in Section 4.2.1(b) and Section 5.2.1(b).  Benefits payable under the Plan may be waived or released in consideration for the payment of severance pay under the provisions of any severance pay arrangement maintained by a Participating Company.

**Section 13. ERISA Provisions**

13.1    <u>Plan Administration</u>.  Pacific Telesis Group shall be the administrator of the Plan, within the meaning of section 3(16) of ERISA.

13.2    <u>Named Fiduciaries</u>.  Pacific Telesis Group, the Review Committee, and the Long Term Disability Claim Review Administrator shall be named fiduciaries of the Plan, within the meaning of section 402(a)(2) of ERISA.

13.3    <u>Allocation of Fiduciary Responsibility</u>.  The Review Committee shall have only the fiduciary responsibility assigned to it under Section 9 of the Plan, unless Pacific Telesis Group shall delegate additional fiduciary responsibility to it in writing.  The Long Term Disability Claim Review Administrator shall have only the fiduciary responsibility assigned to it under Section 11 of the Plan, unless Pacific Telesis Group shall delegate additional fiduciary responsibility to it in writing. Pacific Telesis Group shall retain all fiduciary responsibility with respect to the Plan except the fiduciary responsibility assigned to the Review Committee under Section 9 and the fiduciary responsibility assigned to the Long Term Disability Claim Review Administrator under Section 11, but Pacific Telesis Group may delegate all or any portion of its fiduciary responsibility, in a writing signed by the Executive Vice-President - Human Resources, to other persons, committees, or entities, who will become fiduciaries with respect to the responsibility so delegated.

13.4    <u>Multiple Fiduciary Capacities</u>.  Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

27093                                        23

P00215

13.5   Employment of Advisers.  The named fiduciaries designated in Section 13.2 and any person, committee, or entity, who becomes a fiduciary by reason of a delegation under Section 13.3 may employ one or more persons to render advice with regard to any fiduciary responsibility that such fiduciary may have under the Plan.

13.6   Unfunded Plan.  No fund shall be established to provide for benefits under the Plan.  Benefits provided under the Plan shall be a charge against the assets of the Participating Company that employs the Participant at the time when Short Term Disability commences.

13.7   No Insurance.  In establishing and maintaining the Plan, Pacific Telesis Group intends that the Plan shall not be deemed to be an insurance contract, insurance company, or other insurer for purposes of any law of any state purporting to regulate insurance companies or insurance contracts.

13.8   Plan Year. The first plan year shall begin on March 1, 1990 and end on December 31, 1990. Thereafter, the records of the Plan shall be maintained on the basis of a calendar year that begins on January 1 and ends on December 31.

Section 14.   Amendments and Termination

14.1   Authority to Amend and Terminate.  Pacific Telesis Group may amend the Plan at any time, and from time to time.  Pacific Telesis Group may delegate to its Executive Vice President –Human Resources the authority to adopt such amendments to the Plan as, in the opinion of the Executive Vice President - Human Resources are required or made desirable by provisions of ERISA or other applicable laws; are needed to conform the terms of the Plan to the provisions of a collective bargaining agreement which has been entered into by any Participating Company; or are otherwise made necessary or convenient for business reasons and will not (when aggregated with all other changes to such plan approved by the Executive Vice President - Human Resources pursuant to this authority during the same calendar year) increase or decrease the annual expense of maintaining the Plan by more than $ 15,000,000.  Pacific Telesis Group may terminate the Plan at any time, and may delegate to its Executive Vice President - Human Resources, the authority to terminate the Plan. No amendment or termination of the Plan pursuant to this Section 14.1 shall operate to relieve a Participating Company of any obligation it may have to continue to provide collectively-bargained benefits to employees during the life of an applicable collective bargaining agreement.

14.2   Procedure to Amend.  Any amendment adopted in accordance with Section 14.1 shall be adopted in writing, by resolution of Pacific Telesis Group, or, if adopted by the Executive Vice President - Human Resources, shall be adopted in writing by a resolution executed by the Executive Vice President - Human Resources.

14.3   No Deemed Amendments.  In the event that there is deemed to be a conflict between any express term of the Plan, as set forth in this instrument, or as amended in accordance with Section 14.2, and any description of such term as set forth in a summary plan description of the Plan or other writing describing the Plan, the express term of the Plan, and not the summary plan description or other writing, shall control. No statement made in a summary plan description or other writing shall be deemed to constitute an amendment to the Plan unless such statement is formally adopted as provided in Section 14.2.

14.4   Certain Amendments Prohibited.  No amendment to the Plan, and no act of termination of the Plan, shall reduce or eliminate the right of any Participant to receive any amount of a benefit which has become payable under Section 4.3, Section 5.3, or Section 6.3 at or before the time of such amendment or termination, unless the Participant has consented to the reduction or elimination of such amount of benefit.

27093

24

P00216