# EXHIBIT 1

PART 4

```
============================================================================
Claim Number : A325033343-0001-07                    Date Loss : 11/19/2003
Client       : 1632      - SBC Communications, Inc.
Account      : 16320510  - F9 -Pacific Bell Telephone Company
Unit         : F9305     - PB/NB BCS
Claimant     : GLOVER, YVONNE D
============================================================================
```

```
---------------------------------- NOTES -----------------------------------
```

```
Event/Clmnt/Claim   Date       Tp Examiner
------------------  ---------- -- ------------------------------------------
```

                         CM unable to reach ee.
                         [Time Note Created : 2:00 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 CN JFENNESS
                         spoke with Sylvia/supv. who confirmed that EE
                         was working 4 hour days prior to this absence,
                         but has now been out full days since 10/27/04.
                         [Time Note Created : 5:41 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 CN TAMIKOR
                         Silvia ee super ci to speak to cm. cm not
                         avail. tf to cm.
                         [Time Note Created : 5:38 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 CN LBEDINGE
                         Supv Sylvia E Alvera, returned CM's call. This
                         EE has NOT RTW. EE's FDA was 10/27/04. Diary to
                         CM.
                         [Time Note Created : 2:59 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 U1 JFENNESS
                         csr please verify EE FDA and RTW date.  If EE
                         RTW prior to FDD then this claim was an error
                         and should have been open as a JAC.
                         [Time Note Created : 2:01 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 CN JFENNESS
                         call to Sylvia/supv to verify what day EE RTW 4
                         hour days, if it was before the FDD the this
                         claim should have been a JAC claim and not an
                         SD claim. CM left message for RTC.
                         [Time Note Created : 2:01 PM ]
```
----------------------------------------------------------------------------
```
A325033343-0001-07 11/04/2004 CN JFENNESS
                         From: ALVERA, SYLVIA E (PB)
                         [mailto:sa2728@sbc.com]
                         Sent: Wednesday, November 03, 2004 6:17 PM
                         To: Fennessy, Jennifer
                         Subject: RE: Yvonne Glover
                         Importance: High

                         Hi Jennifer,

                         I have provided the information you requested
                         below in blue.

                         Sylvia Alvera

```
=================================================================
Claim Number : A325033343-0001-07                    Date Loss : 11/19/2003
Client       : 1632        - SBC Communications, Inc.
Account      : 16320510   - F9 -Pacific Bell Telephone Company
Unit         : F9305      - PB/NB BCS
Claimant     : GLOVER, YVONNE D
=================================================================
```

------------------------------- NOTES -------------------------------

```
Event/Clmnt/Claim  Date        Tp Examiner
-----------------  ----------  --  --------------------------------
```

                        Senior Database Administrator
                        BCS Sales Operations Support
                        925 824-7156 Office
                        510 446-0495 Pager

                        -----Original Message-----
                        From: Fennessy, Jennifer
                        [mailto:jfennessy@sedgwickcms.com]
                        Sent: Wednesday, November 03, 2004 4:07 PM
                        To: ALVERA, SYLVIA E (PB)
                        Subject: Yvonne Glover

                        I have been assigned as the case manager for
                        the employees short term disability claim.  Can
                        you please advise of the following information.

                        First Day of Absence: 10/26/2004
                        Job Title:    Staff Associate
                        Job Duties (i.e. sitting, crawling, bending):
                        Sitting at keyboard light typing, stapling,
                        transcribing data from attendance calendars
                        into database.
                        Estimated Return To Work date:    Unknown
                        Is modified work available?   Employee is
                        currently on modified 4 hour workdays.
                        Contact person should we need to discuss
                        modified duty and the transitional work
                        program:   Sylvia Alvera
                        Please also provide a contact number for this
                        employee 925 824-7156 (Sylvia Alvera)  775
                        250-8592 (Yvonne Glover)
                        [Time Note Created : 2:00 PM ]
------------------------------------------------------------------
A325033343-0001-07 11/04/2004 CN BBASS
                        Sylvia supv 925-824-7156 or 510-446-0495
                        (pager) ci to correct FDA 10/27/04 not
                        10/26/04, diaried cm to correct.
                        [Time Note Created : 1:22 PM ]
------------------------------------------------------------------
A325033343-0001-07 11/03/2004 OF JFENNESS
                        Adjustment type - State Disability created.
                        Amount:    559.00 Inception date 11/02/2004
                        [Time Note Created : 6:08 PM ]
------------------------------------------------------------------
A325033343-0001-07 11/03/2004 DE JFENNESS
                        EE is not eligible for CP, no BA at this time
                        due to insufficient information
                        [Time Note Created : 6:08 PM ]
------------------------------------------------------------------
```

P00314

Claim Status: Open Pending

Send Medical Request as needed
Maintain 4 point contacts
Obtain medical by 11/10/04
Explore RTW
Make claim decision (approval/denial) by
11/11/04
Refer to PA or RTWS as needed
Verify Offset with W/C adjuster as needed
[Time Note Created : 6:07 PM ]

------------------------------------------------------------

A325033343-0001-07 11/03/2004 MD JFENNESS

Initial Contact: Unable to contact provider as
no contact information has been provided.
[Time Note Created : 6:07 PM ]

------------------------------------------------------------

A325033343-0001-07 11/03/2004 CN JFENNESS

Initial Contact: Email sent to EE's supervisor
to verify FDA, job title, job duties, ERTW date
and who contact person is for TWP.

From:      Fennessy, Jennifer
Sent:      Wednesday, November 03, 2004 6:07 PM
To:        'sa2728@camail.sbc.com'
Subject:   Yvonne Glover

I have been assigned as the case manager for
the employees short term disability claim.  Can
you please advise of the following information.

First Day of Absence:
Job Title:
Job Duties (i.e. sitting, crawling, bending):
Estimated Return To Work date:
Is modified work available?
Contact person should we need to discuss
modified duty and the transitional work
program:
Please also provide a contact number for this
employee

Thank you in advance for your assistance-
[Time Note Created : 6:07 PM ]

------------------------------------------------------------

A325033343-0001-07 11/03/2004 CM JFENNESS

Initial Contact: Call placed to EE to advise
who cm is, medical due date, fax and telephone
number, and importance of returning a signed
ROI.  Number listed 775-250-8592 was
disconnected.
[Time Note Created : 6:04 PM ]

------------------------------------------------------------

A325033343-0001-07 11/03/2004 EX JFENNESS

Initial Contact: Call placed to Helmsman to
obtain w/c claim number, adjuster name.
Claim #: 648-310990
Adjuster: Jeremy Lau
Email was sent to adjuster to verify current
claim status, status of receipt of medical
records, and offset amount.

```
========================================================================
Claim Number : A325033343-0001-07                    Date Loss : 11/19/2003
Client       : 1632     - SBC Communications, Inc.
Account      : 16320510 - F9 -Pacific Bell Telephone Company
Unit         : F9305    - PB/NB BCS
Claimant     : GLOVER, YVONNE D
========================================================================
```

---------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------- -- ------------------------------------------

```
                        From:    Fennessy, Jennifer
                        Sent:    Wednesday, November 03, 2004 6:03 PM
                        To:      'jeremy.lau@libertymutual.com'
                        Subject: 648-310990 Yvonne Glover

                        I have been assigned the SD case manager for
                        this claimant.  Who has had a first day of
                        absence of 10/26/04.  Can you please advise if
                        the claim has been accepted?  If so, what
                        amount of TTD is being paid?  Have you received
                        any medical to date?
                        [Time Note Created : 6:02 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 TP TGRAVES
```
                        Claim reviewed and assigned to WC Companion
                        Team for handling.
                        [Time Note Created : 6:34 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 CI TGRAVES
```
                        Examiner change:  From:  inc  To:  jfenness
                        **** NOTE CREATED BY: SYS ****
                        [Time Note Created : 6:33 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 CT SYS
```
                        Subtype changed from  to NC
                        **** NOTE CREATED BY: tgraves ****
                        [Time Note Created : 6:33 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 ST CHARYLEM
```
                        Mailed wc relapse packet to EE, cc: file
                        [Time Note Created : 4:54 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 EM SYS
```
                        To: 'sa2728@sbc.com' Subject:DISABILITY CLAIM
                        NOTICE - YVONNE D GLOVER Attention:SYLVIA E
                        ALVERA Attachments:YVONNE D GLOVER.doc
                        **** NOTE CREATED BY: charylem ****
                        [Time Note Created : 4:53 PM ]
```
--------------------------------------------------------------------------
A325033343-0001-07  11/02/2004 CN YCULLAR
```
                        Supervisor Conclusion to calls
                        Spoke with:  Sylvia Alavera
                        on 11/2/2004 4:32 PM

                        Successive Relapse

                        Employee's home telephone number:775 508 8592
```

```
========================================================================
Claim Number : A325033343-0001-07                    Date Loss : 11/19/2003
Client       : 1632        - SBC Communications, Inc.
Account      : 16320510    - F9 -Pacific Bell Telephone Company
Unit         : F9305       - PB/NB BCS
Claimant     : GLOVER, YVONNE D
========================================================================
```

```
-------------------------------- NOTES --------------------------------
```

```
Event/Clmnt/Claim  Date        Tp Examiner
-----------------  ----------  -- --------------------------------------
```

```
                        Is this a work-related illness/ injury?   yes
                        Has or will a w/c claim be filed for this
                        illness/ injury?  yes

                        Job title: staff associate
                        Job Duties:  typing, sitting
                        Scheduled hours: m-f 8-5

                        FDA: 102604
                        FDD: 110204

                        Medical information:   neck/back pain


                        [Time Note Created : 4:52 PM ]
------------------------------------------------------------------------
A325033343-0001-07 11/02/2004 DE SYS
                        neck and shoulder injury from wc accident in
                        7/2002 -  WC # wc648310990. EE rcvd injection
                        11/19, md is making referral for ee on 12/4.
                        **** NOTE CREATED BY: ycullar ****
                        [Time Note Created : 4:32 PM ]
------------------------------------------------------------------------
A325033343-0001-07 11/02/2004 CN SYS
                        Supervisor #1
                        Name   : SYLVIA ALVERA
                        Phone  : 9258247156
                        **** NOTE CREATED BY: ycullar ****
                        [Time Note Created : 4:32 PM ]
------------------------------------------------------------------------
A325033343-0001-07 11/02/2004 CP SYS
                        Claim Policy Number:No Excess
                        SIR for Policy:      000.00
                        [Time Note Created : 4:31 PM ]
------------------------------------------------------------------------
```

P00317

SMAART
P.O. Box 030447
Irving, TX 75063-0447
Telephone 1-866-BSMAART (1-866-276-2278)
Facsimile 1-866-581-9059

November 23, 2004


Yvonne D. Glover
1211 Russell Street
Berkeley, CA 94702


Re:    Pacific Telesis Group Comprehensive Disability Benefits Plan (CDBP)
       Claim Number: A325033343-07

Dear Ms. Glover:

Please be advised that after a careful and thorough review of your request for payment of short term disability benefits under the Pacific Telesis Group Comprehensive Disability Benefits Plan (CDBP), it has been determined that your claim does not qualify for payment. As a result, benefits are denied effective 11/03/04 through the date you return to work.

Section 2 of the CDBP defines "short term disability" as follows:

> "'Short Term Disability' shall mean a sickness, injury, or other medical, psychiatric, or psychological condition, which prevents an Employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices."

Our determination to deny benefits is based on a review of medical documentation provided by Dr. Harrell on 11/09/04 which contained an initial physicians statement form. This information indicated that you had complaints of severe pain in the neck and bilateral arms. The exam findings noted that you had decreased range of motion of the cervical spine and an MRI report of the lumbar spine which showed a disc protrusion. The treatment plan noted that you were considered permanent and stationary as of 10/26/04 and had permanent restrictions and limitations.

On 11/11/04 a call was placed to Dr. Harrell's office to check his/her availability for a telephonic consultation with the SMAART physician advisor, a message was left asking for a return call within 24 hours. A return call was not received, therefore, no additional information could be provided by the treating provider at this point. After review of the medical documentation received to support your claim, and an additional review by a SMAART physician advisor, it

**SBC Medical Absence & Accommodations Resource Team**
As Administered by Sedgwick Claims Management Services Inc.

CDBP Denial Med Not Support (April 2004).doc

was determined that the medical information submitted contains insufficient observable documentation to support an off work status.

In order to determine ongoing disability, SMAART will need clear medical evidence that supports a severe functional impairment or limitation that would give credence to your functional inability to perform your job with or without reasonable work restrictions. This information may be included in the following: chart or progress notes, specialist's evaluations, physical therapy notes, diagnostic test results, operative report (s), or any other medical information you feel supports your inability to work.

Clinical information does not document a severity of your condition(s) that supports your inability to perform your occupation as a Staff Associate from 11/03/04 through the date you return to work.

Any disability benefits received for the period of 11/03/04 through the date you return to work, will need to be repaid. You will be contacted by Payroll and/or its representative to discuss repayment of disability benefits received.

If you disagree with our determination, you or your authorized representative may appeal the determination by submitting a written appeal within 180 days after you receive this denial notice. Enclosed is a copy of the appeal procedure and the appeal form. In your appeal, please state the reason(s) you believe your claim should not be denied. You may also submit additional medical or vocational information, and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration. Your appeal and supporting documentation should be submitted to:

<div align="center">

Quality Review Unit
P.O. Box 630528
Irving, TX 75063
Fax: 1-866-581-9059

</div>

You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

You have a right to bring a lawsuit against the CDBP under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) for denied benefits you believe are due to you, but only after you complete the appeal process as enumerated in the enclosed appeal procedures and in the CDBP's claim procedures, and your appeal has been denied.

Please contact your supervisor to discuss alternate methods to cover this period of time off and to cover future time off, if you will remain out of the workplace.

P00319

Questions regarding your appeal may be referred to the SMAART Quality Review Unit at 1-866-BSMAART (1-866-276-2278).

Sincerely,

Jennifer Fennessy JM
Disability Specialist
SBC Medical Absence and Accommodations Resource Team (SMAART)

**SBC Medical Absence and Accommodation Resource Team**
As Administered by Sedgwick CMS

## Quality Review Unit
## Appeal Procedures

1. Decisions of the Administrator (referred to as SMAART) to deny or limit a claim for benefits may be appealed and be subject to review by the Quality Review Unit (QRU)

2. You, or your authorized representative, may appeal the SMAART decision in writing to the QRU, either by completing the enclosed appeal form or forwarding a letter.

3. Your written appeal letter or form must be mailed or faxed to the QRU and must be postmarked within 180 days after you receive the SMAART notice of denial of benefits letter. Mail or fax your appeal to:

<div align="center">

SMAART Quality Review Unit
PO Box 630528
Irving, TX 75063
Phone – 866-276-2278
Fax – 866-581-9059

</div>

4. Your appeal must be in writing and should state as clearly and specifically as possible any facts and/or reasons why you believe the SMAART decision is incorrect. Since you have only one opportunity to appeal the denial of benefits, you should also include any new or additional medical evidence or materials in support of your appeal which you wish the QRU to consider. Such medical evidence or materials must be submitted along with your written statement at the time you file your appeal. If you are including medical evidence in your appeal, you or your treatment provider must submit the following:

- A clear outline of your level of functionality
- A description of how your level of functionality impacts your ability to work and perform your daily activities
- A detailed description of the treatment provider's rationale for your level of functionality
- Clinical documentation that supports the treatment provider's rationale

<div align="center">

**Mental Health**

</div>

- Findings from formal mental status examination including clinical presentation and interaction
- Presenting signs (observations made by the treatment provider during office visits/therapy sessions)
- Dosage of medications if used; response to medications

<div align="center">

**Medical Health**

</div>

- Findings from physical examinations
- Diagnostic test results (i.e. lab results, x-rays, MRI's, etc.)
- Dosage of medications if used; response to medications

P00321

For additional information regarding what information your treatment provider needs to submit to support disability benefits refer to your SMAART Guide, page 5.

**IMPORTANT NOTE:  A written or verbal notice from you or your authorized representative that you intend to appeal will not be treated as your appeal nor will it stop the 180-day period from running.  Your written appeal must be received by the QRU within 180 days from the date you receive the SMAART written denial or you may lose your opportunity to have the QRU review your claim.**

5.  You or your authorized representative may examine documents that bear on your claim by making a written request for the documents to the QRU.  Such documents could include copies of the plan and/or SPD, medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim.  If you wish your authorized representative to receive copies of medical documents that pertain to your claim, you must first authorize release of the documents by signing and returning with your written request an authorization for release of medical information.  Copies of documents you request to examine will be mailed to you or your authorized representative upon receipt of your written request (and a signed authorization for release of medical information, if applicable.)

**IMPORTANT NOTE:  If you or your authorized representative wish to examine documents, you should immediately request such documents to allow yourself time for review and preparation of your written appeal within the 180-day time period.**

6.  When your written appeal letter or form and any additional medical evidence or materials are received, the QRU will begin the appeal review.  During the appeal review the QRU is not required to conduct a hearing.  You or other authorized representatives are not permitted to present oral testimony.

7.  A qualified individual who was not involved in the decision to deny your initial claim will be appointed to decide the appeal.  If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field and who was not involved in the initial determination. The QRU may consult with, or seek the participation of, medical experts as part of your appeal resolution.

8.  Unless you are notified in writing that more time is needed, the QRU will review and decide your appeal within 45 days of its receipt of your appeal.  If special circumstances require more time to consider your appeal, the QRU may take up to an additional 45 days to reach a decision.  If this additional time is needed, the QRU will notify you in writing by both registered and regular mail before the initial 45-day period has expired.

**IMPORTANT NOTE:  You may not bring a lawsuit to recover benefits until you have filed an appeal with the QRU and either (a) you have received notice from the QRU that your claim has been denied or (b) you have received no notice from the QRU within 45 days of receipt of your appeal, or, if you were notified that an additional 45 days was needed, within 90 days of receipt of your appeal..**

P00322

# SMAART Quality Review Unit Appeal Form

To appeal the denial of your benefits, please complete this form and return it in the enclosed self addressed envelope within 180 days from your receipt of your original denial letter. If your appeal is not received within 180 days from your receipt of your original denial letter the original denial will be upheld.

## Please attach all pertinent medical information

| | | |
|---|---|---|
| **Claim Number:** | **Social Security Number:** | |
| **Last Name:** | **First Name:** | **Middle Initial:** |
| **Street Address** | | |
| **City:** | **State:** | **Zip:** |
| **Home Phone:** | **Work Phone:** | |

Please provide name and phone number of treating physician(s)

| | |
|---|---|
| **Provider Name:**<br>**Address:** | **Phone Number**<br>**Specialty:** |
| **Provider Name:**<br>**Address:** | **Phone Number:**<br>**Specialty:** |
| **Provider Name:**<br>**Address:** | **Phone Number:**<br>**Specialty:** |

Please state specifically why you are requesting an appeal of your benefits. Use the back of the form if necessary or attach a letter if additional space is needed.

|  |
|--|
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

**Do you have additional medical information to submit that is not attached to the form?** _____
**If yes, please submit additional medical information as soon as reasonably possible.**

| |
|---|
| **Employee Certification:**<br><br>I hereby certify that the information provided is complete and accurate to the best of my knowledge.<br><br>Employee Signature:_____Date:_____ |

Please mail completed form in the enclosed envelope to:   Quality Review Unit
P.O. Box 630528
Irving, TX 75063
Phone - 866-276-2278
Fax 1-866-581-9059

Appeals Form.doc rev. 05-24-04

P00323

SMAART
P.O. Box 630447
Irving, TX 75063-0447
Telephone 1-866-BSMAART (1-866-276-2278)
Facsimile 1-866-581-9059

December 23, 2004

Yvonne D. Glover
1211 Russell St.
Berkeley, CA 94702

Re: Medical information received for A325033343-07

Dear Ms. Glover:

On November 23, 2004, the SBC Medical Absence and Accommodation Resource Team (SMAART)
denied your claim for disability benefits. On December 17, 2004, SMAART received information
from Dr. Harrell; however this information does not alter the previous denial decision.

In order for the SMAART Quality Review Unit (QRU) to consider this and any additional information,
you must submit a written appeal to the QRU as described in your denial letter. Enclosed is a copy of
the "Quality Review Unit Appeal Procedures" and the "SMAART Quality Review Unit Appeal Form".
These documents outline what is needed to file a written appeal.

It is very important that you complete the "SMAART Quality Review Unit Appeal Form" or write a
letter requesting an appeal. Submit the appeal form or letter with any relevant documentation you wish
to have the QRU consider at the time you file your appeal. Your appeal must be filed within 180 days
from the date of your denial letter. Once the QRU makes a determination on your request for benefits,
the determination is final.

If you have any questions, please call me at 1-866-276-2278.

Sincerely,

Jennifer Fennessy
Disability Specialist

Enclosures:
    SMAART Quality Review Unit Appeal Form
    Quality Review Unit Appeal Procedures
    Self-Addressed Envelope

**SBC Medical Absence & Accommodations Resource Team**
**As Administered by Sedgwick Claims Management Services Inc.**

Medical after Denial 2002 11-15-04.doc

P00324

**SBC Medical Absence and Accommodation Resource Team**
As Administered by Sedgwick CMS

**Quality Review Unit**
**Appeal Procedures**

1. Decisions of the Administrator (referred to as SMAART) to deny or limit a claim for benefits may be appealed and be subject to review by the Quality Review Unit (QRU)

2. You, or your authorized representative, may appeal the SMAART decision in writing to the QRU, either by completing the enclosed appeal form or forwarding a letter.

3. Your written appeal letter or form must be mailed or faxed to the QRU and must be postmarked within 180 days after you receive the SMAART notice of denial of benefits letter. Mail or fax your appeal to:

<div align="center">

SMAART Quality Review Unit
PO Box 630528
Irving, TX 75063
Phone – 866-276-2278
Fax – 866-581-9059

</div>

4. Your appeal must be in writing and should state as clearly and specifically as possible any facts and/or reasons why you believe the SMAART decision is incorrect. Since you have only one opportunity to appeal the denial of benefits, you should also include any new or additional medical evidence or materials in support of your appeal which you wish the QRU to consider. Such medical evidence or materials must be submitted along with your written statement at the time you file your appeal. If you are including medical evidence in your appeal, you or your treatment provider must submit the following:

- A clear outline of your level of functionality
- A description of how your level of functionality impacts your ability to work and perform your daily activities
- A detailed description of the treatment provider's rationale for your level of functionality
- Clinical documentation that supports the treatment provider's rationale

<div align="center">

**Mental Health**

</div>

- Findings from formal mental status examination including clinical presentation and interaction
- Presenting signs (observations made by the treatment provider during office visits/therapy sessions)
- Dosage of medications if used; response to medications

<div align="center">

**Medical Health**

</div>

- Findings from physical examinations
- Diagnostic test results (i.e. lab results, x-rays, MRI's, etc.)
- Dosage of medications if used; response to medications

P00325

For additional information regarding what information your treatment provider needs to submit to support disability benefits refer to your SMAART Guide, page 5.

**IMPORTANT NOTE: A written or verbal notice from you or your authorized representative that you intend to appeal will not be treated as your appeal nor will it stop the 180-day period from running. Your written appeal must be received by the QRU within 180 days from the date you receive the SMAART written denial or you may lose your opportunity to have the QRU review your claim.**

5.  You or your authorized representative may examine documents that bear on your claim by making a written request for the documents to the QRU. Such documents could include copies of the plan and/or SPD, medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim. If you wish your authorized representative to receive copies of medical documents that pertain to your claim, you must first authorize release of the documents by signing and returning with your written request an authorization for release of medical information. Copies of documents you request to examine will be mailed to you or your authorized representative upon receipt of your written request (and a signed authorization for release of medical information, if applicable.)

**IMPORTANT NOTE: If you or your authorized representative wish to examine documents, you should immediately request such documents to allow yourself time for review and preparation of your written appeal within the 180-day time period.**

6.  When your written appeal letter or form and any additional medical evidence or materials are received, the QRU will begin the appeal review. During the appeal review the QRU is not required to conduct a hearing. You or other authorized representatives are not permitted to present oral testimony.

7.  A qualified individual who was not involved in the decision to deny your initial claim will be appointed to decide the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field and who was not involved in the initial determination. The QRU may consult with, or seek the participation of, medical experts as part of your appeal resolution.

8.  Unless you are notified in writing that more time is needed, the QRU will review and decide your appeal within 45 days of its receipt of your appeal. If special circumstances require more time to consider your appeal, the QRU may take up to an additional 45 days to reach a decision. If this additional time is needed, the QRU will notify you in writing by both registered and regular mail before the initial 45-day period has expired.

**IMPORTANT NOTE: You may not bring a lawsuit to recover benefits until you have filed an appeal with the QRU and either (a) you have received notice from the QRU that your claim has been denied or (b) you have received no notice from the QRU within 45 days of receipt of your appeal, or, if you were notified that an additional 45 days was needed, within 90 days of receipt of your appeal..**

SMF    X1 Quality Review Unit A    eal Form

To appeal the denial of your benefits, please complete this form and return it in the enclosed self addressed envelope within 180 days from your receipt of your original denial letter. If your appeal is not received within 180 days from your receipt of your original denial letter the original denial will be upheld.

## Please attach all pertinent medical information

REDACTED PURSUANT
TO GENERAL ORDER No. 53

| Claim Number: A 325033343-07 | Social Security Number: | |
|---|---|---|
| Last Name: Glover | First Name: Yvonne | Middle Initial: D |
| Street Address 1211 Russell St. | | |
| City: Berkeley | State: CA | Zip: 94702 |
| Home Phone: 775 250-8592 | Work Phone: | |

Please provide name and phone number of treating physician(s)

| Provider Name: Dr. Jill Harrell Address: 350 30th St. Oakland | Phone Number Specialty: |
|---|---|
| Provider Name: Address: | Phone Number Specialty: |
| Provider Name: Address: | Phone Number Specialty: |

Please state specifically why you are requesting an appeal of your benefits. Use the back of the form if necessary or attach a letter if additional space is needed.

I am requesting an appeal to the QRU to reconsider the denial of my disability which is worker comp. injury ~~xx~~ by taking into consideration the additional attached permanent and stationary Report dated October 28, 2004. These ~~xx~~ reports were prepared and signed by Dr. Jill Harrell.

**Do you have additional medical information to submit that is not attached to the form?** yes
**If yes, please submit additional medical information as soon as reasonably possible.**

Employee Certification:

I hereby certify that the information provided is complete and accurate to the best of my knowledge.

Employee Signature: Yvonne Glover          Date: 1/6/05

Please mail completed form in the enclosed envelope to:     Quality Review Unit
P.O. Box 630528
Irving, TX 75063
Phone - 866-276-2278
Fax 1-866-581-9059

Appeals Form.doc rev. 05-24-04

SMAART Quality Review Unit
PO Box 630528
Irving, TX 75063
Telephone: 1-866-BSMAART (1-866-276-2278)
Facsimile: 1-866-581-9059

January 10, 2005

Yvonne D Glover
1211 Russell Street
Berkeley, CA 94702

Re:    Pacific Telesis Group's Comprehensive Disability Benefits Plan (CDBP)
       Claim Number: A325033343-07

Dear Ms. Glover:

This letter serves to acknowledge receipt of your request for appeal of benefits denied under the CDBP. Your request for appeal was received in the SMAART Quality Review Unit on January 7, 2005.

Your request for appeal of benefits denied will be reviewed by the SMAART Quality Review Unit and you will receive a written response by February 21, 2005.

Under the terms of Section 2, Paragraph 2.1 of the Short Term Disability Plan, disability is defined, in part, as:

"a sickness, injury or other medical, psychiatric, or psychological condition, which prevents an employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices."

Medical records, including chart notes, diagnostic tests, and hospital summaries, relevant to this current absence should be submitted regardless of the length of the disability.

Sincerely,

Doreen Ongayo

Doreen Ongayo DO
ERISA Specialist
SMAART Quality Review Unit

**S B C  M e d i c a l  A b s e n c e  &  A c c o m m o d a t i o n s  R e s o u r c e  T e a m**
**As  Administered  by  Sedgwick  Claims  Management  Services  Inc.**

Acknowledgement Letter - CDBP.doc

P00328

**LEWIS, FEINBERG, RENAKER & JACKSON, P.C.**
ATTORNEYS AT LAW
1330 BROADWAY, SUITE 1800
OAKLAND, CALIFORNIA 94612-2509

PHONE: (510) 839-6824 ● FAX: (510) 839-7839
SENDER'S E-MAIL: TRENAKER@LEWISFEINBERG.COM

January 24, 2005

**BY U.S. MAIL AND FACSIMILE: (866) 581-9059**

Doreen Ongayo
ERISA Specialist
SMAART Quality Review Unit
P.O. Box 630528
Irving, TX 75063

>    Re:    **Yvonne Glover**
>    **PTG Comprehensive Disability Benefits Plan**
>    **Claim No. A325033343-07**

Dear Ms. Ongayo:

Yvonne Glover has retained my firm to represent her in connection with her claim for short-term disability benefits under the Pacific Telesis Group Comprehensive Disability Benefits Plan ("the Plan").

You acknowledged receipt of Ms. Glover's appeal of the denial of her claim by letter dated January 10, 2005. In that letter, you requested that Ms. Glover provide "[m]edical records, including chart notes, diagnostic tests, and hospital summaries, relevant to this current absence." We are in the process of assembling these materials to submit as a supplement to Ms. Glover's appeal. Accordingly, we request that SMAART take no further action on Ms. Glover's appeal until we have submitted this information. We anticipate submitting the supplement no later than May 23, 2005 – that is, 180 days from the date of SMAART's denial of Ms. Glover's claim.

To assist us in supplementing Ms. Glover's appeal, please provide me with copies of all documents relevant to her claim. Specifically, pursuant to ERISA § 503, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1(h)(2)(iii), Ms. Glover requests copies of all documents, records, and other information relevant to her claim for benefits. Under 29 C.F.R. § 2560.503-1(m)(8), a document, record, or other information is "relevant to a claim for benefits" if it

(i)    Was relied upon in making the benefit determination;

(ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii)    Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit

Doreen Ongayo
ERISA Specialist
SMAART Quality Review Unit
January 24, 2005
Page 2

determination.

The Department of Labor regulations under ERISA § 503, 29 U.S.C. § 1133, require that these documents be provided free of charge. 29 C.F.R. § 2560.503-1(h)(iii).

In addition, pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), please provide us with copies of the latest updated summary plan description and the bargaining agreement, trust agreement, contract, or other instruments under which the Plan is established or operated. You are hereby authorized to bill my firm for "a reasonable charge to cover the cost of furnishing such complete copies," as provided by ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4).

A copy of our authorization to obtain documents on Ms. Glover's behalf is enclosed. Should you have any questions concerning this request or Ms. Glover's claim, or should you require any additional information, please call me.

Very truly yours,

LEWIS, FEINBERG, RENAKER & JACKSON, P.C.

By

Teresa S. Renaker

encl: Authorization

cc: client

[S:\P-FILES\glover letter to SMAART.wpd]

## ATTORNEY'S AUTHORIZATION FORM

I, <u>Yvonne Glover</u>, hereby authorize Lewis, Feinberg, Renaker & Jackson, P.C., Attorneys at Law, and/or any attorney or attorneys designated or associated with them, to obtain documents and files on my behalf in connection with my rights under the short-term disability plan and/or any other employee benefit plan sponsored or maintained by SBC, Inc.

Dated: __1/24/05__          ___*Yvonne Glover*___
                              Yvonne Glover

[S:\P-FILES\glover plan auth.wpd]

P00331

**LEWIS, FEINBERG, RENAKER & JACKSON, P.C.**
ATTORNEYS AT LAW
1330 BROADWAY, SUITE 1800
OAKLAND, CALIFORNIA 94612-2509
PHONE: (510) 839-6824 ● FAX: (510) 839-7839

DATE/TIME:    January 24, 2005 __1. 30__ AM/PM

FROM:

**TOTAL PAGES TRANSMITTED (INCLUDING FAX COVER SHEET):** __4__

**NOTICE:  CONTENTS MAY BE PRIVILEGED/CONFIDENTIAL**

The following material is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and/or otherwise exempt from disclosure under applicable law.

If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by telephone (collect) and either destroy the material or mail it back to us.

**To**  Doreen Ongayo          **Fax**      (866) 581-9059        **Via**  Fax
ERISA Specialist          **Phone**
SMAART Quality Review Unit

**CLIENT NAME:** Glover, Yvonne          **CLIENT/MATTER NO.:**

**MESSAGE**

**IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION,
PLEASE CALL (510) 839-6824**

TRANSMISSION VERIFICATION REPORT

```
                                TIME  : 01/24/2005 13:30
                                NAME  : LEWIS FEINBERG
                                FAX   : 15108397839
                                TEL   : 15108396824
                                SER.# : BROK4J137205
```

```
DATE,TIME            01/24  13:29
FAX NO./NAME         18665819059
DURATION             00:01:15
PAGE(S)              04
RESULT               OK
MODE                 FINE
                     ECM
```

## LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
### ATTORNEYS AT LAW
#### 1330 BROADWAY, SUITE 1800
#### OAKLAND, CALIFORNIA 94612-2509
#### PHONE: (510) 839-6824 ● FAX: (510) 839-7839

DATE/TIME:    January 24, 2005  1:30  AM/PM

### FROM:

**TOTAL PAGES TRANSMITTED (INCLUDING FAX COVER SHEET): 4**

---

### NOTICE:  CONTENTS MAY BE PRIVILEGED/CONFIDENTIAL

The following material is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and/or otherwise exempt from disclosure under applicable law.

If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by telephone (collect) and either destroy the material or mail it back to us.

---

| To | Doreen Ongayo | **Fax** | **(866) 581-9059** | Via | Fax |
|----|---------------|---------|--------------------|-----|-----|
|    | ERISA Specialist | **Phone** | | | |
|    | SMAART Quality Review Unit | | | | |

**CLIENT NAME:** Glover, Yvonne          **CLIENT/MATTER NO.:**

## MESSAGE

SMAART Quality Review Unit
P.O. Box 630528
Irving, TX 75063
Telephone: 1-866-BSMAART (1-866-276-2278)
Facsimile: 1-866-581-9059

January 19, 2005

Yvonne Glover
1211 Russell St.
Berkley, CA 94702

Re:    Pacific Telesis Group's Comprehensive Disability Benefits Plan (CDPB)
       Claim Number:  A325033343-07

Dear Ms. Glover

The SMAART Quality Review Unit reviewed submitted material and information regarding the denial of short-term disability benefits by the SBC Medical Absence Accommodations and Resource Team (SMAART), for our claim with first date absent of October 27, 2004.  After this review, the Unit determined to uphold the denial of benefits based on the following:

The Short Term Disability Plan provides in Section 2 Paragraph 2.1 that "Short Term Disability" shall mean a sickness, injury or other medical, psychiatric, or psychological condition, which prevents an Employee from engaging in his or her normal occupation or employment with the Participating Company, or such other occupation or employment as he or she is assigned in accordance with the Participating Company's normal practices."

The Unit and the independent physician advisor, a specialist in orthopedic surgery, reviewed all of the medical information contained in your file and submitted during your appeal. The medical information included documentation for the period of October 28, 2004 through November 9, 2004 from Jill Harrell, M.D.

The medical information provided for the denial/ appeal period did not contain sufficient clinical findings to substantiate a disabling condition.

The medical information indicated that you had complaints of pain with range of motion of the cervical spine and neck. You reported that the pain increases with repetitive work at the shoulder level, heavy lifting and forceful pushing and pulling activities. You also indicated that you experience moderate pain with prolonged work at a keyboard. Your treating physician recommended that you remain off work; disability is due to chronic soft tissue strain of the cervical spine overlying cervical spondylosis and disc protrusion.

The independent physician advisor noted that physical examination findings indicated limited range of motion of the cervical spine without neurological upper extremity findings. There was a reference to magnetic resonance image evidence of central disc herniation at C5-6 and normal electro diagnostic studies. However, the documentation

**S B C  M e d i c a l  A b s e n c e  &  A c c o m m o d a t i o n s  R e s o u r c e  T e a m**
**As  A d m i n i s t e r e d  b y  S e d g w i c k  C l a i m s  M a n a g e m e n t  S e r v i c e s  I n c**

P00334

did not provide evidence of neurological deficit, disuse muscle atrophy or clear loss of function. The diagnostic reports are not documented to show any discreet neural impingement. The independent physician advisor attempted to conduct a teleconference with Dr. Harrell however the teleconference was not conducted due to Dr. Harrell's unavailability. The opinion of the independent physician advisor was that the information provided did not support disability during the appeal/ denial period.

Although some findings are referenced, none are documented to be so severe as to prevent your from performing the job duties of Staff Associate with or without reasonable accommodations from November 3, 2004 to your return to work.

Under the terms of the Pacific Telesis Group's Comprehensive Disability Benefits Plan, the decision of the Unit is final. You have the right to bring suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 after there has been full exhaustion of your appeal rights as enumerated in your plan's claim procedures and those rights have been exercised and the Plan benefit's requested by said claimant in such appeal have been denied in whole or in part by your employer. You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim benefits.

If you have any questions regarding the information contained in this letter, you may contact the SMAART Quality Review Unit at 1-866-276-2278

Sincerely,

Heidi Lasser
Appeals Specialist
SMAART Quality Review Unit

# Social Security Administration
## Retirement, Survivors, and Disability Insurance
Important Information

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500

Date:   December 13, 2004
Claim Number:   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A

1210,CPS,PC7,BA,002508        T003
YVONNE D GLOVER
1211 RUSSELL ST
BERKELEY CA            94702

We are sending you a check for $1,420.00.  This includes benefits due you through November, 2004.  After that, you'll get a check each month for $1,420.00.

When we finish our work on your claim, we will send you a letter explaining your benefit amount.  If you should receive more than one check for the same month(s), please let us know right away.  We may be paying you too much money.

If we do pay you too much, you may have to pay back the amount of the overpaid check(s) or we may have to hold back some of your future benefits.

If you have any questions, call us at 1-800-772-1213.  We can answer most questions over the phone.  If you prefer to visit one of our offices, please check the local phone directory for the office nearest you.  Or call us and we can give you the office address. Please have this letter with you if you call or visit an office.  It will help us answer your questions.

C

# EMERGENCY DEPARTMENT RECORD

| DA TIME 12/08/2003 05:10 pm | DOCTOR | MODE OF ARRIVAL Walk-In | TRIAGE ACUITY Level2 |
| PT NAME glover, yvonne | | ARRIVED FROM Home | |
| PROBLEM BACK/NECK PAIN | AGE 47Y SEX F DOB | TRIAGE BY SD | |

REDACTED PURSUANT TO GENERAL ORDER NO. 53

| TIME 12/08/03 05:14 pm | SIT: B/P 131 / 84 | P 81 | R 20 | WT: 0 (lb) | LAST TT | OXIMETRY 100 |
| T 97.6 | STAND: B/P / | P | | 0 (kg) | | |

MEDICATIONS: clonopin, norco, soma, estrogen patches
(Dose & Frequency)

ALLERGIES: xray dye, erythromycin, talwin, prozac,

Hx OF PRESENT c/o hot sticking pain in neck and back, states had an epidural on 11/12 but it didnt help, states it
ILLNESS feels like pins and needles stabbing in hands and feet

DURATION 1 month

PAIN: 9 / 10

HEALTH Hx bulge in c6, dystonia

INFORMANT Self    LANGUAGE:    INTERPRETER:

| PREG |
| LNMP |
| GRAV |
| PARA |
| SAB |
| TAB |
| MOC |

## INITIAL ASSESSMENT

TIME: 1920    INITIALS:

NEURO: □ N/A

LOC: ☑CONSCIOUS  □ALERT  □AGE APPROPRIATE  □LETHARGIC  □CONFUSED  □UNCONSCIOUS

RSE TO PAIN: □PURPOSEFUL  □NON-PURPOSEFUL  □UNRESPONSIVE

PUPILS: □PERL ____ mm.  □UNEQUAL  R ____ mm.  L ____ SPONT ____

LATERAL GRIPS: RIGHT: □STRONG  □WEAK  □ABSENT
LEFT: □STRONG  □WEAK  □ABSENT

WEIGHT BEARING: □FULL  □PARTIAL  □UNSTEADY  □NONE

LOSS OF CONSCIOUSNESS: □NO  □YES, DURATION

SPEECH: ☑COHERENT  □INCOHERENT  □SLURRED  □SILENT  □SPEAKS ____ WORD SENTENCES

SKIN SIGNS: ☑NORMAL  □PALE  □FLUSHED  □DUSKY  □JAUNDICED  □HOT  □COLD  □DRY  □MOIST  □POOR TURGOR

PAIN: ☑PAIN LOCATION Neck  RATED 9 /10 RADIATES TO Back

□DENIES  □DULL  ☑STABBING  □BURNING  □CRAMPING  □CONSTANT  □INTERMITTENT

CARDIAC: □N/A  □CHEST PRESSURE  □CHEST TIGHTNESS  □CHEST PAIN ____ /10

PULSE: □REGULAR  □IRREGULAR, RHYTHM

□JVD  □WEAK/THREADY

□STRONG  □PEDAL EDEMA  □PACEMAKER  □ACID  □NORMAL CAP REFILL  □DELAYED CAP REFILL

RESPIRATORY: □N/A  □DYSPNEA/SOB  □RETRACTING  □ORTHOPNEIC  □COUGH  □SPUTUM, COLOR ____

TIDAL VOLUME: □NORMAL  □DECREASED

BREATH SOUNDS: RIGHT: □CLEAR  □RALES  □WHEEZES  □RHONCHI  □DECREASED
LEFT: □CLEAR  □RALES  □WHEEZES  □RHONCHI  □DECREASED

□SOFT  □DISTENDED  □OBESE  □ASCITES

□CONSTIPATED  □DIARRHEA  □NAUSEA  □VOMITING  □FEEDING TUBE  □OSTOMY

□TENDER, LOCATION

BOWEL SOUNDS: □NORMAL  □HYPERACTIVE  □HYPOACTIVE  □ABSENT, LAST BM ____

□N/A  □DYSURIA  □HEMATURIA  □BURNING  □FREQUENCY  □INCONTINENT  □FOLEY

□VAG BLEED □PADS# ____  □VAG/PENILE DISCHARGE, DESCRIBE ____

MUSCULOSKELETAL: □N/A  □MAE  □DEFORMITY, LOCATION ____  □CMS INTACT DISTAL TO INJURY

□N/A  □RISK TO OTHERS/SELF  □ETOH/SUBSTANCE ABUSE

SKIN: □INTACT  □LACERATION  □ABRASION  □RASH  □BURN  □HEMATOMA

DESCRIBE:

### VISUAL ACUITY

| | |
| OD | |
| OS | |
| COR | |
| UNCOR | |

### GLASGOW COMA SCALE

| EYE OPENING | |
| SPONTANEOUS | 4 |
| TO VOICE | 3 |
| TO PAIN | 2 |
| NONE | 1 |

| VERBAL RESPONSE | |
| ORIENTED | 5 |
| CONFUSED | 4 |
| INAPPROPRIATE | 3 |
| INCOMPREHENSIBLE | 2 |
| NONE | 1 |

| MOTOR RESPONSE | |
| OBEYS COMMANDS | 6 |
| LOCALIZES PAIN | 5 |
| WITHDRAWS TO PAIN | 4 |
| FLEXION TO PAIN | 3 |
| EXTENSION TO PAIN | 2 |
| NONE | 1 |

TOTAL: 15

| A = Abrasion |
| B = Burn |
| C = Contusion |
| E = Edema |
| L = Laceration |
| I = Incision |
| O = Open Wound |
| R = Redness |
| S = Scar |
| U = Pressure Ulcer |

| INIT | SIGNATURE | TITLE |

REDACTED PURSUANT TO GENERAL ORDER NO. 53

GLOVER, YVONNE D
1260040    0334201206    NER1
47Y    F         I    E/R
ER, PHYSICIAN         E/R

EMER DEPT RECORD

000013013

SUMMIT

P00337



**SUMMIT**
MEDICAL CENTER

*Summit Medical Center*
*Emergency Department*
*350 Hawthorne Ave*
*Oakland, CA 94609*
*Phone: (510) 655-4000*

| | |
|---|---|
| Patient: GLOVER, YVONNE D    Med Rec # M1260040 | Date: 7/1/2004 |
| | Admt: 2004/07/01 14:15:43.0( |
| Emergency Care Provider:   Brian Hinrichsen  PA | Dchg: |

YOU HAVE RECEIVED EMERGENCY TREATMENT ONLY and this is not a substitute for complete medical care. Your follow up doctor should receive a copy of your records. It is important that you report to him/her on any problems that may arise or on any failure to improve from this problem, because it is impossible to recognize and treat ALL elements of your health in a single Emergency Room visit. IF YOU ARE UNABLE TO GET A PRIVATE DOCTOR for treatment of continued problems, you should seek medical care at a local clinic or hospital or return to the Emergency Department. The doctor has indicated these instructions for your care:

e Dr. Harrell next week for recheck.

**Referrals**
If you do not have a physician, you may contact the following provider(s) or clinic(s):

**Medications**
The following medications were prescribed at the time of your visit. Patient information will be provided by the pharmacist on the medication container.

| Medication | Quantity | Dose | Frequenc | Refills | Instructions | Patient Warning | Comment |
|---|---|---|---|---|---|---|---|
| norco 10mg | 15 | 1po | up to qid | 0 | 0 | | |

hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may/be released before all my medical problems are known or treated. I will arrange for follow up care as instructed above. I have read the general instructions.

X _Yvonne Glover_
Person Receiving Instruction

Patient:   GLOVER, YVONNE D
Date:    7/1/2004    Rec#:  M1260040

**000020003**

Patient:.   GLOVER, YVONNE D            Page:    1  of    1

P00338

Patient Name: GLOVER, YVONNE  MR #: 1260040

Date of Service: 07/01/04

DATE OF BIRTH:

TIME OF SERVICE: 1745

> REDACTED PURSUANT
> TO GENERAL ORDER NO. 53

CHIEF COMPLAINT: Neck pain.

HISTORY OF PRESENT ILLNESS:  Ms. Glover is a 47-year-old African-American female who has a chronic neck pain since 2002.  She describes bulging disk from C5 to C7.  She is followed by Dr. Jill Harrell.  She says she had a bad night last night and a bad day today.  She describes stabbing and burning pain and pins and needles in her neck and down her right arm.  She says it is not particularly unusual for her to have a flare of pain like this, but she has to go to work tomorrow and really needs more pain relief.  She takes Norco, Soma and Klonopin.  She has had two epidurals and is awaiting another epidural.  Apparently this happened after a fall out of her chair in 2002.

REVIEW OF SYSTEMS:  She has had no fevers or chills, no vision changes, no chest pain or shortness of breath, no unusual neck stiffness.  No other neurologic problems other than her speech.

PAST MEDICAL HISTORY:  She says in 1990 she lost her speech.  Her doctor told her her tongue muscles were weak and she would have to live with it.  Since then, her speech has been a bit impaired.

PHYSICAL EXAMINATION:
VITAL SIGNS:  Blood pressure 128/90, pulse 70, respirations 20, O2 saturation is 100% on room air.  Temperature is 97.9.
GENERAL:  Ms. Glover is an African-American female seen in the exam room.  She is covered with blankets as we have had troubles with our air conditioning down here, and it has been really freezing in here. It is starting to warm up a bit, and she is warming up as well.
HEENT:  Head normocephalic, atraumatic.  Her speech is a bit impaired, but understandable.
NECK:  Limited forward flexion and limited extension.  She tells me she feels like it is going to fall off of her head.
EXTREMITIES:  Good motion.  Deep tendon reflexes in biceps, triceps, brachioradialis are intact.  Her sensation in her fingers is intact. She has a strong APB, a strong finger abduction, wrist extension and flexion.

EMERGENCY ROOM COURSE:  She is given Toradol 60 mg IM.  She is given a neck brace and blankets to keep her warm.

IMPRESSION:



|  |  |
|---|---|
| **Summit Medical Center**<br>Hawthorne Avenue and Webster Street<br>Oakland, California 94609 | **Name:**    **GLOVER, YVONNE D** |
|  | **MR#:**    **001260040** |
| **SUMMIT**<br>MEDICAL CENTER | **Physician:**  **TODD MURRAY, MD** |

**OUTPATIENT ER H&P**


**SUMMIT**
MEDICAL CENTER

*Summit Medical Center*
*Emergency Department*
*350 Hawthorne Ave*
*Oakland, CA 94609*
*Phone: (510) 655-4000*

---

Patient:    GLOVER, YVONNE D          Med Rec # M1260040          Date:    8/12/2004
Emergency Care Provider:    Brian Hinrichsen  PA          Admt:    2004/08/12 15:01:56.00
                                                          Dchg:

YOU HAVE RECEIVED EMERGENCY TREATMENT ONLY and this is not a substitute for complete medical care.  Your follow up doctor should receive a copy of your records.  It is important that you report to him/her on any problems that may arise or on any failure to improve from this problem, because it is impossible to recognize and treat ALL elements of your health in a single Emergency Room visit.  IF YOU ARE UNABLE TO GET A PRIVATE DOCTOR for treatment of continued problems, you should seek medical care at a local clinic or hospital or return to the Emergency Department.  The doctor has indicated these instructions for your care:

NECK PAIN:
This is a very common problem seen in the Emergency Department.  There  are a number of situations that result in neck pain.

Neck pain may be from a sprain of the neck ligaments.  This comes from  suddenly bending the neck too much.  We see this a lot after car  accidents.  It is also common in falls and sports injuries.  The pain and   stiffness may not come until several hours or even a day or two after the   injury happens.

These injuries may also cause neck muscle strain.  But many times, these   pulled muscles come after just turning the head. Or one may just wake up  with pain.  There may be muscle spasm, causing the head to be held in an   unusual position.

We may take x-rays to see if there is a fracture.  We also must look   for any signs of numbness or weakness.

A special collar sometimes is used to help support the ligaments and   muscles.  You should lean your head back against something.  This will   rest the neck muscles and ligaments. You may need pain medicine, a muscle   relaxant, or an anti-inflammatory drug.  Ice packs at the beginning,   followed by heat after two or three days may help.  You may need some physical therapy if you are not getting better after several days.

Neck sprains often take several weeks to heal completely.  You will need   to follow up with your doctor if you are not gradually getting well.

CALL YOUR DOCTOR OR COME BACK HERE IF:
- You have more pain, or the pain doesn't get better.
- There is numbness or weakness.


**Referrals**
If you do not have a physician, you may contact the following provider(s) or clinic(s):


FOLLOW-UP CARE:

You should contact your private physician for follow-up care.  If you are unable to get a timely appointment, or if you are worsening,  call us.

Medications
The following medications were prescribed at the time of your visit.  Patient information will be provided by the pharmacist on the medication container.

**000020003**

Patient:    GLOVER, YVONNE D          Page:    1  of   2

| Medication | Quantity | Dose | Frequency | Refills | Instructions | Comment |
|---|---|---|---|---|---|---|
| Motrin 800mg | 30 | 1 | po tid | 0 | with food prn pa | |

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may be released before all my medical problems are known or treated. I will arrange for follow up care as instructed above. I have read the general instructions.

_____
Person Receiving Instruction

Patient:    GLOVER, YVONNE D
Date:       8/12/2004    Rec#:  M1260040

**000020003**

Patient:    GLOVER, YVONNE D                Page:    2  of    2



*Summit Medical Center*
*Emergency Department*
*350 Hawthorne Ave*
*Oakland, CA 94609*
*Phone: (510) 655-4000*

| | | | |
|---|---|---|---|
| Patient: | GLOVER, YVONNE D | Med Rec # M1260040 | Date: 9/28/2004 |
| | | | Admt: 2004/09/28 15:39:00.0( |
| Emergency Care Provider: | Jodi R. Harris PA | | Dchg: |

YOU HAVE RECEIVED EMERGENCY TREATMENT ONLY and this is not a substitute for complete medical care. Your follow up doctor should receive a copy of your records. It is important that you report to him/her on any problems that may arise or on any failure to improve from this problem, because it is impossible to recognize and treat ALL elements of your health in a single Emergency Room visit. IF YOU ARE UNABLE TO GET A PRIVATE DOCTOR for treatment of continued problems, you should seek medical care at a local clinic or hospital or return to the Emergency Department. The doctor has indicated these instructions for your care:

THORACOLUMBAR STRAIN

A strain is an injury to a muscle. Even minor injuries can be very painful because the muscles spasm to prevent more injury to themselves. When the strained or partly torn muscle is in the mid-back (thoracolumbar) area it can hurt to move or breathe deeply.

X-rays are not usually done for obvious back muscle injuries, because only bone injury can be seen with them. Anti-inflammatory drugs, medication to reduce pain, and muscle relaxants may be prescribed to help with the symptoms. Medicines will not cure a back injury. Resting the injured area to allow healing is the best therapy at first. Later, exercises may be recommended to stretch and strengthen the injured muscles.

Apply an ice bag for 15 - 20 minutes every 1 - 2 hours that you are awake. Rest in a firm bed with support under your knees. Avoid sitting with your head bent forward or leaning on your side. Avoid any position or movement that is painful. Do not lift anything over 10 pounds. Sit up as little as possible.

CALL YOUR DOCTOR OR RETURN HERE IMMEDIATELY IF: -your pain increases dramatically. -you experience numbness or weakness. -you have pain in your leg, increased by bending or coughing.

BACK INJURY PREVENTION:

There are a number of ways you can reduce stress and strain on your back and prevent injuries. The most important factor in preventing back injuries is using good body mechanics. Good body mechanics include lifting loads close to your body (do not lean forward and lift heavy objects far from your body), and bending at your knees instead of your back when you pick up objects. Try not to lift heavy things higher than your waist or reach for shelves higher than your head.

Please avoid any sudden movements. Reduce the amount of reaching and twisting you must do. A chair with good lumbar support helps protect the back when you sit. If you work at a desk, sit close to your work so you don't have to lean over, keep your chin tucked in and your neck drawn back. Sit high and close to the steering wheel when you drive; add a lumbar support to your car seat if necessary. Also, avoid prolonged sitting in one position, get up and move around at least every hour.

Concentrate of keeping your shoulders pulled back and your lower back flat; never bend over without bending your knees. Do not sleep on your stomach. The best way is to sleep on your side. If you feel tense in your shoulders, neck, or

**000020003**

back, massage the area to reduce muscle spasm. Regular exercise (walking, jogging, biking, swimming, etc.) has been shown to reduce the chance of back injury. Contact your doctor or a physical therapist for more information.

DIAGNOSIS = MUSCLE SPASM

PLEASE FOLLOW-UP WITH YOUR REGULAR DOCTOR TOMORROW, AS SCHEDULED. MAY ALTERNATE ICE AND HEAT TO BACK FOR RELIEF. TAKE OWN PAIN MEDS AS INSTRUCTED.

**Referrals**
If you do not have a physician, you may contact the following provider(s) or clinic(s):

**FOLLOW-UP CARE:**

You should contact your private physician for follow-up care. If you are unable to get a timely appointment, or if you are worsening, call us.

**Medications**
The following medications were prescribed at the time of your visit. Patient information will be provided by the pharmacist on the medication container.

| Medication | Quantity | Dose | Frequency | Refills | Instructions | Patient Warning | Comment |
|---|---|---|---|---|---|---|---|

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment and that I may be released before all my medical problems are known or treated. I will arrange for follow up care as instructed above. I have read the general instructions.

_____
Person Receiving Instruction

Patient:    GLOVER, YVONNE D
Date:        9/28/2004    Rec#:    M1260040

**000020003**

Patient:    GLOVER, YVONNE D            Page:    2 of    2

P00343

**Insurance Appeals, Ltd.**

An Independent Review Organization (IRO)

January 18, 2005

Heidi Lasser
SBC Quality Review Unit
P.O. Box 804778
Chicago, IL  60680-4778

| | |
|---|---|
| **RE:** | Yvonne Glover |
| **CLAIM #:** | A325033343-07 |
| **SS #:** | 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 |
| **NMR #:** | A31522.02 |
| **DOB:** | |

REDACTED PURSUANT
TO GENERAL ORDER NO. 53

Dear Ms. Lasser

Thank you for referring this file for review to determine Ms. Glover's level of functionality. Specific issues will be addressed at the end of the report.

**RECORDS PROVIDED FOR REVIEW:**

| | | | |
|---|---|---|---|
| CLAIM LOG | Case Notes | | |
| PROG NOTES | Jill L. Harrell, M.D. | 11/02/04-01/12/05 | 1-23 |
| JOB | | 10/28/04-11/02/04 | 24-28 |
| MISC. | | | 29-34 |
| | | 11/12/04-01/06/05 | 35-37 |

**TELECONFERENCE #1:**

Attempts to conduct a teleconference with Dr. Dr. Harrell at 510-839-5564 have been completed. An attempt was made on 01/12/05 at 1:16 p.m. and Ruth gave information about office hours. A call was placed to Dr. Harrell on 01/14/05 at 2:17 p.m., EST; the number for call back and a message as to the nature of the call were left on the physician's voice mail.

**TELECONFERENCE #2:**

A call was placed on 01/17/05 at 12:18 p.m., EST; the number for call back and a message as to the nature of the call were left on the office voicemail. A return call was not received. Therefore a teleconference was unable to be conducted due to Dr. Harrell's unavailability.

**ORTHOPEDIC ASSESSMENT/SYNOPSIS:** A thorough review of the provided medical information has been completed.

Ms. Yvonne Glover is a 48-year-old who works as a Staff Associate/ The job description for Ms. Glover's position of staff associate revealed administrative duties including keyboard work, and a maximum lift and carry of 10 pounds with no pushing and pulling requirements. It was noted that Ms. Glover had a sit/stand workstation and an ergonomic chair. The job description appeared to fall within a sedentary level of physical demand. Her last day worked was 10/26/04 and she has not

returned to work. During her time off work she has had complaints of bilateral upper extremity and neck discomfort.

Ms. Glover reported cumulative trauma injury on 11/19/03. She had been treating for cervical and bilateral upper extremity pain for the diagnoses of cervical spine strain, cervical spondylosis, and disc protrusion at C5-6. She was noted to be working modified duty four hour days beginning 07/02/04 before being taken off work altogether on 10/26/04.

Dr. Harrell evaluated Ms. Glover on 10/28/04 and placed her at permanent and stationary status as of 10/26/04 with future medical coverage. Dr. Harrell noted constant neck pain aggravated by repetitive, forceful pushing and pulling activities, and overhead work, as well as occasional bilateral hand numbness. Physical examination indicated limited range of motion of the cervical spine without neurological upper extremity findings. There was reference to MRI evidence of central disc herniation at C5-6 and normal electrodiagnostic studies. Dr. Harrell opined that Ms. Glover was unable to perform the prolonged neck flexion and keyboarding requirements of her job.

## ATTENDING PHYSICIAN'S MOST RECENT DIAGNOSIS:

Cervical spine strain, cervical spondylosis, and disc protrusion at C5-6.

## OBJECTIVE INFORMATION:

Ms. Glover has central disc protrusion at the C5-6 level but there is no indication of any cord compression. Electrodiagnostic studies were noted to be normal.

## IN ANSWER TO YOUR SPECIFIC QUESTIONS:

1. **Is the employee disabled from her regular job as of 11/03/04 to present?**

Based on the information available for review and from an orthopedic perspective, Ms. Glover is not disabled from her regular job as of 11/03/04 to present.

2. **If disabled, what is/are the disabling diagnoses and complicating factors/comorbidities?**

Ms. Glover is not disabled from her regular job from 11/03/04 to the present.

3. **If disabled, what is the rationale or basis for the disability?**

Ms. Glover is not disabled from her regular job from 11/03/04 to the present.

4. **If disabled, what is the expected/appropriate length of disability?**

Ms. Glover is not disabled from her regular job from 11/03/04 to the present.

P00345

5. **Please discuss all of the clinical findings and how they have impaired the employee's ability to function at her job during above time periods also please comment on whether she could have worked four hour days.**

Ms. Glover is documented to have a central disc protrusion at the C5-6 level but there is no indication of any cord compression. Electrodiagnostic studies were noted to be normal. Ms. Glover offers subjective complaints of pain and examination noted decreased cervical range of motion. However, physical examination does not reveal any objective findings of neurologic deficit to prevent her from functioning within a sedentary level of physical demand. Therefore Ms. Glover can work a full day during the above time period and does not require working four hour days.

6. **What are the objective findings? Are these findings supporting inability to perform job duties? Why or why not?**

There are no objective findings of neurologic deficit to support Ms. Glover's inability to perform the job duties of a staff associate. Ms. Glover continues to have symptoms of pain and decreased range of motion related to cervical spondylosis. There is no information in the documentation provided for review that would disable Ms. Glover from performing her sedentary duties of a staff associate.

**RATIONALE:**

Ms. Glover is a 48 year old employed as a staff associate who is fourteen months post onset of cervical and upper extremity pain related to cumulative trauma from her job duties diagnosed as a strain of the cervical spine. Ms. Glover is also diagnosed with cervical spondylosis and a disc protrusion at the C5-6 level. Dr. Harrell's 10/28/04 office note documented that a cervical MRI revealed a central disc protrusion at C5-6 and electrodiagnostic testing of the upper extremities was reported as normal. Physical examination on 10/28/04 noted decreased forward flexion, relief of symptoms with cervical extension, tenderness in the cervical and trapezius areas, deep tendon reflexes were equal, and sensation was intact. Dr. Harrell determined that Ms. Glover had reached maximum medical improvement. A progress report by Dr. Harrell dated 11/09/04 documented that Ms. Glover had pain in her neck and bilateral arms. Dr. Harrell recommended continuation of monthly office visits, pain medication, and documented that Ms. Glover remained permanent and stationary as indicated on 10/26/04.

Ms. Glover's position of staff associate falls within a sedentary level of physical demand with a 10-pound maximum lifting requirement and no pushing and pulling activities of any weight. Based upon review of the documentation provided, Ms. Glover would not be disabled from performing the duties of a staff associate from 11/03/04 to the present. The physician has not provided any documentation that Ms. Glover has any evidence of progressive neurological deficit, disuse muscle atrophy or clear loss of function on 10/28/04 or 11/09/04. The diagnostic reports are not documented to show any discreet neural impingement. There is no evidence in the documentation reviewed that Ms. Glover would not be capable of performing within a sedentary level of physical demand required by the duties of a staff associate. Activities of daily living often exceed the sedentary level of physical demand. There is no evidence in the documentation that Ms. Glover is not able to complete activities of daily living.

P00346

NMR#: A31522.02
January 18, 2005

Sincerely,

William D. Abraham, M.D.
Board Certified Orthopedic Surgeon
Licensed in State of PA #MD-034697-E

# Step Process:
# Claim Management
# New Claims

1

P00348

# Table of Contents

| Step | Title | Page |
|------|-------|------|
| Step 1 | Claim Assignment Acknowledgment | 3 |
| Step 2 | Eligibility and Setting Conditional Pay | 4-7 |
| Step 3 | Three Point Contacts | 8-15 |
| Step 4 | Initial Action Plan | 16-17 |
| Step 5 | Investigation Screen | 18-19 |
| Step 6 | Additional Requests for Medical | 20-22 |
| Step 7 | Medical Review | 23-30 |
| Step 8 | Denials | 31-45 |
| Step 9 | Physician Advisor Referral | 46-57 |
| Step 10 | Return to Work Referral | 58-59 |
| Step 11 | Calculating the Approval Timeframe | 60 |
| Step 12 | Payment Process and Screens | 61-65 |
| Step 13 | Confirm ERTW Date/ Intent to Return to Work | 66 |
| Step 14 | Confirm RTW | 67-75 |
| Step 15 | Supervisor Steps | 76 |
| Step 16 | Claim Closing | 77-78 |

P00349

| Step 1 | Claim Assignment Acknowledgement |
|---|---|

| | |
|---|---|
| **Summary:** | This step contains acceptable methods and documentation to acknowledge the disability claim or incident assignment. |
| **Due:** | Day two (2), day one (1) is the day that the claim or incident is reported. |
| **Note Type:** | NA |

When a NEW CLAIM is assigned to a CM, the CM will receive a JURIS system diary notifying him or her of the new claim.

I.  Verify that the claim is appropriately assigned
  A  To the correct level of case management/ claim subtype
  B  To the correct business unit
II.  If there is any doubt regarding the claim assignment, see the Business Unit Manager (BUM). The BUM will either reassign the case or the CM will continue to manage the case through the Step Process
III.  Review the notes and the claim details
IV.  Search for other claims, incidents and Job Accommodation Incidents (JAs) using the EE's social security number.  Confirm that the claim is linked or not linked properly.  Confirm that the claim was not opened in error.  If there is an error, send an email to the JURIS coordinator (JC), and the Customer Service Manager (CSM).
V.  Determine if the claim is an incident.
  A  If yes,
    1  Complete the system diary acknowledging the incident assignment
    2  Set a diary for the FDA to confirm the EE's FDA.  On the expected FDA Proceed with <u>one</u> of the steps below:
      a  If the EE is off work as planned
        i  Complete the diary
        ii  Convert the incident to a claim (Options, Convert to claim)
        iii  Step 1 is complete, Proceed to Step 2 (Eligibility and Setting Conditional Pay)
        iv  If the EE is not off work and has no scheduled FDA, delete the claim
      b  If the EE is not off but has a scheduled FDA in the future
        i  Complete the diary
        ii  Update JURIS notes and time tracking to reflect the new expected FDA
        iii  Return to the beginning of "2"
  B  If no
    1  Complete the system diary acknowledging the claim assignment
    2  Step 1 is complete, Proceed to Step 2 (Eligibility and Setting Conditional Pay

P00350

Last Update 05-12-04

| Step 2 | Eligibility and Setting Conditional Pay |
|---|---|
| Summary: | This step contains the acceptable methods and documentation used to check eligibility, to prepare the claim for payment and to authorize conditional benefits. |
| Due: | Day two (2), day one (1) is the day that the claim is reported or converted from an incident to a claim. |
| Note Type: | BA |

I.    Verify the EE's plan.  The JURIS Employee Maintenance Screen (Options, Employee, Detail, Personal Tab) should match the plan assignment screen.

II.   Determine if the employee is an eligible employee for disability benefits.  Consider: Does the EE meet the 6-month net credit service requirement, if applicable?  Is the EE on a leave of absence (LOA) other than anticipated disability leave?  (Verify the type of leave with the EE's Supervisor).  Is the EE on suspension?  Is the EE a Part time, Term, or Contract Employee who may not be eligible?

  A   If the EE is an not an eligible employee for any reason, Step 2 is complete, Proceed to Step 8 (Denial)

  B   If the EE is an eligible employee, determine if the EE is eligible for conditional pay.  Use decision making tree.

  C   Document CP status with "DE" note type in JURIS.

- 4 -

4

P00351

Last Update 05-12-04

D

## How to Document a "DE" JURIS note type

| | Statement of eligibility for CP or Conditional Due Day 2 | Rational for approval or delay of decision Due Day 2 | Medical information from EE and/or JURIS notes | Medical information from TPO | Example |
|---|---|---|---|---|---|
| EE eligible for CP | YES | NO | NO | NO | "EE is eligible for CP" |
| EE not eligible for CP and no approval will be made. | YES | YES | If used for rational | NO- would be documented in IE or MD note | "EE is not eligible for CP, no BA at this time due to diagnosis not qualifying/ insufficient information/ contradictory information/ etc" |
| EE not eligible for CP and being paid based on EE information or JURIS notes | YES | YES | YES | NO | "EE is not eligible for CP will BA based on JURIS note (date) EE hospitalized from 06/01/03 through 06/15/03" for CVA.<br><br>"EE is not eligible for CP will BA based on claimant statement: sx 08/15/03, open reduction of fractured right ankle, supports BA through the minimum DDG of 14 days." |
| EE not eligible for CP and being paid based on information from TPO | YES | YES | NO | Document in an 'IE' or 'MD' note, not a "DE" note | "EE is not eligible for CP will BA based on medical information from TPO see review." |

E   For details see "Decision Making Model (Desk Reference)".

-5-

P00352

Last Update 05-12-04

## Decision Making Model (Desk Reference)

**Who is included?** Generally, non-bargained employees in all regions (DIP NB plan) and bargained employees in the West Region (CDBP); see the Decision Making Tree for specifics, because there are some exceptions.

| Person | Action | Due Date |
|---|---|---|
| CM | Complete "DE" note (see DE chart) | Day 2 or sooner if pay impacting* |
| CM | Second attempt to obtain medical | Day 4 if first attempt was unsuccessful |
| CM | Third attempt to obtain medical | Day 6 if first and second attempt were unsuccessful |
| EE | Provide medical information | Day 9 if claim not previously approved |
| CM | Decision or referral to PA | Day 10 if claim not previously approved |
| BUM | Supervisory Review Diary | Day 11 |

*Day 1 is the day the claim is opened

**The Case Manager will:**
- ✓ Review claim, JURIS notes, initial packet and the conditional pay decision tree.
- ✓ Prepare questions for the EE and the representative at the Treating Provider's Office (TPO)
- ✓ Call and interview the EE. Request "preferred" medical information.
- ✓ Call and interview the representative at the TPO. Request "preferred" medical information.
- ✓ Determine if the claim meets the criteria for immediate approval. (See "Qualifying Situations" chart)

**The following must be true for a claim to meet the criteria for approval:**
- ▪ The claimant is not eligible for conditional pay per the conditional pay decision making tree
- ▪ The medical situation is one that is covered by the decision making model.
- ▪ An attempt to obtain all preferred medical information from the TPO has been made.
- ▪ All minimum medical information has been obtained from the TPO, EE or JURIS notes.
- ▪ **The medical information obtained supports a disabling condition for the proposed approval time.**

**Complete the following steps once you determine that a claim meets the criteria for approval**
- ✓ Document the medical information in an "IE" note if obtained from a representative in the TPO. Use standard DDG, rational and functionality statements.
- ✓ Document the medical information in a "DE" note if obtained from JURIS notes, the EE or the EE's representative. Use this statement: "{Claimant statement/ Previous JURIS notes} supports approval of {icd-9 code or name of condition/procedure}, {number of days} {the minimum DDG or ERTW date}."
- ✓ Approve benefits through the minimum DDG or the ERTW date (whichever is shorter).
- ✓ Follow the standard process of making an approval decision (notes, coding, and communications).
- ✓ Do not forget to make requests for additional medical information to review for possible extension of benefits.

**If the claim does not meet the criteria for approval:**
- ▪ The medical situation is not one that is covered by the decision making model.
- ▪ All minimum medical information has not been obtained.
- ▪ **The medical information obtained does not support a disabling condition for the proposed approval time.**
- ▪ There exists a discrepancy in the information from the EE and the TPO.

**Complete the following steps once you determine that a claim does not meet the criteria for approval**
- ✓ Document the medical information in an "IE" note if obtained from a representative in the TPO.
- ✓ Document the medical information in a "DE" note if obtained from JURIS notes, the EE or the EE's representative.
- ✓ The claim remains in pending status until you make a decision

P00353

Last Update 05-12-04

III.   Enter conditional pay (EE's on the AIT disability plan receive 21 days from the FDD, all other
       EE's who qualify for conditional pay receive 14 days)

   A  Enter a "BA" note in JURIS Notes stating the dates of conditional pay: **Conditional pay:
       xx/xx/xx - xx/xx/xx"**

     1  If any dates were paid for Partial Days of Disability, identify the dates and note that the
          dates were paid for partial disability

     2  If any dates were paid at a reduced benefit (50 or 60% pay) identify the dates note that
          the dates were paid at a reduced benefit, and note the benefit

   B  Update the JURIS Time Tracking screen with the appropriate dates and status (If there is
       partial disability update the partial screen and restriction tab). (See screens in Step 12)

   C  Update the JURIS Offset screen (options, offsets and recoveries) with the appropriate offset
       amount.  For workers' compensation, enter the offset only if the employee is actually receiving
       the benefit.  (See screens in Step 12)

   D  Update the JURIS Payment Authorization screen with the appropriate dates. (See screens in
       Step 12)

   E  Verify that the payments were correctly entered in the Payment Authorization screen by
       checking the Payment History screen (See screens in Step 12)

IV.    Step 2 is complete, Proceed with Step 3 (Three Point Contacts)

7

P00354

## Step 3: Part A     Three Point Contacts: The Supervisor Contact

| | |
|---|---|
| **Summary:** | This step contains the acceptable methods and documentation for notifying supervisors of a new claim. |
| **Due:** | Day two (2), day one (1) is the day that the claim is reported or converted from an incident to a claim. |
| **Note Type:** | CN |

When a new claim is printed at the Claims Assistant's desk in the Customer Service Department, that Claims Assistant sends a "Notice of New Claim" email to the employee's supervisor, prints a copy and attaches it to the new claim report before forwarding it to the Triage Nurse.  The Case Manager (CM) is responsible for verifying that everything is complete and correct.

I.    Verify
- A  The email was sent, and was sent to the correct person.
- B  The information documented in the email is correct.
- C  A "CN" note was entered in JURIS documenting that the email was sent and to whom it was sent.
- D  A copy of the sent email is in the hard file

II.    If any of the above is not complete or is incorrect, the case manager
- A  Corrects all deficiencies
- B  Sends an amended email to the Supervisor
- C  Files a copy of the amended email in the claim folder

III.    Step 3A Complete, Proceed to Step 3B

8

**Step 3: Part B    Three Point Contact: The Employee Contact**

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for contacting the employee to explain disability benefits and to retrieve basic claim information. |
| Due: | Day two (2), day one (1) is the day that the claim is reported or converted from an incident to a claim. Contact is due with 24 hours of receipt of claim on all claims transferred from another level of claims management. |
| Note Type: | CM |

The Customer Service Representative (CSR) is responsible for completing a script during the intake process, if the employee the employee's attorney or the employee's family member reports the claim. The Case Manager (CM) is <u>also</u> responsible for completing a contact with the employee the employee's attorney or the employee's family member regardless of who reports the claim.

I.   **If the CM has no contact number for the EE or if the telephone number is a non-working number**

   A   Search the internet white pages http://www.infospace.com/info.msn/wp/index.htm?ver=19818

      1   If a working telephone number is obtained, proceed to "II"

      2   If a working telephone number is not obtained, proceed to "B"

      3   If at any time it is a clear that the EE does not have a working telephone number immediately send the "unable to contact" letter

         a   Document that there is no working telephone number available

         b   Forward the file to have the "unable to contact letter" sent by the CA

         c   Confirm that there is a copy of the letter in the claim file upon return from the CA

         d   Step 3B complete

         e   Proceed to Step 3C

   B   Call the supervisor, General Time Reporter, Attendance Manager or Human Resource Representative to request the employee's telephone number.

      1   If a working telephone number is obtained proceed to "II"

      2   If it is a clear that the EE does not have a working telephone number immediately send the "unable to contact" letter

         a   Request that the Supervisor direct the employee call SMAART

         b   Document that there is no working telephone number available

         c   Forward the file to have the "unable to contact letter" sent by the CA

         d   File the copy of the letter in the claim file upon return from the CA

         e   Step 3B complete, Proceed to Step 3C

      3   If direct contact is not successful, set a diary for the next attempt in 24 hours.

9

    a   Step 3B is <u>tentatively</u> complete, Proceed to Step 3C and return to Step 3B when diary is due

    b   If the second attempt is unsuccessful

        i     Document that there is no working telephone number available

        ii    Forward the file to have the "unable to contact letter" sent by the CA

        iii   File a copy of the letter in the claim file upon return from the CA

        iv   Step 3B is complete, Proceed to Step 3C

**II.    If the CM has a contact number for the EE**

  A   Call the Employee

    1   If direct contact with the EE is not successful

      a   Document the attempt and the name of the person with whom the message is left in JURIS Notes

      b   Set a diary for the claim 48 hours later to make a second call to the EE

      c   Step 3B <u>tentatively</u> complete, Proceed to Step 3C, Continue with Step 3B when diary is due.

      d   If second attempt is unsuccessful document and set a diary for a third attempt in 48 hours

      e   Continue with Step 3B when diary is due

      f   If third attempt is unsuccessful send an "unable to contact letter" to the EE.

      g   Attach a copy in the file

      h   Step 3B is complete

    2   At any time direct contact is successful,

      a   Determine if the EE script was completed during intake

        i     If yes, proceed to "b"

        ii    If no, use the script found on the H Drive (Any Folder, Intake Scripts Folder in Irving; SBCCallCenter Folder in Chicago) to document this first contact and to ensure that you give comprehensive information. Copy the script into JURIS Notes

      b   Introduce yourself as the CM

      c   Confirm FDA and home address

      d   Gather medical information (symptoms, test results, treatment, restrictions and limitations, next office visit (NOV) etc...)

      e   Gather information regarding transitional work issues (job description, functional ability, potential accommodations etc...)

      f   Set expectations (medical due date, DDG, ERTW)

      g   Request Release of Information (ROI)

      h   Explain benefits (conditional pay, offsets, schedule of benefits, partial disability etc...)

P00357

    i   Consider conferencing in the TPO office while speaking with the EE.  This may facilitate obtaining medical information and the EE can offer a verbal medical release of information to the TPO office.

3   Clarify any contradictory information (such as FDA) with the EE's Supervisor.  Consult the BUM if assistance is needed or resolution is not reached with in 48 hours.

4   Step 3B is complete, Proceed to Step 3C if not already complete

P00358

**Step 3: Part C    Three Point Contacts: The Medical Provider Contact**

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for obtaining medical information for a new claim by contacting the Treatment Provider's Office (TPO) |
| Due: | Day two (2), day one (1) is the day that the claim is reported or converted from an incident to a claim. |
| Note Type: | MD |

If direct contact with the person responsible for providing medical information is unsuccessful, the CM will continue to attempt contact until a total of three (3) attempts to obtain medical information during the initial contact process have been made.   When a commitment has been made to forward information, always follow up on that commitment to make an additional request if there is non-receipt.  Contact should be made with the MD coordinating care or providing care for the disabling condition.  If it is not clear which provider to contact or if one provider is not providing medical information, use this process to contact additional providers.

Check the claim for contact information for **all** treating providers.

I.    If there is no telephone number attempt to obtain the TPO's telephone number by using the Internet yellow pages (if reasonable) http://yellowpages.msn.com/BasicSearch.aspx? and by calling the EE.

A    If successful, document the contact information in the JURIS Address Book and proceed to "II".

B    If unsuccessful, document the attempt in JURIS Notes and set a diary to make a second call to the EE the next day.

   1    Step 3C tentatively complete, Proceed to Step 4 (Action Plan), Continue with Step 3C when diary is due

   2    Make the second attempt to contact the EE to obtain the TPO's contact information.  If successful, document the contact information in the JURIS Address Book and move to "II". If unsuccessful document your attempt in JURIS Notes and set another diary to call the EE the next business day. Continue with Step 3C when diary is due

      a    Make the third attempt to contact the EE to obtain the TPO's contact information.  If successful, document the contact information in the JURIS Address Book and move to "II".  If unsuccessful document your attempt in JURIS Notes.  Forward the file to have the "unable to contact letter" mailed or emailed (if provided with an email address) by the CA.  File the copy of the letter in the claim upon return from the CA·

      b    Step 3C is complete, Proceed to Step 6 (Five Days Before the End of Conditional Pay)

P00359

II.   After a TPO telephone number is obtained, call the TPO, Hospital or Outpatient Surgical Facility and attempt to obtain medical information required for benefit approval, telephonically.

A   **If direct contact with the person responsible for providing medical information is not successful**, document the attempt and the name of the contact person in JURIS Notes. Send a fax request for the medical information required for benefit approval (if provided with a fax number). Set a diary for the claim 48 hours later to make a second call to the TPO

   1   Step 3C is underlined tentatively complete, Proceed to Step 4 if not yet completed, continue with second call to the TPO when diary is due.

   2   Make the second attempt to obtain medical information required for benefit approval, telephonically. If successful proceed to "B'. If unsuccessful, document the attempt and the name of the contact person in JURIS Notes. Send a fax request for the medical information required for benefit approval (unless it is verified that the fax has already been received and an additional fax is not needed). Set a diary for the claim 48 hours later to make a third call to the TPO

   3   Make third attempt to obtain medical information required for benefit approval, telephonically. If successful, proceed to "B". If unsuccessful, telephone the EE and notify him or her of the unsuccessful attempts to contact the TPO office, the need for medical information, the pay implications and the medical due date. Set a diary for five (5) days before the end of conditional pay or use the system diary. (For claims with out conditional pay, set the diary for the medical due date). If that day is a Saturday, set the diary on the previous Friday; and if that day is a Sunday, set the diary on the following Monday

   4   Step 3 complete, Proceed to step 6 (Five Days Before the End of Conditional Pay)

B   **If direct contact with the person responsible for providing medical information is successful** proceed with the appropriate situation below:

   1   **Medical information is obtained telephonically from the TPO**

      a   Document the medical information (in summary or SOAP form) and the name of the contact person

      b   Step 3 tentatively is complete, Proceed to Step 7A (Medical Review) then Proceed to Step 4 (Action Plan) afterward

   2   **The contact is unwilling to release telephonic information until the EE signs a medical release**

      a   Call the EE twice within 48 hours to advise him or her to sign a medical release to facilitate SMAART obtaining his or her medical information. Consider conference calling the TPO and the EE to obtain a verbal release of medical information.

      b   If the conference call is not successful, advise the EE to confirm when the ROI is signed and or the fee is paid to facilitate CM following up on requesting medical information

      c   Document each contact and outcome.

P00360

    d  Set a diary to follow up with the TPO and the EE regarding the receipt of the release of medical information and the request for medical information

    e  Proceed to Step 4; Continue with Step 3 when the diary is due

    f  Attempt to obtain medical information until three attempts have been made to contact the TPO office and request medical information

    g  Document attempts and outcomes and diary for follow-up

    h  If 3 attempts are unsuccessful, Step 3C is complete proceed to Step 6 (Last 5 Days)

3  The contact is **unwilling to release telephonic information but agrees to forward written medical records to SMAART**

    a  Document the conversation and the name of the contact person in JURIS Notes

    b  Set a diary to follow up with the TPO and the EE on the receipt of the medical information 5 days before conditional pay ends or use the system diary. (For claims without conditional pay, set the diary for the medical due date) or one day after the date the information is expected to arrive (whichever date is earliest). If that day is a Saturday, set the diary on the previous Friday; and if that day is a Sunday, set the diary on the following Monday.

    c  Proceed to Step 4; Continue with Step 3 when the diary is due

    d  Attempt to obtain medical information until three attempts have been made to contact the TPO office and request medical information

    e  Document attempts and outcomes and diary for follow-up

    f  If 3 attempts are unsuccessful, Step 3C is complete, proceed to Step 6 (Last 5 Days)

4  The contact **is unwilling to release telephonic information but agrees to forward written medical records to SMAART after SMAART faxes a written request for the records**

    a  Fax the written request for the medical information required for benefit approval, on the same day

    b  Document the conversation, the name of contact person, and the request has been faxed in JURIS Notes

    c  Set a diary to follow up with the TPO and the EE on the receipt of the medical information 5 days before conditional pay ends or use the system diary. (For claims without conditional pay, set the diary for the medical due date) or one day after the date the information is expected to arrive (whichever date is earliest). If that day is a Saturday, set the diary on the previous Friday; and if that day is a Sunday, set the diary on the following Monday.

    d  Proceed to Step 4; Continue with Step 3 when diary is due

    e  Attempt to obtain medical information until three attempts have been made to contact the TPO office and request medical information

    f  Document attempts and outcomes and diary for follow up

P00361

g   If 3 attempts are unsuccessful, Step 3C complete, Proceed to Step 6 (The Last 5 Days)

5   The contact is **unwilling to release telephonic information but agrees to forward written medical records to SMAART after the EE either signs a medical release and/ or pays a medical records fee**

   a   Call the EE once a day for 3 consecutive days until you are able to advise him or her to sign a medical release and/or to pay the medical records fee to facilitate the forwarding of his or her medical information to SMAART

   b   Advise the EE to confirm that the task was completed so that you can follow up on the request

   c   Document each contact and outcome

   d   Set a diary to follow up with the TPO and the EE on the receipt of the medical information 5 days before conditional pay ends or use the system diary. (For claims without conditional pay, set the diary for the medical due date) or one day after the date the information is expected to arrive (whichever date is earliest). If that day is a Saturday, set the diary on the previous Friday; and if that day is a Sunday, set the diary on the following Monday.

   e   Proceed to Step 4 (Action Plan) if not already completed; Continue with Step 3 when the diary is due

   f   Attempt to obtain medical information until three attempts have been made to contact the TPO office and request medical information

   g   Document attempts and outcomes and diary for follow up

   h   If the 3 attempts are unsuccessful, Step 3C is complete, Proceed to Step 6

III.    Repeat this step (Step 3: C: The Medical Provider Contact) if necessary for multiple providers when medical information has not been received.

**IV.**    **At any time medical information is received**

   A   Step 3C is Complete, Proceed to Step 7

**NOTE:** If the PA makes a timely attempt to contact the MD due to a Triage referral, the CM can count that contact as the first attempt to contact with the TPO office for the purpose of the investigation screen and for the initial contacts.

P00362

| Step 4 | The Initial Action Plan |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for creating an action plan for a new claim. |
| Due: | Day two (2), day one (1) is the day that the claim is reported or converted from an incident to a claim. |
| Note Type: | AP |

The purpose of action plans and their corresponding diaries is to organize and document expected actions on a claim into separate specific "next steps". These steps facilitate efficient and proactive case management as well as effective communication between colleagues regarding each claim.

I.  Enter an initial Action Plan in JURIS Notes addressing: (You may choose to number or bullet the action plan)

   A  The current status of the claim (Pending, Approved, Denied or Terminated).

   B  The next action planned.

   C  Any contact needed, information requested and/nor questions answered, information given.

   D  The ability of the EE to RTW with or without accommodations (If it is inappropriate to address RTW at this point in the claim, then state "Return to work investigation inappropriate because (state why), will re-address (state when)".

II.  Examples:

| | |
|---|---|
| 1. | Initial claim determination pending receipt of medical information. |
| 2. | Make 2nd attempt to contact MD in 48 hours. |
| 3. | Request MRI taken at the LOV |
| 4. | ERTW full duty on 05/06/02 |

| | |
|---|---|
| 1. | Claim approved. |
| 2. | Follow-up in 30 days with EE and oncologist. |
| 3. | Does EE have a scheduled NOV? |
| 4. | RTW not reasonable at this time or in the future, EE is terminal. |

| | |
|---|---|
| 1. | Initial claim determination pending EE signing ROI at NOV 5/15/02 |
| 2. | Follow- up on request for medical 5/16/02. |
| 3. | None |
| 4. | Address RTW when medical information & R and L's are received from the TPO. |

| | |
|---|---|
| 1. | Claim approved. |
| 2. | Confirm RTW part time. |

P00363

Last Update 05-12-04

| | |
|---|---|
| 3. | What is estimated RTW full time, full duty? |
| 4. | EE ERTW half days on 06/20/02 for one week. |

III.    Ensure that corresponding diaries exist for each action that is planned.

IV.    Step 4 is complete, Proceed to Step 5 (The Investigation Screen)

- 17 -                                              17

P00364

| **Step 5** | **The Investigation Screen** |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for completing the investigation screen in JURIS for a new claim. |
| Due: | Day Two (2), Day One (1) is the day that the claim is reported or converted from an incident to a claim. Although the investigation screen should be entered daily, if contacts were made and documented in JURIS timely, the case manager has that ability to enter the dates in the investigation screen until the end of the month that the actions are due. |
| Note Type: | None |

**This screen cannot be completed until the incident is converted to a claim,** therefore if contacts are made before the FDA set a diary to complete this screen once the incident is converted to a claim.

I.     In JURIS go to the options pull down menu, select Investigation

II.     Enter the dates the 3 point contacts were first documented in JURIS in the Initial Contacts tab



III.     Enter the date the initial action plan was first documented in JURIS, in the Miscellaneous tab. If contacts were completed previous to the FDA, use the FDA as the contact date

IV.     Step 5 is complete, Continue with other steps already in progress.

- 18 -

18