# EXHIBIT 1

PART 5

**Step 6: Part A    Additional Requests for Medical: The Last 5 Days (The Medical Due Date)**
This step is skipped if the claim has no conditional pay, is an immediate relapse or is a late report.

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for following up on a request for medical information five (5) days previous to the end of conditional pay when no medical has been received to authorize benefits. |
| Due: | Five (5) days previous to the last day of conditional pay (Medical Due Date). If that day is a Saturday, call on the previous Friday. If that day is a Sunday, call on the following Monday. |
| Note Type: | MD or CM depending on who the CM contacts. |

Attempt to obtain medical information five (5) days previous to the last day of conditional pay

I. Call the EE
  A  If contact is successful proceed with number II
  B  If contact is not successful leave a message for a return call
    1  Explain no medical information has been received
    2  Ask EE to follow up on SMAART's requests for medical information
    3  Remind the EE of the medical due date
    4  Proceed to "II", without EE contact

II. Call (or conference if the EE is on the telephone) the TPO, Hospital or Outpatient surgical facility and request medical information required for benefit approval. Proceed with the appropriate scenario below:
  A  If direct contact with the person responsible for providing medical information is <u>not successful</u>
    1  Explain to the EE that previous attempts to obtain information have not been successful
    2  Explain the EE's responsibility to forward medical information quickly
    3  Remind EE that today was the Medical Due Date and that no medical has been received
    4  Explain the pay implications of SMAART not receiving adequate medical information to authorize benefits
    5  Set a diary to follow up with a decision on the claim the last day of pay
  B  If direct contact with the person responsible for providing medical information is successful and <u>medical information is obtained telephonically from the TPO</u>
    1  Document the medical information (in summary or SOAP form) and the name of the contact person
    2  Step 6 <u>tentatively</u> is complete
    3  Proceed to Step 7A
  C  If direct contact with the person responsible for providing medical information is successful, and he or she is <u>unwilling to release telephonic information until the EE signs a medical release</u>

P00366

      1  Call the EE once a day for 3 consecutive days until you are able to advise him or her to sign a medical release to facilitate SMAART obtaining his or her medical information

      2  Advise the EE to confirm that the task was completed so that you can follow up on requesting medical information

      3  Document each contact and outcome

      4  Set a diary to follow up the day conditional pay ends

D  If direct contact with the person responsible for providing medical information is successful and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART</u>

      1  Document the conversation and the name of the contact person in JURIS Notes

      2  Set a diary to follow up the day conditional pay ends

E  If direct contact with the person responsible for providing medical information is successful, and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART after SMAART faxes a written request for the records.</u>

      1  Fax the written request for the medical information required for benefit approval, on the same day

      2  Document the conversation, the name of contact person, and the request has been faxed in JURIS Notes

      3  Set a diary to follow up the day conditional pay ends

F  If direct contact with the person responsible for providing medical information is successful, and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART after the EE either signs a medical release and/ or pays a medical records fee.</u>

      1  Call the EE once a day for 3 consecutive days until you are able to advise him or her to sign a medical release and/or to pay the medical records fee to facilitate the forwarding of his or her medical information to SMAART

      2  Advise the EE to confirm that the task was completed so that you can follow up on the request

      3  Document each contact and outcome

      4  Set a diary to follow up on the day conditional pay ends

III.  The day that the diary is due

  A  If medical is received

      1  Step 6 Complete, Proceed to Step 7

  B  If medical information is not obtained by Day Fifteen (15) or day 22 for EE's on the AIT plan

      1  Step 6 Complete, Proceed to Step 8A

P00367

**Step 6: Part B    Additional Requests for Medical: The Last Day of Pay**

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for following up on a request for medical information the last day of conditional pay when no medical has been received to authorize benefits |
| Due: | The last day of conditional pay.  If that day is a Saturday or Sunday, call on the previous Friday. |
| Note Type: | MD or CM depending on who the CM contacts. |

Attempt to obtain medical information the last day of conditional pay

I.    Call the EE

   A    If contact is successful proceed with number II

   B    If contact is not successful leave a message

      1    Explain no medical has been received

      2    This _may_ impact benefit payments (please use this verbiage)

      3    Proceed to "II", without EE contact

II.    Call (or conference if the EE is on the telephone) the TPO, Hospital or Outpatient surgical facility and request medical information required for benefit approval, with EE on the telephone.  Proceed with the appropriate scenario below:

   **A    If direct contact with the person responsible for providing medical information is _not_ successful**

      1    Explain to the EE that previous attempts to obtain information have not been successful

      2    Explain EE's responsibility to forward medical information that day

      3    Explain that the claim will begin denial process tomorrow if medical is not received by end of business today.

      4    Explain pay implications

      5    Set a diary to follow up with a decision on the claim the last day of pay

   **B    If direct contact with the person responsible for providing medical information _is_ successful** and medical information is obtained telephonically from the TPO

      1    Document the medical information (in summary or SOAP form) and the name of the contact person

      2    Step 6 tentatively is complete

      3    Proceed to Step 7A

   C    If direct contact with the person responsible for providing medical information is successful, and he or she is unwilling to release telephonic information until the EE signs a medical release

      1    Call the EE (if not conferenced on the telephone) and advise him or her to sign a medical release and request his or her medical information to be forwarded to SMAART immediately

P00368

    2   Advise the EE to confirm that the task was completed so that you can follow up on requesting medical information

    3   Document each contact and outcome

    4   Set a diary to follow up the next day

D   If direct contact with the person responsible for providing medical information is successful and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART</u>.

    1   Document the conversation and the name of the contact person in JURIS Notes

    2   Set a diary to follow up the next day with a decision

E   If direct contact with the person responsible for providing medical information is successful, and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART after SMAART faxes a written request for the records.</u>

    1   Fax the written request for the medical information required for benefit approval, on the same day

    2   Document the conversation, the name of contact person, and the request has been faxed in JURIS Notes

    3   Set a diary to follow up the next day

F   If direct contact with the person responsible for providing medical information is successful, and he or she is <u>unwilling to release telephonic information but agrees to forward written medical records to SMAART after the EE either signs a medical release and/ or pays a medical records fee.</u>

    1   Call the EE to advise him or her to sign a medical release and/or to pay the medical records fee to facilitate the forwarding of his or her medical information to SMAART

    2   Advise the ee to confirm that the task was completed so that you can follow up on the request

    3   Document each contact and outcome

    4   Set a diary to follow up on the next day

III.   If medical is received

    1   Step 6 Complete, Proceed to Step 7

IV.   If medical information is not obtained by Day 9 for all immediate relapses, late reports and claims with no conditional pay processed, Day 21 for EE's on the AIT plan and not one of the previously listed situations and Day 14 for all other situations

    1   Step 6 Complete, Proceed to Step 8A

P00369

**Step 7: Part A    Medical Review: Telephonic Information**

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for reviewing medical information obtained by the Case Manager telephonically to make an initial benefit approval. |
| Due: | Immediately upon receipt |
| Note Type: | IE |

**I    Review the explanation of "Telephonic Benefit Approval"**

<u>What is a telephonic Benefit Approval?</u>
1.    The process of obtaining and documenting verbal confirmation of an employee's medical condition to facilitate a more timely benefit authorization.
2.    An alternative method of obtaining medical information for specific target conditions to support an approval through the optimum DDG.

**II    Review the explanation of "What information is needed to make a Telephonic Benefit Approval"**

<u>What information is needed to make a telephonic Benefit Approval?</u>
1.    The case manager will always request the preferred information.
2.    Minimum information is the information absolutely necessary to authorize benefits through the optimum DDG. A case manager would not withhold benefits through the optimum DDG, if he or she obtained the "minimum" information listed under the disabling condition below.
3.    The expectation is that the CM will follow-up to obtain the "preferred" information before additional benefit authorizations or extensions are approved.

**III    Compare the telephonic information that the CM obtained to the list below of minimum/ preferred information required for the condition or procedure related to the claim**

<u>What information do I need for specific diagnosis and surgeries or procedures?</u>

**Delivery** is the <u>one and only</u> procedure that can be confirmed by the employee.
   <u>Minimum</u>
      ✓ Delivery date

P00370

✓ Delivery method

**All diagnosis and procedures below must be confirmed by the Treatment Provider's Office**

**Surgery/ Procedure**

Minimum
- ✓ Date of surgery/ procedure
- ✓ Name of surgery/ procedure

Preferred
- Diagnosis
- Body part (including left or right side)
- CPT codes (procedure codes)
- Last Office Visit
- Next office Visit
- Treatment Plan
- Prescriptions
- Restrictions
- Estimated Return to Work Date

**Extended Hospitalization**

Minimum

If the EE is currently hospitalized and if no diagnosis or discharge date is available, the CM can approve the claim for hospitalized time plus 2 days in the future to allow for additional information to be obtained. Consult with the BUM, TL or SME if assistance is needed regarding disability days previous to hospitalization
- ✓ Admittance date
- ✓ Hospitalization will be for more than 24 hours

Preferred
- Discharge date or estimated discharge date
- Diagnosis (has diagnosis changed from admittance to discharge)
- First office visit after discharge
- Treatment plan
- Estimated Return to Work Date

**Terminal Illness**

Helpful Questions

Is the employee hospice eligible (has less than 6 months to live)?

Is the employee receiving home heath care?

- 24 -                                                                                   24

P00371

Minimum
- ✓ Diagnosis
- ✓ Prognosis (life expectancy less than 12 months)
- ✓ Evidence of deteriorating condition (the physician has stated that the ee is terminal)

Preferred
- Plan of care
- Next office visit

**Pregnancy complications**

**Pre-Term Labor**
Minimum
- ✓ Diagnosis
- ✓ Gestational age (before the 37th week)/ Estimated date of delivery
- ✓ 1st, 2nd, or 3rd Delivery
- ✓ Degree of dilation (3 or greater)
- ✓ Degree of effacement (50 % or greater)
- ✓ Presentation
- ✓ Station

**Pre-Eclampsia/ Toxemia**
Minimum
- ✓ Diagnosis
- ✓ Blood Pressure
- ✓ Level of protein in urine + 2 and higher
- ✓ Severity of edema (quick weight gain, pitting +3 and higher, edema in face or far up the extremities, hyper reflexia is +3 and higher)

**Gestational Diabetes**
Minimum
- ✓ Diagnosis
- ✓ Level of glucose in blood
- ✓ Severity of edema (quick weight gain, pitting, edema in face or far up the extremities, hyper reflexia, blurred vision)

**Hyper emesis**
Minimum
- ✓ Diagnosis
- ✓ Dehydration
- ✓ Weight loss

Preferred for all Pregnancy Complications

P00372

- ICD-9 code
- Prescriptions
- Level of bed rest (none, modified or total/full)
- Restrictions/ Limitations
- Frequency of visits
- History
- Co-morbidities/ Complications

## Psychiatric Conditions

<u>Minimum</u>
- ✓ Hospitalization
- ✓ Partial hospitalization

<u>Preferred</u>
- Diagnosis/ DSM IV
- Suicidal/ Homicidal ideation
- Observable findings
- Level of functioning
- Rx
- Frequency of treatment
- What is different regarding this employee from other people with the same diagnosis and similar medications who are able to continue to work?
- What can the person not do now that he or she was able to do in the past?

## Other significant disabling illnesses or conditions

<u>Minimum</u>
- ✓ Symptoms
- ✓ Diagnostic test results
- ✓ Observable findings
- ✓ Diagnosis
- ✓ Treatment plan
- ✓ Level of Functioning

<u>Preferred</u>
- ICD-9 codes
- Co-morbidities/ Complications
- Prescriptions
- Next office visit
- Estimated return to work date
- Restrictions

- 26 -                                    26

IV. Determine if the "preferred" information supports that the ee has a totally disabling condition with or without accommodations

  A   If no proceed to "V"

  B   If yes

     1   Look up the DDG for the procedure or condition in the MDA

        a   If the CM finds the DDG in the MDA

               ➢   Document the DDG timeframe in the Time Tracking Screen

               ➢   Complete the DDG statement at the end of the medical Summary or SOAP with the initial approval statement that the medical information supports the DDG

               ➢   Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job duties.

               ➢   Step 7A Complete, Proceed to Step 11 (Determining the Disability Period)

        b   If the CM can not find a DDG in the MDA, consult the team Subject Matter Expert (SME) or BUM

          i   Document the DDG timeframe in the Time Tracking Screen

          ii   Complete the DDG statement at the end of the medical Summary or SOAP with the initial approval statement that the medical information supports the DDG

          iii   Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job duties.

          iv   Step 7A Complete, Proceed to Step 11 (Determining the Disability Period)

V. Determine if the "minimum" information supports that the ee has a totally disabling condition with or without accommodations

  A   If no, document the information and proceed with one (1) of the following steps:

     1   If today is any day previous to the medical due date, notify the EE what telephonic information was received, why it does not support the claim, if there is any "missing" medical information and make an attempt to obtain that information, Step 7 Complete, Return to Step 3C (The Medical Provider Contact) to request hard copy medical information

     2   If today is on or is between the medical due date and the last day of conditional pay, notify the EE what telephonic information was received, why it does not support the claim, if there is any "missing" medical information and make an attempt to obtain that information, Step 7 Complete, Step 7 Complete Proceed to Step 6A or B as appropriate

     3   If today is the decision due date (day 10,15,or 22) or later: Make a determination to refer the claim to the PA for recommended denial.

        a   Document the DDG timeframe in the Time Tracking Screen

        b   Document your rationale for recommending denial. This is the link between the information you reviewed and the EE's functional ability to complete his or her job

P00374

duties. Step 7 Complete, Proceed to Step 8B (Denial: Medical Information Does Not Support)

B    If yes

   1    Request the "Preferred" information from the TPO office in writing

   2    No immediate follow-up on the request needed unless EE's absence exceeds optimum DDG or reasonable accommodations can be made for the EE to RTW

   3    Look up the DDG for the procedure or condition in the MDA

      a    If the CM finds the DDG in the MDA

         i    Document the DDG timeframe in the Time Tracking Screen

         ii    Complete the DDG statement at the end of the medical Summary or SOAP with the initial approval statement that the medical information supports the DDG

         iii    Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job

         iv    Step 7A Complete, Proceed to Step 11

      b    If the CM can not find a DDG in the MDA, consult the team SME OR BUM

         i    Document the DDG timeframe in the Time Tracking Screen

         ii    Complete the DDG statement at the end of the medical Summary or SOAP with the initial approval statement that the medical information supports the DDG

         iii    Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job

         iv    Step 7A Complete, Proceed to Step 11 (Determining the Disability Period)

P00375

**Step 7: Part B     Medical Review: Written Information**

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation for reviewing written medical information received by the Case Manager. |
| Due: | 72 hours from the date stamped on the medical information. SNET is an exception and has two 48 hours to review medical information. **If medical is pay impacting it must be reviewed by the end of the next business day following the earliest "SCMS received date" stamped on the records. If medical is pay impacting and is received on a HOT FRIDAY it must be reviewed the same day.** Pay impacting is defined as any medical information that would miss the payroll cut off if left un-reviewed that day and any claim that is in a denied status. |
| Note Type: | IE |

All faxes are date stamped by a member of Administrative Services and forwarded to the appropriate CM's mailbox as scheduled by Administrative Services. In addition, a member of Administrative Services will set a diary for the CM on the next business day (the day that the information is received is day one) to remind the CM that the review is due the next day or that day if the information is pay impacting.

I.    The CM receives the medical information in his or her mailbox. If medical is pay impacting it must be reviewed by the end of the next business day following the earliest "SCMS received date" stamped on the records. If medical is pay impacting and is received on a HOT FRIDAY it must be reviewed the same day, proceed to "III"

II.   If medical is not pay-impacting you have the option to set a diary for the day you will review the medical information.

   A    It is preferred that the medical is reviewed and a decision is made on the same day that it is received.

   B    If the medical information is not reviewed that day, then it is preferred that the medical is reviewed and a decision is made on the next business day.

   C    If the medical information is not reviewed on the second business day, the CM is required to review the medical information by business day three (3) from the date stamped on the medical information. Again the earliest day possible is the preferred day to review the medical information.

III.  Document the review of medical information. This includes but may not be limited to

   A    The date of the medical service

   B    The treating provider's name

    C   SOAP or medical summary (symptoms, lab results, physical examination findings, provider's observations, diagnosis, co-morbidities, complications, treatment plan, medication, next office visit date)

    D   Restrictions and limitations

    E   Estimated return to work date (ERTW)

IV.     Determine the DDG

    A   Look up the DDG for the procedure or condition in the MDA

       1   If you can not find a DDG in the MDA, consult your SME OR BU

       2   Document the DDG in the Time Tracking Screen

V.      Make a benefit decision

    A   If a Benefit <u>approval</u> decision is made

       1   Complete the DDG statement at the end of the Medical Summary or SOAP with the initial approval statement that the medical information supports the DDG

       2   Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job

       3   Step 7B is complete, Proceed to Step 6 (Determining Disability Period)

    B   If a Benefit <u>denial</u> recommendation is made

       1   Complete the DDG statement at the end of the Medical Summary or SOAP with the initial denial statement that the medical information does not support the DDG

       2   Document your rationale. This is the link between the information you reviewed and the EE's functional ability to complete his or her job

       3   Step 7B is complete, Proceed to Step 8B (STD Denial Procedures: Medical information Does Not Support)

    C   If a Benefit <u>decision can not be made</u>

       1   Seek additional information from

         a   Medical Disability Advisor (MDA), Subject Matter Expert (SME) or BUM on your team

       2   If a Benefit decision still can not be made

         a   Step 7B is tentatively complete, Proceed to Step 9 (PA Review)

P00377

**Step 6: Part A     Denial: No Medical Information Has Been Received**

| | |
|---|---|
| Summary: | This procedure is used to ensure appropriate case management, documentation, as well as employee and client notification of a denied claim due to no medical information being received. |
| Due: | Decisions are due Day 15, Day 10 for Claims with no conditional pay period, immediate relapses and late Reports, day 22 for EE's on the AIT plan. |
| Note Type: | BA |

I.     Document the denial recommendation in JURIS notes using the BA note. Include:

   A   Dates for the denial recommendation

   B   Number of calls that were made to the EE to assist in obtaining the medical information
        Number of calls that were made to the TPO to obtain the medical information

   C   Example BA note
        **BU- Initial medical information not received for determination (x calls and x faxed attempts to TPO; x calls to EE)**

II.     Update the Time Tracking Screen to reflect a denial decision

III.    Update the Claim Status to denied

IV.    Delete scheduled payments and void paid benefits (The CA has authorization to void payments)

V.     Contact the employee to notify him or her of the claim's denial status and his or her appeal rights.

   A   If direct contact with the employee is successful, document the conversation and send the denial email.

   B.   If direct contact with the employee is not successful, CM will make **one** attempt to contact the claimant and inform him/her of the disability benefit decision.

      1.   During the case management process, the CM will ask the claimant if the CM may leave a message regarding the claim status (approved/denied) on his/her voice mail.
      2.   If the claimant stated that it is alright to leave a voice mail message, the CM will leave a message with the claim status.
      3.   If the claimant states that it is not alright to leave a voice mail message, the CM will make one attempt to contact the claimant prior to notifying the SBC supervisor.
      4.   If the claimant does not have voice mail, the CM will let the phone ring 10 times prior to disconnecting the call.

   C.   Document the attempt and the message

   D.   Send the denial email

VII.   Write the denial letter within 24 hours of making the decision

- 31 -

31

    A  Always choose the appropriate letter from the H Drive, not from your J Drive or C Drive. Only the H Drive will have all the current updates and only the H Drive is approved by our legal advisors

    B  Include

       1  Number of calls to the TPO to obtain medical information

       2  Number of faxes to the TPO to obtain medical information

       3  Number of calls to the EE to obtain medical information

VIII.  Forward the letter via email to the Business Unit Manager (BUM) or the manager's designee for review and document this in JURIS Notes

IX.  The BUM will review the case and the denial letter and forward it to the CA via email within 4 hours if there are no concerns

    A  If the BUM does not agree with the denial recommendation he/ she will meet with the CM within 4 hours and discuss what additional action is necessary, including updating status with the EE and Supervisor.

X.  If medical information is received previous to the denial letter being mailed (the letter is considered "mailed" when the CA notes that the letter has been sent in JURIS notes), Proceed with Step 8 B "IV" Denial: Medical does not Support

XI.  Step 8 Complete, Proceed to Step 16

XII.  If medical information is received after the denial letter has been mailed, Proceed with Step 8B "VI" Denial: Medical does not Support

P00379

**Step 8: Part B          Denial: Medical Information Does Not Support**

| | |
|---|---|
| Summary: | This procedure is used to ensure appropriate case management, documentation, as well as employee and client notification of a denied claim due to medical information being received but not supporting disability. |
| Due: | Decisions are due upon receipt of the email from the Physician Advisor Process Coordinator (PAPC) that the Review is complete, Letter Written within 24 hours |
| Note Type: | BA |

A Physician Advisor Review must be completed on **all** clinically denied claims.

### What is a clinically denied claim?

Any claim that is denied because the case manager received clinical information that does not support a disability is a clinically denied claim. This does not include a claim denied because you did not receive medical information, a claim denied because you only received an off work note, or a claim denied because the clinical information did not pertain to the time in question.

### What is the standard for clinical information?

If the information the Case Manager receives includes any more information than what is listed below, consider it clinical information and if the medical information does not support a disability; consider the denial a clinical denial. Otherwise the case manager may consider the information as if it were an "off work note" for denial purposes, which would not be a clinical denial and would not require a PA referral.

- Provider's name, specialty, and contact information
- Last and or next office visit date
- Off work dates
- Diagnosis

### What is the standard for "relevant timeframe"?

1.    If the Case Manager receives medical records documenting a timeframe more than one week prior to the waiting period, those records may be considered irrelevant, and do not require a PA referral unless the CM believes otherwise. In addition the CM should make one attempt to call the employee to inform him/ her of the outdated medical information. If direct contact is not successful, a request for a return call should be left.

2.    If the Case Manager receives medical records documenting a timeframe more than one week outside the disability days in question, those records may be considered irrelevant, and do not require

P00380

a PA referral unless the CM believes otherwise In addition the CM should make one attempt to call the employee to inform him/ her of the outdated medical information.  If direct contact is not successful, a request for a return call should be left.

**When is the case manager required to obtain a PA review?**

| When the CM recommends denial because he or she... | PA Review | No PA Review |
|---|---|---|
| did not receive medical information by the medical due date (initial or ongoing) | | X |
| did not receive clinical information by the medical due date (initial or ongoing) for example received only an off work note | | X |
| did not receive clinical information relevant to the timeframe by the medical due date (initial or ongoing) for example received medical information for a timeframe one week previous to the time in question. | | X |
| confirmed that the EE is not eligible. (missed 7 day waiting period, less than six months of service, suspension, etc...) | | X |
| believes that the clinical information submitted does not support a total disability with or without restrictions (initial or ongoing) and is recommending a denial decision | X | |

| When the claim is in a denied status, | PA Review | No PA Review |
|---|---|---|
| the medical should be returned to the EE, unless a total approval can be made or the CM is authorizing "maternity leave".  If the medical is returned, note what was received, when it was received and which provider sent it.  If the claim will be approved, document the medical in summary or SOAP format | | X |

I.   The CM determines if he or she has received relevant clinical information.

  A  If yes, proceed with "II"

  B  If no,

  1  Call the employee and the TPO to explain that the medical information is not adequate and request the necessary records if not already done since the receipt of this medical information

  2  If no additional information is received, the denial does not require a PA review; deny the claim as outlined in Step 8A.

II.  The CM determines that the medical information received clearly does not support a disability.

  A  Call the employee and inform the employee that you are unable to approve the claim based on the medical information provided.  Explain that the Physician Advisor will review the claim and make two (2) attempts to contact his or her treating provider before the final decision is made.  Agree to call the employee within four (4) days with an update of the status.

- 34 -

34

P00381

Last Update 05-12-04

   B  Document that the claim has been referred to the Physician Advisor and is pending review in

       JURIS notes using the "ST" note type

   C  Set a diary to check on the referral status within four (4) business days.

   D  Complete a summary including

      1  The medical information

      2  Restrictions and limitations

      3  Why the CM is recommending denial

   E  Complete the Physician Advisor Referral Form. (See Step 9,  The PA Referral Process)

   F  Walk the Referral Form and the claim file to the Physician Advisor Process Coordinator

      (PAPC)

III.    Await the Completion of the Physician Advisor Review.  Note:  A claim that is awaiting a PA

Review is <u>NOT</u> in a denial status.  The decision is pending a PA Review and additional medical

may be reviewed.

   A  When an email is received from PAPC confirming completion of referral.

      1  Obtain the claim file from the PAPC

      2  Proceed to "V"

   B  If email is not received by the fourth day

      1  Call the employee to update him or her with the continued pending status of the referral.

      2  Set a diary for an additional two (2) business days, and agree to contact the employee

         when a decision is made.

   C  If the referral is not complete within the 2 additional days,

      1  Email your Business Unit Manager notifying him or her of the continued pending status of

         the referral.

      2  Set a diary for an additional one (1) business day to follow up after direction from your

         Business Unit Manager.

IV.    If additional medical information is received while the review is pending or any time prior to the

date the denial letter is sent.  Read the medical information and determine if you would pay **<u>any</u>** of

the time off.

   A  **If you would pay <u>all</u> of the time off,** review the medical records in JURIS Per Step 7B and

      proceed with an approval

   B  **If you would pay <u>some</u> of the time off,** review the medical records in JURIS Per Step 7B,

      proceed with an approval, and Forward the file to the PA for the time you can not approve

   C  **If you would not pay <u>any</u> of the time off,**

Comment [m1]:

P00382

1  Enter a note in JURIS stating that additional information has been received. Document who the treatment provider is, what the medical information is (office note, MRI result etc), the date of service and the date SMAART received the medical information

2  Forward the new medical information for consideration in the pending PA Review to the PAPC. If the review is complete when you received additional medical, request another review.

V.  Upon Receipt of the PA Review, make a final claim determination

  A  For approvals, CM document the rationale and proceed with approval process in Step 11 (Determining the Approval Period)

  B  For Denials

    1  CM document the rationale and proceed with "VI"

    2  Using the BA note document the dates for the denial decision

    3  Update the Time Tracking Screen to reflect a denial decision

    4  Update the Claim Status to denied

    5  Delete scheduled payments and void paid benefits (The CA has authorization to void payments)

    6  Contact the employee to notify him or her of the claim's denial status and his or her appeal rights

      a  If direct contact with the employee is successful, document the conversation and send the denial email.

      b. CM will make **one** attempt to contact the claimant and inform him/her of the disability benefit decision.

        1.  During the case management process, the CM will ask the claimant if the CM may leave a message regarding the claim status (approved/denied) on his/her voice mail.

        2.  If the claimant stated that it is alright to leave a voice mail message, the CM will leave a message with the claim status.

        3.  If the claimant states that it is not alright to leave a voice mail message, the CM will make one attempt to contact the claimant prior to notifying the SBC supervisor.

        4.  If the claimant does not have voice mail, the CM will let the phone ring 10 times prior to disconnecting the call.

    7  Write the denial letter within 24 hours of making the decision

      a  Always choose the appropriate letter from the H Drive, not from your J Drive or C Drive. Only the H Drive will have all the current updates and only the H Drive is approved by our legal advisors

      b  Include:

- 36 -

36

P00383

    i     All medical information received

    ii    All the names of providers who provided medical information

    iii   Why the medical information did not support a disabling condition

    iv   What is needed to perfect the claim if medical information is missing or if questions were not answered

  c  Forward the letter via email to the Business Unit Manager (BUM) or the manager's designee for review and document this in JURIS Notes

  d  The BUM will review the case and the denial letter

    i     If the BUM agrees with the denial recommendation and there are no concerns regarding the letter, he or she will forward it to the CA via email within 4 hours

    ii    If the BUM does not agree with the denial recommendation or if there are concerns with the letter he/ she will meet with the CM within 4 hours and discuss what additional action is necessary, including updating status with the EE and Supervisor.

VI.    If additional medical information is received by SMAART after the denial letter is sent.  (The denial letter is considered "sent" when there is a note in JURIS from the CA stating that the letter has been mailed).  Read the medical information and determine if you would pay **all** of the time.

  A  **If you would pay all of the time**, review the medical records in JURIS Per Step 7B and proceed with an approval

  B  **If you would not pay all of the time,**

    1  Enter a note in JURIS stating that additional information has been received and will be returned to the employee with the appeal packet.  Document who the treatment provider is, what the medical information is (office note, MRI result etc), the date of service and the date SMAART received the medical information

    2  Call the employee if it is the second time you have returned medical information.

    3  Make a copy of the medical information received and a copy of the original denial letter.

    4  Return the original denial letter to the file with the copy of the medical information.

    5  Write the claim number including relapse number on the original piece of medical information

    6  Set a diary for the CA to send the Appeal Packet and return the original medical information.

    7  Set a diary for yourself two (2) business days later to verify that the medical information was returned and the Appeal Packet sent.

P00384

VII.    Put the original piece of medical information and the copy of the denial letter in the CA's "Return Medical Inbox"

**A   What are the exceptions to the Process?**

1.   **Deliveries**- if you receive additional medical information from the employee that informs you of a delivery, you may overturn the maternity leave timeframe without sending the medical information to the PA or returning the medical information to the EE.

If you receive additional medical information from the treating provider that only informs you of a delivery, you may overturn the maternity leave timeframe without sending the medical information to the PA or returning the medical information to the EE.

If you receive medical information from a treatment provider relating to time outside the maternity leave with or without information relating to the maternity leave, you may pay/ overturn the maternity leave only then follow the processes listed above.  When returning medical to the employee, adjust the letter to reflect the paid time until a form letter is put on the H: Drive, then forward to your CA for mailing.

B   **Medical Records**- do not forward medical information that specifically requests that it not be forwarded.  If the case manager questions if the medical is appropriate to forward to the employee, call the provider for his or her opinion.  Document the conversation in JURIS notes. When returning medical to the employee, adjust the letter to reflect there is no copy of the medical attached, until a form letter is put on the H: Drive.

VIII.   Step 8 Complete, Proceed to Step 16

P00385

| Medical information is received | Medical supports the entire time off | Medical supports part of the time off | Medical does not support any time off |
|---|---|---|---|
| **WRITTEN INFORMATION** | | | |
| **While the claim is in the PA process** | Review the medical in JURIS Pay the claim Retrieve the claim from the PAPC | Review the medical in JURIS Pay the approvable days Forward the medical to the PAPC for the denial recommendation | Review the medical in JURIS Forward the medical to the PAPC for the denial recommendation |
| **After the PA has rendered his or her decision but before the denial letter is mailed** | Review the medical in JURIS Pay the claim | Review the medical in JURIS Pay the approvable days Return the file with the new medical to the PAPC for the new denial recommendation | Review the medical in JURIS Return the file with the new medical to the PAPC for the denial recommendation |
| **After the denial letter has been mailed** | Review the medical in JURIS Pay the claim | In JURIS acknowledge what medical was received, when & by whom Forward the medical to the EE | In JURIS acknowledge what medical was received, when & by whom Forward the medical to the EE |
| **TELEPHONIC INFORMATION** | | | |
| **While the claim is in the PA process** | Document the medical contact in JURIS Review the medical in JURIS Pay the claim Retrieve the claim from the PAPC | Document the medical contact in JURIS Review the medical in JURIS Pay the approvable days Print and forward the medical to PAPC for the denial recommendation | Document the medical contact in JURIS |
| **After the PA has rendered his or her decision but before the denial letter is mailed** | Document the medical contact in JURIS Review the medical in JURIS Pay the claim | Document the medical contact in JURIS Review the medical in JURIS Pay the approvable days Return the file to the PAPC with a print of the new medical | Document the medical contact in JURIS Call the EE, explain the provider contacted SMAART, explain the appeal process |
| **After the denial letter has been mailed** | Document the medical contact in JURIS Review the medical in JURIS Pay the claim | Document the medical contact in JURIS Call the EE, explain the provider contacted SMAART, explain the appeal process | Document the medical contact in JURIS Call the EE, explain the provider contacted SMAART, explain the appeal process |

P00386

## Step 8: Part C     Denial: Did Not Meet the 7-Day Waiting Period

| | |
|---|---|
| Summary: | This procedure is used to ensure appropriate case management, documentation, as well as employee and client notification of a denied claim due not meeting the seven-day waiting period. |
| Due: | The decision is due within 24 hours of CM learning that EE did not meet the waiting period |
| Note Type: | BA |

I.     Document the denial recommendation in JURIS notes using the BA note.

II.     **Example: "BU- Absence does not met 7 day waiting period (FDA= xx/xx/xx and RTW= xx/xx/xx)"**

III.     Update the Time Tracking Screen to reflect a return to work previous to the 8th day of absence

IV.     Update the Claim Status to denied

V.     Contact the employee to notify him or her of the claim's denial status and his or her appeal rights

   A     If direct contact with the employee is successful, document the conversation and send the denial email

   B. If direct contact with the employee is not successful, CM will make **one** attempt to contact the claimant and inform him/her of the disability benefit decision.

      1.     During the case management process, the CM will ask the claimant if the CM may leave a message regarding the claim status (approved/denied) on his/her voice mail.

      2.     If the claimant stated that it is alright to leave a voice mail message, the CM will leave a message with the claim status.

      3.     If the claimant states that it is not alright to leave a voice mail message, the CM will make one attempt to contact the claimant prior to notifying the SBC supervisor.

      4.     If the claimant does not have voice mail, the CM will let the phone ring 10 times prior to disconnecting the call.

   C. Document the attempt and the message

   D. Send the denial email

VI.     Write the denial letter

   A     Always choose the appropriate letter (Did not met the 7-day waiting period) from the H Drive, not from your J or C Drive.  Only the H Drive will have all the current updates.  Include in the letter the FDA and the RTW dates

VII.     Forward the letter via email to the Business Unit Manager (BUM) or the manager's designee for review and document this in JURIS Notes

VIII.     The BUM will review the case and the denial letter and forward it to the CA via email within 4 hours if there are no concerns

P00387

A  If the BUM does not agree with the denial recommendation he/ she will meet with the CM within 4 hours and discuss what additional action is necessary, including updating status with the EE and Supervisor.

IX.    Step 8 Complete, Proceed to Step 16

41

P00388

**Step 8: Part D   Denial: Less Than 6 Months Net Credit Service**

| | |
|---|---|
| Summary: | This procedure is used to ensure appropriate case management, documentation, as well as employee and client notification of a denied claim due to having less than six months net credit service. This includes the following plans: AIT, DBP, and SNET) |
| Due: | The decision is due within 24 hours of CM learning that EE did not meet the NCS requirement |
| Note Type: | BA |

I.    Document the denial recommendation in JURIS notes using the BA note. Include

   A   Example BA note **"BU- EE not eligible, Net Credit Service Date (xx/xx/xx) is less than 6 months"**

II.   Update the Time Tracking Screen to reflect a denial decision

III.  Update the Claim Status to denied

IV.   Contact the employee

   A   If direct contact with the employee is successful,

      1   Inform the employee that the claim is denied because he or she does not met the 6 months net credited service requirement

      2   Advise the employee to expect a denial letter

      3   Explain to the EE his or her appeal rights

      4   Explain to the EE that no conditional pay or benefits will be paid

      5   Explain to the EE that the claim will continue to be medically managed to support time off

      6   Advise the EE that the supervisor will be updated with claim status based on the medical information received and denial of benefits due to less than 6 months service.

      7   Send a denial email to the Supervisor

      8   Document the conversation in JURIS notes

   B.  If direct contact with the employee is not successful CM will make **one** attempt to contact the claimant and inform him/her of the disability benefit decision.

      1.  During the case management process, the CM will ask the claimant if the CM may leave a message regarding the claim status (approved/denied) on his/her voice mail.

      2.  If the claimant stated that it is alright to leave a voice mail message, the CM will leave a message with the claim status.

      3.  If the claimant states that it is not alright to leave a voice mail message, the CM will make one attempt to contact the claimant prior to notifying the SBC supervisor.

      4.  If the claimant does not have voice mail, the CM will let the phone ring 10 times prior to disconnecting the call.

   C.  Document the attempt and the message

   D.  Send the denial email

42

P00389

VII.  Write the denial letter

    A  Always choose the appropriate letter (EE does not the meet six (6) months of net credited service) from the H Drive not from your J or C Drive.  Only the H Drive will have all the current updates and are legally approved for your use.

VIII.  Forward the letter via email to the Business Unit Manager (BUM) or the manager's designee for review and document this in JURIS Notes

IX.  The BUM will review the case and the denial letter and forward it to the CA via email within 4 hours if there are no concerns

    A  If the BUM does not agree with the denial recommendation he/ she will meet with the CM within 4 hours and discuss what additional action is necessary, including updating status with the EE and Supervisor.

X.  Step 8 Complete, Continue to medically manage the claim and Proceed to Step 16 at the RTW or 30 days after the "medical denial".

- 43 -

43

P00390

**Step 8: Part E    Denials: Ineligible Employees (Miscellaneous)**

| | |
|---|---|
| Summary: | This procedure is used to ensure appropriate case management, documentation, as well as employee and client notification of a denied claim due to being an ineligible employee. |
| Due: | The decision is due within 24 hours of CM learning that EE is not eligible |
| Note Type: | BA |

I.    Document the denial recommendation in JURIS notes using the BA note.  Include Example BA note **"BU: xx/xx/xx – RTW date, EE not eligible, and the reason"**

II.   Update the Time Tracking Screen to reflect a denial decision

III.  Update the Claim Status to denied

IV.   Contact the employee

   A   If direct contact with the employee is successful inform the employee of the information below and document the conversation

     1   That the claim is denied because he or she is not eligible "specific reason"

     2   Advise the employee to expect a denial letter

     9   Explain to the EE his or her appeal rights

     10  Explain to the EE that no conditional pay or benefits will be paid

     11  Explain to the EE that the claim will continue to be medically managed to support time off (if appropriate)

     12  Advise the EE that the supervisor will be updated with claim status based on the medical information received and denial of benefits due to less than 6 months service.

     13  Send a denial email to the Supervisor

   B   Document the conversation in JURIS notes.  If direct contact with the employee is not successful wait until 2 attempts within 48 hours are made to contact the ee before sending the denial email.

     1   Leave a voice mail message requesting a return call regarding the status of his or her claim

     2   Document the attempt and the message

     3   Set a diary to call the EE again within 24 hours

       a   If direct contact with the employee is successful document the conversation send the denial email

       b.  If direct contact with the employee is not successful CM will make **one** attempt to contact the claimant and inform him/her of the disability benefit decision.

         1.  During the case management process, the CM will ask the claimant if the CM may leave a message regarding the claim status (approved/denied) on his/her voice mail.

         2.  If the claimant stated that it is alright to leave a voice mail message, the CM will

P00391

leave a message with the claim status.

3. If the claimant states that it is not alright to leave a voice mail message, the CM will make one attempt to contact the claimant prior to notifying the SBC supervisor.

4. If the claimant does not have voice mail, the CM will let the phone ring 10 times prior to disconnecting the call.

c. Document the attempt and the message

d. Send the denial email

VIII.   Write the denial letter

Always choose the appropriate letter from the H Drive not from your J or C Drive.  Only the H Drive will have all the current updates and are legally approved for your use.

IX.    Forward the letter via email to the Business Unit Manager (BUM) or the manager's designee for review and document this in JURIS Notes

X.    The BUM will review the case and the denial letter and forward it to the CA via email within 4 hours if there are no concerns

A   If the BUM does not agree with the denial recommendation he/ she will meet with the CM within 4 hours and discuss what additional action is necessary, including updating status with the EE and Supervisor.

XI.    Step 8 Complete, Proceed to Step 16

- 45 -

45

P00392

| Step 9 | The Physician Advisor Referral | |
|---|---|---|
| **Summary:** | This step contains the acceptable methods and documentation to ensure appropriate and timely Physician Advisor referrals for all appropriate claims | |
| Person | Action | Due Date |
| CM | Requests referral to PA | Day 0 (the day the CM reviews the medical) |
| PAPC | Prioritizes referral | Day 1 or earlier |
| PA | Completes referral | Day 3 or earlier |
| **Note Type:** | ST | |

**When is the case manager required to obtain a PA review?**

| When the CM recommends denial because he or she... | PA Review | No PA Review |
|---|---|---|
| did not receive medical information by the medical due date (initial or ongoing) | | X |
| did not receive clinical information by the medical due date (initial or ongoing) for example received only an off work note | | X |
| did not receive clinical information relevant to the timeframe by the medical due date (initial or ongoing) for example received medical information for a timeframe one week previous to the time in question. | | X |
| confirmed that the EE is not eligible. (missed 7 day waiting period, less than six months of service, suspension, etc...) | | X |
| believes that the clinical information submitted does not support a total disability with or without restrictions (initial or ongoing) and is recommending a denial decision | X | |

| When the claim is in a denied status, | PA Review | No PA Review |
|---|---|---|
| the medical should be returned to the EE, unless a total approval can be made or the CM is authorizing "maternity leave". If the medical is returned, note what was received, when it was received and which provider sent it. If the claim will be approved, document the medical in summary or SOAP format | | X |

**I. Case Manager at the completion of your medical review:**

    A. Contact Treatment Provider Office (TPO) during legitimate business hours for the TPO
        a. Inform that PA will try to contact the TPO to clarify medical because claim may be denied.
        b. Ask TPO to recommend day(s) and time(s) of availability.
        3. If contact to the TPO is not successful
            a. Leave a message requesting a call back by the end of the business day to provide availability
            b. If the TPO does not return the call timely referral the file for a review only at the end of the day

- 46 -

46

P00393

    B. Contact claimant
       1. Inform claim may be denied and is being referred to a PA for review and/or a doctor to doctor contact.
    C. Complete the PA referral
       1. If the TPO indicated that he/she will speak to the PA during the first 2 days of the PA referral process:
         a. Refer the claim to the PA for file review and TPO contact
         b. Document provider contact and availability information on the PA Referral Form
       2. If the TPO indicates that he/she will not speak to the PA during the first 2 days of the PA referral process:
         b. Refer the claim to the PA for file review only
         c. Document that the TPO is unavailable for contact in JURIS notes and on the PA Referral Form
    D. Complete the miscellaneous screen in JURIS

II. PAPC:
    A. Note in JURIS receipt of file, and what the file is being referred for
    B. Review the PA referral form for all required information
    C. Complete vendor tracking screen
    D. Prioritize and forward claims to the PA (consider PA specialty, TPO availability, referral due date and dual referrals)
    E. The PAPC will no longer contact the TPO to schedule an appointment.

III. Physician Advisor:
    A.    Attempt to contact the TPO for doctor-to-doctor contact files, consider TPO availability
     (1) If doctor-to-doctor contact is successful, complete review after contact.
     (2) If doctor-to-doctor contact is not successful, complete review without contact and leave a message as directed below:
       (a) If the TPO contact is attempted before 12:00 pm (CT) request a return call by 12:00 pm (CT) the next business day.
       (b) If the TPO contact is attempted after 12:00 pm (CT) request a return call by 4:00 pm (CT) the next business day.
       (c) If the TPO does not return the call to the PA by the designated time the review will stand alone
    B.    If the TPO does return the call to the PA by the designated time the review will be amended to reflect the contact with the TPO
    C.    Complete review-only files.

IV. PAPC:
    A. Pick up files from the PA
    B. Complete vendor tracking and miscellaneous screen in JURIS
    C. Send email that process is complete and copy into JURIS notes and print send email for hard file.
    D. Deliver files to the CM

V. Case Manager at the completion of PA medical review:
    A. Complete the miscellaneous screen in JURIS

               - 47 -                  47

B. Make a claim decision

C. Continue with the STD process

VI. Receipt of additional medical
    A. See Attached Chart.

VII. Calls from TPO:
    A. TPO calls will be forwarded to the PAPC by CSR when:
        1. TPO returns the call to the PA prior to a TP note in the JURIS documenting the completion of the review.
        2. TPO calls will be forwarded to the appropriate PA by PAPC
    B. TPO calls will be forwarded to the CM by the CSR when:
        1. The TPO returns the PA call after a TP note in JURIS documents the completion of the review.
        2. If CM is not available to receive the TPO call, another CM or the BUM will be paged to take the information from the TPO.

P00395

Last Update 05-12-04

| Medical information is received | Medical supports entire time off | Medical supports part of time off | Medical doesn't support any time off |
|---|---|---|---|
| **WRITTEN INFORMATION** | | | |
| File has been referred to the PAPC but the PA has not completed his or her review. | Document and review the medical in JURIS<br>Pay the claim<br>Retrieve the claim from the PAPC | Review the medical in JURIS<br>Pay the approvable days<br>Hand deliver the medical to the PAPC for the denial recommendation review<br>If PAPC is not available leave in urgent medical review bin | Review the medical in JURIS<br>Forward the medical to the PAPC for the denial recommendation |
| After the PA has completed his or her review (dictation may not be entered in JURIS, so check with PAPC) but before the denial letter is mailed | Document and review the medical in JURIS<br>Pay the claim<br>Retrieve the claim from the PAPC | Review the medical in JURIS<br>Pay the approvable days<br>Return the file with the new medical to the PAPC for the new denial recommendation review | In JURIS acknowledge what medical was received, when & by whom<br>Forward the medical and appeal packet with denial letter to the EE |
| After the denial letter has been mailed | Document and review the medical in JURIS<br>Pay the claim | In JURIS acknowledge what medical was received, when & by whom<br>Forward the medical and appeal packet to the EE | In JURIS acknowledge what medical was received, when & by whom<br>Forward the medical and appeal packet to the EE |
| **TELEPHONIC INFORMATION** | | | |
| File has been referred to the PAPC but the PA has not completed his or her review. | Document and review the medical contact in JURIS<br>Pay the claim<br>Retrieve the claim from the PAPC | Document and review the medical contact in JURIS<br>Pay the approvable days<br>Print and hand deliver the medical to PAPC for the denial recommendation review<br>If PAPC is not available leave in urgent medical review bin | Document the medical contact in JURIS |
| After the PA has completed his or her review (dictation may not be entered in JURIS, so check with PAPC) but before the denial letter is mailed | Document and review the medical contact in JURIS<br>Pay the claim<br>Retrieve the claim from the PAPC | Document and review the medical contact in JURIS<br>Pay the approvable days<br>Return the file to the PAPC with a print of the new medical for a new denial recommendation review | Document the medical contact in JURIS<br>Call the EE, explain the provider contacted SMAART, explain the appeal process |
| After the denial letter has been mailed | Document and review the medical contact in JURIS<br>Pay the claim | Document the medical contact in JURIS<br>Call the EE, explain the provider contacted SMAART, explain the appeal process | Document the medical contact in JURIS<br>Call the EE, explain the provider contacted SMAART, explain the appeal process |

49

- 49 -

Last Update 05-12-04

**I     The CM is required to refer the claim to the PA for a review when the claim is clinically denied (clinical information does not support).**

**A.     What is the standard for clinical information?**

If the information the Case Manager receives includes any <u>more information than what is listed below</u>, consider it clinical information and if the medical information does not support a disability; consider the denial a clinical denial.  Otherwise the case manager may consider the information as if it were an "off work note" for denial purposes, which would not be a clinical denial and would not require a PA referral.

- Provider's name, specialty, and contact information
- Last and or next office visit date
- Off work dates
- Diagnosis

**B.     What is the standard for a relevant timeframe?**

1.     If the Case Manager receives medical records documenting a timeframe more than one week prior to the waiting period, those records may be considered irrelevant, and do not require a PA referral unless the CM believes otherwise.  In addition the CM should make one attempt to call the employee to inform him/ her of the outdated medical information.  If direct contact is not successful, a request for a return call should be left.

2.     If the Case Manager receives medical records documenting a timeframe more than one week outside the disability days in question, those records may be considered irrelevant, and do not require a PA referral unless the CM believes otherwise In addition the CM should make one attempt to call the employee to inform him/ her of the outdated medical information.  If direct contact is not successful, a request for a return call should be left.

**II.     The CM may refer a claim to the PA in the situations listed below after consulting the MDA, BUM, the Team Lead, or the SME**

A. The CM requires clarification of the medical condition or severity
B. The CM requires clarification of functional status and restrictions or limitations
C. The CM requires clarification regarding why the EE does not seem to be progressing in his or her current treatment program
D. The CM has extended benefits previously and based on the current medical information does not expect to extend benefits again.  The EE is not planning to RTW at the end of the approval

- 50 -

50

P00397

timeframe and does not offer information that the CM believes will warrant an extension. The CM is not required to wait until the end of the approval period to forward the claim. The CM may be proactive and forward the claim to the PA immediately to allow for the use of the additional time.

III.  What form can the referral take?

- <u>Treatment Provider Contact</u> (Doc-to-Doc)- The PA contacts the treating provider to discuss the medical information provided to SMAART and any additional information the treating provider may provide. Notes in JURIS required by PA.
- <u>One-on-One</u>- The PA and the CM discuss the case in person. No notes are required in JURIS by the PA. Notes in JURIS are required from the CM.
- <u>Denial</u> (Doc-to-Doc)- The Case Manager cannot approve the claim based on the information provided. Notes in JURIS required by PA.

---

**IV     How do I communicate the referral?**

**A.     Call for availability of the EE's treating provider.**

If the provider is not available for direct contact within the next 4 business days (the day of the referral is day 1), the CM should communicate to the provider that the benefit decision will be made within the next 4 business days using the information currently in our possession.

**B.     For denials**

1.  Complete the referral form
2.  Summarize the medical situation. Include:
   a. A summary of the medical information received by SMAART
   b. An explanation of the functional ability in relationship to the job duties
   Example: EE a 160-pound female who fractured her ankle on 01/01/03. She remains in a cast and is non-weight bearing, using crutches. She has a sedentary job requiring sitting, talking on phone using a headset, and typing. She currently requires no assistance for activities of daily living (ADL's) and drives herself to medical appointments. The supervisor has accepted the EE's accommodation requests of elevating her leg 12 inches at all times by propping her leg on a box while at her desk and using the elevator to access her workspace and the parking garage.
   c. A Rationale for recommending the claim for denial.
      <u>If this is an initial decision, include:</u>
      - A statement that this is the initial decision
      - The specific reason why the medical information does not support the disability.
      (This information can be incorporated into your denial letter).

- 51 -                                                                                       51

P00398

**If this is an ongoing decision, include:**
- The previously approved time frame
- The reason why the claim was approved in the past
- What has changed to make the claim no longer approvable
- (This information can be incorporated into your denial letter).

3. Number "2" should be written in a single "ST" note in JURIS then copied and pasted to the PA Referral Form in the designated area

4. Forward the Form with the claim file to the Physician Advisor Process Coordinator (PAPC).

**C.    Non- denials**

1. Complete the referral form
2. Summarize the medical situation.  Include:
   a) A summary of the medical information received by SMAART
   b) An explanation the functional ability in relationship to the job duties (see example above in "B"
   c) The questions that the CM needs answered
3. Number "2" should be written in a single  "ST" note in JURIS then copied and pasted to the PA Referral Form in the designated area
4. Forward the Form with the claim file to the Physician Advisor Process Coordinator (PAPC).

**V     What are appropriate questions to ask the PA?**

A. The column titled "Inappropriate" is a list of questions that the CM should find answers to by searching the MDA and other medical references; or by speaking with the Treating Provider, the BUM, the Team Lead or the SME.

B. Using these resources, the CM should gather enough information to make a rational analysis of the situation and to develop specific questions relating to the condition, the severity of the condition, and the functionality of the employee in relationship to his or her job duties.

C. The second column titled "appropriate" questions, lists the types of questions developed in "B"

D. The CM then refers the case through the PAPC to the PA to obtain his or her opinion of the analysis and to answer the question(s).

P00399

Last Update 05-12-04

E. The PA will advise the CM if he or she agrees with the CM's analysis and/or the PA will provide the CM with further explanation and or additional medical information to take into account in making the benefit decision.

P00400

| Inappropriate | Appropriate |
|---|---|
| Is the EE disabled? <br> Can the employee do his job? <br> Should this case be approved? <br> Should benefits be extended? | This employee has "x" condition affecting his non-dominant hand and has a sedentary position.  Is the muscle strength in the afflicted hand usually so low 1 week after "initial treatment" that the EE would not be able to type 25 wpm? What indicators in the physical exam would point to this lack of functionality? |
| What are the appropriate R and L's? | The treating provider has not indicated that the EE has any restrictions.  Several calls to the provider have been unsuccessful in obtaining the restrictions.  The employee states that she cannot sit for more than 1 hour at a time and lies in bed all day.  This employee has a sedentary position. Based on the medical information the EE is experiencing only a moderate reduction of mobility and range of motion, which suggests that the EE could work partial days.  Would 4 hours a day for the next 2 weeks (until her physical therapy is complete) be appropriate restrictions? <br><br> The EE is 3 weeks post a Carpal Tunnel Release in her non-dominant hand, no complications but the employee does have diabetes.  The treating provider has indicated that the EE has a restriction of no typing, no repetitive wrist movements using that hand; due to her continued pain, weak thumb strength and minor swelling at the wrist after increased activity.  The employee admits to not needing any assistance with buttoning clothes, or writing.  She can be accommodated at work by limiting her typing but not with one-handed work.  Based on the medical information is there any reason why the employee would not be able to return to work with limited typing?  What would be the appropriate amount of typing? |
| What are the EE's functional abilities? <br> What can the employee do or not do? | The employee has a severe wound on his dominant hand, palm side.  4 days after sutures and antibiotics do you agree that the EE would be able to loosely open and close his hand? <br><br> The EE is diagnosed with severe depression The provider prescribed Prozac 18 days ago.  At the last office visit, the provider documented improved functional ability and reduced |

- 54 -

54

P00401

| | |
|---|---|
| | treatment from 2 times a week to 1 time a week; yet is not open to RTW half days before an additional 10 days have passed.  Based on the description of the EE's functional level, is there reason that the EE would be unable to RTW half days immediately, while continuing weekly treatment? |
| What is the DDG?<br>How long should this case be paid?<br>How long should this employee be off work? | The ee had a "name surgery," no DDG is listed in the MDA.  A similar surgery has a DDG of 4-6 weeks.  The treating provider advises that the EE is disabled for 8 weeks.  There were no complications or co-morbidities.  Is a DDG of 6-8 weeks appropriate? |
| Is this employee receiving appropriate treatment? | The employee has "x" condition.  The treatment to date has been "y".  Per the MDA, patients with severe symptoms or patients with symptoms for "z" amount of time are escalated to "v" level of treatment.  Is there any information listed in the medical records that would explain why the treatment has not been escalated at this time?<br><br>The MDA does not list "X" as a form of treatment for this condition.  Is this treatment appropriate for the EE's condition? |
| Can the employee work while taking this prescription?<br>Is the employee disabled while taking this medication? | The employee is taking "x" medication at "z" dosage, for "y" condition.  The EE has been on this medication for "z" weeks.  What is the appropriate timeframe for the medication to reach a therapeutic level?<br><br>The employee is taking "x" medication for "y" condition.  The ee has been on this medication for "z" weeks.  The EE is required to take the medication once a day.  Is there any reason why the EE could not take this medication after work hours to enable her to be alert while working? |

- 55 -

55

P00402

## Step 10    The Return to Work Specialist Referral

| | |
|---|---|
| Summary: | This step contains the acceptable methods and documentation to ensure appropriate and timely return to work specialist referrals for all appropriate claims. |

| Due: | |
|---|---|
| Triage Nurse | Day one or two (1 or 2) as appropriate |
| CM | The day medical is reviewed and ongoing as appropriate |
| | The day a claim is recommended for clinical denial |
| BUM | Day twenty-three (23)/ Day 11 for late reports, claims with no conditional pay period and immediate relapses as appropriate |
| | Day sixty (60) as appropriate |

| Note Type: | ST |
|---|---|

I.    Determine the need for a Return to Work Specialist (RTWS) referrals

II.    Mandatory RTW Referrals (The CM is required to refer claims to the RTWS in the following situations unless the Triage Nurse has already made the referral or the CM is able to facilitate a RTW)

    1    Permanent Restrictions (The RTWS is required to be involved in all permanent restrictions)

    2    Failed RTW (an employee rtw with restrictions then immediately relapsed)

    3    Heavy Duty EE disabled outside of the optimum DDG

    4    Sedentary EE with injury to lower extremities

    5    Sedentary EE with one handed ability

    6    Chronic loss of voice (Dysphonia)

    7    Chronic psychiatric condition

    8    Chronic Pain

    9    Environmental Sensitivities

    10    The workplace is refusing reasonable accommodation

    11    Approved claims at day 45 for RTW Specialist (CA's create this diary and the CM does not have to complete a referral form)

III.    CM recommended RTW referrals

    1    Review EE's restrictions, limitations, and job duties

    2    Evaluate the EE's abilities and the potential for the EE to RTW with accommodations

    3    Potential areas of high impact

        a    EE's outside the optimum DDG

        b    Psychiatric claims

        c    Lengthy DDGs

        d    Heavy Duty employees with the ability to work sedentary or light duty

P00403

Last Update 05-12-04
IV.    Consider

1    If there is a reasonable accommodation that can be made and medical information supports the need for the accommodation arrange the accommodation. Always have an estimated duration of the accommodation.

2    If there is a reasonable accommodation that can be made but there is difficulty with obtaining supervisor approval, complete the referral form.

    a    Set diary to follow up on the referral, Step 10 Complete

2    If no reasonable accommodation can be made (the EE's condition can not be reasonably accommodated at this time)

    a    Step 10 Complete, Proceed to Step 11

- 59 -

57

P00404

## Step 11        Calculating the Approval Timeframe

| | |
|---|---|
| Summary: | This step contains the process for determining the first and last day of disability based on the optimum DDG. |
| Due: | The day the Case Manager reviews medical and approves benefits |
| Note Type: | None |

I.   Count the number of days in the optimum DDG from day one.   Day one is determined as follows:

  A   Conditions-The first day of absence (FDA) if the EE was treated before or on day eight.  If treatment was after day eight, the disability days previous to the First Office Visit (FOV) should be evaluated individually and may be denied if medical information does not support a disability on those days.

  B   Surgeries/ procedures that were outpatient or less than 24 hour hospitalization-The day of the surgery/ procedure if the procedure was performed before or on day eight.  If the surgery/ procedure was performed after day eight, the disability days previous to the surgery/ procedure should be evaluated individually and may be denied if medical does not support a disability on those days.

  C   Hospitalizations including surgeries and procedures with hospitalizations greater than 24 hours-The day of discharge from the hospital.

  D   Deliveries-The day of the delivery (not the date of discharge from the hospital) if the delivery was before or on day eight.  If the delivery was after day eight, the disability days previous to the delivery should be evaluated individually and may be denied if medical does not support a disability on those days.

II.   Pay begins on day eight (8), the first day of disability (FDD) unless the claim is an immediate relapse, then pay begins on day one (1) which is considered the FDD for an immediate relapse claim.

III.   Determine pay end date considering:

  A   Functional ability

  B   NOV

  C   ERTW date

  D   DDG

IV.   Document anticipated RTW date based on the DDG in the Time Tracking Screen.

V.   Complete approval letter to the EE, found on the H Drive.

VI.   Step 11 Complete

VII.   Proceed to step 12 (If the BA end date is past, complete Step 8A for denied days simultaneously with Step 12).

P00405

| Step 12 | Payment Process |
| --- | --- |

| Summary: | This step contains the acceptable methods and documentation used to enter approval dates into JURIS and trigger disability payments for the employee |
| --- | --- |
| Due: | The day the Case Manager approves benefits |
| Note Type: | BA |

I.   To pay benefits proceed with the following steps:

  A   Calculate the offset amount (Do not enter workers' compensation offset unless the ee is actually receiving the benefit.  Set a diary to follow up.)

  B   Enter a "BA" note in JURIS Notes stating the dates of approval "BA xx/xx/xx-xx/xx/xx"

    1   If any dates were entered as Partial Disability, identify the dates and note that the dates covered partial disability

    2   If any dates were entered at a reduced benefit (50 or 60% pay) identify the dates and note that the dates offer partial benefits (In JURIS: Options, Employee, Benefit Summary)

    3   Note the offset type and amount

  C   Update the JURIS Offset screen with the appropriate offset amount

  D   Update the JURIS Time Tracking screen with the appropriate benefit dates, ERTW date and status (If there is partial disability update the partial screen and restriction tab).

  E   Complete the ICD-9 Screen

  F   Update the JURIS Payment Authorization screen with the appropriate dates

  G   Verify your payments were correctly entered in the Payment Authorization screen by checking the Payment History screen

  H   Update the JURIS claim status to approved

  I   Send the approval Email to supervisor and document the action in JURIS Notes

  J   Send the approval letter to EE and document the action in JURIS Notes.

  K   Call the EE to inform him/ her of the claim status.  If no direct contact leave a message and document the action in JURIS.

  L   Set a diary for five (5) days previous to the last day of pay to verify the EE's intent to RTW as scheduled or use system diary.

II.   Step 12 Complete, Proceed to Step 13

P00406

Last Update 05-12-0

To reduce benefit with an offset

Enter the offset amount into the Offset screen
Go to:
Options
Recoveries and offsets

P00407