# EXHIBIT 2

SMAART
P.O. Box 61568
King Of Prussia, PA 19406
Telephone 1-866-BSMAART (1-866-276-2278)
Facsimile 1-866-224-4627

RECEIVED

SEP 2 3 2005

LEWIS, FEINBERG,
RENAKER & JACKSON

September 21, 2005

Lewis, Feinberg, Renaker & Jackson, P.C.
Attorneys at Law
1330 Broadway, Suite 1800
Oakland, CA 94612-2509
Attention: Teresa S. Renaker

Re:    Pacific Telesis Group's Comprehensive Disability Benefits Plan (CDPB)
       Claim Number:  A325033343-0001-07 Yvonne Glover

Dear Ms. Renaker:

The SMAART Quality Review Unit reviewed submitted material and information
regarding the denial of short-term disability benefits by the SBC Medical Absence
Accommodations and Resource Team (SMAART), for your client's claim with a first
date absent of October 27, 2004.  After this review, the Unit determined to uphold the
denial of benefits based on the following:

The Short Term Disability Plan provides in Section 2 Paragraph 2.1 that "Short Term
Disability" shall mean a sickness, injury or other medical, psychiatric, or psychological
condition, which prevents an Employee from engaging in his or her normal occupation or
employment with the Participating Company, or such other occupation or employment as
he or she is assigned in accordance with the Participating Company's normal practices."

The Unit and the independent physician advisors, specialists in orthopedic surgery,
speech pathology and neurology reviewed all of the medical information contained in
your client's file and submitted during the appeal. The medical information included
documentation for the period of September 7, 1990 through November 9, 2004 from
Kaiser Permanente outpatient speech pathology services, Robert Leiberson, M.D., Robert
Wagner, M.D., Jill Harrell, M.D., John Warbritton III, M.D., K Izdebski, Ph.D. and
Summit Medical Centers

The medical information provided for the denial/ appeal period did not contain sufficient
clinical findings to substantiate a disabling condition.

**SBC Medical Absence & Accommodations Resource Team**
**As Administered by Sedgwick Claims Management Services Inc.**

P00809

SMAART
P.O. Box 61568
King Of Prussia, PA 19406
Telephone 1-866-BSMAART (1-866-276-2278)
Facsimile 1-866-224-4627

The medical information indicated that Ms. Glover reported feeling a pop in her wrist in July 2002 when she emptied a box of paper; she was treated conservatively for a wrist ganglion cyst. In November 2002 she reported a sudden onset of neck pain after picking up her chair at work; later that month she indicated that she was ejected from her new chair and onto the floor. Ms. Glover continued to have symptoms in her right hand, arm and neck throughout the years 2003 and 2004; she went to the emergency room on July 1, 2004 for pain relief. She has reported that her symptoms worsen with work activities such as validating calendars, paperwork and computer work. Dr. Harrell concluded in her report dated October 28, 2005 that Ms. Glover is precluded from heavy lifting, forceful pushing and pulling and repetitive work at or above shoulder level. She is also precluded from prolonged forward flexion of the neck and prolonged keyboarding.

Additionally, her past medical history indicates that she reported having a sudden onset of dystonia in the year 1990 and as such she has difficulty pronouncing certain words. Her speech however is documented as being understandable.

The orthopedic independent physician advisor noted that her magnetic resonance image (MRI) findings indicated cervical spondylosis with multilevel degenerative disc disease at C3 through C6 with mild disc protrusions and reversal of cervical lordosis of the spine. Physical examination findings indicated slight restrictions in range of motion of the cervical spine and paraspinal and trapezius muscle tenderness. The electromyography report is reported to be normal except in the neurological review in February 2003 which states that she has a C6 radiculopathy. A C6 radiculopathy, if present, would be inconsistent with numbness in the long, ring and small fingers. The independent physician advisor also noted that she has failed to improve from conservative treatment and has a need for chronic pain medication. The opinion of the independent physician advisor was that she would be considered disabled from her regular job and would be unable to work an eight hour day. However there is no documented loss of functionality of the upper extremities with regards to strength and there is no clear radiculopathy pattern consistent with MRI or EMG findings. It is unclear why Ms. Glover was able to withstand a four hour work day for five months prior to her pain being deemed totally disabling. There is no significant change in her functional status from a physical exam standpoint.

The speech pathology independent physician advisor noted that the first reference to Ms. Glover's voice disorder was from 1990. She received voice treatment and as of September 14, 1990 she had made some minor improvements. Office notes from Dr. Leiberson and Dr. Harrell note that she has a dystonic speech pattern and difficulty annunciating words. The opinion of the independent physician advisor was that the documentation did not support disability from her job as of November 3, 2004 based on speech and voice difficulties. There was no documentation from a physician or speech pathologist concerning dystonia or speech therapy other than what was provided by Dr. Izdebski in the year 1990, who indicated at that time her dysphonia appeared to be a conversion non-organic dysphonia. Ms. Glover's job changed from a primarily oral

P00810

SMAART
P.O. Box 61568
King Of Prussia, PA 19406
Telephone 1-866-BSMAART (1-866-276-2278)
Facsimile 1-866-224-4627

based communication job to a Staff Associate which requires 30 minutes of oral communication on the phone and perhaps more communication with other colleagues.

The Neurology independent physician advisor noted that Ms. Glover's physical examinations were abnormal per Dr. Harrell and Dr. Lieberson. Clinical data indicated reduced range of motion of her neck and sensory disturbance involving her right upper extremity. She had an abnormal MRI study which showed progressive cervical disc herniation at C5-6 with cord compression and motor deficits involving her upper extremity. There was insufficient evidence of cervical myelopathy. The opinion of the independent physician advisor was that Ms. Glover would be unable to perform her normal job duties however the clinical findings supported transitional work of four hour days.

According to our records, four hour work days were consistently available to your client. Therefore, although some findings are referenced, none are documented to be so severe as to prevent Ms. Glover from performing the job duties of Staff Associate with or without reasonable accommodations from November 3, 2004 to her return to work.

Under the terms of the Pacific Telesis Group's Comprehensive Disability Benefits Plan, the decision of the Unit is final. Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 after there has been full exhaustion of her appeal rights as enumerated in your plan's claim procedures and those rights have been exercised and the Plan benefit's requested by said claimant in such appeal have been denied in whole or in part by her employer. You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your client's claim benefits.

If you have any questions regarding the information contained in this letter, you may contact the SMAART Quality Review Unit at 1-866-276-2278

Sincerely,


Heidi Y. Lasser
Appeals Specialist
SMAART Quality Review Unit


**SBC Medical Absence & Accommodations Resource Team**
As Administered by Sedgwick Claims Management Services Inc.

# EXHIBIT 3

April 30, 2001

Ms. Jennings,

The processing of all claims and appeals for short term and long term disability for the PTG region has moved to Sedgwick effective April 9, 2001. As it was bargained that the PTG GEBC and PTG CRC will handle all claims and appeals under the PTG Comprehensive Disability Benefits Plan, those committees are being kept active. With concurrence from Legal, we are changing the official members to "titles" rather than names, and are designating titles at Sedgwick as well as SBC as voting members.

In addition, Margaret Cerrudo is replacing Joy Rick as a voting member of the SBC BPC due to Ms. Rick's impending job change.

Attached for your review is a comprehensive list of all committee members and covered plans. The changes being effected on this document and which require your approval are highlighted.

If you concur with these changes, please sign and date on the line below.

Approved:

_____          4-29-01
Senior Executive Vice President-Human Resources          Date

DEF000287

April 30, 2001

The undersigned acting as Senior Executive Vice President — Human Resources, SBC Communications Inc., Executive Vice President — Human Resources, Ameritech Interactive Technologies, Inc., and Executive Vice President — Human Resources, Pacific Telesis Group, hereby appoints the following administrative committees/claims administrators or confirms previously appointed committees/claims administrators, appoints/confirms committee members, as applicable, and assigns/confirms administrative responsibilities as follows:

SBC BPC
Sue Colburn — Chairman
Sue Langston
Gary Oliver
Joy Rick  - Del. eff. May 9, 2001
Margaret Cerrudo — Add eff. May 9, 2001
Ken Fenogllo

PTG GEBC —
Delete all members effective 4/9/01
Dawn Kopecky-Lewis
Colleen Demeritt
Karen Ward
Elizabeth Horan
Michael Trolley
Lisa Trevino
Melissa Finger
Kime Woodson

PTG CRC
Delete all members effective 4/9/01
James Beck - Chairman
Judy Karg
Carolyn Mullins
Dana Crews
Sue Crutcher
Karen Coleman

PTG GEBC — Add these members effective 4/9/01
Operations Manager (Sedgwick)
Business Unit Manager (Sedgwick)
STD Case Manager or a Medical Case Manager (Sedgwick)
Consultant - Health Related Services (SBC)
Consultant - Health Related Services (SBC)
Consultant - Health Related Services (SBC)

PTG CRC — Add these members effective 4/9/01
Manager, SBC Quality Review Unit (Sedgwick)
ERISA Specialist (Sedgwick)
Appeals Specialist (Sedgwick)
Clinical Appeals Specialist (Sedgwick)

DEF000288

;210 351 5925                # 4/ 6

PAGE 2

<u>EEAC – (Eligibility Enrollment Appeals Committee)</u>
Brad Hickman
Debbie Trammell
Kelly Frank
Norma Duncan
Wayne Blough
Belinda Rodriguez

DEF000289

| Plans/Claims Administrators | |
|---|---|
| SBC Pension Benefit Plan<br>PTG Pension Plan<br>AIT Management Pension Plan<br>AIT Pension Plan<br>Employees' Pension Plan of AIT<br>Publishing Ventures, Inc.<br>AIT Corporate Resource<br>Supplemental Pension Plan<br>AIT Management Supplemental<br>Pension Plan<br>AIT Supplemental Pension Plan<br>AIT Mid-Career Pension Plan | 1st level: KLG PriceWaterhouseCoopers<br>2nd level: SBC BPC |
| SBC Savings Plan for Salaried Employees<br>SBC Savings and Security Plan for<br>NonSalaried Employees<br>SBC PAYSOP<br>PTG Employee Stock Ownership Plan<br>SBC Leave of Absence Policy<br>PTG Leave of Absence Policy<br>AIT Leave of Absence Policy<br>SBC Employee Assistance Policy<br>AIT Employee Assistance Policy<br>AIT Savings Plan for Salaried Employees<br>AIT Savings and Security Plan for<br>NonSalaried Employees<br>Old Heritage Advertising & Publishers,<br>Inc. Profit Sharing Plan<br>National Guardian Corporation<br>Retirement Savings Plan | 1st level: SBC company 2nd line manager<br>with responsibility for the plan<br>2nd level: SBC BPC |
| SBC Disability Income Plan | 1st level: CORE, Inc. for Southwestern<br>Bell company employees<br>2nd level: CORE, Inc. for Southwestern<br>Bell company employees<br>1st level: Sedgwick for PTG company<br>employees<br>2nd level: Sedgwick for PTG company<br>employees |
| SBC Disability Benefits Plan | 1st level: CORE, Inc. for Southwestern<br>Bell company employees<br>2nd level: CORE, Inc. for Southwestern<br>Bell company employees |
| PTG Comprehensive Disability<br>Benefits Plan | 1st level: PTG GEBC for PTG company<br>employees<br>2nd level: PTG CRC for PTG company<br>employees |
| AIT Sickness and Accident Disability<br>Benefit Plan | 1st level: Sedgwick<br>2nd level: Sedgwick |
| Ameritech Corporate Resource<br>Severance Pay Plan | 1st level: Managing Director – Executive<br>Compensation<br>2nd level: SBC BPC |
| Health & Welfare Plans - Appeals of<br>Enrollment and Eligibility | 1st level: Hewitt<br>2nd level: SBC EEAC |

DEF000290

| | |
|---|---|
| Ameritech Management Employees' Severance Pay Plan<br>Ameritech Management Separation Benefit Plan<br>SBC Severance Pay Plan<br>Southwestern Bell Yellow Pages Management Severance Pay Plan<br>SWB TRI Management Severance Pay Plan<br>SBC Asset Management, Inc. Management Severance Pay Plan<br>SWBT Management Severance Pay Plan<br>PTG Severance Plan<br>Southwestern Bell Mobile Systems, Inc. Severance Pay Plan<br>PTG Separation Benefit Plans for Nonsalaried Nonrepresented Employees<br>Digital Graphics Advantage Severance Plan<br>SBC Communications Inc. Selective Severance Pay Plan<br>PTG Selective Severance Plan<br>SNET Management Severance Pay Plan<br>Southwestern Bell Messaging Services Inc. Severance Pay Plan | 1st level: Executive Director – HR Operations<br>2nd level: SBC BPC |

DEF000291

# EXHIBIT 4



**Insurance Appeals, Ltd.**

An Independent Review Organization (IRO)

September 15, 2005

Heidi Lasser
SBC Quality Review Unit
P.O. Box 804778
Chicago, IL  60680-4778

RE:        Yvonne Glover
DOB:                          ┌─────────────────────────┐
CLAIM #:   A325033343-07     │ REDACTED PURSUANT       │
SS #:                         │ TO GENERAL ORDER NO. 53 │
NMR #:     A31522.03          └─────────────────────────┘

Dear Ms. Lasser,

Thank you for referring this file for review to determine Ms. Glover's level of functionality. Specific issues will be addressed at the end of the report.

**RECORDS PROVIDED FOR REVIEW:**

| CLAIM LOG | Case Note | 11/02/04-09/07/05 | 1-34 |
|---|---|---|---|
| PROG NOTES | K. Izdebski, M.D. | 09/07/90 | 35-36 |
| PROG NOTES | Kaiser Permanente | 07/27/00 | 37 |
| PROG NOTES | ? | 10/03/02 | 38 |
| PROG NOTES | Robert E. Lieberson, M.D. | 02/27/03 | 39-41 |
| PROG NOTES | Warbritton And Associates | 03/17/03-11/09/04 | 42-59 |
| PROG NOTES | Summit Medical Center | 12/08/03-09/28/04 | 60-66 |
| PROG NOTES | Dr. Robert Wagner | ? | 67 |
| FILE REVIEW | William D. Abraham, M.D. | 01/18/05 | 68-71 |
| CT/MRI | | 01/06/03-05/24/04 | 72-74 |
| JOB | | | 75-80 |
| MISC. | | 11/12/04-05/20/05 | 81-124 |

**ORTHOPEDIC ASSESSMENT/SYNOPSIS:** A thorough review of the medical information provided has been completed.

Ms. Yvonne Glover is a 48 year old Staff Associate. This is considered a sedentary position. Job duties include sitting, typing, talking. Ms. Glover's last day of work was on 10/26/04 and she has not returned to work. During her time off, Ms. Glover had complaints of severe pain in her neck and bilateral arm.

DEF000053

09/15/05  THU 13:40 FAX 8153995350     NETWORK MEDICAL REVIEW                    ☐012



NMR#:A31522.03
September 15, 2005

RE: Yvonne Glover
Page 2

Ms. Glover has a history of neck and upper extremity pain with two episodes of work-related industrial exposures. She had an MRI in January 2003, which based upon the neurosurgical note showed disc protrusion at C5-C6 with slight impression on the thecal sac. According to the neurosurgeon, an EMG was consistent with a C6 radiculopathy. In much of the other documentation provided, it states that the EMG was normal. The official EMG report was not provided for review.

According to the neurosurgical evaluation on 02/27/03, Ms. Glover should avoid any lifting or overhead activities. She was also seen and evaluated by orthopedic surgeon. In the meantime she had failed epidurals and acupuncture up to 2003 and 2004. Ms. Glover was also dealing with a dystonia/dysphonia, which was ongoing since 1998. According to the documentation, an orthopedic surgeon had placed restrictions on Ms. Glover prior to July 2004. These stated that she could work an eight-hour a day with only two hours of keyboarding because of the prolonged flexion of the neck that would be required. This contributed to increase in her subjective complaints of neck pain and reported tingling in her fingers; predominantly the long, ring and small fingers on the right. In July 2004, Ms. Glover was still experiencing pain and her work restrictions were increased to a four-hour workday.

In October 2005, her treating orthopedic surgeon opined that Ms. Glover was permanent and stationary with a diagnosis of chronic soft tissue, musculoligamentous strain of the neck overlying a cervical spondylosis with a disc protrusion at C5-C6. The MRI report actually reads disc protrusions at C3-C4, C4-C5, and C5 through C6 with a reversal of the cervical lordosis without any frank neuroforaminal narrowing.

It states Ms. Glover's range of motion of the cervical spine was 75% of normal in flexion, 80% normal in extension, and 80% normal bilateral lateral rotation and lateral bending 50% on the left, 75% on the right with pain at the termination of end motion. She also was noted to have tenderness over the trapezius muscles. Her strength in the upper extremities was maintained and there was no frank neurological deficit with the sensation intact.

There is later documentation in the appeal letter from Ms. Glover's lawyer, which states that Ms. Glover also had chronic wrist pain, which is a comorbidity from a ganglion. This is not documented in the orthopedic evaluation of permanent stationary exam. It is not mentioned as a source of disability. Ms. Glover has also been on a myriad of medications related to her pain. It is unclear at the present time, what medications, if any, Ms. Glover is taking. From what can be determined by the medical reviewer at the time of disability, Ms. Glover may have been on Klonopin, Norco for pain, Soma, and Flexeril.

No further documentation is provided past the date of Ms. Glover's permanent and stationary exam in October 2004. Therefore, her status cannot be determined from a physical exam standpoint.

DEF000054

Fax Rcvd: 9/15/2005  2:39:33 PM

Claim#: A3250333343000107    DocID: 245210

09/15/05  THU 13:41 FAX 8153995350          NETWORK MEDICAL REVIEW                                    @ 013



NMR#:A31522.03
September 15, 2005

RE:  Yvonne Glover
Page 3

An appeal letter from her lawyer states that Ms. Glover has cervical radiculopathy which is not the diagnosis given at her first permanent and stationary exam by the orthopedic surgeon. It is difficult to determine whether a true radiculopathy exists based upon the information as provided. The EMG report was not included for review but it is reported to be normal in most cases except for the neurosurgical review in February 2003, which states that she has a C6 radiculopathy. A C6 radiculopathy, if present, would be inconsistent with numbness in the long, ring, and small fingers.

## ATTENDING PHYSICIAN'S MOST RECENT DIAGNOSES:

Chronic soft tissue muscular ligamentous strain, overlying cervical spondylosis, and disc protrusion at C5-C6

## OBJECTIVE INFORMATION:

The objective information is the MRI findings of the cervical spondylosis with multilevel degenerative disc disease at C3 through C6 with mild disc protrusions and reversal of the cervical lordosis of the spine as well as the objective physical findings as previously stated of slight restrictions in range of motion of the cervical spine and paraspinal and trapezius muscle tenderness.

## IN ANSWER TO YOUR SPECIFIC QUESTIONS:

1.  **Is the employee disabled from her regular job as of 11/03/04 to present?**

Based on the information available for review and from an orthopedic perspective, Ms. Glover is disabled from her regular job as of 11/03/04 to the present.

2.  **If disabled, what is/are the disabling diagnoses and complicating factors/comorbidities?**

The disabling diagnosis is cervical spondylosis with multilevel disc protrusions. Based upon the information provided her comorbidities include dystonia and dysphonia is potentially another disabling factor in the information provided.

3.  **If disabled, what is the rationale or basis for the disability?**

Based upon the objective information provided for the review; with failure to improve from conservative treatment and failure to respond to conservative treatment with the need for chronic pain medication, Ms. Glover would be considered disabled from her regular job.

The rationale for this disability is that Ms. Glover has a chronic overlying neck condition which has been unresponsive to conservative therapy and failed to respond to restrictions and limitations as placed by her treating physician who had seen her on a regular basis.

Fax Rcvd:  9/15/2005  2:39:33 PM

Claim#:A32503334300010\7       DocID: 245210

DEF000055

09/15/05  THU 13:43 FAX 8153995350        NETWORK MEDICAL REVIEW                    ☑014

NMR#:A31522.03
September 15, 2005

RE: Yvonne Glover
Page 4

**4.   If disabled, what is the expected/appropriate length of disability?**

Ms. Glover's disability from 11/03/04 to the present is appropriate. There is no expected and appropriate length of disability in patients who have chronic neck or back pain.

**5.   Please discuss whether the clinical findings supported or did not support the presence of a disabling condition from her job during the period in question noted above?**

The difficulty in determination of Ms. Glover's disability is due to cervical spondylosis or degenerative disc disease of the back.  Purely from the standpoint of this chart review, Ms. Glover may have MRI that reveals disc protrusions in the neck that are asymptomatic.  MRI findings of the cervical spondylosis or disc protrusions must be correlated clinically with regards to Ms. Glover's response to treatment and level of functioning and improvement or response to medical management.

**6.   Also please comment on whether the clinical findings supported transitional work of four-hour days?**

Ms. Glover has limitations with range of motion of the neck and termination of her disability is based upon Ms. Glover's ability to withstand the subjective complaints of pain and ability to function under the specific job requirements.  In this case, Ms. Glover's eight-hour day requires extensive forward neck flexion and repetitive use of the upper extremities.

**RATIONALE:**

From an orthopedic perspective, Ms. Glover has no documented loss of functionality of the upper extremities with regards to strength. There is no clear radiculopathic pattern that is consistent with the MRI or EMG findings as well.  The documentation does show that Ms. Glover has multilevel degenerative disc disease, which would exacerbate pain related to chronic forward flexion of the cervical spine combined with repetitive use of the upper extremities.  It is unclear from the information provided why Ms. Glover was able to stand four-hour workday for five months prior to pain deemed temporary and totally disabled.  There is no significant change in her functional status from physical exam standpoint.

As stated previously, Ms. Glover has a history of reported accumulative trauma to the neck at work based upon the history provided in the review.  She has documentation of reversible lordosis of the cervical spine consistent with her treating physician's documentation of diagnosis of chronic soft tissue muscle ligamentous strain overlying cervical spondylosis and disc protrusions at C3 through C6.  Her subjective complaints of neck pain are therefore substantiated by some objective physical findings of decreased range of motion of the cervical spine combined with evidence of reversal lordosis of cervical spine, which can be consistent with chronic neck strains/spasms.

Fax Rcvd: 9/15/2005  2:39:33 PM    DocID: 245210-    Claim#: A3250333343000107

DEF000056

09/15/05   THU 13:44 FAX 8153995350          NETWORK MEDICAL REVIEW                    ☒015

RE: Yvonne Glover                                               NMR#:A31522.03
Page 5                                                          September 15, 2005

The documentation provided shows the inability to respond to conservative treatment over a long interval as well as a failure to improve with graded restrictions and limitations and progression of restrictions and limitations given by her treating physician. Therefore, based upon the information provided, Ms. Glover would be considered disabled from her regular eight-hour workday, which requires significant amount of neck forward flexion and keyboarding. Four hour workday is substantiated based upon the functional limitations of her cervical range of motion or MRI findings or failure to respond to conservative treatment and her subjective complaints of neck pain requiring the use of medication.

Sincereiy,

Jeffrey N. Been, M.D.
Orthopaedic Surgeon, Candidate American Academy
  of Orthopaedic Surgery
Licensed in State of KY #34817

DEF000057

Claim#: A3250333343000107 ––  –  –  –  –  –  DocID: 245210 ––  –  –  –  –  –  –Fax Rcvd: 9/15/2005 2:39:33 PM

# EXHIBIT 5





**Insurance Appeals, Ltd.**

An Independent Review Organization (IRO)

September 15, 2005

Heidi Lasser
SBC Quality Review Unit
P.O. Box 804778
Chicago, IL  60680-4778

| | |
|---|---|
| RE: | Yvonne Glover |
| DOB: | |
| CLAIM #: | A325033343-07 |
| SS #: | |
| NMR #: | A31522.03 |

REDACTED PURSUANT
TO GENERAL ORDER NO. 53

Dear Ms. Lasser:

Thank you for referring this file for review to determine Ms. Glover's level of functionality. Specific issues will be addressed at the end of the report.

**RECORDS PROVIDED FOR REVIEW:**

| | | | |
|---|---|---|---|
| CLAIM LOG | Case Note | 11/02/04-09/07/05 | 1-34 |
| PROG NOTES | K. Izdebski, M.D. | 09/07/90 | 35-36 |
| PROG NOTES | Kaiser Permanente | 07/27/00 | 37 |
| PROG NOTES | ? | 10/03/02 | 38 |
| PROG NOTES | Robert E. Lieberson, M.D. | 02/27/03 | 39-41 |
| PROG NOTES | Warbritton And Associates | 03/17/03-11/09/04 | 42-59 |
| PROG NOTES | Summit Medical Center | 12/08/03-09/28/04 | 60-66 |
| PROG NOTES | Dr. Robert Wagner, | ? | 67 |
| FILE REVIEW | William D. Abraham, M.D. | 01/18/05 | 68-71 |
| CT/MRI | | 01/06/03-05/24/04 | 72-74 |
| JOB | | | 75-80 |
| MISC. | | 11/12/04-05/20/05 | 81-124 |

**NEUROLOGY ASSESSMENT/SYNOPSIS:** A thorough review of the medical information provided has been completed.

Ms. Yvonne Glover is a 48 year old Staff Associate. This is considered a sedentary position. Job duties include sitting, typing, talking. Ms. Glover's last day of work was on 10/26/04 and she has not returned to work. During her time off, Ms. Glover had complaints of severe pain in her neck and bilateral arm.

DEF000062

Fax Rcvd: 9/15/2005 2:39:32 PM    DocID: 245210-    Claim#:A32503334300010?



RE: Yvonne Glover
Page 2

NMR#:A31522.03
September 15, 2005

Ms. Glover was evaluated by a speech pathologist, K. Izdebski on 09/07/90 for spasmodic dysphonia. There are no records from a neurologist regarding this condition however. She was seen for right wrist pain and a provider whose signature unfortunately is illegible completed a primary treating physician's progress report on 10/03/02 indicating that an MRI was positive for a ganglion and inflammation of the median nerve. She was placed on restricted use of the right hand. There is no office notes submitted from this provider or other test results.

Ms. Glover was evaluated by a neurosurgeon, Robert Lieberson, on 02/27/03, due to neck and upper extremity pain, which began in July 2002. These began when she was lifting up a chair when she developed acute neck and right arm pain. Dr. Lieberson's examination showed that it was difficult to assess her upper extremities however there was numbness in the C6 distribution on the right. Her reflex is reported to be symmetric however he was uncertain of this.

Dr. Liebersn reviewed an MRI of the neck, which showed multilevel degenerative disease. He stated that an MRI of the right wrist was unremarkable. He did not have the actual MRI films of the neck to review. He also stated that an EMG study failed to show evidence of a focal peripheral neuropathy however did show a right C6 radiculopathy. He recommended that she follow up to review her MRI films. He thought she had a right C6 radiculopathy and that she could continue to work however with restrictions of no lifting more than five pounds, no performing overhead work, and no use of the hands repetitively or forcefully. He did not see her again.

Ms. Glover then came under the care of Dr. Jill Harrell, an orthopedic surgeon, beginning on 03/17/03. She stated that on 07/19/02, she emptied a box of paper and felt a "pop" in her wrist and was then treated conservatively for a right wrist ganglion cyst. In November 2002, she filed a claim for neck, shoulder, and back. She stated that having to move her chair about the office began to create pain in her neck, back, and shoulders. She was given an ergonomic chair on 11/14/02. Then when she pulled on the lever of the chair, it ejected around to the floor. Dr. Harrell indicated that she had previously received cervical epidural steroid injections. She had a motor vehicle accident 10 years prior. She noticed reduced forward flexion with pain in the right upper extremity.

Ms. Glover had reduced extension to 80% of normal. Lateral rotation was 80% of normal to the left and 75% of normal to the right with slight pain. There was significant tenderness to palpation of the right trapezius and great occipital area of the neck and also tenderness to the midline at C6-C7. Strength was intact except for biceps, which was 4/5 on the right. Triceps strength was 4/5 bilaterally. She also had some weakness of volar flexion and dorsiflexion. Dr. Harrell's initial impression was cervical spondylosis with probable right upper extremity radiculopathy. She recommended modified duty with no overhead activity and no lifting greater than 5 pounds and no prolonged computer use.

DEF000063

Fax Rcvd:  9/15/2005  2:39:32 PM          DocID: 245210          Claim#:A325033343000107



NMR#:A31522.03
September 15, 2005

RE: Yvonne Glover
Page 3

Dr. Harrell completed an attending physician statement on 07/12/04 indicating a diagnosis of cervical spine strain, spondylosis, and HNP. Symptoms included pain in the neck, pain, and tingling. Physical findings observed decreased range of motion and tenderness to palpation of the neck. Treatment was cervical epidural steroids and referral to spine specialist. She was placed on a four hour a day restrictions with half time keyboarding.

On 07/31/03, Ms. Glover was seen by John Warbritton, M.D. for a "pharmacologic pain management consultation." Dr. Warbritton's specialty is unknown. He did not perform physical examination. He recommended that she continue with Flexeril and that her pain was currently well controlled with Klonopin, Norco, Soma, and Excedrin. The actual report was written not by Dr. Warbritton himself but by a PharmD, Sharon Mitchell, who is described as a "Pharmacist Specialist."

Dr. Harrell on 10/28/04 issued a permanent and stationary report. Physical examination showed reduced range of motion of the neck on lateral rotation and on lateral bending. There was tenderness to palpation of the trapezius musculature on the left side of the neck and shoulder and tenderness to palpation over the cervical spine at approximately C5-C7. She refers to an MRI of the cervical spine showing a central disc protrusion at C5-C6 and "EMG and nerve conduction studies of the bilateral upper extremities were normal, as far as those test could be performed." From an orthopedic surgeon standpoint, Ms. Glover experiences a disability referable to the cervical spine, which precludes heavy lifting, forceful pushing, and pulling activities and repetitive work at or above shoulder level. She is also precluded from prolonged forward flexion of the neck and prolonged keyboarding."

Another attending physician statement was signed on 11/09/04 indicating severe neck pain and bilateral arm pain.

Ms. Glover was seen in an emergency room at Summit Medical Center on 07/01/04 due to neck pain. She had a flare of neck pain. She was treated in the emergency room with the Toradol and neck brace.

A doctor's first report of occupational illness or injury was signed by Dr. Robert Wagner, which indicated a complaint that Ms. Glover "picked up her chair that she states is ergonomically incorrect and experienced sudden onset of severe neck pain yesterday. Her pain got worse overnight and today. She had complaints of severe pain radiating to bilateral arms with tingling in fingers." Examination showed loss of normal neck lordosis and the neck was stiff with "flinting." She had tenderness in the trapezius and lower cervical spine, decreased range of motion, normal posture and gait. She had no weakness and had normal sensation reflexes. The impression was cervical strain, possible radiculitis. She was prescribed Vicodin, NSAID's, cold pack, cervical pillow, and was taken off of work for that shift and advised to limit overhead work and limit push, pull, and lifting to ten pounds.

A previous file review performed by Dr. William Abraham on 01/18/05 found no objective findings of a neurological deficit to support Ms. Glover's inability to perform the job duties of a staff associate.

DEF000064

Fax Rcvd: 9/15/2005 2:39:32 PM

09/15/05  THU 13:38 FAX 8153995350        NETWORK MEDICAL REVIEW                    ☒009

RE: Yvonne Glover
Page 4

NMR#:A31522.03
September 15, 2005

Test results submitted included an MRI of the cervical spine on 01/06/03. This showed a focal central posterior disc herniation at C4-C5 which created impression on the ventral aspect of the thecal sac and spinal cord, measuring approximately 3-mm to 4-mm anterior to posterior and 7-mm to 8-mm transversely. The neuroforamen were patent bilaterally. At C5-C6, there was a small central posterior disc bulge/protrusion with slight impression on the ventral aspect of the thecal sac with no spinal canal or neuroforaminal stenosis. The other levels examined were normal. Another MRI of the cervical spine on 05/24/04 showed central disc protrusions at C3-C4 through C5-C6 and at C4-C5, there was evidence of cord compression. This was felt to have worsened since 01/06/03.

## ATTENDING PHYSICIAN'S MOST RECENT DIAGNOSIS:

Neck pain and bilateral upper extremity cervical radiculopathy

## OBJECTIVE INFORMATION:

The objective information includes the abnormal physical examination per Dr. Harrell and Dr. Lieberson indicating reduced range of motion of the cervical spine, spasm and tenderness in the cervical paraspinal muscles, and reduced sensation in the C6 distribution on the right. Also Ms. Glover's abnormal MRI study showed progressive cervical disc herniation at C5-C6 with cord compression. There was insufficient evidence of cervical myelopathy.

The EMG study referenced by Dr. Harrell and Dr. Lieberson is not submitted. There are no other electrodiagnostic studies submitted.

## IN ANSWER TO YOUR SPECIFIC QUESTIONS:

1. **Is the employee disabled from her regular job as of 11/03/04 to present?**

From a Neurology perspective and based on the information provided for review, Ms. Glover is disabled from her regular job duties as of 11/03/04 to the present.

2. **If disabled, what is/are the disabling diagnoses and complicating factors/comorbidities?**

The disabling diagnosis is herniated cervical disc at C5-C6 with bilateral upper extremity radicular pain.

3. **If disabled, what is the rationale or basis for the disability?**

The basis for Ms. Glover's disability is her upper extremity pain; neck pain and reduced range of motion of her neck with right upper extremity numbness.

4. **If disabled, what is the expected/appropriate length of disability?**

The appropriate length of disability is 11/03/04 to the present.

DEF000065

Fax Rcvd: 9/15/2005 2:39:32 PM    DocID: 245210----    Claim#: A325033343000107

09/15/05  THU 13:39 FAX 8153995350          NETWORK MEDICAL REVIEW                    ☑010

NMR#:A31522.03
September 15, 2005

RE: Yvonne Glover
Page 5

5. **Please discuss whether the clinical findings supported or did not support the presence of a disabling condition from her job during the period in question noted above?**

The clinical findings do support the presence of a disabling condition. Ms. Glover has evidence of a herniated cervical disc at C5-C6, which has worsened over time and has caused cervical spinal cord compression.

6. **Also please comment on whether the clinical findings supported transitional work of four-hour days?**

The clinical findings support transitional work of four-hour days.

## RATIONALE:

Ms. Glover has objective evidence of cervical spine pathology at C5-C6 based upon her serial MRI studies. Her pain is concordant with the pathology at C5-C6. She has reduced range of motion of her neck and sensory disturbance involving her right upper extremity. She also has motor deficits involving her upper extremities per the examination of the Dr. Harrell. These findings would be commensurate with the inability of Ms. Glover to perform her normal job duties during the period in question.

Sincerely,

Joseph J. Jares, III, M.D.
Board Certified Neurology
American Academy of Neurology
American Association of Electrodiagnostic Medicine
Diplomate, National Board of Medical Examiners
WI License #42460-020
Certified, Texas Worker's Compensation
    Commission – ADL

Claim#: A3250333343000107    DocID: 245210——————————— Fax Rcvd:  9/15/2005  2:39:32  PM

DEF000066

# EXHIBIT 6

09/15/05   THU 13:30 FAX 8153995350        NETWORK MEDICAL REVIEW                    ☑ 002

## Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

September 15, 2005

Heidi Lasser
SBC Quality Review Unit
P.O. Box 804778
Chicago, IL  60680-4778

RE:        Yvonne Glover
DOB:                                    REDACTED PURSUANT
CLAIM #:    A325033343-07              TO GENERAL ORDER NO. 53
SS #:
NMR #:     A31522.03

Dear Ms. Lasser

Thank you for referring this file for review to determine Ms. Glover's level of functionality. Specific issues will be addressed at the end of the report.

### RECORDS PROVIDED FOR REVIEW:

| CLAIM LOG  | Case Note                  | 11/02/04-09/07/05 | 1-34   |
|------------|----------------------------|-------------------|--------|
| PROG NOTES | K. Izdebski, M.D.          | 09/07/90          | 35-36  |
| PROG NOTES | Kaiser Permanente          | 07/27/00          | 37     |
| PROG NOTES | ?                          | 10/03/02          | 38     |
| PROG NOTES | Robert E. Lieberson, M.D.  | 02/27/03          | 39-41  |
| PROG NOTES | Warbritton And Associates  | 03/17/03-11/09/04 | 42-59  |
| PROG NOTES | Summit Medical Center      | 12/08/03-09/28/04 | 60-66  |
| PROG NOTES | Dr. Robert Wagner,         | ?                 | 67     |
| FILE REVIEW| William D. Abraham, M.D.   | 01/18/05          | 68-71  |
| CT/MRI     |                            | 01/06/03-05/24/04 | 72-74  |
| JOB        |                            |                   | 75-80  |
| MISC.      |                            | 11/12/04-05/20/05 | 81-124 |

**SPEECH PATHOLOGY ASSESSMENT/SYNOPSIS:** A thorough review of the medical information provided has been completed.

Ms. Yvonne Glover is a 48 year old Staff Associate.  This is considered a sedentary position.  Job duties include sitting, typing, talking.  Ms. Glover's last day of work was on 10/26/04 and she has not returned to work.  During her time off, Ms. Glover had complaints of severe pain in her neck and bilateral arm.

DEF000058

Fax Rcvd:  9/15/2005  2:39:31 PM

Claim#: A325033343000107    DocID: 245210 ------- !

NMR#: A31522.03
September 15, 2005

RE: Yvonne Glover
Page 2

Medical records indicate a history of cervical pain with medical evaluations provided in the file. The first chronological note of a voice disorder is from K. Izdebski, Ph.D. of Speech Pathology and Physiology Swallowing Disorders dated 09/07/90. A letter describes "history of persistent dysphonia of sudden onset." "No evidence of lesion was found. Adductory and abductory activity occurred and phonatory wave was bilateral. Phonation is disturbed primarily by discoordinated movement of the glottic, supraglottic, laryngeal, respiratory, and/or motor activities." Advances were reported with voice therapy and additional voice therapy was noted. Letter stated that long-term treatment would not be ruled out at that time.

There is a note from Robert Leiberson dated 02/27/03 where the voice difficulty is mentioned again. It specifically states "difficulty annunciating words" and was initially diagnosed with dysphonia. Ms. Glover was then diagnosed with a more generalized dystonia.

A note from Jill Harrell, M.D., an orthopedic surgeon dated 03/17/03 indicates that medical and history includes "dystonia/dysphonia, which according to Ms. Glover, left her without ability to speak for a period of time. Once she regained use of her voice, she has had difficulty articulating words and now has a dystonic speech pattern."

A letter from Lewis Feinberg, Renaker, and Jackson, Attorneys at Law outlines Ms. Glover's history and describes her initial position with Pacific Bell was an operator. Sudden loss of speech in 1990 resulting from dystonia caused substantial difficulty in her ability to communicate. She was offered the position of staff associate, which required far less "communication." The letter also states "the the majority of my interaction and communication with clients took place over e-mail." This was also noted in the declaration of Yvonne Glover. In this declaration, she also notes in 1990 she lost her voice and then was diagnosed with dystonia in 1999.

In July 2000, Ms. Glover was still undergoing voice therapy and her progress was still guarded according to the letter from her attorney. The file does not contain any documentation from a physician or speech pathologist regarding the diagnosis of dystonia in 1999 or 2000. Also in the file there are information sheets from National Institute of Deafness on deafness and another communication disorders regarding spasmodic dysphonia and a printout from a web page concerning dystonia.

## ATTENDING PHYSICIAN'S MOST RECENT DIAGNOSIS:

Dysphonia and dystonia

## OBJECTIVE INFORMATION:

In July 2000, Ms. Glover was still undergoing voice therapy

DEF000059

Fax Rcvd:  9/15/2005  2:39:31 PM

DocID: 245210

Claim#: A325033343000107



NMR#:A31522.03
September 15, 2005

RE: Yvonne Glover
Page 3

## IN ANSWER TO YOUR SPECIFIC QUESTIONS:

### 1. Is the employee disabled from her regular job as of 11/03/04 to present?

From a speech and language pathologist perspective, the documents provided do not support a determination of disability based on speech and voice difficulties. Ms. Glover's job description entails 30 minutes of phone work and the rest of the time is physical tasks. We have no documentation of the diagnosis of dystonia during the period of 1999 to 2000. While continued difficulties of voicing occurred in her other medical documentation from the orthopedic surgeon and a neurosurgeon.

### 2. If disabled, what is/are the disabling diagnosis, complicating factors, and comorbidities?

Ms. Glover was not disabled from a speech language pathology perspective and pertaining to speech and voice diagnoses provided in the file. These factors may interact with the other physical symptoms is unclear and will be left for a physician to review.

### 3. If disabled, what is the rationale are basis for the disability?

Ms. Glover was not disabled from the speech and voice difficulties that are documented in this file.

### 4. If disabled, what is the expected length of disability?

Ms. Glover was not disabled from a speech language pathology perspective regarding her speech and voice. Although, specific notes were made that she has received disability for her dystonia from the social security benefits. We have no documentation of the evaluation for dystonia in 1999 and the voice therapy following in 2000.

### 5. Please discuss whether the clinical findings support or did not support the presence of a disabling condition from her job during the period in question noted above.

Noted is from 11/03/04 to present. Initial report of her voice difficulties was noted in Dr. K. Izdebski, a speech pathologist dated 1990. Other medical notes and the letter from Teresa S. Renaker indicate Ms. Glover was later diagnosed with dystonia. Latter medical notes report "spastic type speech pattern." Three is no documentation from a physician or speech pathologist concerning the diagnosis of dystonia or the speech therapy that Ms. Glover was still undergoing in July 2000, according to the letter from T. Renaker.

DEF000060

09/15/05  THU 13:33 FAX 8153995990    NETWORK MEDICAL REVIEW    ☒005

RE: Yvonne Glover
Page 4

NMR#:A31522.03
September 15, 2005

Laryngeal dystonia or spasmodic dystonia as it is called in the information included from the National Institute of Deafness and Communication Disorders and from the Dystonia Medical Research Foundation can have a far-reaching negative impact on the individual's life.  As noted in the documentation, there is no cure for spasmodic dysphonia.  The only documentation of voice disorder is from Dr. K. Izdebski, who indicated that at that time dysphonia appeared to be a conversion non-organic dysphonia.  Ms. Glover's job has been changed from a primarily oral communication based job of an operator to a Staff Associate, which requires 30 minutes of oral communication on the phone and perhaps more communication with other colleagues.  However, we have no documentation of the level of intelligibility of Ms. Glover's speech and the nature of the voice therapy that she received.  It is not within my scope of practice to determine whether the cervical pain is impacting her job and this is to be reviewed by the physician.

**RATIONALE:**

In the 09/07/90 letter, Ms. Glover's voice was characterized by "conversion non-organic dysphonia."  She had some improvement in her voice over the sessions and further therapy was proposed.  No further documentation is provided in the file regarding continued therapy, differential diagnosis of dysphonia in 1999, or voice therapy that she was undergoing in 2000.  Without the supporting documentation from the health care professionals who diagnosed Ms. Glover with dystonia and treated her with voice therapy in 1999 and 2000, there are no clinical findings to support this diagnosis.

If further medical documentation regarding the diagnosis of dystonia and the voice therapy that she received following that diagnosis becomes available, then a review should be done at that time.

Sincerely,

Scott Dailey, MA, CCC-SLP
Speech Pathologist
Master's Degree in Speech/Language Pathology
Certificate of Clinical Competence from American Speech/Language
    Hearing Association
Licensed to Practice Speech-Language Pathology
IA License # - 01013

Fax Rcvd: 9/15/2005 2:39:32 PM

DocID: 245210

Claim#: A325033343000107

DEF000061