1   LAFAYETTE & KUMAGAI LLP
    GARY T. LAFAYETTE (State Bar No. 088666)
2   SUSAN T. KUMAGAI (State Bar No. 127667)
    FORREST E. FANG (State Bar No. 122805)
3   100 Spear Street, Suite 600
    San Francisco, California 94105
4   Telephone:   (415) 357-4600
    Facsimile:   (415) 357-4605
5
6   Attorneys for Defendant
    AT&T UMBRELLA BENEFIT PLAN NO. 1
7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  YVONNE GLOVER,                          Case No.  C07-02652 CRB

12              Plaintiff,                  **DEFENDANT AT&T UMBRELLA**
                                            **BENEFIT PLAN NO. 1'S**
13  vs.                                     **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES IN OPPOSITION TO**
14  AT&T UMBRELLA BENEFIT PLAN              **PLAINTIFF'S MOTION FOR**
    NO. 1,                                  **SUMMARY JUDGMENT**
15
                Defendant.                  [Fed. R. Civ. P. 56]
16
                                            Date:       February 29, 2008
17                                          Time:       10:00 a.m.
                                            Courtroom:  8
18                                          Judge:      Hon. Charles R. Breyer

19

20

21

22

23

24

25

26

27

28

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

# TABLE OF CONTENTS

Page No.

I.      INTRODUCTION .................................................................................. 1

II.     ISSUE TO BE DECIDED ....................................................................... 2

III.    UNDISPUTED FACTS ........................................................................... 2

        A.    The Disability Plan ..................................................................... 2

              1.    Administration of STD Claims ...................................... 3

        B.    Plaintiff's Claim for Short-Term Disability Benefits .................. 4

IV.     ARGUMENT ......................................................................................... 7

        A.    The "Abuse of Discretion" Standard is Applicable, as the CRC Had the
              Authority Under the Plan To Interpret It and To Deny Plaintiff's Benefits Claim . 7

        B.    No Genuine Issue Exists that the Denial of Plaintiff's Claim for STD Benefits
              Was Not an Abuse of Discretion. ............................................... 10

              1.    The CRC Did Not Violate the Plain Language of the Plan In
                    Concluding That Eligibility for STD Benefits Required An Inability to
                    Perform Modified Work, Including Partial-Day Work ...................... 10

              2.    The CRC's Denial of Benefits Had a Reasonable Basis in Plaintiff's
                    Medical Findings and Was Not Clearly Erroneous. ....................... 11

        C.    Even if, *Arguendo*, the Standard of Review Were *De Novo*, Plaintiff Has Failed
              To Show That Was Entitled to STD Benefits Under the Plan ................ 14

        D.    Plaintiff's Alleged Approval for SSDI Benefits Is Irrelevant. .......... 16

        E.    Plaintiff's Argument That She is Entitled to LTD Benefits Is Not Properly
              Before This Court ...................................................................... 17

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

# TABLE OF AUTHORITIES

**Page No.**

**Federal Cases**

Austin v. Continental Casualty Co.
(W.D.N.C. 2002) 216 F.Supp.2d 550................................................................13

Bendixen v. Standard Ins. Co.
(9th Cir. 1999) 185 F.3d 939..........................................................................8

Black & Decker Disability Plan v. Nord
(2003) 538 U.S. 822 ............................................................... passim

Bolling v. Eli Lilly & Co.
(8th Cir. 1993) 990 F.2d 1028........................................................................12

Cervantes v. Metropolitan Life Insurance Company
(E.D. Cal. 2005) 388 F.Supp.2d 1164................................................................11

Darland v. Fortis Benefits Ins. Co.
(6th Cir. 2003) 317 F.3d 516........................................................................13

Dowling v. Metropolitan Life Ins. Co.
(M.D.Fla. 2004) 355 F.Supp.2d 1311................................................................8

Estate of Shockley v. Alyeska Pipeline Service Co.
(9th Cir. 1997) 130 F.3d 403........................................................................8

Estate of Shockley v. Alyeska Pipeline Service Company
(9th Cir. 1997) 130 F.3d 403........................................................................12

Firestone Tire & Rubber Co. v. Bruch
(1989) 489 U.S. 101 ........................................................................7

Hornback v. New York Times Company Long Term Disability Plan
(N.D.Cal. 2006) 2006 WL 496050................................................................16, 17

Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income
(9th Cir. 2003) 349 F.3d 1098........................................................................8

Jordan v. Northrop Grumman Corp. Welfare Benefit Plan
(9th Cir. 2004) 370 F.3d 869................................................................8, 14

Ladd v. ITT Corp.
(7th Cir. 1998) 148 F.3d 753................................................................16, 17

MacDonald v. Pan American World Airways, Inc.
859 F.2d 742 (9th Cir. 1988)........................................................................8

Madden v. ITT Long Term Disability Plan
(9th Cir. 1990) 914 F.2d 1279................................................................16, 17

ii

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Moskowite v. Everen Capital Corp.
  (N.D.Cal. 2005) 2005 WL 1910941 ...................................................................16, 17

Newcomb v. Standard Insurance Company
  (9th Cir. 1999) 187 F.3d 1004 .........................................................................15

Oster v. Barco of Cal. Employees' Retirement Plan
  (9th Cir. 1988) 869 F.2d 1215 .........................................................................12

Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co.
  (1st Cir. 2000) 230 F.3d 415 ..........................................................................16, 17

Reidl v. General American Life Ins. Co.
  (8th Cir. 2001) 248 F.3d 753 ..........................................................................16, 17

Ross v. Rail Car America Group Disability Income Plan
  (8th Cir. 2002) 285 F.3d 735 .........................................................................11

Sabatino v. Liberty Life Assurance Company of Boston
  (N.D.Cal.2003) 286 F.Supp.2d 1222 ................................................................15

Safavi v. SBC Disability Income Plan
  (C.D. Cal. 2007) 493 F.Supp.2d 1107 .............................................................8, 14

Saffle v. Sierra Pacific Power Company
  (9th Cir. 1996) 85 F.3d 455 ...........................................................................11

Sidou v. Unumprovident Corp.
  (D.Me. 2003) 245 F.Supp.2d 207 ...................................................................10, 11

Taft v. Equitable Life Assur. Soc.,
  (9th Cir. 1993) 9 F3d 1469 ..........................................................................8, 11, 12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

iii

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No. C07-02652 CRB)

# I.    **INTRODUCTION**

On November 23, 2004, plaintiff Yvonne Glover's claim ("plaintiff") for short-term disability ("STD") benefits under the Pacific Telesis Group Comprehensive Disability Benefits Plan (the "Plan") was denied by the Plan's General Employee Benefits Committee ("GEBC"). The denial of plaintiff's claim was upheld on appeal after the Plan's Employees' Benefit Claim Review Committee ("CRC") reviewed the record that was before the GEBC and the additional documents submitted by plaintiff for her appeal. The CRC also obtained opinions from three independent physician advisors before ultimately confirming the denial of benefits. The CRC found that plaintiff could work at least four hours a day and was therefore not entitled to STD benefits under the Plan.

Plaintiff's allegations to show otherwise are unsupported by the record. Plaintiff's cites to the record in her support of her motion for summary judgment are taken out of context or are simply misrepresentations.

The CRC had the discretion to interpret the terms of the Plan and to decide benefit claims thereunder. In support of her contrary argument, plaintiff cites to cases outside of the Ninth Circuit to mislead the Court and avoid established case law clearly supporting the applicability of the abuse of discretion standard to the underlying denial of STD benefits.

Plaintiff's alternative arguments are equally meritless. Her contention that the claim review fiduciary is penalized for overturning denials is unsupported by any evidence and her argument that her treating physicians' opinions should have been given deference is contrary to established law. Moreover, the record shows her treating physicians' reports fail to support her claim of disability. Finally, her references to old medical conditions and outdated medical documents are irrelevant to the underlying claim.

Although plaintiff apparently seeks Long Term Disability ("LTD") Benefits in this action, that request is entirely misplaced. The only benefit claim made by plaintiff was for STD benefits. Nor, is it likely, in any event, that plaintiff would have qualified for such benefits, because her medical records demonstrate that she could work a four-hour day at her own occupation and, the disability standard in the LTD plan is a much broader "any occupation" standard in any event.

1

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    Plaintiff's motion should be denied.  No genuine issue exists as to whether the denial of

2    plaintiff's STD benefits was proper and based on reasonable grounds.

## II.    ISSUE TO BE DECIDED

4    Whether there was a reasonable basis for the Pacific Telesis Group Comprehensive

5    Disability Benefits Plan to uphold the denial of plaintiff's claim for short-term disability benefits,

6    because plaintiff was able to perform her job duties on a modified work schedule of four hours

7    per day.

## III.    UNDISPUTED FACTS

9    During the time period relevant to this action, plaintiff held the position of Staff Associate

10    and was a participant in the Plan.  (Memorandum of Points and Authorities in Support of AT&T

11    Umbrella Benefit Plan No. 1's Cross-Motion for Summary Judgment ("Defendant's Motion") at

12    2:13-21, including Declaration of Nancy Watts in support thereof ("Watts Decl.") at ¶ 3.)

### A.    The Disability Plan

14    The pertinent Summary Plan Description ("SPD") (AR 295-323) provides that STD

15    benefits are <u>not</u> provided *if the employee can perform modified work*:

> STD benefits are designed to provide benefits <u>only if you are disabled from all</u>
> <u>work; benefits are not paid if you can perform available modified duty</u>.  Therefore,
> when determining the length of a disability period, DAP [Disability Assistance
> Program] looks not only at your medical diagnosis, but also at the functions you
> could perform either on your own job or in a temporary position while continuing
> to recover.

20    (Administrative Record ("AR") at 000318 (emphasis added).) [1]

21    The SPD further provides that temporary modified duty *includes working a partial day*:

> Temporary modified duty allows you to return to work even though you may not
> be able to perform all of the essential functions of your regular job.  It is, however,
> based on your physical and medical limitations.

> For example, if you strain your back, you may need to avoid lifting and climbing
> for a few days.  Temporary modified duty could include answering telephones at a
> desk or driving a vehicle or <u>it could involve partial day work</u>.

26    (AR-000320 (emphasis added).)

---

28    [1] The Administrative Record was filed on January 11, 2008.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

2

### 1.    Administration of STD Claims

Under the Plan, the GEBC has the authority to establish general interpretations, rules, and procedures to guide and assist in approving or denying claims and appoint others to carry out its administrative duties. (Defendant's Motion at 3:5-12:5; Watts Decl. at ¶7.)

Under the Plan, the CRC, a committee of three or more persons appointed by the Plan Administrator, is responsible for reviewing appeals of denials of STD claims and is a fiduciary within the meaning of ERISA. (AR-000346, §9.1.) The members of the CRC are, and were during the relevant time period to this action, employees of Sedgwick Claims Management Services Inc. ("Sedgwick") an independent third-party administrator for the Plan. The appointment of Sedgwick employees was made by the Plan Administrator in accordance with Section 9.1 of the Plan. (Defendant's Motion at 4:7-9; Declaration of Tonya Warner in Support of AT&T Umbrella Benefit Plan No. 1's Cross-Motion for Summary Judgment ("Warner Decl.") at ¶3.)

The Plan provides the CRC with authority to interpret the terms of the Plan and to resolve all factual issues and make decisions regarding the denial of claims on review:

> 9.4    <u>Discretion of the Committee</u>.  The Review Committee <u>shall have the power and discretion</u> to resolve all factual issues presented in a request for review in a reasonable manner, and <u>to interpret and adopt reasonable constructions of any provision of the Plan</u> whenever interpretation or construction is needed to resolve any issue presented in a request for review. The Review Committee shall also have the power and discretion to establish general interpretations, rules, and procedures to guide and assist and the GEBC in approving or denying similar claims under Section 8.

(AR-000346, §9.4 (emphasis added).)

If the denial of the participant's claim is upheld by the CRC, the Plan further states that it "shall have no liability toward the Participant..., <u>unless a court of competent jurisdiction shall determine that the Review Committee has abused its discretion</u> in deciding to deny the claim." (AR-000346, §9.6 (emphasis added).)

Sedgwick receives a flat fee for its services and the services of its employees, *without regard to whether it approves or denies claims under the Plan.* (Defendant's Motion at 4:18-19; Warner Decl., ¶8.) Neither Sedgwick nor the CRC members are financially associated with the Plan Administrator or any of its family of companies. (<u>Ibid.</u>) Sedgwick has no role in the

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX  (415) 357-4605

3

1  Plan's funding, and has never been the source of the funds that are used to pay disability benefits

2  under the Plan.  (Id., ¶¶8, 13.)

3      The CRC decides a claim based upon the evidence before the GEBC, the issues and

4  comments submitted by the participant employee, and such other evidence as the CRC may

5  independently discover.  (AR-000346, § 9.3.)  Independent medical advisors can assist the CRC

6  in evaluating claims and analyzing medical evidence in support of those claims.  (Warner Decl.,

7  ¶10.)

8      In 2005, the CRC included Heidi Lasser, Appeals Specialist, Cam Reinhart, Manager of

9  QRU and Doreen Ongayo, ERISA Specialist.  (Defendant's Motion at 5:4-5; Warner Decl., ¶4.)

10  **B.    Plaintiff's Claim for Short-Term Disability Benefits**

11      Plaintiff allegedly sustained a neck and shoulder injury July 2002 after lifting a chair.  She

12  allegedly continued to have symptoms as a result of her 2002 injury during 2003 and, in July

13  2004, started working four-hour days.[2]  (AR-48, 63, 79, 109, 120.)  On October 27, 2004,

14  plaintiff stopped reporting to work altogether.[3]  (AR-000079.)

15      On or about November 2, 2004, plaintiff filed the subject claim for STD benefits.  (AR-

16  000269.)

17      Jennifer Fennessy, a Disability Specialist, sent plaintiff a letter on November 23, 2004

18  which informed plaintiff that her claim for STD benefits had been denied.  (AR-000241.)  Ms.

19  Fennessy informed plaintiff that documentation provided by her treating physician Dr. Harrell

20  had been reviewed and considered, that an additional review had been conducted by a physician

21  advisor, and that "the medical information submitted contains insufficient observable

22  documentation to support an off work status."  (AR-000241-242.)  Ms. Fennessy informed

23  plaintiff that attempts to reach Dr. Harrell for a telephonic consultation were unsuccessful.  (AR-

24  000241.)  The medical documentation indicated that plaintiff had complained of severe pain in

25

26  [2] Plaintiff claims that Dr. Harrell took her off work from March 31, 2003 to April 18, 2003 because her alleged pain was "so severe."  (Plaintiff's moving brief, p. 6:18-19.)  However, she merely cites to an "off work" note from Dr.

27  Harrell that does not state the reason that she is being taken off work.  (See P000274.)
   [3] Plaintiff claims that she was "forced" to leave work on October 27, 2004 because of "her disabilities."  (Plaintiff's

28  moving brief, p. 3:6-7.)  However, she cites only to her own conclusory declaration in the administrative record; there are no medical findings in the record that support her position.

4

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1   the neck and bilateral arms, had decreased range of motion in the cervical spine, a disc protrusion

2   in the lumbar spine, and was considered permanent and stationary with certain permanent

3   restrictions. (AR-000241.)

4       On or about December 17, 2004, plaintiff submitted further medical information - a

5   permanent including a stationary report by Dr. Harrell dated October 28, 2004. (AR-000236-

6   240.) Dr. Harrell concluded that plaintiff was unable to perform her "usual and customary job

7   duties" requiring "prolonged forward flexion of the cervical spine and prolonged keyboarding."

8   (AR-000239.) Contrary to plaintiff's assertions, Dr. Harrell did not state that plaintiff was unable

9   to work at all or that plaintiff could not perform any modified work[4].

10      Dr. Harrell's report did not alter the denial of plaintiff's claim and on or about January 7,

11  2005, plaintiff filed a request for appeal of the denial.

12      On January 12, 2005, plaintiff advised the CRC her appeal was "complete," and that no

13  further information would be forthcoming. (AR-000227, 235.) On or about January 19, 2005,

14  Heidi Lasser, a Claims Specialist and CRC member, informed the denial of her STD benefits

15  claim was upheld on appeal and final. (AR-000208-209.) Among other things, an independent

16  physician advisor who specialized in orthopedic surgery reviewed the information contained in

17  plaintiff's file and submitted during her appeal, including medical documentation from Dr.

18  Harrell for the period of October 28, 2004 through November 9, 2004. (Ibid.)

19      He concluded that there were no objective findings to support plaintiff's inability to work:

20          There are no objective findings of neurologic deficit to support Ms. Glover's
            inability to perform the job duties of a staff associate. Ms. Glover continues to
21          have symptoms of pain and decreased range of motion related to cervical
            spondylosis. There is no information in the documentation provided for review
22          that would disable Ms. Glover from performing sedentary duties of a staff
            associate.

23

24  (AR-000215.)

25

---

26  [4] Plaintiff nonetheless maintains that Dr. Harrell had concluded in his October 28, 2004 report that she could not

27  work *at all*, even with a four-hour schedule. However, the plain language of Dr. Harrell's report does not support
    plaintiff's assertion. The report merely states that plaintiff must work with certain restrictions and cannot perform

28  the usual and customary duties of her job. (AR-000239.) Contrary to the record, plaintiff asserts that her claim was
    substantiated by "objective data."                                                                                  5

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    Plaintiff was informed that the medical information provided "did not contain sufficient

2  clinical findings to substantiate a disabling condition" or a condition that was "so severe as to

3  prevent [plaintiff] from performing the job duties of Staff Associate with or without reasonable

4  accommodation." (AR-000208-09.)[5]

5    On or about January 24, 2005, plaintiff's attorney Teresa Renaker sent a letter to ERISA

6  Specialist Doreen Ongajo, a member of the CRC, stating that her law firm had been retained to

7  represent plaintiff and requested that no further action be taken on Ms. Glover's appeal until her

8  law firm had "supplemented" plaintiff's appeal with additional medical information. (AR-

9  000201-02; Defendant's Motion at 7:6-9, Warner Decl. at ¶4.)

10    On or about May 20, 2005, four months after the decision to uphold the denial of

11  plaintiff's claim was final, plaintiff's attorney "supplemented" plaintiff's request for review of

12  the denial of her claim with a 16-page letter brief and voluminous medical information never

13  before submitted for the underlying claim, including documents relating to dystonia and wrist

14  ganglion cyst. (See AR-000150-165.) Plaintiff's counsel argued that plaintiff was unable to

15  work because the medical evidence allegedly demonstrated that plaintiff had a "rare vocal

16  disorder" and had "chronic pain stemming from her wrist ganglion cyst and cervical

17  radiculopathy." (AR-000151.)

18    On August 18, 2005, Cam Reinhart, Manager of QRU and a member of the CRC, notified

19  plaintiff's counsel that, notwithstanding the finality of the prior appeal decision under the Plan,

20  plaintiff's appeal would be reopened and the supplemental medical information submitted by her

21  on May 20, 2005 would be reviewed. (AR-000192, 194.)

22    After review of all medical information submitted by plaintiff and obtaining reports from

23  three independent medical advisors specializing in orthopedic surgery (Jeffrey Been, M.D.),

24  speech pathology (Scott Dailey, M.A., CCC-SLP), and neurology (Joseph Jares III, M.D.) who

25  reviewed the subject medical documentation, plaintiff's denial of benefits was again confirmed.

26  (AR-47, 57, 61, 66.)

27

28  [5] Details of the information provided to plaintiff regarding the decision to uphold the denial of benefits is set forth in
   defendant's motion at 6:12-7:5.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

6

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No. C07-02652 CRB)

1    On Septembers 21, 2005, Heidi Lasser drafted and forwarded a proposed determination

2 letter to Cam Reinhart for review. Mr. Reinhart reviewed and approved the letter. (AR-000010.)

3 Ms. Lasser sent Plaintiff's attorney the determination letter on or about September 21, 2005,

4 informing her that the appeal was upheld. Ms. Lasser informed Plaintiff's counsel that the

5 medical information submitted "did not contain sufficient clinical findings to substantiate a

6 disabling condition," and that none of the findings were documented to be "so severe as to

7 prevent Ms. Glover from performing the job duties of Staff Associate with or without reasonable

8 accommodations from November 3, 2004 to her return to work." (AR-000047, 0000049.) Ms.

9 Lasser further explained that, according to the orthopedic physician advisor, there was no

10 documented loss of functionality of the upper extremities with regard to strength and no clear

11 radiculopathy pattern consistent with MRI or EMG findings.[6] There was no change in Plaintiff's

12 functional status from a physical exam standpoint from the time she was working a four-hour

13 work day. (Id.) And, according to the records, four-hour work days were consistently available

14 to plaintiff. (AR-000049.)

15    Further, Ms. Lasser stated that there was no documentation of dystonia from a physician

16 or speech pathologist other than from the year 1990, and that there was insufficient evidence of

17 cervical myelopathy. (AR-000048-49.)

18                            **IV.     ARGUMENT**

19    **A.    The "Abuse of Discretion" Standard is Applicable, as the CRC Had the
20           Authority Under the Plan To Interpret It and To Deny Plaintiff's Benefits
             Claim**

21    A denial of benefits challenged under ERISA is subject to an "abuse of discretion"

22 standard if the administrator or fiduciary is given the discretionary authority under the applicable

23 ERISA plan *to determine eligibility for benefits or to construe the terms of the plan.* (Firestone

24 Tire & Rubber Co. v. Bruch (1989) 489 U.S. 101, 115; Abatie v. Alta Health & Life Ins. Co. (9th

25 Cir. 2006) 458 F.3d 955, 963.) If no such discretion is conferred, the denial of benefits is

26 reviewed *de novo*. (Firestone, supra, 489 U.S. at 115; Abatie, supra, 458 F.3d at 963.)

27

28  [6] Details regarding the reports from the three independent physician advisors are discussed in defendant's motion at
    8:21-9:25.                                                                                                        7

---

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    The "abuse of discretion" standard is a highly deferential standard of review, under which

2   the court does not substitute its judgment for that of the administrator. (Jordan v. Northrop

3   Grumman Corp. Welfare Benefit Plan (9th Cir. 2004) 370 F.3d 869, 875; Dowling v.

4   Metropolitan Life Ins. Co. (M.D.Fla. 2004) 355 F.Supp.2d 1311, 1315.) The administrator's

5   decision cannot be set aside if it can be grounded on *any reasonable basis*, and its findings are

6   not subject to reversal unless they are "clearly erroneous." (Jordan, supra, 370 F.3d at 875;

7   Dowling, supra, 355 F.Supp.2d at 1315.)

8    An administrator's decision should be upheld "if it is based upon a reasonable

9   interpretation of the plan's terms and was made in good faith." (Estate of Shockley v. Alyeska

10   Pipeline Service Co., 130 F.3d 403, 405 (9th Cir. 1997) (quoting MacDonald v. Pan American

11   World Airways, Inc., 859 F.2d 742, 744 (9th Cir. 1988)).) The plan administrator will only be

12   found to have abused its discretion if it reaches a decision without any explanation, construes

13   plan provisions in a way that conflicts with the plain language of the plan, or renders a decision

14   based upon clearly erroneous findings of fact. (Taft v. Equitable Life Assur. Soc., 9 F3d 1469,

15   1472 (9th Cir. 1993).)

16    ERISA does not require plan administrators to give any special deference to opinions of a

17   claimant's treating physician. (Black & Decker Disability Plan v. Nord (2003) 538 U.S. 822,

18   829-30; Jordan, supra, 370 F.3d at 878.)

19    Additionally, the court's review is generally limited to the record before the administrator

20   at the time of the denial of benefits. (See Jebian v. Hewlett-Packard Co. Employee Benefits Org.

21   Income (9th Cir. 2003) 349 F.3d 1098, 1110; Bendixen v. Standard Ins. Co. (9th Cir. 1999) 185

22   F.3d 939, 944.) Nonetheless, under one exception, evidence outside the administrative record

23   may be introduced to show the absence of, or attenuated nature of, a third-party administrator's

24   alleged conflict of interest. (See Abatie, supra, 458 F.3d at 969-70; Safavi v. SBC Disability

25   Income Plan (C.D. Cal. 2007) 493 F.Supp.2d 1107, 1117-18.) Evidence admitted under such an

26   exception, however, does not change the standard of review, which remains an "abuse of

27   discretion" standard. An alleged conflict is simply weighed as a "factor" in determining whether

28   there has been an abuse of discretion. (Abatie, supra, 458 F.3d at 965.)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

8

1    Plaintiff erroneously argues that a *de novo* standard should apply instead an abuse of

2  discretion standard because there was no exercise of discretion by an entity that had the

3  discretion under the Plan to review disability claims. The CRC had the discretion under the Plan

4  to review such claims and did so act through its constituent three members who were designated

5  by the Plan Administrator. (Defendant's Motion at 4:7-15.)

6    Moreover, plaintiff's claim that CRC Claims Specialist Heidi Lasser made the review

7  decision *by herself*, without the involvement of the other two CRC members, is contrary to the

8  facts. (Id.) First, Plaintiff's counsel sent her letter of appeal to Doreen Ongajo, ERISA Specialist

9  and CRC member. Cam Reinhart, Manager of QRU and a CRC member, communicated with

10  Plaintiff's counsel regarding her request for appeal. Heidi Lasser drafted and forwarded the

11  determination letter to Mr. Reinhart, who reviewed and approved the letter. Clearly, Plaintiff's

12  argument that a Lasser acted alone is meritless.

13    Nor is there any basis for plaintiff's conflict of interest argument. Plaintiff alleges the

14  Plan Administrator's agreement with Sedgwick, whose employees served on the CRC, created an

15  "incentive-based program" which rewarded the denial of benefits claims and penalized the

16  reversal of claim denials upon review. Plaintiff cites to a provision of the agreement that imposes

17  penalties when a claims denial is reversed because of a "<u>clear procedural error</u>" by the case

18  manager. However, such provision does not encourage the denial of claims. To the contrary, it

19  establishes that the Plan is acting to ensure quality control and encourages *compliance* with

20  procedural requirements before the decision is made whether to deny a claim. This inures to the

21  claimant's benefit by ensuring that required procedures are followed. If anything, the provision

22  would arguably appear to encourage approvals; penalties would not be imposed thereunder for

23  *approving* a disability benefits claim, even if the case manager had made a clear procedural error

24  in so doing.

25    Also, Plaintiff has presented no evidence that the Plan Administrator interfered with the

26  CRC's review of denied claims under the Plan, or otherwise encouraged it to deny claims.

27    The abuse of discretion standard is applicable to this case. The Plan conferred

28  discretionary authority upon the CRC to interpret the Plan's terms and to make benefits

9

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    determinations. Moreover, the record shows that there is no evidence of a conflict of interest on

2    the part of the claim review fiduciary. The CRC is not financially associated with the Plan

3    Administrator or any of its family of companies and is not the source of funds for the Plan.

4        Hence, there is no basis for applying the abuse of discretion standard in a less than

5    deferential manner to the CRC's decision to affirm the denial of plaintiff's STD claim.

6        **B.    No Genuine Issue Exists that the Denial of Plaintiff's Claim for STD Benefits
         Was Not an Abuse of Discretion.**

7

8            **1.    The CRC Did Not Violate the Plain Language of the Plan In
                 Concluding That Eligibility for STD Benefits Required An Inability to
                 Perform Modified Work, Including Partial-Day Work**

9

10       Plaintiff first argues that the CRC abused its discretion by interpreting the Plan to require

11   that an STD applicant demonstrate that he or she is unable to work "even with accommodations."

12   In support of her argument, she claims that the Plan does not address accommodations. Her

13   argument is not supported by the record, and contrary to the facts.

14       The Plan's definition of "short-term disability" requires not only that the applicant be

15   unable to perform his or her "normal occupation or employment," but that he/she also be unable

16   to perform "such other occupation or employment *as he or she is assigned in accordance with the*

17   *Participating Company's normal practices*." (AR-000269.) The company's practice was to

18   make temporary modified duty available to employees based on their physical and medical

19   restrictions, *including partial-day work.* (AR-000320.) Indeed, plaintiff was provided a partial

20   work day from July 2004 to the last day she worked before she filed her STD claim. The SPD

21   expressly provides that STD benefits are only intended for employees who are disabled from *all*

22   work, and that such benefits "are not paid *if you can perform available modified duty*." (AR-

23   000318 (emphasis added).)

24       The SPD, which is one part of the Plan documents, is required by ERISA. (29 U.S.C.

25   §§1022(a), 1024(b)(1); 29 C.F.R. §2520.104b-3(b). See also Sidou v. Unumprovident Corp.

26   (D.Me. 2003) 245 F.Supp.2d 207, 218.) Such summary documents provide notice to employees

27   of the contents of a plan in plain language, and have been relied upon by courts as evidence in

28   interpreting plans subject to ERISA. (See Cervantes v. Metropolitan Life Insurance Company

10

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No. C07-02652 CRB)

1    (E.D. Cal. 2005) 388 F.Supp.2d 1164, 1168; <u>Sidou</u>, supra, 245 F.Supp.2d at 218; <u>Ross v. Rail</u>

2    <u>Car America Group Disability Income Plan</u> (8th Cir. 2002) 285 F.3d 735, 739 n.5.)

3        Plaintiff relies on <u>Saffle v. Sierra Pacific Power Company</u> (9th Cir. 1996) 85 F.3d 455, to

4    support her position that the CRC misconstrued the Plan.  In <u>Saffle</u>, <u>supra</u>, the court held in part

5    that the plan administrator had misconstrued the relevant long-term disability plan therein by

6    interpreting the plan's definition of "total disability" to include the inability to perform a

7    "substantial portion of her regular job with accommodations." (<u>Id</u>. at 456, 459-60.)  However,

8    the disability plan in <u>Saffle</u>, *unlike the Plan herein*, did <u>not</u> involve a definition of disability that

9    included other assigned work "in accordance with the Participating Company's normal practices"

10    or modified duty.  Instead, the definition in <u>Saffle</u> simply required an inability "to perform each

11    and every duty of the [employee's] regular occupation." (<u>Id</u>. at 456.)  No such definition is at

12    issue here.

13        Since the Plan's definition of short-term disability included an inability to perform

14    modified work, including working a partial day, the CRC did not violate the plain language of the

15    Plan's terms by considering plaintiff's ability to perform modified work, including her ability to

16    work a four-hour work day.

    **2.   The CRC's Denial of Benefits Had a Reasonable Basis in Plaintiff's**
17
          **Medical Findings and Was Not Clearly Erroneous.**
18

19        Plaintiff next argues that the CRC's decision to affirm the denial of STD benefits was

20    allegedly based on "erroneous" findings of fact.  (<u>See</u> plaintiff's moving brief, pp. 17:21-22;

21    21:1.)  Plaintiff's characterization of the holding in <u>Taft v. Equitable Life Assur. Soc.</u>, 9 F.3d

22    1469, 1472 (9th Cir. 1993) in support of her argument is misleading.  The court in <u>Taft</u> held in

23    pertinent part that a claims administrator abused its discretion if it relied on "<u>clearly erroneous</u>,"

24    not simply "erroneous," findings of fact in making its benefits determinations.  (<u>Taft</u>, <u>supra</u>, 9

25    F.3d at 1473 (emphasis added).)  Plaintiff's intentional omission of the word "clearly" from the

court's holding in <u>Taft</u> improperly suggests a lower threshold for review.
26

27        Instead, the "clearly erroneous" standard requires more than mere evidence in the record

28    that would have supported an opposite decision by the administrator.  (<u>Bolling v. Eli Lilly & Co.</u>

11

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1  (8th Cir. 1993) 990 F.2d 1028, 1029-30, *quoted* in Taft, supra, 9 F.3d at 1474.)  Accordingly, the

2  administrator's exercise of discretion must be found to have been "so patently arbitrary and

3  unreasonable as to lack foundation in [a] factual basis."  (Oster v. Barco of Cal. Employees'

4  Retirement Plan (9th Cir. 1988) 869 F.2d 1215, 1218, *quoted* in Taft, supra, 9 F.3d at 1473.)

5  Thus, the administrator's decision must be upheld if it is based on a reasonable, good faith

6  interpretation of the plan's terms.  (Estate of Shockley v. Alyeska Pipeline Service Company (9th

7  Cir. 1997) 130 F.3d 403, 405.)

8          **a)     The CRC Had A Reasonable Basis for Denial of Plaintiff's
                    Claim.**

9          In concluding that there was insufficient documentation to support plaintiff's claim that

10  she was disabled from working, all medical information submitted by plaintiff was considered,

11  including her treating doctors' reports and, additionally, opinions of several independent medical

12  specialists were considered by the CRC.  Under the deferential "clearly erroneous" standard,

13  plaintiff has failed to show that the CRC's decision upholding the denial of STD benefits was

14  based on clearly erroneous findings.

15          Further, plaintiff again misapplies the Saffle opinion.  She argues that Saffle prohibits a

16  plan from interposing "objective proof" when the plan does not contain such a term.  That is

17  simply not the case here.  The CRC did not require objective proof; instead, it relied in part upon

18  the considered medical judgment of a physician who, in forming his opinion, merely noted that

19  there were no objective findings of a neurologic deficit that prevented plaintiff from working a

20  sedentary job.  (See AR-000208-09, 000215.)

21          Plaintiff also argues that the CRC abused its discretion in relying upon the opinion of

22  three "NMR physicians" instead of the opinion of her own treating physician, Dr. Harrell.

23  However, the opinions of her treating physicians are not entitled to special deference.  (Black &

24  Decker Disability Plan v. Nord (2003) 538 U.S. 822, 829-30.)  Moreover, Dr. Harrell did not

25  express an opinion as to whether plaintiff could perform modified work; he concluded only that

26  plaintiff could not perform her "usual and customary job duties."  (See AR-000239.)

27

28                                                                                          12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

**b)**    **Plaintiff's Assertion of a Conflict Relating to the Reviewing Physicians is Meritless.**

The cases of Darland v. Fortis Benefits Ins. Co. (6th Cir. 2003) 317 F.3d 516, and Austin v. Continental Casualty Co. (W.D.N.C. 2002) 216 F.Supp.2d 550, fail to support plaintiff's claim that the three "NMR physicians" operated under a conflict of interest. In Darland, supra, the court concluded only that there was "apparent" conflict of interest where the plan administrator contracted with physicians who conducted the peer review of the application claim. (Darland, supra, 317 F.3d at 527-28.) In the instant case, the Plan Administrator did not contract with the NMR physicians. (See Declaration of Lindsay Nako in Support of Plaintiff's Motion For Summary Judgment ("Nako Decl."), ¶10, Exh. 9 at 2:27-28; 4:9-10.)

More importantly, the holding in Darland is persuasive authority at best, and its reasoning is dubious. It is outside of the Ninth Circuit and is based on an erroneous application of the "treating physician" rule in Social Security benefits proceedings to ERISA benefits determinations, which gives deference to the opinion of the claimant's treating physician. (Darland, supra, 317 F.3d at 532-33.) The United States Supreme Court has held that the treating physician rule does not apply to ERISA benefits determinations. (Black & Decker, supra, 538 U.S. at 828-29.)

In Austin, supra, a district court outside this district, merely stated in a footnote of the opinion that vocational and medical experts were "for hire" by employers for purposes of reducing costs. (Austin, supra, 216 F.Supp.2d at 554 n.1.) The statement is not binding on this court and, in any event, employer Pacific Bell did not retain the NMR physicians herein. (See Nako Decl., ¶10, Exh. 9 at 2:27-28; 4:9-10.)

**c)**    **Alleged Earlier Conditions Are Irrelevant to the Subject Denial.**

Plaintiff's reference to old medical conditions is simply a red-herring. She contends that alleged dystonia supported her claim that she could not work. However, one independent physician advisor, speech pathologist Dailey, concluded that there were no clinical findings in the plaintiff's medical documentation to support a diagnosis of dystonia. Plaintiff's medical documentation is devoid of any medical findings of dystonia in 2003 or 2004. Even the Kaiser

LAFAYETTE & KUMAGAI LLP
ATTORNEYS-AT-LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

13

1    note from 2000 (P000263) cited by plaintiff only references treatment plaintiff received; it

2    contains no medical findings.  No medical proof supported plaintiff's allegation that dystonia

3    caused her to become disabled in 2004.  In any event, a medical diagnosis alone would not be

4    sufficient to establish a disability.  (Jordan, supra, 370 F.3d at 880; Safavi, supra, 493 F.Supp.2d

5    at 1119.)

6         Plaintiff also claims that alleged chronic pain from a wrist ganglion cyst reduced the

7    functionality of her right arm and wrist.  However, she bases such claim on conclusory assertions

8    in her own declaration, and not on medical findings.  (See plaintiff's moving brief, p. 8:3-5.)

9    Further, there is no evidence in the record that the alleged cyst prevented her from working four

10   hours a day at her job *in November 2004*.  The sole medical document cited by plaintiff relating

11   to her alleged cyst is a treating physician's progress report (P00267) that dates from *October*

12   *2002*, and which is irrelevant to plaintiff's medical status in November 2004.

13        Plaintiff further alleges that her medications have had a "disabling effect" upon her.  Her

14   claim is speculative and is not supported by any medical findings in the record.  Her citation to

15   website descriptions of certain medications is irrelevant hearsay that merely describes the

16   medications' potential side effects, and does not describe any actual "disabling" effects upon

17   her.[7]  Even her subjective description of her own alleged symptoms is conclusory and does not

18   demonstrate causation.

19        In light of the above, plaintiff cannot show that CRC abused its discretion when it

20   affirmed the denial of her claim for STD benefits.  Her motion for summary judgment should be

21   denied.

22   **C.    Even if, *Arguendo*, the Standard of Review Were *De Novo*, Plaintiff Has
          Failed To Show That Was Entitled to STD Benefits Under the Plan**

23

24        Even if, *arguendo*, a de novo standard of review were somehow applicable to the CRC's

25   decision, plaintiff failed to establish that she would be entitled to STD benefits under the Plan as

26   a matter of law.  As the moving party, plaintiff bears the burden of proving that she is entitled to

27   such benefits.  (Sabatino v. Liberty Life Assurance Company of Boston (N.D.Cal.2003) 286

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

28

---

[7] Defendant objects to plaintiff's declaration to the extent it lacks foundation and is based on speculation.

14

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No. C07-02652 CRB)

1   F.Supp.2d 1222, 1232.)  In conducting such a *de novo* review, a court may weigh the evidence in

2   the record.  (Newcomb v. Standard Insurance Company (9th Cir. 1999) 187 F.3d 1004, 1007.)

3          Thus, in Newcomb, supra, the court, in connection with its *de novo* review, concluded

4   that the medical opinions of three doctors, including two neurological specialists, substantially

5   outweighed a "lone contrary opinion" of a single doctor.  (Id. at 1007.)

6          In the instant case, the opinions of three independent medical specialists in orthopedic

7   surgery (Dr. Been), neurology (Dr. Jares), and speech pathology (Scott Dailey), two of whom are

8   also medical doctors, provides substantial evidence regarding plaintiff's purported disability that

9   should outweigh the lone opinion of his treating physician, Dr. Harrell.  As noted above, Dr.

10  Been and Dr. Jares both concluded that plaintiff could work a four-hour work day, which would

11  disqualify plaintiff from STD benefits because of her ability to perform modified work.  As

12  further noted above, the medical record on which the doctors based their findings showed no

13  functional limitations in plaintiff's cervical range of motion, no documented loss of functionality

14  in the strength of plaintiff's upper extremities, no clear pattern of radiculopathy, insufficient

15  evidence of cervical myelopathy and no change in plaintiff's functional status from the time that

16  she was working a four-hour day.  Dailey, the speech pathologist, had concluded that a diagnosis

17  of dystonia was unsupported, based on the absence of medical findings to support such a

18  diagnosis in 2003 or 2004, or even in 2000.

19         Dr. Harrell, plaintiff's treating physician, concluded in his October 24, 2004 letter that

20  plaintiff was "unable to return to her usual and customary job duties," but did not address

21  plaintiff's ability to perform modified work, such as partial-day work.  The opinions of

22  defendant's three independent medical specialists outweigh the lone opinion of Dr. Harrell, in

23  that they tend to support a finding that plaintiff did *not* have a short term disability within the

24  meaning of the Plan.  In any event, the opinion of plaintiff's treating physician is not entitled to

25  any special deference, nor does ERISA impose a heightened burden of explanation on

26  administrators when they reject a treating physician's opinion.  (Black & Decker Disability Plan

27  v. Nord (2003) 538 U.S. 822, 829-30, 834.)

28                                                                                          15

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    For these reasons, even if this court applied a *de novo* standard of review, the Plan's

2  motion should be granted and plaintiff's motion denied.

3    **D.    Plaintiff's Alleged Approval for SSDI Benefits Is Irrelevant.**

4    Plaintiff's alleged approval for benefits under the Social Security Disability Insurance

5  ("SSDI") program is irrelevant to the determination as to whether she is eligible for STD benefits

6  under the subject Plan. (Madden v. ITT Long Term Disability Plan (9th Cir. 1990) 914 F.2d

7  1279; Hornback v. New York Times Company Long Term Disability Plan (N.D.Cal. 2006) 2006

8  WL 496050; Moskowite v. Everen Capital Corp. (N.D.Cal. 2005) 2005 WL 1910941.) Plaintiff

9  argues that her alleged approval for SSDI benefits from the Social Security Administration

10  ("SSA") is further evidence that she is disabled. However, plaintiff's purported evidence

11  (P000336) does not show an approval of SSDI benefits, or even a determination that she is

12  disabled, and is ambiguous at best. The document is merely an SSA notice that she is being sent

13  a check for $1,200, and nothing more.

14    Moreover, plaintiff's citation to case law on this issue is misleading. She cites to three

15  cases from outside of this Circuit (Reidl v. General American Life Ins. Co. (8th Cir. 2001) 248

16  F.3d 753, Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co. (1st Cir. 2000) 230 F.3d 415, and

17  Ladd v. ITT Corp. (7th Cir. 1998) 148 F.3d 753), but fails to cite to relevant cases from *within this*

18  *Circuit* that do not support her position. In that regard, plaintiff failed to cite the case of Madden

19  v. ITT Long Term Disability Plan (9th Cir. 1990) 914 F.2d 1279, or cite two Northern District

20  cases that rely upon Madden---Hornback v. New York Times Company Long Term Disability

21  Plan (N.D.Cal. 2006) 2006 WL 496050, and Moskowite v. Everen Capital Corp. (N.D.Cal. 2005)

22  2005 WL 1910941.

23    In Madden, supra, the Ninth Circuit, in upholding the plan administrator's decision to

24  terminate disability benefits, *rejected* the plaintiff's argument that the administrator should have

25  considered his (plaintiff's) receipt of a social security award. (Madden, supra, 914 F.2d at 1285.)

26  Similarly, in Hornback, supra, the court rejected plaintiff's argument that the defendant disability

27  plan was bound by the Social Security Administration's determination that plaintiff was disabled,

28  citing to the Madden case, and even further concluding that the Ladd case from the 7th Circuit

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

16

1    was inapplicable. (Hornback, supra, 2006 WL 496050 at *9.) The court in Moskowite also cited

2    to the Madden case in support of its holding that a decision to award social security benefits was

3    not binding on a plan administrator. (Moskowite, supra, 2005 WL 1910941, **3-4.)

4        In any event, the Reidl, Pari-Fasano and Ladd cases, cited by plaintiff, are inapplicable.

5    The Reidl and Ladd cases involved determinations by administrative law judges that the claimant

6    was disabled. First, there has been no such determination herein. (Reidl, supra, 248 F.3d at 759;

7    Ladd, supra, 148 F.3d at 755-56.) Second, the respective rules and standards governing ERISA

8    and Social Security benefits differ. (Black & Decker, supra, 538 U.S. at 833.) Employers have

9    substantial leeway to design disability and other welfare plans as they see fit. (Ibid.) ERISA

10   benefits decisions are not required to conform to social security benefits decisions. (See Madden,

11   supra, 914 F.2d at 1285; Moskowite, supra, 2005 WL 1910941 at *4.) In Pari-Fisano, the court

12   *rejected* plaintiff's argument that her prior eligibility for social security benefits was a basis for

13   overturning her termination of disability benefits. (Pari-Fisano, supra, 230 F.3d at 419-20.)

14       Plaintiff's cite to an alleged social security award is irrelevant to the CRC's decision to

15   affirm the denial of STD benefits and her arguments are meritless.

16       **E.**    **Plaintiff's Argument That She is Entitled to LTD Benefits Is Not Properly**

17           **Before This Court**

18       Finally, plaintiff argues that she should awarded LTD benefits. However, her purported

19   claim for LTD benefits is not properly before this Court, for her claim underlying the instant

20   motion is only for STD benefits. (See AR-000269.)

21       Further, plaintiff has not exhausted her administrative remedies under the Plan to claim

22   LTD benefits. Section 10.2 of the Plan requires that a claim for LTD benefits first be brought in

23   writing to the Long Term Disability Claims Administrator ("LTD Claims Administrator"). (AR-

24   000347.) Thereafter, under Section 11.1 of the Plan, a Participant whose claim for LTD benefits

25   has been denied may request a review by the Long Term Disability Claims Review Administrator

26   ("LTD Claims Review Administrator"). (AR-000348.) In the instant case, plaintiff never

27   initiated an LTD claim with the LTD Claims Administrator, much less requested review by the

28   LTD Claims Review Administrator of an LTD claims denial. Under Section 11.6 of the Plan,

17

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1    the court may only review the decision *of the LTD Claims Review Administrator* for abuse of

2    discretion. (AR-000349.) Since plaintiff has not complied with these requirements, the court has

3    no jurisdiction to entertain a claim for LTD benefits from her now.

4        Moreover, it appears likely that plaintiff would not have qualified for long-term disability

5    benefits, in any event. A "long term disability" under the Plan requires a medical, psychiatric or

6    psychological condition or injury that prevents the employee from engaging in "<u>any occupation</u>

7    or employment for which the Employee is qualified, or may reasonably become qualified, based

8    on training, education or experience." (Emphasis added.) (AR-000330.) The medical findings

9    show that plaintiff was able to work a four-hour day, at the job she was actually performing.

10   (AR000057, 00065-66.) Therefore, she was already engaging in an occupation and, there was no

11   determination made at all on the much broader "any occupation" standard of disability.

12       Because (1) plaintiff has not even made a claim for long term disability benefits, let alone

13   exhausted her administrative remedies as to such a claim, and (2) the disability standard under the

14   LTD plan is different than the standard in the instant Plan, plaintiff's request in her motion for

15   such benefits must be declined.

16                          **IV.    CONCLUSION**

17       For the reasons stated above, defendant AT&T Umbrella Benefit Plan No. 1 respectfully

18   requests that plaintiff's motion for summary judgment be denied in its entirety.

19

20   DATED: February 8, 2008            LAFAYETTE & KUMAGAI LLP

21

22                                      */s/ Susan T. Kumagai*
                                        SUSAN T. KUMAGAI
23                                      Attorneys for Defendant
                                        AT&T UMBRELLA BENEFIT PLAN NO. 1

24

25

26

27

28                                                                                    18

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

## CERTIFICATE OF SERVICE

1
2    I certify that a copy of this document was served electronically on February 8, 2008, on
3    counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by
     use of the Court's ECF system.

4
5                                          _/s/ Susan T. Kumagai_

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
     N:\Documents\ATT\Glov\Pldg\Pltfs  Mo for Summary Judgment\Opp MPA doc
28
                                                                                    19

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MEMORANDUM OF POINTS OF
AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Case No.  C07-02652 CRB)