1  Teresa S. Renaker – CA State Bar No. 187800
   Lindsay Nako – CA State Bar No. 239090
2  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
   1330 Broadway, Suite 1800
3  Oakland, CA 94612
   Telephone: (510) 839-6824
4  Facsimile: (510) 839-7839
   trenaker@lewisfeinberg.com
5  lnako@lewisfeinberg.com

6  *Attorneys for Plaintiff*

7              IN THE UNITED STATES DISTRICT COURT

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                  SAN FRANCISCO DIVISION

10                                    )  Case No. 07-02652-CRB
    YVONNE GLOVER,                    )
11                                    )  **PLAINTIFF'S MEMORANDUM OF**
                     Plaintiff,       )  **POINTS AND AUTHORITIES IN**
12                                    )  **OPPOSITION TO DEFENDANT'S**
         vs.                          )  **MOTION FOR SUMMARY**
13                                    )  **JUDGMENT**
    AT&T UMBRELLA BENEFIT PLAN NO. 1, )
14                                    )  Date:       February 29, 2008
                     Defendant.       )  Time:       10:00 a.m.
15                                    )  Courtroom:  8
                                      )  Judge:      Hon. Charles R. Breyer
16  _____  )

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    The Proper Standard of Review Is *De Novo*, Because Discretion Was Not
            Exercised by the Entity to Which the Plan Grants Discretion. . . . . . . . . . . . . . 1

            1.    Ms. Glover's Initial Claim for Benefits Was Not Denied by the Entity
                  Granted Discretion by The Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.    Ms. Glover's Request for Review of the Denial of Her Claim for Benefits
                  Was Not Reviewed by the Entity Granted Discretion by the Plan. . . . . . 4

            3.    On *de Novo* Review, the Plan Has Not Demonstrated the Absence of
                  Any Genuine Issue of Fact as to Ms. Glover's Entitlement to Benefits. . 6

      C.    Even If the Standard of Review Is for Abuse of Discretion, Defendant Abused
            Its Discretion By Denying Ms. Glover's Claim for Benefits. . . . . . . . . . . . . . . 9

            1.    Any Deference Awarded to the Plan's Exercise of Discretion Must Be
                  Tempered By Skepticism Arising From the Financial Conflict of Interest
                  Between Defendant and Sedgwick Claims Management Services, Inc. . 10

            2.    Genuine Issues of Material Fact Exist as to Whether the Denial Was an
                  Abuse of Discretion in That It Was Based on Ms. Glover's Asserted
                  Failure to Meet Requirements Not Set Forth in the Plan. . . . . . . . . . . . 11

            3.    SMAART Relied on Erroneous Finding of Facts When It Concluded
                  That Ms. Glover Could Work With Accommodation. . . . . . . . . . . . . . . 13

                  a.    The Medical Conclusions of Ms. Glover's Treating Physician . . 13

                  b.    Report of Jeffrey N. Been, M.D. . . . . . . . . . . . . . . . . . . . . . . . . 14

                  c.    Report of Joseph J. Jares, III, M.D. . . . . . . . . . . . . . . . . . . . . . 14

                  d.    Report of Scott Dailey, MA, CCC-SLP . . . . . . . . . . . . . . . . . . . 15

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Federal Cases**

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006.) . . . . . . . . . . . . . . . . . . . . . 10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Canseco v. Const. Laborers Pension Trust for So. Cal.,
   93 F.3d 600 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, 11, 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Firestone Tire & Rubber v. Bruch, 489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii, 2

Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914 (7th Cir. 2003) . . . . . 14

Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan,
   349 F.3d 1098 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 12

Mitchell v. Metropolitan Life Ins. Co., 523 F. Supp. 2d 1132 (C.D. Cal. 2007) . . . . . . . . . . . . 12

Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938
   (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 3

Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384 (9th Cir. 1994) . . . . . . iii, 2

Safavi v. SBC Disability Income Plan, 493 F. Supp. 2d 1107 (C.D. Cal. 2007) . . . . . . . . . . . . . 3

Saffle v. Sierra Pacific Power Co., 85 F.3d 455 (9th Cir. 1996) . . . . . . . . . . . . . . . iii, 11, 12, 13

Shane v. Albertson's Inc. Employees' Disability Plan, 504 F.3d 1166 (9th Cir. 2007) . . . . . . iii, 2

Tremain v. Bell Indus., 196 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 3

Taft v. Equitable Life Assur. Soc., 9 F.3d 1469 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . iii, iv, 9

Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327 (9th Cir. 1983) . . . . . . . . . . . 1

Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Federal Statutes**

ERISA § 404(a), 29 U.S.C. § 1104(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. § 423(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

2      The denial of Plaintiff Yvonne Glover's claim for short-term benefits under the Pacific

3  Telesis Group Comprehensive Disability Benefit Plan ("the Plan") should not be accorded any

4  deference by this Court because the decision to deny Ms. Glover's claim was not made by the

5  entity granted discretionary authority under the Plan. *See Firestone Tire & Rubber v. Bruch*, 489

6  U.S. 101, 115 (1989); *Shane v. Albertson's Inc. Employees' Disability Plan*, 504 F.3d 1166,

7  1170 (9th Cir. 2007); *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1389

8  (9th Cir. 1994). The Plan grants discretion to a committee, and Defendant points to no evidence

9  that the committee ever acted on Ms. Glover's claim. Instead, the Plan contends that an

10  individual member of the committee denied Ms. Glover's claim. Nothing in the Plan confers

11  discretion on any individual committee member; the Plan confers discretion only on the

12  committee acting as a body. Defendant has produced no agendas, minutes, resolutions, or other

13  documents showing that the committee ever acted on Ms. Glover's claim. Even the letters to Ms.

14  Glover notifying her of the claim denial do not reference any action by the committee.

15      On *de novo* review of Ms. Glover's claim, the Plan has failed to demonstrate the absence

16  of any genuine issue of material fact regarding Ms. Glover's entitlement to benefits because no

17  medical professional has concluded that Ms. Glover could perform the duties set forth in her job

18  description, which include working at least 7.5 hours per day. To the contrary, all of the

19  professionals who have opined on Ms. Glover's ability to work have stated, at most, that she can

20  work four hours per day.

21      Should the Court determine that the decision is entitled to deference, then genuine issues

22  of fact exist precluding summary judgment for Defendant. Even if Ms. Glover's claim was

23  denied by the entity granted discretion, at a minimum, genuine issues of fact exist as to whether it

24  abused its discretion by acting contrary to Plan terms or based on erroneous findings of fact when

25  it denied Ms. Glover's claim based upon a requirement for eligibility that is not in the Plan and

26  without reasonable evidence that she was capable of working with accommodations. *See Saffle*

27  *v. Sierra Pacific Power Co.*, 85 F.3d 455, 459-60 (9th Cir. 1996); *Canseco v. Const. Laborers*

28  *Pension Trust for So. Cal.*, 93 F.3d 600, 608-09 (9th Cir. 1996); *Taft v. Equitable Life Assur.*

1  *Soc.*, 9 F.3d 1469, 1472-73 (9th Cir. 1993).  On either *de novo* or abuse of discretion review, Ms.

2  Glover is entitled to short- and long-term benefits under the Plan.

3        Defendants have submitted the Declarations of Tonya Warner and Nancy Watts in

4  support of their Motion for Summary Judgment.  To the extent that they go to the merits of Ms.

5  Glover's claim, the Court should not consider the declarations because they are not necessary for

6  the Court to conduct an adequate *de novo* review.  *See Mongeluzo v. Baxter Travenol Long Term*

7  *Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995).  To the extent that the declarations

8  provide evidence going to the standard of review, Plaintiff agrees that the Court may consider

9  them.  *See Tremain v. Bell Indus.*, 196 F.3d 970, 976-77 (9th Cir. 1999).  However, should the

10  Court be inclined to consider these declarations, then, pursuant to Fed. R. Civ. P. 56(f), the Court

11  should order a brief continuance to permit Ms. Glover to take these witnesses' depositions.  (*See*

12  Declaration of Lindsay Nako Pursuant to Fed. R. Civ. P. 56(f), submitted herewith.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  STATEMENT OF ISSUES

1.      Whether the standard of review is *de novo* or abuse of discretion, where the entity vested with discretion under the Plan did not decide Ms. Glover's claim for benefits.

2.      Whether, under *de novo* review, genuine issues of material fact preclude summary judgment for Defendant as to Ms. Glover's eligibility for benefits.

3.      If the standard of review is abuse of discretion rather than *de novo*, whether genuine issues of material fact exist precluding summary judgment for Defendant as to whether the denial of Ms. Glover's claim was an abuse of discretion.

# II.  ARGUMENT

## A.      Applicable Legal Standards.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party – here, Defendant – is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets these requirements, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The non-moving party must merely demonstrate that there is evidence from which a fact finder *might* return a verdict in his or her favor.  *Id.* at 257.  The court views all evidence and factual inferences in the light most favorable to the non-moving party.  *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328-29 (9th Cir. 1983).   A bench trial is required if there is "a genuine issue of fact as to whether [the party seeking disability benefits under ERISA is] disabled in the sense defined by the policy." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1093-94 (9th Cir. 1999).

## B.      The Proper Standard of Review Is *De Novo*, Because Discretion Was Not Exercised by the Entity to Which the Plan Grants Discretion.

As set forth in Plaintiff's Memorandum in Support of her Motion for Summary Judgment ("Plaintiff's Memorandum"), *de novo* review is appropriate, unless the benefit plan has expressly granted discretionary authority to the decision-maker or allowed for delegation of discretionary

1  authority to the decision-maker.  *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115

2  (1989).  (*See* Pl.'s Mem. at 12.)  Applying *Firestone*, the Ninth Circuit has held that *de novo*

3  review applies where the Plan has not vested the decision-maker with the requisite discretionary

4  authority.  *See Shane v. Albertson's Inc. Employees' Disability Plan*, 504 F.3d 1166, 1170 (9th

5  Cir. 2007) ("If the [decision-maker] was not properly vested with such discretion, its decision . . .

6  would not be subject to the deferential standard of review of abuse of discretion."); *Nelson v. EG*

7  *& G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1389 (9th Cir. 1994).  Abuse of discretion

8  review is warranted only where discretion has been properly exercised in accordance with the

9  Plan terms.  *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 349

10  F.3d 1098, 1105 (9th Cir. 2003).

11  Here, the Plan confers discretion on two committees, one to decide initial claims and one

12  to decide appeals.  (AR000343, § 8.1; AR000346, § 9.4.)  The committees are made up of

13  "voting members" designated by job title.  (AR000287.)  However, there is no evidence that

14  either committee ever held a vote or otherwise acted on Ms. Glover's claim.  Instead, her claim

15  and appeal were decided by individual employees of the claims administrator, Sedgwick Claims

16  Management Services, Inc. ("Sedgwick").  As described in Plaintiff's Memorandum, the Ninth

17  Circuit has considered this very issue and determined that a decision made by an individual

18  employee, rather than the Administrative Committee vested with discretionary authority by the

19  plan, could not be granted abuse of discretion review as "there is no appropriate exercise of

20  discretion to which to defer."  *Nelson,* 37 F.3d at 1389.  (*See* Pl.'s Mem. at 12.)

21  **1.    Ms. Glover's Initial Claim for Benefits Was Not Denied by the Entity**
22       **Granted Discretion by Plan.**

23  Ms. Glover's initial claim for benefits was denied by an individual Sedgwick employee

24  who did not even serve on the committee granted discretion by the Plan to decide such claims.

25  As set forth in Plaintiff's Memorandum, the Plan Document awarded responsibility for approving

26  or denying short-term disability benefit claims to the General Employees Benefit Committee

27

28

1   ("GEBC") and conferred discretion on that body to decide claims. (AR000343,[1] § 8.1; *see* Pl.'s

2   Mem. at 12-13.) The GEBC is made up of six voting members, identified by position.

3   (AR000287-88.) Three of them are employees of Sedgwick. (*Id.*) The Sedgwick positions on

4   the GEBC are Operations Manager, Business Unit Manager, and STD Case Manager (or a

5   Medical Case Manager). (*Id.*) At the time Ms. Glover was denied benefits, the Plan was

6   administered by a group of employees of Sedgwick, known as the SBC Medical Absence and

7   Accommodations Resource Team ("SMAART"). (AR000047; AR000241.) *See also Safavi v.*

8   *SBC Disability Income Plan*, 493 F. Supp. 2d 1107, 1110 (C.D. Cal. 2007).

9        Defendant implies that the denial of Ms. Glover's original claim for benefits was an

10  exercise of discretionary authority. (*See* Defendant's Memorandum in support of its Motion for

11  Summary Judgment ("Defendant's Memorandum"), p. 12.) According to Defendant's

12  Memorandum and the November 23, 2004, denial letter, Jennifer Fennessy, a Disability

13  Specialist with Sedgwick, informed Ms. Glover that SMAART had reviewed and denied her

14  claim. (Def.'s Mem. at 5-6; AR000241-43.) There is no evidence in the record, nor any

15  presented in Defendant's Memorandum, demonstrating that the GEBC ever voted on or even

16  considered Ms. Glover's claim.

17       Nonetheless, Defendant submits the declaration of AT&T Senior Benefits Analyst Nancy

18  Watts,[2] who attests that "[a]ll decisions regarding Glover's eligibility for benefits under the

19  Disability Plan were made by appropriately designated representatives." (Declaration of Nancy

---

[1] References to "AR" are to the Administrative Record submitted to the Court in support of Defendant's Motion for Summary Judgment.

[2] Plaintiff agrees that the Declarations of Nancy Watts and Tanya Warner may be considered as to the standard of review. *See Tremain v. Bell Indus.*, 196 F.3d 970, 976-77 (9th Cir. 1999). However, because they are outside the claim record developed by the parties prior to litigation, the declarations may not be considered with respect to the merits. On *de novo* review the Court may, at its discretion, consider the declarations "[if] circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995). However, Defendant has not made this showing of necessity. In the event that the Court is inclined to rely on the declarations in resolving any issue in this case, then Plaintiff requests that the Court grant a brief continuance to permit Plaintiff to take the declarants' depositions. (*See* Declaration of Lindsay Nako Pursuant to Fed. R. Civ. P. 56(f), filed herewith.)

Watts ("Watts Dec."), ¶ 22.)  Not only is there no evidence that Ms. Fennessey was "appropriately designated" under the Plan to decide Ms. Glover's initial claim, but Disability Specialists, such as Ms. Fennessey, do not serve on the GEBC.  (*See* AR000288.)[3]  Thus, Ms. Watts's conclusion that Ms. Fennessey was an "appropriately designated representative" demonstrates the Plan's failure to ensure that discretion in claims decision-making was exercised by the fiduciary designated by the Plan.[4]

Ms. Watts acknowledges that it is the GEBC – not individual members –  that "has responsibility to approve or deny claims under the Disability Plan."  (Watts Dec. at ¶ 7.)  Yet, she also attests, "Employees of Sedgwick, as members of the Employees' Benefit Claim Review Committee ('CRC') and GEBC, have full and complete discretion to make all benefits decisions under the disability Plan."  (*Id.*, ¶ 8.)  To the extent that Ms. Watts means that each voting member of the committee can independently exercise discretion in approving or denying a claim, this conclusion is contrary to the terms of the Plan, which confers decision-making authority on the committee as a body.  (AR00287; AR000343, § 8.3; AR000346, § 9.3.)  There is no point in the Plan designating committees with "voting members" if each committee member can act by a vote of one.

**2.    Ms. Glover's Request for Review of the Denial of Her Claim for Benefits Was Not Reviewed by the Entity Granted Discretion by the Plan.**

As with Ms. Glover's initial claim, her request for review of the denial of that claim was not decided by the entity with discretion under the Plan.  Benefit denials by the GEBC are reviewed by the Employees Benefit Claim Review Committee ("CRC").  (AR000346, § 9.1; *see*

---

[3]  Ms. Watts's also attests that SBC Communications, Inc., is the Plan Administrator of the Plan, and that Sedgwick is not "financially associated with the Plan Administrator."  (Watts Dec., ¶¶ 4, 8.)  Yet the Administrative Record contains a contract between SBC Communications, Inc., and Sedgwick, pursuant to which Sedgwick performs claims administration services in exchange for fees paid by SBC Communications, Inc.  (Declaration of Lindsay Nako ISO Plaintiff's Motion for Summary Judgment ("Nako Dec."), Exh. 7.)

[4]  The Plan also submits the Declaration of Tonya Warner, who admits that at the initial claim level, determinations are made by individual members of the GEBC, not by the committee. (Declaration of Tonya Warner ("Warner Dec."), ¶ 7.)

1    Pl.'s Mem. at 13.)  The Plan grants discretion solely to the CRC to decide requests for review.

2    (AR000346, § 9.4.)  The CRC is made up of four voting members identified by positions held by

3    employees at Sedgwick, including Manager - SBC Quality Review Unit, ERISA Specialist,

4    Appeals Specialist, and Clinical Appeals Specialist.  (AR000288.)

5        Enclosed in the letter denying Ms. Glover's original claim for benefits, Ms. Fennessy

6    included the "Quality Review Unit Appeal Procedures," which instructed Ms. Glover to provide

7    her appeal to the SMAART Quality Review Unit ("QRU"), not the CRC.  (AR000244.)

8    Following the instructions provided in the Quality Review Unit Appeal Procedures, Ms. Glover

9    submitted her request for review of the denial of her claim for short-term disability benefits to the

10   QRU.  (AR000149.)

11       Defendant implies that the CRC denied Ms. Glover's request for review, although it fails

12   to describe any vote or other action taken by the CRC or any corresponding evidence in the

13   record.  (Def.'s Mem., at 12.)  Heidi Lasser, Claims Specialist; Doreen Ongayo, ERISA

14   Specialist; and Cam Reinhardt, Manager - Quality Review Unit, communicated with Ms. Glover

15   and her counsel about SMAART's review of her appeal and the supplement provided on May 2,

16   2005, by Ms. Glover's counsel.  (AR000044-49; AR000192-93; AR000194-95; AR000208-09;

17   AR000227.)  By virtue of their positions, these individuals were "voting members" of the CRC.

18   (AR000287-88.) However, there is no evidence that the CRC ever held a vote or otherwise acted

19   on Ms. Glover's appeal.

20       As with the GEBC, Ms. Watts acknowledges that the CRC has "fiduciary responsibility

21   to the Disability Plan,"[5] has authority to decide appeals of denials, and is a named fiduciary of the

22   Plan.  (Watts Dec., ¶¶ 8, 10, 11.)  Again, however, she asserts that "[e]mployees of Sedgwick, as

23   members of the [CRC] . . . have full and complete discretion" to make benefits decisions.  (*Id.* at

24   ¶ 8.)  Either the committee has the authority, or its individual members have the authority (in

25   which case the committee is superfluous) -- but both statements cannot be true at the same time.

26

27       [5] Ms. Watts is wrong on this point of law as well.  The Committee's fiduciary
     responsibility is owed to the Plan's participants and beneficiaries, not to the Plan itself.  *See*
28   ERISA § 404(a), 29 U.S.C. §  1104(a) ("[A] fiduciary shall discharge his duties with respect to a
     plan solely in the interest of the participants and beneficiaries.").

1   In this case, the Plan makes clear that it is the CRC, and not its individual "voting members," that

2   has the authority to decide appeals.

3          Ms. Warner attests that "internal decisions or actions" with regard to benefits claims are

4   logged in Sedgwick's "Juris Notes" database.  (Warner Dec., ¶ 12.)  Thus, had the GEBC or the

5   CRC voted on Ms. Glover's claim, that action presumably would be reflected in the Juris Notes

6   produced by the Plan as part of the claim record.  (AR0001-43, 68-101.)  The Juris Notes reflect

7   no such action.

8          Therefore, the denial of Ms. Glover's request for review of the denial of her claim for

9   benefits is not entitled to abuse of discretion review, as the entity granted discretion by the Plan

10  did not make the determination.

11         **3.      On *de Novo* Review, the Plan Has Not Demonstrated the Absence of Any
                   Genuine Issue of Fact as to Ms. Glover's Entitlement to Benefits.**
12

13         For the reasons set forth in Plaintiff's Memorandum, Ms. Glover is disabled under the

14  terms of the Plan.  The medical evidence demonstrates that Ms. Glover's disabling conditions

15  keep her from performing the physical tasks required by her job.  At a minimum, genuine issues

16  of material fact exist as to whether Ms. Glover is disabled within the meaning of the plan,

17  precluding summary judgment for Defendant.

18         To summarize, according to SBC's "Job Analysis Document," the position of Staff

19  Associate requires the ability to perform the following activities:

20         1.      Process payroll by entering data into computer from hand written time sheets (90
                   minutes per day); 700 keystrokes.
21

22         2.      Prepare work schedules.  Will enter data using keyboard into spread sheet (60 min
                   per day); 700 keystrokes.

23         3.      Process day off requests by entering data into computer from hand written forms
                   (90 mins per day); 700 keystrokes; 60 lines handwritten.
24

25         4.      Assist manager with filing, (60 min per day), faxing (30 min per day), and
                   photocopying (30 min per day) functions.

26         5.      Word process correspondence (30 min per day)- 650 keystrokes.

27         6.      Sort and distribute mail (30 min per day).

28         7.      Answer telephones and take messages (30 min per day).

1    (AR000275.)  Thus, Ms. Glover's job required her to work at least 7.5 hours per day.

2        The Administrative Record demonstrates, at a minimum, the existence of genuine issues

3    of material fact as to whether Ms. Glover was able to perform these duties as of  November 3,

4    2004.  As described in Plaintiff's Memorandum, Ms. Glover suffers from dysphonia, a rare vocal

5    chord disorder; cervical radiculopathy, or degenerative disk disease; and a ganglion cyst located

6    in her right wrist.  (*See* Pl's Mem. at 4-8; 14-17.)  These conditions impair her ability to speak,

7    sit, and keyboard.

8        A speech pathologist diagnosed Ms. Glover with dysphonia on September 7,1990, and

9    described her prognosis as "guarded."  (AR000102.)  In July 2000, Ms. Glover was again seen

10   for dysphonia/dystonia and her prognosis remained "guarded."  (AR000104.)  Her condition was

11   also noted by a physician in February 2003.  (AR000107.)  Dystonia is an incurable disease

12   characterized by sudden involuntary muscle spasms causing the vocal chords to knock together

13   and stiffen.  (AR000174.)  It becomes difficult to speak and speech sounds choppy and strangled.

14   (*Id.*)  Due to this condition, Ms. Glover was required to leave her prior position as a telephone

15   operator. (AR000167, ¶¶ 4, 8.)

16       Ms. Glover's primary source of pain results from cervical radiculopathy.  A January 6,

17   2003 MRI and a February 27, 2003 EMG both showed visible damage to Ms. Glover's spine,

18   including "disk herniation," "central posterior disc bulge/protrusion with slight impression on the

19   ventral aspect of the thecal sac," "significant multilevel degenerative disease," evidence

20   "consistent with a C6 level lesion," and "right C6 cervical radiculopathy."  (AR000107,

21   AR000139.)  On May 24, 2004, an MRI analyzed by Dr. Philip Rich showed a "persistent central

22   disk protrusion extending 4 mm posteriorly, indenting the cord in the midline" at C4-5.

23   (AR000140.)  Dr. Rich believed the condition had progressed since Ms. Glover's January 6,

24   2003 MRI. (*Id.*)

25       Dr. Jill Harrell, an orthopedic surgeon and Ms. Glover's treating physician for purposes

26   of her claim for worker's compensation medical benefits, first placed Ms. Glover on modified

27   duty on March 17, 2003.  (AR00112.)  She gradually imposed more significant restrictions as

28   Ms. Glover's pain worsened and her functionality declined.  On March 17, 2003, Dr. Harrell

1  restricted Ms. Glover's overhead activity, lifting, and time spent computer keyboarding.  (*Id.*)

2  On April 1, 2003, Dr. Harrell restricted Ms. Glover from all work from March 31, 2003, through

3  April 18, 2003.  (AR000113.)  On October 29, 2003, Dr. Harrell limited Ms. Glover to "no

4  keyboard more than 2 hrs/8 hr shift."  (AR000119.)  As shown above, Ms. Glover's job required

5  her to keyboard for at least 4.5 hours per day.  (AR000275.)  On July 7, 2004, Dr. Harrell further

6  restricted Ms. Glover to four-hour days with only half her time spent at the keyboard.

7  (AR000120.)  On October 28, 2004, Dr. Harrell placed Ms. Glover on permanent restriction from

8  all work, as Ms. Glover was "unable to return to her usual and customary job duties with the

9  prolonged forward flexion of the cervical spine and prolonged keyboarding." (AR000124,

10  AR000126.)

11       Ms. Glover suffers from significant pain due to her cervical radiculopathy and her wrist

12  ganglion cyst.  On four occasions between December 8, 2003, and September 28, 2004, Ms.

13  Glover's pain became so intolerable that she had to visit the emergency room.  (AR000127-33.)

14  Two of these visits occurred *after* Ms. Glover was placed on a four-hour work schedule by Dr.

15  Jill Harrell in July 2004.  (AR000130-33.)  In order to live with these disabling conditions, Ms.

16  Glover must take significant amounts of pain medication.  The July 31, 2003, pharmacological

17  pain management consultation and evaluation completed by Sharon L. Mitchell, pharmacist,

18  concluded that Ms. Glover should "never drive, operate heavy machinery and perform activities

19  requiring coordination and alertness while taking her medications." (AR000116-17.)

20       In sum, Ms. Glover is unable to perform her previous job duties which required her to be

21  seated, type, or conduct waist-level hand and arm movements at least seven hours per day.

22  (AR000124; AR000169, ¶ 26; AR000275.)  Her least physically taxing task – answering the

23  phone and taking messages – is so difficult for Ms. Glover due to dystonia that it is the reason

24  she left her original position as Operator and moved to Staff Associate.   (AR000167, ¶ 8.)  The

25  high levels of pain she experiences and the pain medication she requires to function render her

26  unable to concentrate on detailed tasks, such as handling detailed schedules and bonuses of

27  multiple large offices of a major corporation.  (*See* AR000169, ¶ 29; AR000168, ¶ 12.)  Ms.

28  Glover's position required physical and mental acuity that her pain and medications simply do

not permit her.

On April 26, 2004, Dr. Jill Harrell confirmed "that residual permanent disability exists in this case." (AR000121.) Again on October 28, 2004, Dr. Jill Harrell stated that Ms. Glover's "[r]esidual disability is largely due to chronic soft tissue musculoligamentous strain of the cervical spine, overlying cervical spondylosis and disc protrusion, central, at C5-6," and that Ms. Glover "has reached a point of maximum medical improvement." (AR000122.) Ms. Glover applied and was approved for SSDI benefits on December 13, 2004, demonstrating that she was unable to engage in "any substantial work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). (Nako Dec., Exh 1, p. P00336.)[6]

In addition, on September 15, 2005, two of SMAART's own hired medical reviewers determined that Ms. Glover was disabled from her normal job duties. Dr. Been concluded that Ms. Glover was "disabled from her regular job as of 11/03/04 to the present." (AR000055.) Dr. Jares, also concluded that Ms. Glover was "disabled from her regular job duties as of 11/03/04 to the present." (AR000065.)

Thus, Ms. Glover presented significant medical evidence supporting her claim for short-term disability benefits. The only contrary medical evidence in the Administrative Record is the reports of four hired medical reviewers who have never met Ms. Glover, two of whom concluded that Ms. Glover *was disabled* from her normal occupation (AR000055; AR000065) and one who was unable to conclude that Ms. Glover continued to suffer from a previously diagnosed, incurable disease. (AR000060.) At a minimum, this evidence gives rise to genuine issues of material fact going to Ms. Glover's entitlement to benefits.

**C. Even If the Standard of Review Is for Abuse of Discretion, Defendant Abused Its Discretion By Denying Ms. Glover's Claim for Benefits.**

A plan administrator with discretion abuses that discretion if its decision conflicts with the plan terms or is based on erroneous findings of fact. *See Taft*, 9 F.3d at 1472-73. Here, the evidence demonstrates that, at a minimum, genuine issues of material fact exist going to whether

---

[6] This document was omitted from the Administrative Record.

1    an abuse of discretion occurred.

2        In its Memorandum, Defendant argues:

3        [T]he denial of plaintiff's claim was upheld because, *inter alia*, the medical
        information [the SMAART Quality Review Unit] received 'did not contain
4        sufficient clinical findings to substantiate a disabling condition,' because its
        records indicated that four-hour work days were consistently available to plaintiff,
5        and because medical opinions by independent physician advisors supported the
        conclusion that plaintiff could work a transitional four-hour day and that her
6        clinical findings were not so severe as to prevent her from performing her job
        duties as Staff Associate.

7

8    (Def.'s Mem., at 13 (quoting AR000044).)  Defendant fails to acknowledge that Ms. Glover's

9    "job duties as a Staff Associate," as set forth above, required her to work at least 7.5 hours per

10   day.   (AR000275.)  Even if a four-hour workday was available to Ms. Glover as an

11   accommodation, the Plan terms require a determination as to whether a participant can perform

12   the duties of her regular position, not of an accommodated position.

13       Genuine issues of material fact preclude summary judgment for Defendant as follows:

14   (1) the level of skepticism to accord the Plan's exercise of discretion; (2) whether the denial of

15   Ms. Glover's claim on the basis of a finding that she could work a four-hour day was contrary to

16   the terms of the Plan; and (3) whether the denial of Ms. Glover's claim was an abuse of

17   discretion where the medical opinions of the hired medical reviewers that Ms. Glover could work

18   on an accommodated four-hour schedule were unsupported by medical evidence.

19       **1.    Any Deference Awarded to the Plan's Exercise of Discretion Must Be
            Tempered By Skepticism Arising From the Financial Conflict of Interest**
20       **Between Defendant and Sedgwick Claims Management Services, Inc.**

21       If the Court determines that the entity properly granted discretion under the Plan denied

22   Ms. Glover's claim for benefits, the exercise of discretion must be reviewed with a heightened

23   level of skepticism if the administrator's decision was influenced by a conflict of interest.  *Abatie*

24   *v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 , 971 (9th Cir. 2006.)  As set forth in Plaintiff's

25   Memorandum, the Agreement for Administration of Disability Claims under SBC Disability

26   Plans and Administration of SBC's Job Accommodation Process Between Sedgwick Claims

27   Management Services, Inc. and SBC Communications, Inc., Agreement No. 00018118 ("the

28   Agreement"), as in effect at the time Ms. Glover's claim for benefits was reviewed, created a

1   financial conflict of interest between Defendant and Sedgwick.  (*See* Pl.'s Mem., at 17-18.)

2       The Agreement provided for "Performance bonus[es] . . . used to reward and recognize

3   the Claims Management Staff," as well as penalties assessed against Sedgwick for various

4   infractions, including "[claim] denial[s] overturned due to case management error."  (AR000481,

5   AR000495.)  Case management error included claim denials overturned "at the appeals level

6   without any new information."  (Nako Dec., Exh. 9, 5:21-22.)  The terms of the Agreement

7   encourage Sedgwick Claims Management Staff to perform their duties under the Agreement in

8   such a manner as to receive performance bonuses, and avoid penalties by upholding erroneous

9   benefit denials.

10           **2.    Genuine Issues of Material Fact Exist as to Whether the Denial Was an
                     Abuse of Discretion in That It Was Based on Ms. Glover's Asserted Failure**

11           **to Meet Requirements Not Set Forth in the Plan.**

12      SMAART required Ms. Glover to provide medical evidence that she could not work four-

13  hour days and asked its hired medical reviewers to evaluate Ms. Glover's ability to work with the

14  accommodation of a four-hour day.  However, the inability to work with accommodation is not

15  required by the Plan's definition of disability.  Genuine issues of material fact exist as to whether

16  a denial on this basis is an abuse of discretion.

17      The law of the Ninth Circuit prohibits a plan administrator from imposing an eligibility

18  requirement that is not contained in the Plan document.  *Saffle v. Sierra Pacific Power Co.*

19  *Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459-60 (9th Cir. 1996).

20  Imposing a condition for coverage or other standard that is not set forth in the plan is arbitrary

21  and capricious conduct.  *See Canseco v. Const. Laborers Pension Trust for So. Cal.*, 93 F.3d 600,

22  608-09 (9th Cir. 1996).

23      Here, the Plan defines "short-term disability" as:

24      sickness, injury, or other medical, psychiatric or psychological condition, which prevents
        an Employee from engaging in his or her normal occupation or employment with the
25      Participating Company, or such other occupation or employment as he or she is assigned
        in accordance with the Participating Company's normal practices.
26

27  (AR000331.)  The Plan does not reference accommodations at all and the requirement may not

28  be read into the Plan's definition of disability.  *See Saffle*, 85 F.3d at 459-60.  However, in the

1  November 23, 2004 claim denial letter, the questionnaires provided to the hired medical

2  reviewers, the September 21, 2005 letter denying Ms. Glover request for review, and Defendant's

3  Memorandum, the Plan has required Ms. Glover to demonstrate that she cannot work with

4  accommodation in order to be eligible for short-term disability benefits.  By requiring Ms. Glover

5  to meet a standard absent from the Plan's definition of disability, SMAART effectively rewrote

6  the Plan, an action beyond the administrator's authority.  *See id.*

7       Nor can it be argued that SMAART was, *sub silentio*, invoking the Plan's reference to

8  "such other occupation or employment as he or she is assigned."  SMAART considered only Ms.

9  Glover's own occupation, not any other occupation, nor is there any evidence in the record that

10  Ms. Glover was ever assigned to any "occupation or employment" other than the Staff Associate

11  position after she developed her disabling physical conditions.

12       Ms. Warner's declaration lends further support to Ms. Glover's contention that the denial

13  was based on requirements not set forth in the Plan.  Ms. Warner describes the process for

14  evaluating eligibility for benefits under the Plan, stating that "objective medical findings from the

15  employee's treating providers . . . are considered" (without stating by whom they are considered)

16  and a medical opinion "that is not supported by measurable medical findings is usually

17  insufficient."  (Warner Dec., ¶ 9.)  However, nothing in the Plan requires that a participant's

18  inability to perform her occupation must be shown by "objective medical findings" or

19  "measurable medical findings."  Courts have held that imposition of an "objective evidence"

20  requirement where none appears in the governing plan is an abuse of discretion.  *See Mitchell v.*

21  *Eastman Kodak Co.*, 113 F.3d 433, 443 (3rd Cir. 1997); *Mitchell v. Metropolitan Life Ins. Co.*,

22  523 F. Supp. 2d 1132, 1146 (C.D. Cal. 2007); *see also Canseco v. Constr. Laborers Pension*

23  *Trust for So. Cal.*, 93 F.3d 600, 608 (9th Cir. 1996); *Saffle v. Sierra Pacific Power Co.*, 85 F.3d

24  455, 459-60 (9th Cir. 1996).

25     **3.**    **SMAART Relied on Erroneous Finding of Facts When It Concluded That Ms. Glover Could Work With Accommodation.**

26

27       SMAART's second basis for justifying its denial of Ms. Glover's claim for short-term

28  disability benefits is "because medical opinions by independent physician advisors supported the

1  conclusion that plaintiff could work a transitional four-hour day and that her clinical findings

2  were not so severe as to prevent her from performing her job duties as Staff Associate." (Def.'s

3  Mem., at 13.) Defendant relies upon the reports of Drs. Been and Jares and Scott Dailey, as a

4  basis for arguing that SMAART did not abuse its discretion. (*Id.*)

5         **a.    The Medical Conclusions of Ms. Glover's Treating Physician.**

6         As set forth above and in Plaintiff's Memorandum, the medical evidence demonstrates

7  that Ms. Glover is disabled from all work, even with the accommodation of a reduced schedule.

8  Jill Harrell, an orthopedic surgeon and Ms. Glover's treating physician for purposes of her claim

9  for worker's compensation medical benefits, has continually restricted Ms. Glover's ability to

10  work as Ms. Glover's pain increased and functionality decreased. (See above at Section II.B.3.)

11        On October 28, 2004, two days after Ms. Glover's last day of work, Dr. Harrell

12  completed a "Permanent and Stationary Report" in which she noted that Ms. Glover "has reached

13  a point of maximum medical improvement," based upon her review of Ms. Glover's medical

14  history. (AR000122.) She commented that Ms. Glover's "[r]esidual disability is largely due to

15  chronic soft tissue musculoligamentous strain of the cervical spine, overlying cervical

16  spondylosis and disc protrusion, central, at C5-6." (*Id.*) Dr. Harrell further observed that "Ms.

17  Glover currently experiences a disability referable to the cervical spine" and "is unable to return

18  to her usual and customary job duties with the prolonged forward flexion of the cervical spine

19  and prolonged keyboarding." (AR000124.) At that time Ms. Glover's "usual and customary job

20  duties" had already been reduced to four-hour days. Thus, Dr. Harrell determined that she was

21  not capable of continuing to work in her job *at all*, even with the accommodation of a four-hour

22  schedule, due to her degenerative disc disease. In addition to this condition, Ms. Glover

23  continued to suffer from dystonia and a painful wrist ganglion cyst, which further restricted her

24  ability to work.

25        Dr. Harrell reiterated her conclusions for SMAART on November 2, 2004, finding Ms.

26  Glover's condition to be permanent and stationary as of October 26, 2004, due to "severe pain at

27  neck and right arm" with "permanent restriction." (AR000126.)

28

1

### b.    Report of Jeffrey N. Been, M.D.

2    SMAART relied on Dr. Been's report, which concluded that Ms. Glover was able to

3    work four-hour days.  However, Dr. Been's report does not conclude that Ms. Glover is able to

4    perform her normal job duties.  In addition to his conclusions regarding Ms. Glover's

5    functionality, cited in Defendant's Memorandum (Def.'s Mem., at 13), Dr. Been found Ms.

6    Glover disabled from her normal occupation.  He made numerous conclusions supporting his

7    finding of disability, including "MRI findings of the cervical spondylosis with multilevel

8    degenerative disc disease at C3 through C6 with mild disc protrusions and reversal of the cervical

9    lordosis of the spine," "limitations with range of motion of the neck," "multilevel degenerative

10   disc disease, which would exacerbate pain related to chronic forward flexion of the cervical spine

11   combined with repetitive use of the upper extremities," and "subjective complaints of neck pain

12   are therefore substantiated by some objective physical findings of decreased range of motion of

13   the cervical spine combined with evidence of reversal lordosis of cervical spine, which can be

14   consistent with chronic neck strains/spasms." (AR00056.)

15   Dr. Been found Ms. Glover able to work four-hour days because "[i]t is unclear from the

16   information provided why Ms. Glover was able to stand four-hour workday for five months prior

17   to pain deemed temporary and totally disabled."  (AR000056.)  However, Dr. Harrell had

18   restricted Ms. Glover's ability to work in an increasingly aggressive fashion, beginning in March

19   17, 2003 and ending with total restriction 19 months later, on October 26, 2004.  As noted above,

20   during this period, Ms. Glover was admitted to the emergency room four times for pain and two

21   of these visits occurred after Dr. Harrell restricted Ms. Glover to four-hour days on July 7, 2004.

22   (AR00012733.)  It is clear that Ms. Glover's condition worsened as she continued to work.

23   Concluding that a participant was not disabled solely because she continued to work for a period

24   of time is an abuse of discretion.  *See Hawkins v. First Union Corp. Long-Term Disability Plan*,

25   326 F.3d 914, 918 (7th Cir. 2003); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998).

26   ### c.    Report of Joseph J. Jares, III, M.D.

27   SMAART also relied on Dr. Jares's conclusion that Ms. Glover could work four-hour

28   days and "that there was insufficient evidence of cervical myelopathy."  (Def.'s Mem., at 13.)

Again, like Dr. Been's report, Dr. Jares concluded that Ms. Glover was disabled from her normal occupation. In support of his conclusion, he cited the following evidence from Ms. Glover's medical records: "Ms. Glover's abnormal MRI study showed progressive cervical disc herniation at C5-C6 with cord compression;" "[t]he clinical findings do support the presence of a disabling condition;" "Ms. Glover has evidence of a herniated cervical disc at C5-C6, which has worsened over time and has caused cervical spinal cord compression;" "Ms. Glover has objective evidence of cervical spine pathology at C5-C6 base upon her serial MRI studies;" "[s]he has reduced range of motion of her neck and sensory disturbance involving her right upper extremity;" "[s]he also has motor deficits involving her upper extremities per the examination of the Dr. Harrell [*sic*];" and "[t]hese findings would be commensurate with the inability of Ms. Glover to perform her normal job duties during the period in question." (AR000065-66.)

And yet, despite his numerous findings supporting his conclusion that Ms. Glover is disabled, Dr. Jares concluded *without explanation* that Ms. Glover could work four-hour days. (AR000066.) SMAART abused its discretion when it relied upon this unsubstantiated conclusion and the *one* finding which weighed against Ms. Glover's claim for benefits in her denial letter, ignoring the numerous findings which supported Ms. Glover's claim.

### d.    Report of Scott Dailey, MA, CCC-SLP

Defendant disregards the effects of Ms. Glover's dystonia because Mr. Dailey concluded that the condition alone is insufficient to render her disabled. (Def.'s Mem., at 13-14.) However, Mr. Dailey concluded only that a scarcity of medical records regarding Ms. Glover's condition rendered him unable to conclude that Ms. Glover was disabled solely due to her speech and voice difficulties. Ms. Glover has never claimed to be disabled solely due to her dystonia. In fact, her employment history demonstrates that she continued to work after suffering from and being diagnosed with dystonia. Her employment history also demonstrates that her employer recognized that dystonia rendered her unable to perform job duties associated with her position as Operator. After being provided with the Staff Associate position in 1999 that required less vocal communication, Ms. Glover returned to work.

Inexplicably, Mr. Dailey also concluded in the last paragraph of his report that there were

insufficient medical records to support the *diagnosis* of dystonia in 1999 and 2000, after noting

(1) medical records from 1990 regarding Ms. Glovers "history of persistent dysphonia of sudden

onset," (2) medical records for voice therapy in 2000, accompanied by a "guarded" prognosis,

and (3) "there is no cure for spasmodic dysphonia."  (AR000060-61.)  SMAART's reliance on

Mr. Dailey's findings to deny Ms. Glover's claim for benefits was an abuse of discretion.

### III.   CONCLUSION.

For the foregoing reasons and those set forth in Plaintiff's Memorandum, Plaintiff

Yvonne Glover respectfully requests that this Court deny Defendant's Motion for Summary

Judgment.  Additionally, if the Court is inclined to rely on Defendant's declarations in resolving

any issue in this case, then Ms. Glover requests that the Court grant a brief continuance to permit

her to take Ms. Warner's and Ms. Watts's depositions.


Dated: February 8, 2008                          Respectfully submitted,

                                                 LEWIS, FEINBERG, LEE,
                                                 RENAKER & JACKSON, P.C.

                                    By:    _____/s/_____
                                                 Lindsay Nako
                                                 *Attorneys for Plaintiff*