LAFAYETTE & KUMAGAI LLP
GARY T. LAFAYETTE (State Bar No. 088666)
SUSAN T. KUMAGAI (State Bar No. 127667)
FORREST E. FANG (State Bar No. 122805)
100 Spear Street, Suite 600
San Francisco, California 94105
Telephone: (415) 357-4600
Facsimile: (415) 357-4605

Attorneys for Defendant
AT&T UMBRELLA BENEFIT PLAN NO. 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YVONNE GLOVER,

Plaintiff,

vs.

AT&T UMBRELLA BENEFIT PLAN NO. 1,

Defendant.

Case No. C07-02652 CRB

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT**

[Fed. R. Civ. P. 56]

Date: February 29, 2008
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Charles R. Breyer

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

1

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The "Abuse of Discretion" Standard is Applicable In This Case ..... 1

B. Plaintiff Failed to Establish a Genuine Issue That the CRC's Decision to Uphold the Denial of STD Benefits Was Not an Abuse of Discretion. ..... 4

1. No Conflict of Interest Exists. ..... 4

2. An "Accommodation Requirement" Did Not Violate the Plain Language of the Plan. ..... 6

3. The CRC's Denial of Benefits Had a Reasonable Basis in Plaintiff's Medical Findings and Was Not Clearly Erroneous. ..... 8

C. Even if, *Arguendo*, the Standard of Review Were *De Novo*, There Is No Triable Issue as to Plaintiff's Failure to Qualify for STD Benefits Under the Plan ..... 10

D. Plaintiff Is Not Entitled To a Continuance To Take Depositions. ..... 12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

i

## TABLE OF AUTHORITIES

**Page No.**

**Federal Cases**

Abatie v. Alta Health & Life Ins. Co. (9th Cir. 2006) 458 F.3d 955 ..... 2

Black & Decker Disability Plan v. Nord (2003) 538 U.S. 822 ..... 11

Bolling v. Eli Lilly & Co. (8th Cir. 1993) 990 F.2d 1028 ..... 8

Canseco v. Construction Laborers Pension Trust for Southern California (9th Cir. 1996) 93 F.3d 600 ..... 6, 7

Cervantes v. Metropolitan Life Insurance Company (E.D. Cal. 2005) 388 F.Supp.2d 1164 ..... 6

Estate of Shockley v. Alyeska Pipeline Service Company (9th Cir. 1997) 130 F.3d 403 ..... 8

Firestone Tire & Rubber Co. v. Bruch (1989) 489 U.S. 101 ..... 2

Jordan v. Northrup Grumman Corp. Welfare Benefit Plan (9th Cir. 2004) 370 F.3d 869 ..... 10

Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan (9th Cir. 1995) 46 F.3d 938 ..... 3

Newcomb v. Standard Insurance Company (9th Cir. 1999) 187 F.3d 1004 ..... 10

Oster v. Barco of Cal. Employees' Retirement Plan (9th Cir. 1988) 869 F.2d 1215 ..... 8

Ross v. Rail Car America Group Disability Income Plan (8th Cir. 2002) 285 F.3d 735 ..... 6

Safavi v. SBC Disability Income Plan (C.D. Cal. 2007) 493 F.Supp.2d 1107 ..... 10

Saffle v. Sierra Pacific Power Company (9th Cir. 1996) 85 F.3d 455 ..... 6

Sidou v. Unumprovident Corp. (D.Me. 2003) 245 F.Supp.2d 207 ..... 6

Taft v. Equitable Life Assur. Soc., 9 F.3d 1469 (9th Cir. 1993) ..... 4, 8

Tatum v. City and County of San Francisco

ii

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

(9th Cir. 2006) 441 F.3d 1090 .......... 13

Terrell v. Brewer
(9th Cir. 1991) 935 F.2d 1015 .......... 13

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

iii

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

## I. INTRODUCTION

Plaintiff Yvonne Glover ("Plaintiff") failed to establish a genuine issue exists that an "abuse of discretion" standard is applicable to the Employees' Benefit Claim Review Committee's ("CRC") decision upholding the denial of Plaintiff's claim for STD benefits. It is undisputed that the CRC was provided with the authority under the Pacific Telesis Group Comprehensive Disability Benefits Plan (the "Plan") to interpret the Plan and to decide appeals of the denials of benefits claims.

The CRC consisted of employees that worked in the Quality Review Unit ("QRU") of third-party administrator Sedgwick Claims Management Services ("Sedgwick"), and who were involved in the decision to uphold the denial of benefits. There is no genuine issue that the Plan did not require a formal vote of all members as argued by Plaintiff.

Further, Plaintiff has failed to raise a genuine issue that the CRC's decision to uphold the denial of benefits was clearly erroneous because the Administrative Record ("AR") demonstrated that Plaintiff was able to work a four-hour day; she therefore did not qualify for STD benefits under the Plan.

Even if, *arguendo*, the CRC's decision was subject to *de novo* review (which it is not), there is no genuine issue that Plaintiff could work at least four hours per day. This undisputed fact alone is fatal to Plaintiff's claim, because her ability to perform part-time work disqualifies her from STD benefits, as noted above.

Finally, Plaintiff's argument that she is entitled to a continuance under Rule 56 of the Federal Rules of Civil Procedure in order to take the depositions of Tonya Warner and Nancy Watts is meritless. She failed to identify specific facts that she would elicit from such depositions, or show how these facts would preclude summary judgment, because none exists. Moreover, the Court previously *denied* Plaintiff's request to take depositions.

## II. ARGUMENT

### A. The "Abuse of Discretion" Standard is Applicable In This Case

Plaintiff does not dispute that an "abuse of discretion" standard of review is applicable, where the administrator or fiduciary is given the discretionary authority under an ERISA plan *to*

*determine eligibility for benefits or to construe the terms of the plan.* (Firestone Tire & Rubber Co. v. Bruch (1989) 489 U.S. 101, 115; Abatie v. Alta Health & Life Ins. Co. (9th Cir. 2006) 458 F.3d 955, 963.) Nor does Plaintiff dispute that the Plan conferred discretionary authority on the CRC to interpret the Plan and to review STD claims on appeal to determine whether claimants were eligible for STD benefits. (See AR-000346, §§9.4-9.5.)

Plaintiff nonetheless maintains that the *de novo* standard is applicable because the decision to affirm the denial of her STD benefits claim was allegedly not made by the CRC, but rather a sole member of the CRC and QRU, Heidi Lasser. (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") at 5:5-7.) Plaintiff's purported distinction is purely semantic and immaterial.

It is undisputed that during the relevant time, the CRC consisted of employees of the QRU. (Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Defendant's Motion") at 4:11-12.) Further, the members of the CRC were involved in Plaintiff's appeal and affirmation of the denial of Plaintiff's STD benefits claim. (See Id. at 4:7-11, 5:4-5, 7:6-8:1; AR-000010, 000047.) In 2005, the CRC included Heidi Lasser, Appeals Specialist, Cam Reinhart, Manager of QRU and Doreen Ongayo, ERISA Specialist. (Defendant's Motion at 5:4-5; Warner Decl., ¶4.) Plaintiff's counsel sent Plaintiff's letter of appeal to Doreen Ongayo. Cam Reinhart communicated with Plaintiff's counsel regarding Plaintiff's appeal. Heidi Lasser drafted and forwarded the letter informing Plaintiff of the denial of benefits to Mr. Reinhart, who reviewed and approved the letter. (AR-000010, AR-000192-194, AR-000201-202; Defendant's Motion at 7:6-9.)

Notwithstanding Plaintiff's statements to the contrary, Defendant does not assert that these employees acted on their own. *By virtue of their membership in the CRC*, individual CRC members have the discretion to make benefits decisions. (Declaration of Nancy Watts In Support of Defendant's Motion for Summary Judgment ("Watts Decl."), ¶8.) Accordingly, the decision to affirm the denial of benefits was made *by the CRC*, through its constituent members who belonged to the QRU. The record establishes that the terms of the Plan are consistent with this process.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Plaintiff argues that there is no proof that the CRC held a formal "vote" on Plaintiff's claim. (Plaintiff's Opposition at 5:5-7.) The Plan, however, contains no such requirement that a formal "vote" be conducted. (See AR-000346, §9.5.) Nor did the Plan require the CRC to conduct a formal hearing on Plaintiff's claim[1]. (See id. at §9.3.)

Plaintiff further argues that declarations of Nancy Watts and Tonya Warner should not be considered by the Court, because no "necessity" for them has been shown, citing the case of Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan (9th Cir. 1995) 46 F.3d 938. That case is inapplicable, as the court therein merely held, in pertinent part that, in cases of *de novo* review, new *medical* evidence that was not part of the record before the plan administrator may be considered by the district court under certain limited circumstances. (Id. at 943-44.) In the instant case, the Watts and Warner declarations contain no new medical evidence. Moreover, the Watts declaration references no medical evidence at all, but merely confirms the process used. The Warner declaration simply references medical documentation that is already part of the record. Indeed, the Watts and Warner declarations contain information regarding the Plan's "overall decision-making process" that is relevant to showing there is no conflict of interest on the part of the claim review fiduciary—information that is admissible under the Abatie case. (See Abatie v. Alta Health & Life Ins. Co. (9th Cir. 2006) 458 F.3d 955, 970 (district court may consider evidence outside administrative record pertaining to the "nature, extent, and effect on the decision-making process" of an alleged conflict of interest).) In any event, the pertinent standard of review herein is for "abuse of discretion," and is not a *de novo* review.

Plaintiff's argument with regard to the standard of review allegedly applicable to decisions of the General Employees Benefit Committee ("GEBC") is irrelevant; the decision at issue is that of the CRC and not of the GEBC.

However, even if, *arguendo*, the GEBC decision to deny Plaintiff's STD benefits was at issue, Plaintiff's argument is meritless and, again, is based on misstatements of the record. First, there is nothing in the record that indicates Jennifer Fennessy made the decision the deny

[1] The Plan also contains no requirement that the CRC log its decisions in a "Juris Notes" database, though plaintiff appears to insinuate that such an action is required. (See plaintiff's opposition brief, p. 6:3-6.)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

3

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

Plaintiff's claim for STD benefits. Fennessy merely provided written notification to Plaintiff of the denial of her claim pursuant to the Plan. (The Plan, § 8.3.2, AR-000344) Second, the GEBC is provided the authority to appoint individuals to carry out administrative duties under the Plan. (The Plan, § 8.1, AR-000343) During the relevant time period, the Plan was administered by SMAART, of which Ms. Fennessy was a member. (AR-000243) Third, the Plan does not require that the GEBC hold a formal vote regarding denial of claims. (AR-000343-000344.)

Moreover, CRC's confirmation or the denial of Plaintiff's claim was not based on any findings of the GEBC; the decision was based on the record, including additional medical evidence presented by Plaintiff and the opinions of three independent medical advisors.

For all these reasons, the abuse of discretion standard is applicable here.

**B. Plaintiff Failed to Establish a Genuine Issue That the CRC's Decision to Uphold the Denial of STD Benefits Was Not an Abuse of Discretion.**

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

Plaintiff maintains that a genuine issue of material fact exists as to whether the CRC abused its discretion in upholding the denial of STD benefits, because the CRC allegedly imposed an "accommodation" requirement that was not contained in the Plan, and because the decision was allegedly based on "erroneous" findings of facts. Plaintiff's contentions are meritless and her arguments are premised on a misrepresentation of the Plan's requirements, as well as the law applicable to the finding of a "*clearly erroneous*" decision under the abuse of discretion standard.

A plan administrator's decision does not constitute an abuse of discretion, unless it renders its decision without explanation, it construes the Plan in a way that violates the Plan's "plain language," or it bases its decision on "clearly erroneous" findings of fact. (Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1472-73 (9th Cir. 1993).) That is not the case here.

**1. No Conflict of Interest Exists.**

There is no basis for Plaintiff's argument that the CRC's decision must be viewed with "skepticism" because of an alleged conflict of interest. Plaintiff alleges the Plan Administrator's agreement with Sedgwick, whose employees served on the CRC, rewarded the denial of benefits claims and penalized the reversal of claim denials upon review. Plaintiff cites to a provision of

4

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

the agreement that imposes penalties when a claims denial is reversed because of a "clear procedural error" by the case manager. However, this provision does not encourage the denial of claims. To the contrary, it establishes that the Plan is acting to ensure quality control and *encourages compliance* with procedural requirements before a decision is made whether to deny a claim. This inures to the claimant's benefit by ensuring that required procedures are followed. If anything, the provision operates to encourage approvals; penalties would not be imposed thereunder for *approving* a disability benefits claim, even if the case manager had made a clear procedural error in so doing. Also, Plaintiff has presented no evidence that the Plan Administrator interfered with the CRC's review of denied claims under the Plan, or otherwise encouraged it to deny claims.

Plaintiff also suggests that the agreement between SBC and Sedgwick for third party administration services reflects a financial relationship constituting a conflict. (Plaintiff's Opposition, p. 4, fn. 3.) Obviously, Sedgwick as a third party administrator will be paid for its services. However, the flat fee paid to Sedgwick in no way can be construed as an incentive not to pay claims. Sedgwick is hired to perform functions under The Plan which may include some of its employees serving as fiduciaries. Ms. Watts' declaration, which Plaintiff takes out of context, supports this conclusion. Ms. Watts states that "neither Sedgwick nor the members of the CRC are financially associated with The Plan Administrator or any of its family of companies. . . . Sedgwick has no role in the disability plan's funding. Sedgwick receives a flat fee for its services, without regard to whether claims are approved or denied under the disability plan." (Watts' Dec at ¶ 8.) SBC and Sedgwick are not related companies and Sedgwick is not involved in the funding of The Plan. Plaintiff's attempt to show a financial conflict of interest is meritless and based on misleading statements from the record.

The abuse of discretion standard is therefore applicable to this case, and there is no basis for applying it in a less than deferential manner to the CRC's decision to affirm the denial of Plaintiff's STD claim.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

5

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

### 2. An "Accommodation Requirement" Did Not Violate the Plain Language of the Plan.

Plaintiff first argues that the CRC abused its discretion by allegedly interpreting the Plan to require that an STD applicant demonstrate that he or she is unable to work "even with accommodations." In support of her argument, she claims that the Plan does not address accommodations. Her argument is not supported by the record.

The Plan's definition of "short-term disability" requires not only that the applicant be unable to perform his or her "normal occupation or employment," but that he/she also be unable to perform "such other occupation or employment *as he or she is assigned in accordance with the Participating Company's normal practices*." (AR-000269.) The company's practice was to make temporary modified duty available to employees based on their physical and medical restrictions, *including partial-day work*. (AR-000320.) Indeed, Plaintiff was provided a partial work day from July 2004 to the last day she worked before she filed her STD claim. The relevant Summary Plan Description ("SPD") expressly provides that STD benefits are only intended for employees who are disabled from *all* work, and that such benefits "are not paid *if you can perform available modified duty*." (AR-000318 (emphasis added).)

The SPD, which is one part of the Plan documents, is required by ERISA. (29 U.S.C. §§1022(a), 1024(b)(1); 29 C.F.R. §2520.104b-3(b). See also Sidou v. Unumprovident Corp. (D.Me. 2003) 245 F.Supp.2d 207, 218.) Such summary documents provide notice to employees of the contents of a plan in plain language, and have been relied upon by courts as evidence in interpreting plans subject to ERISA. (See Cervantes v. Metropolitan Life Insurance Company (E.D. Cal. 2005) 388 F.Supp.2d 1164, 1168; Sidou, supra, 245 F.Supp.2d at 218; Ross v. Rail Car America Group Disability Income Plan (8th Cir. 2002) 285 F.3d 735, 739 n.5.)

Plaintiff relies on Saffle v. Sierra Pacific Power Company (9th Cir. 1996) 85 F.3d 455, and Canseco v. Construction Laborers Pension Trust for Southern California (9th Cir. 1996) 93 F.3d 600, to support her position that the CRC misconstrued the Plan. In Saffle, supra, the court held in part that the plan administrator had misconstrued the relevant long-term disability plan therein by interpreting the plan's definition of "total disability" to include the inability to perform a "substantial portion of her regular job with accommodations." (Id. at 456, 459-60.) However,

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

the disability plan in Saffle, *unlike the Plan herein*, did not involve a definition of disability that included other assigned work "in accordance with the Participating Company's normal practices" or modified duty. Instead, the definition in Saffle simply required an inability "to perform each and every duty of the [employee's] regular occupation." (Id. at 456.) No such definition is at issue here.

The Canseco case is also distinguishable because the court therein simply held that a pension plan trustee could not impose a new requirement *not contained in the plan* (i.e., require that employees have previously applied for benefits) on employees applying for retroactive retirement benefits. (Canseco, supra, 93 F.3d at 602, 608-09.) By contrast, in the instant case, Defendant is simply complying with a definition of short-term disability that is contained in the Plan itself.

Plaintiff further claims that the moving declaration of Tonya Warner shows that the denial of benefits was based on requirements "not set forth in the Plan." In that regard, she alleges that Ms. Warner's statement that "objective medical findings" from the employee's treating physicians are considered and that medical opinions not supported by "measurable medical findings" are generally insufficient amounts to an "objective evidence" requirement not contained in the Plan. Plaintiff has taken Ms. Warner's statement out of context. Ms. Warner's statement does not impose a new "short-term disability" requirement upon Plaintiff. The statement merely indicates that conclusory medical opinions are generally not considered if they are not supported by objective medical findings. (Declaration of Tonya Warner In Support of Defendant's Motion for Summary Judgment ("Warner Decl."), ¶9.) This position is eminently reasonable and hardly amounts to a violation of the Plan. In any event, Plaintiff's denial of benefits was not based on a *lack* of objective evidence, but rather, on undisputed evidence indicating that Plaintiff could work at last four hours per day.

Since the Plan's definition of short-term disability included an inability to perform modified work, including working a partial day, the CRC did not violate the plain language of the Plan's terms by considering Plaintiff's ability to perform modified work, including her ability to work a four-hour work day.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

7

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

**3. The CRC's Denial of Benefits Had a Reasonable Basis in Plaintiff's Medical Findings and Was Not Clearly Erroneous.**

**a) The "Abuse of Discretion" Standard Requires Reliance Upon "Clearly Erroneous" Findings of Fact**

Plaintiff next argues that the CRC's decision to affirm the denial of STD benefits was allegedly based on "erroneous" findings of fact. (See plaintiff's opposition brief, pp. 9:24-10:1; 12:25-26.) Plaintiff's characterization of the holding in Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1472-73 (9th Cir. 1993) in support of her argument is misleading. The court in Taft held, in pertinent part, that a claims administrator abused its discretion if it relied on "clearly erroneous," not simply "erroneous," findings of fact in making its benefits determinations. (Taft, supra, 9 F.3d at 1473 (emphasis added).) Plaintiff's intentional omission of the word "clearly" from the court's holding in Taft improperly suggests a lower threshold for review.

Instead, the "clearly erroneous" standard requires more than mere evidence in the record that would have supported an opposite decision by the administrator. (Bolling v. Eli Lilly & Co. (8th Cir. 1993) 990 F.2d 1028, 1029-30, *quoted* in Taft, supra, 9 F.3d at 1474.) Accordingly, the administrator's exercise of discretion must be found to have been "so patently arbitrary and unreasonable as to lack foundation in [a] factual basis." (Oster v. Barco of Cal. Employees' Retirement Plan (9th Cir. 1988) 869 F.2d 1215, 1218, *quoted* in Taft, supra, 9 F.3d at 1473.) Thus, the administrator's decision must be upheld if it is based on a reasonable, good faith interpretation of the plan's terms. (Estate of Shockley v. Alyeska Pipeline Service Company (9th Cir. 1997) 130 F.3d 403, 405.)

**b) The CRC Had A Reasonable Basis for Denial of Plaintiff's Claim.**

In concluding that there was insufficient documentation to support Plaintiff's claim that she was disabled from working, all medical information submitted by Plaintiff was considered, including her treating doctors' reports and, additionally, opinions of several independent medical specialists were considered by the CRC. Under the deferential "clearly erroneous" standard, Plaintiff has failed to show that the CRC's decision upholding the denial of STD benefits was based on clearly erroneous findings.

Plaintiff argues that the medical evidence demonstrates that she is "disabled from all

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

8

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

work, even with the accommodation of a reduced schedule." However, the medical record does not support her position.

Contrary to Plaintiff's assertions, her treating physician, Dr. Harrell, did not express an opinion in his October 28, 2004 report as to whether Plaintiff could perform modified work; he concluded only that Plaintiff could not perform her "usual and customary job duties." (See AR-000239.) Indeed, Dr. Harrell noted that Plaintiff was subject to certain physical restrictions (e.g., no heavy lifting, "forceful pushing" or "prolonged forward flexion of the neck"), but did not state that Plaintiff was precluded from performing *any* modified part-time work *at all*.

On the other hand, independent medical consultants Dr. Jeffrey Been (an orthopedic surgeon) and Dr. Joseph Jares, III (a neurologist), both had concluded, upon their review of Plaintiff's medical records, that Plaintiff was able to work a four-hour day. (AR-000057, 000066.) In so finding, Dr. Been noted that there was no documented loss of functionality of the upper extremities with regard to strength, no clear radiculopathic pattern that was consistent with MRI or EMG findings, no change in Plaintiff's functional status that would explain why Plaintiff could no longer work four-hour days, and noted certain functional limitations that would substantiate a four-hour work day. (AR-000056-57.) Dr. Jares further noted that there was insufficient evidence of cervical myelopathy. (AR-000065.)

Plaintiff argues that the CRC erred in relying upon these findings because Drs. Been and Jares had also concluded that Plaintiff was "disabled" from her regular job. However, such conclusion does not mean that Plaintiff could not perform modified work by working part-time; indeed, those doctors had concluded that Plaintiff could still work four hours per day. Plaintiff was merely precluded from working the 7.5 hours per day that her Staff Associate job normally required. (See AR-000275.)

Nor was Plaintiff being "penalized" for continuing to work. Dr. Been based his conclusion that Plaintiff could work a four-hour day on medical findings in the record, which included the lack of change in her functional status.

With regard to Plaintiff's alleged dystonia, independent speech pathologist Scott Dailey concluded that Plaintiff was not disabled with regard to her speech because there were no clinical

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

findings in the file to support a *diagnosis* of dystonia in 1999 or 2000 or from November 2004 to the present. (AR-000060-61.) Plaintiff has identified no evidence in the record that would support a contrary conclusion. A medical record regarding plaintiff's alleged *dysphonia* in 1990 does not show that she had *dystonia* ten years later or at any time thereafter. Nor do her Kaiser records for alleged voice therapy in 2000 (P000263) establish a diagnosis of dystonia; at most, such records only show that she received treatment. In any event, a medical diagnosis alone would not be sufficient to establish a disability. (Jordan v. Northrup Grumman Corp. Welfare Benefit Plan (9th Cir. 2004) 370 F.3d 869, 880; Safavi v. SBC Disability Income Plan (C.D. Cal. 2007) 493 F.Supp.2d 1107, 1119.)

The CRC relied upon the above opinions of Drs. Been and Jares and speech pathologist Scott Dailey in concluding that Plaintiff could work a four-hour day and therefore was not entitled to STD benefits under the Plan. Such reliance, which was supported by medical findings, was reasonable and was not clearly erroneous.

Accordingly, Plaintiff has failed to show that the CRC's decision against Plaintiff was an abuse of discretion.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

**C. Even if, *Arguendo*, the Standard of Review Were *De Novo*, There Is No Triable Issue as to Plaintiff's Failure to Qualify for STD Benefits Under the Plan**

Even if, *arguendo*, a *de novo* standard of review were somehow applicable to the CRC's decision (which it is not), the undisputed evidence shows that Plaintiff failed to qualify for STD benefits under the Plan. In conducting a *de novo* review, a court may weigh the evidence in the record. (Newcomb v. Standard Insurance Company (9th Cir. 1999) 187 F.3d 1004, 1007.)

In Newcomb, supra, the court, in connection with its *de novo* review, concluded that the medical opinions of three doctors, including two neurological specialists, substantially outweighed a "lone contrary opinion" of a single doctor. (Id. at 1007.)

In the instant case, the opinions of three independent medical specialists in orthopedic surgery (Dr. Been), neurology (Dr. Jares), and speech pathology (Scott Dailey), two of whom are also medical doctors, provides substantial evidence regarding Plaintiff's purported disability that should outweigh the lone opinion of her treating physician, Dr. Harrell. As noted above, Dr.

Been and Dr. Jares both concluded that Plaintiff could work a four-hour work day, which would disqualify Plaintiff from STD benefits because of her ability to perform modified work. As further noted above, the medical record on which the doctors based their findings showed no functional limitations in Plaintiff's cervical range of motion, no documented loss of functionality in the strength of Plaintiff's upper extremities, no clear pattern of radiculopathy, insufficient evidence of cervical myelopathy and no change in Plaintiff's functional status from the time that she was working a four-hour day. Dailey, the speech pathologist, had concluded that a diagnosis of dystonia was unsupported, based on the absence of medical findings to support such a diagnosis in 2003 or 2004, or even in 2000.

Dr. Harrell, Plaintiff's treating physician, concluded in his October 24, 2004 letter that Plaintiff was "unable to return to her usual and customary job duties," but did not address Plaintiff's ability to perform modified work, such as partial-day work. The opinions of the Defendant's three independent medical advisors outweigh the lone opinion of Dr. Harrell, in that they tend to support a finding that Plaintiff did *not* have a disability within the meaning provided in the Plan. In any event, the opinion of Plaintiff's treating physician is not entitled to any special deference, nor does ERISA impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. (Black & Decker Disability Plan v. Nord (2003) 538 U.S. 822, 829-30, 834.)

Plaintiff argues that her alleged physical conditions of dysphonia, cervical radiculopathy, and a ganglion cyst raise triable issues as to her ability to perform her job at least 7.5 hours per day. However, these alleged conditions are irrelevant to whether Plaintiff qualified for STD benefits under the Plan. Moreover, Plaintiff has missed the issue by failing to address whether these alleged conditions precluded her from performing modified work of four hours per day.

As noted above, there are no underlying medical findings in the record to support a diagnosis of dysphonia in November 2004 or at any time thereafter, much less in 1999 or in 2000. Evidence that Plaintiff received voice therapy in 2000 does not show that Plaintiff had dysphonia at that time, or any time after making her claim for STD benefits in November 2004. Nor does evidence that Plaintiff allegedly had dysphonia in 1990 show that this condition

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

persisted over a decade later.

With regard to Plaintiff's assertion that she had cervical radiculopathy, the September 15, 2005 report of Dr. Been indicates that there was "no clear radiculopathic pattern" that was consistent with MRI or EMG findings. (AR-000056-57.) Plaintiff's allegation that the alleged radiculopathy caused her to seek emergency medical treatment is an improper expert opinion that lacks a proper foundation in the record. (See Fed.R.Evid. 602, 801-03.) Nor does such alleged condition show that Plaintiff could not perform modified part-time work of four hours per day. Indeed, Dr. Been concluded in his September 15, 2005 report that Plaintiff *could* work four hours per day, as noted above. (AR-000057.)

Similarly, Plaintiff's allegation that she has a wrist ganglion cyst is essentially based on conclusory assertions in her own declaration, and not on medical findings. (See Plaintiff's Motion for Summary Judgment at 8:5.) There is no evidence in the record that the alleged cyst prevented her from working four hours a day at her job *in November 2004*. The sole medical document cited by Plaintiff relating to her alleged cyst is a treating physician's progress report (P00267) that dates from *October 2002*, and which is irrelevant to Plaintiff's medical status in November 2004.

Plaintiff's alleged dysphonia, cervical radiculopathy, and ganglion cyst do not raise any genuine issues as to her failure to qualify for STD benefits.

For these reasons, even if this Court applied a *de novo* standard of review, the Plan's motion should be granted.

**D. Plaintiff Is Not Entitled To a Continuance To Take Depositions.**

Finally, Plaintiff argues that she is entitled to a continuance of the summary judgment hearing, so that she may depose two individuals who submitted declarations on behalf of Defendant's motion —Tonya Warner and Nancy Watts. In that regard, Plaintiff claims that she "cannot present facts essential to justify her opposition" without taking their depositions. Her assertion lacks merit. There is no basis for granting such a continuance.

Under Rule 56(f) of the Federal Rules of Civil Procedure, a party seeking a continuance of a summary judgment hearing must (1) identify by affidavit the specific facts that further

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

discovery would reveal, and (2) explain why those facts would preclude summary judgment. (Tatum v. City and County of San Francisco (9th Cir. 2006) 441 F.3d 1090, 1100.)

In the instant case, Plaintiff has failed to comply with either of these requirements and, indeed is unable to do so. Plaintiff makes the conclusory statement that "Ms. Warner and Ms. Watts possess evidence as to material facts in this matter bearing on the pending motions for summary judgment," without identifying what those "facts" are, or explaining how such "facts" would preclude summary judgment. (Declaration of Lindsay Nako Pursuant to Fed. R. Civ. P. 56(f), ¶7.) A Rule 56(f) continuance may be not based on mere speculation. (Terrell v. Brewer (9th Cir. 1991) 935 F.2d 1015, 1018.)

Plaintiff further claims that she is entitled to take depositions because she allegedly had no prior notice of Ms. Warner and Ms. Watts. Plaintiff ignores the fact that the Court previously rejected her request for depositions in this ERISA proceeding and, as reflected in its October 12, 2007 Minute Order, allowed only 10 interrogatories. (See Docket No. 39.) Consequently, Plaintiff would not have been entitled to depositions in the course of this proceeding, in any event. Moreover, with regard to Ms. Watts, she verified Defendant's interrogatory responses served on January 8, 2008, and was therefore previously known to Plaintiff. (See Declaration of Lindsay Nako in Support of Plaintiff's Motion for Summary Judgment, Exh. 8 (Defendant's Amended Response to Plaintiff's First Set of Interrogatories and verification).)

Plaintiff's request for a Rule 56(f) continuance must therefore be denied.

## IV. CONCLUSION

For the reasons stated above, Defendant AT&T Umbrella Benefit Plan No. 1 respectfully requests its motion for summary judgment be granted in its entirety.

DATED: February 15, 2008

LAFAYETTE & KUMAGAI LLP

*/s/ Susan T. Kumagai*
SUSAN T. KUMAGAI
Attorneys for Defendant
AT&T UMBRELLA BENEFIT PLAN NO. 1

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

13

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)

**CERTIFICATE OF SERVICE**

I certify that a copy of this document was served electronically on February 15, 2008, on counsel of record in compliance with Federal Rule 5, Local Rule 5.6 and General Order 45, by use of the Court's ECF system.

*/s/ Susan T. Kumagai*

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
100 SPEAR STREET, SUITE 600
SAN FRANCISCO, CALIFORNIA 94105
(415) 357-4600
FAX (415) 357-4605

N:\Documents\ATT\Glov\Pldg\Pltfs Mo for Summary Judgment\Opp MPA doc

14

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT AT&T UMBRELLA BENEFIT PLAN NO. 1'S MOTION FOR SUMMARY JUDGMENT (Case No. C07-02652 CRB)