Teresa S. Renaker – CA State Bar No. 187800
Lindsay Nako – CA State Bar No. 239090
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
trenaker@lewisfeinberg.com
lnako@lewisfeinberg.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YVONNE GLOVER,<br><br>              Plaintiff,<br><br>   vs.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>              Defendant. | Case No. 07-02652-CRB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        February 29, 2008<br>Time:       10:00 a.m.<br>Courtroom:  8<br>Judge:     Hon. Charles R. Breyer |

# TABLE OF CONTENTS

Page No.

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Appropriate Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.    *De Novo* Review Is Appropriate As Discretion Was Not Exercised by the Entity to Which the Plan Grants Discretion. . . . . . . . . . . . . . . . . . . . 1

        2.    Should The Court Determine That Abuse of Discretion Review Is Appropriate, the Financial Conflict of Interest Between Sedgwick and the Plan Requires Skeptical Abuse of Discretion Review. . . . . . . . . . . . 3

    B.    SMAART's Denial of Benefits Was an Abuse of Discretion. . . . . . . . . . . . . . . . 5

        1.    SMAART Abused Its Discretion By Applying Eligibility Requirements That Conflicted With the Plain Language of the Plan Document. . . . . . . . 6

        2.    SMAART Abused Its Discretion By Relying On Clearly Erroneous Findings of Fact in Making Benefit Determinations. . . . . . . . . . . . . . . . . . 8

        3.    SMAART Abused Its Discretion by Refusing to Credit Reliable Evidence of Ms. Glover's Disability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            a.    SMAART Disregarded Reliable Evidence of Ms. Glover's Disability Provided by Her Treating Physician. . . . . . . . . . . . . . . 10

            b.    SMAART Disregarded Reliable Evidence of Ms. Glover's Disabling Conditions Arising Prior to 2003. . . . . . . . . . . . . . . . . 11

            c.    SMAART Disregarded Reliable Evidence of the Effects of Ms. Glover's Medications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            d.    SMAART Disregarded Reliable Evidence of Disability Arising From Ms. Glover's Award of Social Security Disability Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    Ms. Glover's Claim for Long Term Disability Benefits Is Properly Before This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 Page No.

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006) . . . . . . . . . . . iv, v, 3, 5, 10

Allen v. Adage, Inc., 967 F.2d 695 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Banuelos v. Construction Laborers' Trust Funds for So. Cal., 382 F.3d 897 (9th Cir. 2004) . . . . 6

Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.,
    293 F.3d 1139 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 6, 7

Black & Decker Disabilty Plan v. Nord, 538 U.S. 822 (2003) . . . . . . . . . . . . . . . . . . . . . v, 5, 10

Cervantes v. Metropolitan Life Ins. Co., 388 F. Supp. 2d 1164 (E.D. Cal. 2005) . . . . . . . . . . . . 7

Dishman v. UNUM Life Ins. Co. of America, 269 F.3d 974 (9th Cir. 2001) . . . . . . . . . . v, 5, 10

Farhat v. Hartford Life & Accident Ins. Co., 439 F. Supp. 2d 957 (N.D. Cal. 2006) . . . . . . . . . 5

Firestone Tire & Rubber v. Bruch, 489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 1

Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771 (7th Cir. 2003) . . . . 11

Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hornback v. New York Times Co. Long Term Disability Plan,
    2006 WL 496050 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan,
    349 F.3d (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 11

Kearney v. Standard Ins. Co., 175 F.3d 1089 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . iv, 1

Madden v. ITT Long Term Disability Plan, 914 F.2d 1279 (9th Cir. 1990) . . . . . . . . . . . . . . . 14

Moskowite v. Everen Capital Corp., 2005 WL 1910941 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . 14

Nelson v. EG & G Energy Measurements Group, Inc., 37 F.3d 1384 (9th Cir. 1994) . . . . . . iv, 1

Perry v. Simplicity Engineering, 900 F.2d 963 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ross v. Rail Car America Group Disability Income Plan, 285 F.3d 735 (8th Cir. 2002) . . . . . . . 7

Safavi v. SBC Disability Income Plan, 493 F. Supp. 2d 1107 (C.D. Cal. 2007) . . . . . . . . . . . . . 3

Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan
    85 F.3d 455 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Shane v. Albertson's Inc. Employees' Disability Plan, 504 F.3d 1166 (9th Cir. 2007) . . . . . iv, 1

Sidou v. Unumprovident Corp., 245 F. Supp. 2d 207 (D. Me. 2003) . . . . . . . . . . . . . . . . . . . . 7

Stup v. UNUM Life Ins. Co. of Am., 390 F.3d 301 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11

Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469 (9th Cir. 1993) . . . . . . . . . . . . . . . . .  iv, 5, 9

United Steel Workers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc., 512 F.3d 555 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Federal Statutes**

42 U.S.C. § 423(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Opposition"), Defendant AT&T Umbrella Benefit Plan No. 1 ("Defendant") continues to assert that the decision to deny Plaintiff Yvonne Glover's ("Plaintiff" or "Ms. Glover") claim for short-term disability benefits is due abuse of discretion review. Abuse of discretion review applies where the benefit plan can demonstrate that the plan has granted the decision-maker discretionary authority to determine eligibility for benefits or interpret the terms of the plan. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) ("[T]he default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision"). Defendant has not demonstrated that the committee with discretion took any action regarding Ms. Glover's request for review of her benefit denial.

Where the decision-maker is not the entity granted discretionary authority by the plan, its decision is reviewed *de novo*. *See Shane v. Albertson's Inc. Employees' Disability Plan*, 504 F.3d 1166, 1170, 1171 (9th Cir. 2007); *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1389 (9th Cir. 1994). In this instance, the appropriate committee did not decide Ms. Glover's claim, so there is no genuine issue of material fact that the decision to uphold Ms. Glover's claim denial must be reviewed *de novo*.

If the Court determines that abuse of discretion review is proper, its review should be performed with heightened skepticism due to the financial conflict of interest of the third-party administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), that decided Ms. Glover's claim. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006). Sedgwick's contract with Defendant provides for "performance bonuses," as well as penalties that create an incentive for Sedgwick to uphold erroneously denied claims.

Further, the record demonstrates that the Plan abused its discretion by construing provisions of the Plan in a way that conflicts with the plain language of the plan, by relying on clearly erroneous findings of fact as a basis for its benefit determination, and for refusing to

1    credit reliable evidence produced by Ms. Glover.  *See Black & Decker Disabilty Plan v. Nord*,

2    538 U.S. 822, 834 (2003); *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472-73 (9th Cir.

3    1993).  The Plan abused its discretion by applying less favorable eligibility requirements,

4    contained only in the Plan's Summary Plan Description, to Ms. Glover's claim for benefits.  *See*

5    *Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002).

6    For additional reasons discussed herein, the Plan abused its discretion by relying on clearly

7    erroneous findings of fact and for disregarding reliable evidence provided by Ms. Glover.

8            Defendant's Opposition also lists a number of reasons why it alleges the Plan had a

9    reasonable basis for denying Ms. Glover's claim.  The Plan failed to provide many of these

10    grounds for its denial in the correspondence denying Ms. Glover's benefits claim and, therefore,

11    these arguments are not properly before the Court if it deems abuse of discretion review is

12    appropriate.  *See Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 986-87 (9th Cir.

13    2001); *see also Abatie*, 458 F.3d at 974 (new reasons for denial raised without an opportunity for

14    claimant to respond should be awarded *de novo* review).

15            For the foregoing reasons, Ms. Glover's Motion for Summary Judgment should be

16    granted.

17

18

19

20

21

22

23

24

25

26

27

28

1

## I. ARGUMENT.

2

**A.     Appropriate Standard of Review.**

3        The default standard of review to be applied by a district court in reviewing a claim for

4   benefits under an ERISA plan is *de novo*, unless the benefit plan has granted the decision-maker

5   discretionary authority to determine eligibility for benefits or interpret the terms of the plan.

6   *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989).  The Plan has the burden of

7   demonstrating that the Plan document conferred authority on the decision-makers.  *See Kearney*

8   *v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) ("[T]he default is that the

9   administrator has no discretion, and the administrator has to show that the plan gives it

10  discretionary authority in order to get any judicial deference to its decision.")

11       *De novo* review applies where the Plan has not vested the decision-maker with the

12  requisite discretionary authority.  *See Shane v. Albertson's Inc. Employees' Disability Plan*, 504

13  F.3d 1166, 1170 (9th Cir. 2007) ("If the [decision-maker] was not properly vested with such

14  discretion, its decision . . . would not be subject to the deferential standard of review of abuse of

15  discretion."); *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*,

16  349 F.3d 1098, 1105 (9th Cir. 2003) ("[A]lthough *Firestone* directs courts to defer to the

17  decisions of plans in which their language grants discretionary authority, that deference applies

18  only when the decision is made by the body vested with discretion."); *Nelson v. EG & G Energy*

19  *Measurements Group, Inc.,* 37 F.3d 1384, 1389 (9th Cir. 1994).

20        In conducting a *de novo* review, "the district court considers a denial-of-benefits

21  challenge afresh, without deferring to the [administrator's] interpretation of the plan."  *Allen v.*

22  *Adage, Inc.*, 967 F.2d 695, 697 (1st Cir. 1992); *see also Perry v. Simplicity Engineering*, 900

23  F.2d 963, 966 (6th Cir. 1990) (*de novo* review means a review "without deference to the decision

24  or any presumption of correctness").

25       **1.     *De Novo* Review Is Appropriate As Discretion Was Not Exercised by the
             Entity to Which the Plan Grants Discretion.**

26

27       Defendant AT&T Umbrella Benefit Plan No. 1 ("Defendant") asserts that the proper

28  standard of review is for abuse of discretion, as the Pacific Telesis Group Comprehensive

1   Disability Benefit Plan ("Plan") grants discretion to the Employees' Benefit Claim Review

2   Committee ("CRC").  Plaintiff Yvonne Glover ("Ms. Glover") does not contest that the Plan

3   provides the CRC with "the power and discretion to resolve all factual issues . . . and to interpret

4   and adopt reasonable constructions of any provision of the Plan."  (AR000346[1], § 9.4.)

5   However, there is no evidence in the record that the CRC did any of these things with regard to

6   Ms. Glover's claim for benefits.

7           Although the Plan document describes the CRC as "a committee of three or more

8   persons" (AR000346, § 9.1), the April 29, 2001 Plan amendment makes clear that the CRC is

9   made up of at least four voting members, identified by position, rather than name.  (AR000287-

10  88.)  The Plan is not clear as to whether more than one person holds each of these titles.  Thus,

11  the total number of committee members is unclear.

12          In asserting that the CRC reviewed and decided Ms. Glover's claim for benefits,

13  Defendant states only that Heidi Lasser, Appeals Specialist (AR000049); Doreen Ongayo,

14  ERISA Specialist (AR000227); and Cam Reinhart, Manager, SMAART QRU (AR000193), each

15  communicated with Ms. Glover or her counsel during the request for review process.[2]

16  (Defendant's Memorandum of Points and Authorities In Opposition to Plaintiff's Motion for

17  Summary Judgment ("Def.'s Opp."), pp. 6-7, 9.)  Defendant also states that Mr. Reinhart

18  reviewed and approved Ms. Lasser's September 21, 2005, letter to Ms. Glover.  (Def.'s Opp. at

19  7; AR000010.)

20          Defendant's description of the review of Ms. Glover's claim fails to identify the decision-

21  maker.  "After review of all medical information submitted by plaintiff and obtaining reports

22  from three independent medical advisors . . ., plaintiff's denial of benefits was again confirmed."

23  (Def.'s Opp. at 6.)  Defendant has the opportunity to clearly identify the individual or entity who

24  _____

25          [1] References to "AR" are to the Administrative Record submitted to the Court in support

26  of Defendant's Motion for Summary Judgment.

27          [2] The fourth position entitling its holder to membership on the CRC is Clinical Appeal

28  Specialist.  No individual holding the position of Clinical Appeal Specialist was involved in Ms.
    Glover's request for review.  (AR000288.)

1    made the decision to deny Ms. Glover's request for review and fails to do so.  The September 21,

2    2005, denial letter that Defendant cites in support of its statement, however, does identify the

3    entity that made the decision to deny Ms. Glover's request for review:

> "The SMAART Quality Review Unit reviewed submitted material and information
> regarding the denial of short-term disability benefits by the SBC Medical Absence
> Accommodations and Resource Team (SMAART), for your client' claim . . . .  After this
> review, the Unit determined to uphold the denial of benefits."

7    (AR000047.)  The SMAART Quality Review Unit,[3] the entity to which Ms. Glover submitted

8    her appeal to and whose name appears on the letterhead of her denial letters, denied Ms. Glover's

9    request for review, *not* the CRC.  (*Id.*)  Defendant has produced no agendas, minutes, resolutions,

10   or other documents showing that the CRC acted on Ms. Glover's claim.  As demonstrated above,

11   the letters to Ms. Glover notifying her of the claim denial also do not reference any action by the

12   CRC.

13           Should the Court determine that the standard of review is *de novo*, the evidence

14   demonstrating that Ms. Glover suffers from multiple disabling conditions that render her disabled

15   under the terms of the Plan is discussed at length in Plaintiff's Memorandum of Points and

16   Authorities in support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum")

17   and Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for

18   Summary Judgment ("Plaintiff's Opposition"), incorporated by reference herein.  (Pl.'s Mem., p.

19   4-8, 14-17; Pl.'s Opp., p. 6-9.)

20           **2.    Should the Court Determine That Abuse of Discretion Review Is
             Appropriate, the Financial Conflict of Interest Between Sedgwick and the**
21           **Plan Requires Skeptical Abuse of Discretion Review.**

22           If the Court determines that the Plan properly conferred discretionary authority on the

23   decision-maker, then abuse of discretion review is appropriate.  *Abatie v. Alta Health & Life Ins.*

24   *Co.*, 458 F.3d 955, 965 (9th Cir. 2006).  The Court should review the decision with a heightened

25   _____

26           [3] At the time Ms. Glover was denied benefits, the Plan was administered by a group of
     employees of Sedgwick Claims Management Services, Inc. ("Sedgwick"), known as the SBC
27   Medical Absence and Accommodations Resource Team ("SMAART").  *See Safavi v. SBC*
     *Disability Income Plan*, 493 F. Supp. 2d 1107, 1110 (C.D. Cal. 2007).  The SMAART Quality
28   Review Unit ("QRU") reviewed requests for review of benefit claim denials.

1  level of skepticism if the administrator's decision-making is influenced by a conflict of interest.

2  *Id.* at 965, 971.  The Court's abuse of discretion review is "tempered by skepticism

3  commensurate with the plan administrator's conflict of interest."  *Id.* at 959.

4        A conflict of interest on the part of Sedgwick is evidenced by the Agreement for

5  Administration of Disability Claims under SBC Disability Plans and Administration of SBC's

6  Job Accommodation Process Between Sedgwick Claims Management Services, Inc. and SBC

7  Communications, Inc., Agreement No. 00018118 ("the Agreement").   Although Defendant

8  argues that "Sedgwick receives a flat fee for its services and the services of its employees"

9  (Def.'s Opp. at 3), provisions for performance bonuses and financial penalties belie this claim.[4]

10  The Agreement provides that "[a]ny Performance bonus paid to Sedgwick CMS will be used to

11  reward and recognize the Claims Management Staff."  (AR000495.) The Agreement also

12  contains provisions that create incentives to uphold claim denials upon review.  The Sedgwick

13  CMS 2004-2007 Key Performance Service Measurements ("KPSM") provide for the assessment

14  of penalties at the end of each contract year, payable from Sedgwick to SBC in the form of a

15  check.  (AR000470.)  As described in Plaintiff's Memorandum, one KPSM that can lead to the

16  assessment of penalties is overturning denials at the review stage for "case management error."

17  (AR000481.)  Case management error is defined as "[a] case manager makes a clear procedural

18  error which results in the Appeals Specialist reversing the denial."  (*Id.*)  "Clear procedural

19  error," in turn, is defined as "an error in processing by a case manager that results in overturning

20  a denial of benefits at the appeal level without any new information."  (Declaration of Lindsay

21  Nako in support of Plaintiff's Motion for Summary Judgment ("Nako Decl."), Exh. 9, 5:21-22.)

22        Defendant claims that "[t]his inures to the claimant's benefit by ensuring that required

23

24      [4] The amounts of performance bonuses and penalties are not available to Ms. Glover, as
the Agreement provided in Defendant's Initial Disclosures was redacted.  (AR000352-503.)  The

25  parties have met and conferred regarding these redactions and Ms. Glover has proposed that a
protective order be entered and the unredacted agreement be produced subject to the order.

26  Defendant rejected Ms. Glover's proposal.  This statement was also supported by a citation to the
Declaration of Tanya Warner In Support of Defendant's Motion for Summary Judgment

27  ("Warner Decl.").  Ms. Glover has requested a brief continuance to permit her to take Ms.

28  Warner's deposition, pursuant to Fed. R. Civ. P. 56(f).

1  procedures are followed." (Def.'s Opp. at 9.)  On the contrary, this provision is detrimental to

2  claimants because it ensures that Appeals Specialists will not overturn denials, even in cases of

3  clear procedural error, because of the financial disincentive.  Defendant further argues that this

4  penalty system operates on first-level claim reviewers, discouraging them from making clear

5  procedural errors.  But, by its terms, the penalty provision operates at the Appeals Specialist

6  level, discouraging reversals of erroneously denied claims.

7  **B.     SMAART's Denial of Benefits Was an Abuse of Discretion.**

8          The Ninth Circuit has delineated multiple ways in which a plan administrator can abuse

9  its discretion in the review of disability claims.  "ERISA plan administrators 'abuse their

10 discretion if they render decisions without any explanation, or construe provisions of the plan in

11 a way that conflicts with the plain language of the plan.'" *Taft v. Equitable Life Assurance Soc'y*,

12 9 F.3d 1469, 1472 (9th Cir. 1993) (citations omitted).  In addition, "an administrator also abuses

13 its discretion if it relies on clearly erroneous findings of fact in making benefit determinations."

14 *Id.* at 1473.  Plan administrators also abuse their discretion by "refus[ing] to credit a claimant's

15 reliable evidence."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Farhat v.*

16 *Hartford Life & Accident Ins. Co.*, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006).  If the Court

17 determines that abuse of discretion review is appropriate, SMAART abused its discretion by

18 construing provisions of the Plan in a way that conflicts with the plain language of the plan, by

19 relying on clearly erroneous findings of fact as a basis for its benefit determination, and by

20 refusing to credit reliable evidence submitted by Ms. Glover.

21         In addition, Defendant may not raise arguments before this Court that were absent from

22 its denial of Ms. Glover's claim for benefits.  *See Dishman v. UNUM Life Ins. Co. of America*,

23 269 F.3d 974, 986-87 (9th Cir. 2001); *see also Abatie*, 458 F.3d at 974 (new reasons for denial

24 raised without an opportunity for claimant to respond should be awarded *de novo* review).  The

25 Court may apply abuse of discretion review only to decisions that the plan administrator actually

26 made in the exercise of its discretion.

27

28

1    **1.    SMAART Abused Its Discretion By Applying Eligibility Requirements That Conflicted With the Plain Language of the Plan Document.**

2

3    The law of the Ninth Circuit requires that, in any conflict between unambiguous plan

4    terms in competing documents, the more favorable terms contained in the master plan document

5    control.  *See Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1145 (9th

6    Cir. 2002).  SMAART abused its discretion by applying less favorable eligibility requirements,

7    contained only in the Plan's Summary Plan Description ("SPD"), to Ms. Glover's claim for

8    benefits.  (*See* Def.'s Opp. at 10.)  This is the first time the SPD has been mentioned in this

9    matter.  The Plan did not cite the SPD in any letter to Ms. Glover regarding the denial of her

10    claim for benefits.  (AR000047-49; AR000208-09; AR000241-43.)

11    If the Plan did, in fact, rely on the terms of the SPD in denying Ms. Glover's claim for

12    benefits, its reliance was misplaced.  Where unambiguous terms in two separate documents

13    conflict, and the master plan document is more favorable, the language in the master plan

14    document controls.  *See United Steel Workers of Am. v. Ret. Income Plan for Hourly-Rated*

15    *Employees of Asarco, Inc.*, 512 F.3d 555, 562-63 (9th Cir. 2008); *Banuelos v. Construction*

16    *Laborers' Trust Funds for So. Cal.*, 382 F.3d 897, 904 (9th Cir. 2004); *Bergt*, 293 F.3d at 1145.

17    The *Bergt* court held:

18    [W]hen the plan master document is more favorable to the employee than the SPD, and
19    unambiguously allows for eligibility of an employee, it controls, despite contrary
      unambiguous provisions in the SPD.  The plan master document is the main document
20    that specifies the terms of the plan, and employees should be entitled to rely on its
      unambiguous provisions.  The SPD, on the other hand, should simply summarize the
21    relevant portions of the plan master document.

22    *Id.* at 1145.  The court placed the burden of poor drafting of the SPD on those who did the

23    drafting, rather than the individual employee, because "the law should provide as strong an

24    incentive as possible for employers to write the SPDs so that they are consistent with the ERISA

25    plan master documents, a relatively simple task."  *Id.* (citing *Hansen v. Continental Ins. Co.*, 940

26    F.2d 971, 982 (5th Cir. 1991)).

27    The terms of the master Plan document define short-term disability as:

28    [A] sickness, injury, or other medical, psychiatric, or psychological condition, which

1   prevents [her] from engaging in . . . her normal occupation or employment with the
2   Participating Company, or such other occupation or employment as . . . she is assigned in
    accordance with the Participating Company's normal practices.

3   (AR000331.)  This definition does not require the inability to work with accommodations and

4   this additional requirement may not be read into the Plan language if it is contrary to the plain

5   language of the Plan.  *See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term*

6   *Disability Income Plan* 85 F.3d 455, 459 (9th Cir. 1996).  *Saffle* requires that the language of the

7   Plan be logically interpreted and not stretched beyond its plain meaning.[5]  *See id.*  If the Plan

8   does not include language providing for work with accommodations, the requirement cannot be

9   read into the Plan.  *See id.*

10      In contrast, the SPD language on which Defendant relies provides, "[short-term

11  disability] benefits are designed to provide benefits only if you are *disabled from all work*;

12  benefits are not paid if you can perform available modified duty."  (AR000318 (emphasis

13  added).)  This section refers to a later definition of "temporary modified duty," which states,

14  "Temporary modified duty allows you to return to work even though you may not be able to

15  perform all of the essential functions of your regular job."  (AR000320.) (Def.'s Opp. at 10.)

16      The plain language of the Plan requiring the inability to perform the participants "normal

17  occupation" – not the inability to perform "all work" as in the SPD – is unambiguous.[6]  "Normal"

18

19      [5] Although the language at issue in *Saffle* differs from that in the Plan, as Defendant
20  points out, the *Saffle* Court's logic applies.  (Def.'s Opp. at 11.)  *Saffle*, 85 F.3d at 459-60.
    Where the definition of disability does not contain any language regarding accommodations,
21  interpreting the Plan's definition to include accommodations is "contrary to its plain language."
    *Id.* at 459.  Here, as in *Saffle*, the Plan's definition of disability requires participants to perform
22  their normal occupation and "does not talk in terms of accommodation at all."  *Id.*  To read this
    language into the Plan "effectively imposes a new requirement for coverage" and is outside the
23  discretion of the Plan administrator.  *Id.* at 459-60.

24

25      [6] Defendant also argues that the SPD should be used as evidence in interpreting master
    plan documents.  The cases cited by Defendant do not undermine *Bergt*.  *Cervantes v.*
26  *Metropolitan Life Ins. Co.*, 388 F. Supp. 2d 1164, 1168 (E.D. Cal. 2005), is a non-binding district
    court case in which a Summary of Material Modifications was consulted where the plan was
27  silent.  *Sidou v. Unumprovident Corp.*, 245 F. Supp. 2d 207, 218 (D. Me. 2003), is an out-of-
    circuit case in which the SPD was consulted where the plan was silent.  *Ross v. Rail Car America*
28  *Group Disability Income Plan*, 285 F.3d 735, 739 n. 5 (8th Cir. 2002), is an out-of-circuit case

1   is defined as "conforming with, adhering to, or constituting a norm, standard, pattern, level, or

2   type; typical." *The American Heritage Dictionary* (4th Ed. 2004). "Occupation" is defined as

3   "an activity that serves as one's regular source of livelihood; a vocation." *Id.* "Employment" is

4   defined as "the work in which one is engaged; occupation." *Id.* Thus, in order to have a short-

5   term disability, a participant must be unable to perform her standard position, or any other job to

6   which she is assigned by her employer.[7] Ms. Glover's "normal occupation or employment" is the

7   position of Staff Associate, which typically requires 7.5 hours of work a day, including 4 hours of

8   keyboarding, according to the SBC Job Analysis Document in the Administrative Record

9   compiled by the Plan. (AR000275.)

10      Two unambiguous but conflicting terms are presented to the Court. The language of the

11  master plan document provides a definition of disability that is more favorable to Ms. Glover,

12  and must control, per *Bergt* and subsequent decisions. Thus, the unambiguous provision of the

13  master plan document controls and the Plan's definition of disability is limited to its plain

14  language. SMAART was not entitled to require Ms. Glover to demonstrate that she could not

15  work with the accommodation of a reduced schedule. SMAART imposed an additional

16  requirement for eligibility that was not included in the Plan document and abused its discretion.

17  To find otherwise would place the burden of the SPD's poor drafting and failure to accurately

18  summarize the terms of the Plan on Ms. Glover, contrary to the law of the Ninth Circuit.

19      **2.    SMAART Abused Its Discretion by Relying on Clearly Erroneous Findings**
20           **of Fact in Making Benefit Determinations.**

21      If the Court concludes that SMAART properly applied the SPD plan term prohibiting

---

23  which says nothing more than that SPDs and master plan documents both constitute plan
    documents, which Ms. Glover does not contest.

25      [7] Defendant's conclusory statement that "[t]he company's practice was to make temporary
    modified duty available to employees based on their physical and medical restrictions, including
26  partial-day work" is supported only by reference back to the SPD. (Def.'s Opp. at 10.)
    Defendant cites no language in the master Plan document regarding modified duty or any
27  evidence in the record to support its statement. The fact that a reduced schedule was available to
    Ms. Glover does not demonstrate that the provision of reduced schedules was the "normal
28  practice" referenced in the Plan. The Plan refers only to assignment to other occupations or
    employment and makes no mention of accommodations.

1   disability benefit payments to participants who can work with accommodation, then SMAART

2   abused its discretion by relying upon the clearly erroneous conclusions of its hired medical

3   reviewers that Ms. Glover was capable of working on a part-time basis. *See Taft*, 9 F.3d at 1473.

4         In its letter denying Ms. Glover's request for review of the denial of her claim for

5   benefits, SMAART cited "[in]sufficient clinical findings to substantiate a disabling condition."

6   (AR000044.) In reaching this conclusion, SMAART ignored reliable medical evidence provided

7   by Ms. Glover and relied on the conclusions of two hired medical reviewers that Ms. Glover was

8   able to work modified duty, neither of whom have ever spoken to or examined Ms. Glover and

9   both of whom still concluded that Ms. Glover was disabled from her normal job duties.

10        As discussed in detail in Plaintiff's Memorandum and Plaintiff's Opposition, the

11  conclusions of the hired medical reviewers that Ms. Glover is able to work four-hour days are

12  unsubstantiated by the medical records. (Pl.'s Mem. at 21-24; Pl.'s Opp. at 12-16.) The reports

13  of Drs. Been and Jares demonstrate that their conclusions that Ms. Glover was able to work on a

14  modified schedule were conclusory and contrary to the evidence in the record. (AR000053-57,

15  AR000062-66.) After summarizing Ms. Glover's medical history, both doctors concluded that

16  Ms. Glover was disabled from her normal job duties as of November 3, 2004. (AR000055,

17  AR000065.) Both doctors then stated that Ms. Glover was able to work modified duty without

18  specifying the medical evidence that supports Ms. Glover's ability to work four-hour days.

19  (AR000056; AR000066.)

20        Although Defendant lumps the reports of the two doctors together, Drs. Been and Jares

21  provided different analyses of Ms. Glover's medical history. (Def.'s Opp. at 15.) While Dr.

22  Been concluded that there were no functional limitations in Ms. Glover's cervical range of

23  motion and no documented loss of functionality in her upper extremities as to her strength, Dr.

24  Jares concluded that the medical evidence demonstrated a "reduced range of motion of the

25  cervical spine," "reduced range of motion of her neck with right upper extremity numbness,"

26  "reduced range of motion of her neck and sensory disturbance involving her right upper

27  extremity," and "motor deficits involving her upper extremities." (AR000056, AR000065-66.)

28  Dr. Been also concluded that there was no clear pattern of radiculopathy, yet Dr. Jares identified

1  the attending physician's most recent diagnosis as "neck pain and bilateral upper extremity

2  cervical radiculopathy" and himself defined Ms. Glover's disabling diagnosis as "herniated

3  cervical disc at C5-C6 with bilateral upper extremity radicular pain."  (AR000056, AR000065.)

4  SMAART's decision to rely on Dr. Been's conclusions supporting a denial of Ms. Glover's

5  claim for benefits where contradicted by Dr. Jares's analysis, as well as its reliance on both

6  doctors' clearly erroneous conclusions that Ms. Glover was able to work with accommodation,

7  was an abuse of discretion.

8        **3.**      **SMAART Abused Its Discretion by Refusing to Credit Reliable Evidence of**
9                     **Ms. Glover's Disability.**

10       The Supreme Court has ruled that plan administrator cannot "arbitrarily refuse to credit a

11  claimant's reliable evidence" of disability.  *Black & Decker*, 538 U.S. at 834.  SMAART did

12  precisely this when it disregarded reliable evidence from Ms. Glover's treating physician,

13  evidence created prior to 2003, evidence of the effects of Ms. Glover's medications, and

14  evidence of disability in the form of a Social Security Association finding of disability.

15       In addition, many of these arguments were absent from SMAART's denial of Ms.

16  Glover's claim for benefits and are not properly before this Court if the standard of review is

17  abuse of discretion.  *See Dishman*, 269 F.3d at 986-87; *see also Abatie*, 458 F.3d at 974.

18        **a.**      **SMAART Disregarded Reliable Evidence of Ms. Glover's Disability**
19                     **Provided by Her Treating Physician.**

20       Defendant argues that Ms. Glover has requested "special deference" to the opinions of her

21  treating physician, which is contrary to the Supreme Court's decision in *Black & Decker*.  (Def.'s

22  Opp. at 12.)  Ms. Glover, however, has not requested special deference to the opinion of her

23  treating physician.  She has provided the informed opinions of her treating physician as reliable

24  evidence of her disability under the terms of the Plan and asserted that SMAART abused its

25  discretion by ignoring them.  *See Black & Decker*, 538 U.S. at 834 ("Plan administrators, of

26  course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions

27  of a treating physician.")  Following the Supreme Court's *Black & Decker* decision, multiple

28  courts have held that it is an abuse of discretion to disregard reliable evidence, including the

1   opinions of a treating physician.  *See Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 308 n. 5

2   (4th Cir. 2004); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775

3   (7th Cir. 2003); *Jebian,* 349 F.3d at 1109, n. 8.

4        SMAART also disregarded reliable medical evidence when it relied on the report of Scott

5   Dailey, Speech Pathologist, to deny Ms. Glover's request for review.  Mr. Dailey inexplicably

6   gave no weight to evidence that Ms. Glover had been diagnosed and treated for dystonia.  He

7   concluded that the 1990 and 2000 medical records were insufficient to demonstrate that Ms.

8   Glover was disabled based on her dystonia diagnosis.  While Mr. Dailey stated that "[i]n July

9   2000, Ms. Glover was still undergoing voice therapy," he simultaneously concluded that "[w]e

10  have no documentation of the diagnosis of dystonia during the period of 1999 to 2000."

11  (AR000059, AR000060.) The July 2000 document stated that the reason for referral was

12  "dysphonia/dystonia."  (AR000104.)  Mr. Dailey listed and disregarded the 1990 and 2000

13  medical records, as well as notations regarding Ms. Glover's vocal difficulties recorded in other

14  medical documentation, without adequate explanation.  (AR000060.)

15       Ultimately, Mr. Dailey concluded only that "Ms. Glover is not disabled from a speech

16  language pathology perspective and pertaining to speech and voice diagnoses provided in the file.

17  These factors may interact with the other physical symptoms is unclear and will be left for a

18  physician to review."  (*Id.*)  Ms. Glover has never claimed to be disabled solely due to her

19  dystonia.  Her speaking disorder prevents her from performing job duties which require speaking,

20  as her employer recognized when it moved her to the Staff Associate position in 1999.  Thus, Mr.

21  Dailey's conclusion that Ms. Glover was not disabled due solely to her dystonia is an improper

22  basis for SMAART to deny her claim for benefits.

23       SMAART's disregard of Dr. Harrell's medical opinions and reliance on Mr. Dailey's

24  conclusions regarding Ms. Glover's dystonia diagnosis to deny her claim for disability benefits is

25  an abuse of discretion.

26            **b.    SMAART Disregarded Reliable Evidence of Ms. Glover's Disabling
                      Conditions Arising Prior to 2003.**

27

28  Defendant argues that Ms. Glover's references to medical conditions occurring prior to

1    2003 or 2004 are "a red-herring." (Def.'s Opp. at 13.)  However, SMAART made no argument

2    in its September 29, 2005, denial letter regarding the timeliness of Ms. Glover's medical records

3    pertaining to dystonia or the symptoms accompanying her wrist ganglion cyst.  (AR000044-46.)

4            With regard to Ms. Glover's vocal disorder, SMAART stated only:

5            The opinion of the independent physician advisor was that the documentation did not
             support disability from her job as of November 3, 2004 based on speech and voice
6            difficulties.  There was no documentation from a physician or speech pathologist
             concerning dystonia or speech therapy other than what was provided by Dr. Izdebski in
7            the year 1990, who indicated at that time her dysphonia appeared to be a conversion non-
             organic dysphonia.

8

9    (AR000045.)  As noted by Mr. Dailey, Ms. Glover produced evidence from 1990 and 2000 that

10   she was diagnosed with and treated for dystonia, an incurable vocal chord disorder, as well as

11   records containing references to her vocal difficulties by other physicians.  (AR000060.)

12   Ignoring Ms. Glover's medical evidence and denying Ms. Glover's claim for benefits because

13   she does not have medical records demonstrating that she continued to suffer from this incurable

14   condition in 2003 and 2004 is an abuse of discretion, and Defendant's argument regarding

15   timeliness is not properly before this Court if the standard of review is abuse of discretion.

16           In addition, SMAART made no reference at all to Ms. Glover's ganglion cyst in its

17   September 29, 2005, denial letter.  (AR000044-46.)  Only now does it challenge Ms. Glover's

18   statements that the wrist ganglion cyst reduces the functionality of her right arm and wrist.

19   (Def.'s Opp. at 14.)  There is no evidence that this provided a basis for its September 29 denial of

20   Ms. Glover's request for review and this ground for denial should not be presented for the first

21   time to this Court if the standard of review is abuse of discretion.

22           Regardless, Ms. Glover presented a primary treating physician's progress report dated

23   October 3, 2002, which described an MRI showing a ganglian cyst and inflammation of the

24   median nerve.  (AR000105.)  Defendant states that this report "is irrelevant as to plaintiff's

25   medical status in November 2004" without any explanation why this is so.  This arbitrary

26   disregard for reliable evidence is an abuse of discretion.

27

28

1    c.    **SMAART Disregarded Reliable Evidence of the Effects of Ms.**
**Glover's Medications.**

2

3    SMAART also did not challenge Ms. Glover's statements regarding the effects of her

4    medications in its September 29 letter and, therefore, these reasons for denying Ms. Glover's

5    claim for benefits are not properly before the Court if the standard of review is abuse of

6    discretion.  (AR000044-46.)  Defendant states that Ms. Glover's claim that the effects of her

7    medications contribute to her inability to perform her job duties is "speculative and not supported

8    by any medical findings in the record."  (Def.'s Opp. at 14.)  However, Ms. Glover's statements

9    in her declaration regarding the disabling effect of her prescribed medications warrant

10   consideration by the Plan administrator and this Court.  (*See* AR000169-70, ¶ 29.)  In addition,

11   Defendant fails to state that Ms. Glover also submitted a pharmacological evaluation of her pain

12   management regimen dated July 31, 2003.  (AR000114-118.)  Sharon L. Mitchell, Pharmacist

13   Specialist, reviewed Ms. Glover's past medical history, occupational history, history of injury,

14   and subjective complaints of pain personally and accordingly instructed Ms. Glover "never to

15   drive, operate heavy machinery and perform activities requiring coordination and alertness while

16   taking her medications."  (AR000116-17, AR000118.)  Again, Defendant's disregard for this

17   reliable evidence is an abuse of discretion.

18   d.    **SMAART Disregarded Reliable Evidence of Disability Arising From**
**Ms. Glover's Award of Social Security Disability Benefits.**

19

20   In a subsequent argument, also not presented in its September 29 denial letter, Defendant

21   overstates Ms. Glover's purpose for including her disability benefit award from the Social

22   Security Administration ("SSA") in her request for review of the denial of her claim for short-

23   term disability benefits.  Rather than arguing that SMAART was *bound* to approve Ms. Glover's

24   claim for benefits as a result of receiving the SSA award, Ms. Glover submitted her award as

25   evidence that she has been deemed "[unable] to engage in any substantial gainful activity,"

26   "unable to do [her] previous work," and also "cannot, considering [her] age, education, and work

27   experience, engage in any other kind of substantial gainful work which exists in the national

28   economy" by the SSA.  42 U.S.C. § 423(d)(1) and (2).

1    The cases cited by Defendant each conclude that a plan administrator is not bound by the

2    SSA's determination of disability, but do not state that the information is irrelevant to the

3    evaluation of disability. *See Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285

4    (9th Cir. 1990) (not arbitrary or capricious for the plan to disregard the social security award

5    where there was substantial evidence demonstrating that the plaintiff did not meet the plan's

6    definition of disability); *Hornback v. New York Times Co. Long Term Disability Plan*, 2006 WL

7    496050, *9 (N.D. Cal. 2006) (SSA decision to award disability benefits is not binding on a plan

8    administrator); *Moskowite v. Everen Capital Corp.*, 2005 WL 1910941, *4 (N.D. Cal. 2005)

9    (same).   Ms. Glover agrees that the Plan administrator is not bound to find an individual

10   disabled if she has been so found by the SSA, but the Plan administrator should consider the

11   SSA's determination of disability as evidence of disability under the terms of the Plan.

12   Defendant's failure to consider the SSA's determination of disability is an abuse of discretion

13   because it disregarded reliable evidence of disability where there is not substantial evidence

14   demonstrating that Ms. Glover fails to meet the Plan's definition of short-term disability.

15   **C.    Ms. Glover's Claim for Long Term Disability Benefits Is Properly Before This
16         Court.**

17       Ms. Glover filed her claim for short-term disability benefits on or about November 2,

18   2004.  The Plan provides for up to 52 weeks of short-term disability benefits.  Thus, Ms.

19   Glover's eligibility for short-term disability benefits would have ended on November 2, 2005,

20   and she would have become eligible for long-term disability benefits.

21       The requirement for long-term disability benefits under the Plan is that Ms. Glover " not

22   return to work at the end of the fifty-two week period for which Short Term Disability benefits

23   are payable."  (AR000337, § 5.1)  Ms. Glover has not returned to work and continues to suffer

24   from the same disabilities, which prevent her from engaging in "any occupation or employment

25   for which the Employee is qualified, or may reasonably become qualified, based on training,

26   education or experience."  (AR000330.)  Similar to the eligibility requirements for short-term

27   disability, the ability to work with accommodation does not disqualify a participant, according to

28   the terms of the master plan document.  The same arguments for finding the master plan

document controlling apply to the eligibility requirements for long-term disability benefits.

However, should the Court determine that it is unable to make a determination regarding Plaintiff's claim for long-term disability benefits, it would be appropriate to remand this issue to the Plan administrator, following a finding that Ms. Glover was eligible for short-term disability benefits.

## II.   CONCLUSION.

For the reasons stated in Plaintiff's Memorandum, Plaintiff's Opposition, and above, the Court should grant summary judgment for Plaintiff.


Dated: February 15, 2008                        Respectfully submitted,

                                                LEWIS, FEINBERG, LEE,
                                                RENAKER & JACKSON, P.C.

                                        By:     _____/s/_____
                                                Lindsay Nako
                                                *Attorneys for Plaintiffs*